JAYMIE PARKKINEN (S.B. #318394)
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone:  (323) 919-3590
Email:        jp@prkknn.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAREN FLAGG, an individual, | Case No. 2:26-cv-3354 |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | |
| TAYLOR SWIFT, an individual; TAS RIGHTS MANAGEMENT, LLC, a Tennessee limited liability company; UMG RECORDINGS, INC., a Delaware corporation; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES INC., a California corporation; and DOES 1-25, | 1. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** |
| | 2. **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125)** |
| Defendants. | 3. **CALIFORNIA UNFAIR COMPETITION (CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)** |
| | **ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Maren Flagg alleges as follows based on personal knowledge as to her own conduct and on information and belief as to all other matters:

## INTRODUCTION

1. In 2014, in the pages of *Las Vegas Weekly*, a working performer began writing candidly about her life inside the entertainment industry. Maren Flagg, professionally known as Maren Wade ("Plaintiff"), called it CONFESSIONS OF A SHOWGIRL. The name stuck.

2. What began as a weekly column became a live show. The show became a touring production. Over the course of a decade, CONFESSIONS OF A SHOWGIRL grew into a brand encompassing performances, writing, and digital media—built by one person, city by city and show by show.

3. Plaintiff has performed CONFESSIONS OF A SHOWGIRL across the United States, including at established venues such as New York City's Laurie Beechman Theatre and Myron's at The Smith Center in Las Vegas. She has appeared on television under that name, earned press coverage in national publications, and expanded the brand into a book, a podcast, and video content.

4. In 2015, the United States Patent and Trademark Office ("USPTO") registered CONFESSIONS OF A SHOWGIRL for entertainment services. After years of continuous use, the mark achieved incontestable status under 15 U.S.C. § 1065—a statutory recognition of the goodwill Plaintiff earned through her sustained, personal effort.

5. For more than a decade, CONFESSIONS OF A SHOWGIRL identified a single source: Plaintiff.

6. Then in 2025, Defendant Taylor Swift and her affiliated business entities[1] adopted the designation THE LIFE OF A SHOWGIRL and began using it in

---

[1] Taylor Swift ("Swift") and her affiliated business entities, TAS Rights Management, LLC ("TAS"), UMG Recordings, Inc. ("UMG"), and Bravado International Group Merchandising Services Inc. ("Bravado") are referred to collectively as "Defendants."

COMPLAINT

commerce. They did not do so quietly. Within weeks, the designation was affixed to consumer goods, stamped onto labels, tags, and packaging, and deployed as a source identifier across retail channels—all directed at the same audience Plaintiff had spent years cultivating.

7.     The similarity between CONFESSIONS OF A SHOWGIRL and THE LIFE OF A SHOWGIRL is immediate. Both share the same structure, the same dominant phrase, and the same overall commercial impression. Both are used in overlapping markets and are directed at the same consumers.

8.     That similarity would not have escaped Defendants' notice. Even a cursory trademark search would have revealed Plaintiff's federally registered mark and her years of continuous prior use. Defendants are sophisticated commercial actors with dedicated legal and brand management teams responsible for Swift's portfolio of more than 170 active and pending trademark registrations. Indeed, they are not merely familiar with trademark law—they are among its most vigorous enforcers, having filed multiple federal actions to seize goods from vendors selling trademarked merchandise near concert venues. They possess direct knowledge of the harm that trademark infringement inflicts on a brand, having leveraged that very harm in federal court when it served their interests to do so.

9.     The USPTO confirmed what any competent search would have revealed. When Defendants applied to register THE LIFE OF A SHOWGIRL, the Office refused on the ground that Defendants' designation is confusingly similar to Plaintiff's established mark. Defendants were therefore placed on actual notice that their chosen designation was likely to be confused with a mark that already belonged to someone else. They continued using it anyway, expanding it across a coordinated commercial program and distributing it through retail channels reaching millions of consumers. Plaintiff was never contacted.

10.     The result is textbook reverse confusion: a junior user's overwhelming commercial presence drowns out the senior user's mark, until consumers begin to

COMPLAINT

assume that the original is the imitation. What Plaintiff had built over twelve years, Defendants threatened to swallow in weeks.

11.  Defendants may contend that THE LIFE OF A SHOWGIRL, as the title of a musical work, is beyond the reach of trademark law. Not so. Whatever protection might attach to creative expression, it does not immunize Defendants' separate decision to adopt a confusingly similar designation as a trademark, affix it to goods, and deploy it as a source identifier in commerce.

12.  Plaintiff, as a performer herself, respects Taylor Swift's right to creative expression, and nothing in this action challenges it. But what Defendants did here was not expression—it is infringing trademark use. The USPTO told Defendants as much when it refused their application. They proceeded anyway, at a scale that threatens to erase Plaintiff from her very own brand.

13.  Those are not artistic choices. They are commercial decisions, and they have consequences.

14.  Plaintiff brings this action to protect the goodwill she has built, to halt further confusion in the marketplace, and to ensure that the identity of her brand remains hers.

## JURISDICTION AND VENUE

15.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff asserts claims arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. (the "Lanham Act"). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

16.  This Court has personal jurisdiction over Defendants because they purposefully directed commercial activities toward California, including the sale of goods bearing THE LIFE OF A SHOWGIRL designation to consumers in this District, and Plaintiff's claims arise from those activities.

17.  Defendant Swift is an individual who directs substantial commercial

COMPLAINT

activity from this District, including recording, production, and management of her entertainment projects, through facilities and business relationships located in Los Angeles County. Swift also maintains a residence in this District, including a property in Beverly Hills, California.

18. Defendant TAS conducts business in California and participates in the ownership, control, licensing, and commercialization of intellectual property associated with Swift's entertainment projects, including THE LIFE OF A SHOWGIRL. TAS authorized, directed, and/or approved the use of THE LIFE OF A SHOWGIRL designation in connection with goods offered for sale to consumers in California, including through retail channels operated by or in coordination with Defendants UMG and Bravado. TAS's activities are not limited to passive licensing, but include active participation in the commercial exploitation of the designation in this District.

19. Defendant UMG maintains its principal place of business in Santa Monica, California, and directs and participates in the commercial exploitation of goods associated with THE LIFE OF A SHOWGIRL.

20. Defendant Bravado maintains its principal place of business in Santa Monica, California, and is responsible for the design, manufacture, and sale of goods bearing THE LIFE OF A SHOWGIRL designation.

21. Defendants have purposefully availed themselves of the privilege of conducting business in California by offering and selling goods bearing THE LIFE OF A SHOWGIRL designation to consumers in this District through online and retail channels, including through coordinated activities directed, authorized, and controlled in part by Swift and TAS in conjunction with UMG and Bravado. Those goods are offered through websites accessible to, and used by, consumers in this District, and are fulfilled, distributed, and/or otherwise provided to consumers here through operations directed from UMG and Bravado, which are headquartered in this District.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and

COMPLAINT

(b)(2). Swift maintains a residence in this District and conducts substantial business here, and UMG and Bravado maintain their principal places of business here. In addition, a substantial part of the events giving rise to Plaintiff's claims occurred in this District, including Defendants' authorization, direction, and execution of the use of THE LIFE OF A SHOWGIRL designation in connection with goods offered to consumers in this District, the sale and distribution of those goods to consumers located here, and the resulting consumer confusion and harm to Plaintiff within this District.

## PARTIES

23.    Plaintiff Maren Flagg, professionally known as Maren Wade, is an individual and a resident of Nevada. She is a singer, songwriter, comedian, and writer who has developed and performed under the CONFESSIONS OF A SHOWGIRL mark since at least 2014.

24.    Defendant Swift is an individual and a resident of California. She is a performer who releases music and related goods and services under her name and associated designations.

25.    Defendant TAS is a limited liability company organized under the laws of Tennessee with its principal place of business in Nashville, Tennessee. TAS manages and licenses intellectual property associated with Swift's projects, including THE LIFE OF A SHOWGIRL.

26.    Defendant UMG is a corporation organized under the laws of Delaware with its principal place of business in Santa Monica, California. UMG distributes and commercially exploits Swift's music releases and related projects, including those associated with THE LIFE OF A SHOWGIRL.

27.    Defendant Bravado is a corporation organized under the laws of California with its principal place of business in Santa Monica, California. Bravado is responsible for the design, manufacture, distribution, and sale of goods bearing THE LIFE OF A SHOWGIRL designation.

COMPLAINT

28.    Plaintiff is informed and believes, and on that basis alleges, that Defendants sued herein as Does 1 through 25 are responsible in some manner for the acts alleged herein and that Plaintiff's injuries were proximately caused by their conduct. The true names and capacities of these defendants are presently unknown to Plaintiff. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

29.    At all relevant times, each Defendant participated in, directed, controlled, or knowingly approved the adoption and use of THE LIFE OF A SHOWGIRL designation in connection with the goods and commercial activities alleged herein. Defendants acted in concert and with a unity of interest in developing, distributing, and selling goods bearing that designation, and each is liable for the acts of the others. Defendant Swift personally selected, approved, and promoted THE LIFE OF A SHOWGIRL as the identifying designation for her album and associated commercial program. As the controlling creative and commercial principal of the enterprise, Swift is personally liable for the infringing activities she directed and controlled.

30.    At all relevant times, Defendants' acts alleged herein occurred in interstate commerce within the meaning of the Lanham Act.

## FACTUAL ALLEGATIONS

### Plaintiff's Development of the CONFESSIONS OF A SHOWGIRL Brand

31.    Plaintiff is a singer, songwriter, comedian, and writer who has developed and operated the CONFESSIONS OF A SHOWGIRL brand for more than a decade.

32.    Plaintiff began using the CONFESSIONS OF A SHOWGIRL mark in commerce in or about 2014 in connection with writing and entertainment content. The brand originated from a column she published in *Las Vegas Weekly*, writing candidly about her experiences as a working performer in the Las Vegas entertainment industry.

33.    The column evolved into a live theatrical production presented under the CONFESSIONS OF A SHOWGIRL name. That production combines original music, singing, storytelling, and comedy drawn from Plaintiff's life as a working performer,

COMPLAINT

including candid and often humorous accounts of the challenges and absurdities of a career in the entertainment industry, from getting stuck inside a giant birthday cake to impersonating a Madonna impersonator.

34. Since 2014, Plaintiff has performed CONFESSIONS OF A SHOWGIRL at venues across the United States, including in Arizona, Florida, Indiana, Nevada, New Jersey, and New York. Performances have been staged at established venues such as the Laurie Beechman Theatre in New York City and Myron's at The Smith Center in Las Vegas, and have been presented to audiences numbering in the thousands. Plaintiff most recently performed the production in January 2026.

35. The production is musically directed by Keith Thompson, whose credits include *Jersey Boys*, *Mamma Mia*, and *We Will Rock You*.

36. Plaintiff's performances have also been featured in entertainment publications, including *Broadway World*. She has made numerous television appearances and hosted entertainment segments under the CONFESSIONS OF A SHOWGIRL name.

37. In addition to live performances, Plaintiff has expanded the CONFESSIONS OF A SHOWGIRL brand across multiple platforms and consumer-facing offerings. She has published written works under that name, including a book, and has produced video content distributed online, including through YouTube and social media. Plaintiff has also launched a podcast under the CONFESSIONS OF A SHOWGIRL name, extending the mark into an additional medium.

38. Plaintiff maintains an online presence through the website www.confessionsofashowgirl.com and associated social media channels, through which she promotes and offers her performances, media, and related branded content.

39. Plaintiff has continuously used CONFESSIONS OF A SHOWGIRL as the identifying name for her entertainment services and related works since 2014.

40. Through this continuous use, CONFESSIONS OF A SHOWGIRL has come to identify Plaintiff as the source of those services and has developed goodwill

COMPLAINT

in the marketplace, reflected in Plaintiff's sustained booking history at established venues across the U.S., her audience recognition across multiple platforms, more than a decade of exclusive, unchallenged use of the mark, and her continued expansion of the brand into new entertainment markets and media.

41. Plaintiff owns U.S. Trademark Registration No. 4800625 for CONFESSIONS OF A SHOWGIRL in connection with entertainment services in International Class 41. That registration is valid, subsisting, and has achieved incontestable status under federal trademark law.

**Defendants' Adoption and Use of THE LIFE OF A SHOWGIRL**

42. In or around August 2025, Defendant Swift personally selected and adopted the designation THE LIFE OF A SHOWGIRL for use in connection with a musical release and, more broadly, as a source-identifying designation on goods offered to the public. Swift has personally promoted the designation through public appearances and social media. The remaining Defendants executed the commercial program behind it: TAS authorized, directed, and controlled the use of the designation as a trademark across goods and services; UMG distributed and commercially exploited the musical recordings and related goods bearing the designation; and Bravado designed, manufactured, and fulfilled the consumer goods sold under it. Together, these entities operated as a coordinated enterprise to bring THE LIFE OF A SHOWGIRL to market as a commercial brand.

43. Through retail channels operated by or on behalf of Defendants, including Defendants' online store, Defendants offer for sale numerous goods identified by THE LIFE OF A SHOWGIRL designation, including through a dedicated retail section labeled "THE LIFE OF A SHOWGIRL SHOP."

44. Within that retail program, Defendants use THE LIFE OF A SHOWGIRL as a product designation affixed to individual goods offered to consumers. Those goods span a range of products including drinkware, candles, personal care accessories, and home goods—each bearing THE LIFE OF A SHOWGIRL not as artistic expression,

but as a source-identifying mark.

45.    Defendants use THE LIFE OF A SHOWGIRL as a trademark in connection with these goods, including as part of product names (e.g., "The Life of a Showgirl Candle," "The Life of a Showgirl Tumbler," and "The Life of a Showgirl Hairbrush") and as a source-identifying label for those goods.

46.    Defendants further use THE LIFE OF A SHOWGIRL on product labels and inventory tags. Apparel items include interior garment labels bearing the designation in the position customarily used to identify the source or product line of clothing, and packaging labels likewise display THE LIFE OF A SHOWGIRL designation.

47.    Defendants have also incorporated THE LIFE OF A SHOWGIRL into consumer-facing commercial offerings with national brands, including Uber, Uber Eats, KitchenAid, Starbucks, and Krispy Kreme, directing consumers to Defendants' online store for purchase of goods bearing the designation.

48.    Through these activities, Defendants have used THE LIFE OF A SHOWGIRL as a trademark and source-identifying designation for a coordinated line of goods offered to the public, including in connection with the labeling, packaging, and sale of those goods across Defendants' retail channels.

### The USPTO's Refusal and Defendants' Continued Use

49.    Defendants sought federal trademark protection for the designation THE LIFE OF A SHOWGIRL by filing U.S. Trademark Application Serial No. 99331566 with the USPTO. The application seeks registration across multiple international classes, including Class 41—the same class in which Plaintiff's mark is registered—encompassing musical performances and live entertainment services. The application extends well beyond that shared class to cover additional categories of goods and services, confirming that Defendants intend THE LIFE OF A SHOWGIRL to function as a broad commercial trademark across every category in which Plaintiff operates, and more.

COMPLAINT

50.    On November 5, 2025, the USPTO issued an Office Action refusing registration of THE LIFE OF A SHOWGIRL under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d), based on a likelihood of confusion with Plaintiff's federally registered CONFESSIONS OF A SHOWGIRL mark. The examining attorney found that the marks are identical in their shared terms "OF A SHOWGIRL," are similar in appearance and sound, and convey a similar overall commercial impression. The examining attorney further found that the parties' goods and services are closely related, noting that both marks are used in connection with entertainment services involving musical and theatrical performances, and that consumers encountering both marks would be likely to assume a connection between the parties.[2]

51.    Defendants are sophisticated commercial actors with dedicated legal and brand management teams. Trademark clearance is a routine part of their operations. A standard search would have revealed Plaintiff's federally registered mark and her longstanding prior use in commerce. Defendants are among trademark law's most active enforcers. Through Swift and TAS, Defendants have filed multiple federal actions seeking injunctive relief and seizure orders against the sale of merchandise bearing their designations. In each action, Swift and TAS took the position that such designations function as trademarks on consumer goods and obtained federal court orders on that basis. Defendants thus possess direct, firsthand knowledge that affixing a designation associated with a musical release to consumer goods constitutes trademark use, because they have repeatedly argued as much when it served their interests to do so.

52.    Despite the USPTO's refusal, Defendants have continued to use THE LIFE OF A SHOWGIRL in commerce as a trademark in connection with goods offered to the public.

---

[2] As of the filing of this Complaint, Defendants' application is suspended. The USPTO has maintained its likelihood-of-confusion refusal based on Plaintiff's registered CONFESSIONS OF A SHOWGIRL mark and has indicated that the refusal will be made final once the suspension lifts.

COMPLAINT

53.     Through Defendants' substantially greater commercial scale and retail reach, including a global merchandising operation and national brand collaborations, goods bearing THE LIFE OF A SHOWGIRL designation have been widely offered and sold to consumers in the same channels in which Plaintiff offers her services and related works.

54.     At no point have Defendants sought or obtained Plaintiff's consent or authorization to use THE LIFE OF A SHOWGIRL or any similar designation.

55.     Defendants' use of THE LIFE OF A SHOWGIRL is ongoing and expanding. Defendants continue to manufacture, distribute, and offer for sale goods bearing the designation through retail channels reaching consumers nationwide. Each additional sale compounds the confusion in the marketplace and further erodes Plaintiff's ability to be recognized as the sole source of her CONFESSIONS OF A SHOWGIRL brand. The harm to Plaintiff's goodwill is not fully compensable through monetary damages.

56.     As a result, consumers encountering Plaintiff's CONFESSIONS OF A SHOWGIRL mark, including through search engines and online platforms where Defendants' content now dominates results for Plaintiff's mark, are likely to believe that Plaintiff's services originate with, are affiliated with, or are authorized by Defendants. The consequences of this reverse confusion have been felt by Plaintiff directly. As a solo performer operating in the same entertainment space, she found herself having to navigate the wave of consumer attention Defendants' program had generated and attempting to maintain her presence in a conversation and a marketplace that Defendants had overtaken.

57.     Defendants' use of THE LIFE OF A SHOWGIRL, backed by the substantial commercial infrastructure of Swift, TAS, UMG, and Bravado and amplified through national brand collaborations reaching millions of consumers, has threatened to overwhelm Plaintiff's senior mark and to impair Plaintiff's ability to control the identity and goodwill associated with her brand.

COMPLAINT

58.    THE LIFE OF A SHOWGIRL is one designation among more than 170 active or pending trademark registrations managed by Defendant TAS on behalf of Swift, spanning names, phrases, and commercial designations across one of the most extensive trademark portfolios in the entertainment industry. Defendants' broader enterprise does not depend on the continued use of any single designation. By contrast, CONFESSIONS OF A SHOWGIRL is the sole trademark under which Plaintiff has built her professional identity for more than a decade. It is not one mark among hundreds. It is the only one she has. The continued erosion of that mark threatens the entirety of Plaintiff's brand.

59.    Defendants adopted THE LIFE OF A SHOWGIRL with knowledge of Plaintiff's federally registered mark, continued to expand their use after the USPTO refused their application on likelihood-of-confusion grounds, and have at no point sought Plaintiff's consent. Plaintiff is entitled to relief.

## COUNT I: TRADEMARK INFRINGEMENT
## 15 U.S.C. § 1114

### (*Against All Defendants*)

60.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.    Plaintiff is the owner of U.S. Trademark Registration No. 4800625 for the mark CONFESSIONS OF A SHOWGIRL, registered on the Principal Register of the USPTO in connection with entertainment services.

62.    Plaintiff's registration is valid, subsisting, and in full force and effect, and has achieved incontestable status pursuant to 15 U.S.C. § 1065.

63.    Through continuous use in commerce since at least 2014, the CONFESSIONS OF A SHOWGIRL mark has come to identify Plaintiff as the source of the services and related offerings provided under that name and embodies substantial goodwill.

64.    Defendants have used and continue to use the designation THE LIFE OF A SHOWGIRL in commerce as a source-identifying trademark in connection with

13                                                          COMPLAINT

goods offered for sale to consumers.

65. Defendants' use of THE LIFE OF A SHOWGIRL has occurred without Plaintiff's authorization.

66. THE LIFE OF A SHOWGIRL is confusingly similar to Plaintiff's CONFESSIONS OF A SHOWGIRL mark in sight, sound, and commercial impression.

67. Defendants' use of THE LIFE OF A SHOWGIRL in connection with goods offered to consumers is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association between Plaintiff and Defendants, including by causing consumers to believe that Plaintiff's CONFESSIONS OF A SHOWGIRL brand is derived from, affiliated with, sponsored by, or associated with Defendants, or that Defendants' use of THE LIFE OF A SHOWGIRL is affiliated with or derived from Plaintiff's CONFESSIONS OF A SHOWGIRL brand.

68. Consumers have, in fact, been confused as to the affiliation, connection, or association between Plaintiff and Defendants' use of THE LIFE OF A SHOWGIRL. Even within the brief period since the marks have been in concurrent use, multiple instances of actual consumer confusion have been documented across public platforms, including consumers who have referred to Defendants' album by Plaintiff's mark and consumers who have used Plaintiff's mark as a hashtag when discussing Defendants' products. Additionally, online searches for Plaintiff's mark now return results dominated by content associated with Defendants' designation, further compounding consumer confusion at the point of search.

69. Defendants' substantially greater commercial scale and use of THE LIFE OF A SHOWGIRL as a trademark is likely to cause reverse confusion by leading consumers to believe that Plaintiff's CONFESSIONS OF A SHOWGIRL brand is affiliated with, sponsored by, or derived from Defendants.

70. Defendants' conduct threatens to overwhelm Plaintiff's senior mark and to impair Plaintiff's ability to control the identity and goodwill associated with her brand.

COMPLAINT

71.    Defendants are sophisticated commercial actors with dedicated legal and brand management teams. Trademark clearance is a routine part of their operations. A standard search would have revealed Plaintiff's federally registered mark and her longstanding prior use in commerce. The USPTO itself confirmed the conflict when it refused Defendants' application on the ground of likelihood of confusion. Despite actual notice of Plaintiff's rights, Defendants proceeded with and expanded their use of the designation in commerce. Their infringement was not inadvertent. It was deliberate.

72.    Defendants' acts constitute trademark infringement in violation of 15 U.S.C. § 1114.

73.    As a direct and proximate result of Defendants' infringement, Plaintiff has suffered and will continue to suffer irreparable harm to her business, reputation, and goodwill, including impairment of the source-identifying function of her mark in the marketplace and displacement of her brand in the digital channels through which she reaches her audience. There is no adequate remedy at law.

74.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 and to recover Defendants' profits, Plaintiff's damages, and the costs of this action pursuant to 15 U.S.C. § 1117.

75.    Because Defendants acted with knowledge of Plaintiff's rights, this is an exceptional case entitling Plaintiff to recover attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II: FALSE DESIGNATION OF ORIGIN
## AND UNFAIR COMPETITION
## 15 U.S.C. § 1125(a)

### (*Against All Defendants*)

76.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

77.    Plaintiff has used the CONFESSIONS OF A SHOWGIRL mark in commerce in connection with entertainment services and related offerings since 2014.

COMPLAINT

78.    Through continuous use in commerce, the CONFESSIONS OF A SHOWGIRL mark has come to identify Plaintiff as the source of those services and has acquired substantial goodwill.

79.    Defendants have used and continue to use THE LIFE OF A SHOWGIRL in commerce as a trademark in connection with goods offered for sale to consumers.

80.    Defendants' use of THE LIFE OF A SHOWGIRL is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or association of Plaintiff's services, including by causing consumers to attribute Plaintiff's brand to Defendants.

81.    Defendants' substantially greater commercial scale is likely to compound that confusion by causing consumers to believe that Plaintiff's CONFESSIONS OF A SHOWGIRL brand is derived from or subordinate to Defendants' brand—the hallmark of reverse confusion.

82.    Defendants' conduct threatens to overwhelm Plaintiff's earlier mark and to impair Plaintiff's ability to control the identity and goodwill associated with her brand.

83.    By reason of the foregoing, Defendants have engaged in false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

84.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer irreparable harm to her business, reputation, and goodwill, for which there is no adequate remedy at law.

85.    Plaintiff is entitled to injunctive relief pursuant to 15 U.S.C. § 1116, and to recover Defendants' profits, Plaintiff's damages, and the costs of this action pursuant to 15 U.S.C. § 1117.

86.    Defendants' conduct has been willful, rendering this an exceptional case entitling Plaintiff to recover attorneys' fees pursuant to 15 U.S.C. § 1117(a).

/ / /

COMPLAINT

## <u>COUNT III: UNFAIR COMPETITION</u>
## <u>CAL. BUS. & PROF. CODE §§ 17200 *et seq.*</u>
### (*Against All Defendants*)

87.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88.    California Business and Professions Code § 17200 prohibits unlawful and unfair business acts and practices.

89.    Defendants have engaged in unlawful business acts and practices by committing the acts of trademark infringement and false designation of origin alleged above, including violations of 15 U.S.C. §§ 1114 and 1125(a).

90.    Defendants' conduct is also unfair within the meaning of Cal. Bus. & Prof. Code § 17200. By using THE LIFE OF A SHOWGIRL as a trademark in connection with consumer goods offered for sale, Defendants have leveraged their substantially greater commercial scale to overwhelm Plaintiff's senior mark and to erode the source-identifying function and goodwill of Plaintiff's CONFESSIONS OF A SHOWGIRL brand.

91.    Such conduct offends established public policy embodied in state and federal trademark law by undermining the ability of a senior user to control the identity and goodwill of her mark in the marketplace.

92.    Through the acts alleged herein, Defendants have obtained and continue to obtain an unfair competitive advantage over Plaintiff.

93.    As a direct and proximate result of Defendants' acts, Plaintiff has suffered injury in fact and has lost money or property, including through impairment of her ability to control and expand the CONFESSIONS OF A SHOWGIRL brand, loss of exclusive control over the mark's source-identifying function in the marketplace, and displacement of her brand in the digital channels through which she reaches her audience and generates revenue.

94.    Defendants' acts have caused, and unless restrained will continue to cause, substantial injury to Plaintiff's business, reputation, and goodwill.

COMPLAINT

95.    Unless enjoined by this Court, Defendants will continue to engage in the unlawful and unfair acts and practices alleged herein.

96.    Plaintiff is entitled to injunctive relief and restitution pursuant to Cal. Bus. & Prof. Code § 17203.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

1.    For a permanent injunction pursuant to 15 U.S.C. § 1116 and Cal. Bus. & Prof. Code § 17203 enjoining Defendants, and their officers, agents, servants, employees, attorneys, successors, assigns, and all persons acting in concert or participation with them, from using THE LIFE OF A SHOWGIRL, or any other mark confusingly similar to Plaintiff's CONFESSIONS OF A SHOWGIRL mark, as a trademark or other source-identifying designation in connection with goods or services in a manner likely to cause confusion;

2.    For a preliminary injunction during the pendency of this action, on the same terms as the permanent injunction described above, restraining Defendants from using THE LIFE OF A SHOWGIRL, or any confusingly similar designation, as a trademark or source-identifying designation in connection with goods or services pending final resolution of this matter;

3.    For an order requiring Defendants to cease and permanently discontinue all use of THE LIFE OF A SHOWGIRL, or any confusingly similar designation, as a trademark or source-identifying designation in connection with any goods or services;

4.    For an accounting and disgorgement of all profits earned by Defendants attributable to their use of THE LIFE OF A SHOWGIRL, or any confusingly similar designation, including profits derived from the sale of goods bearing that designation and other source-identifying uses thereof, pursuant to 15 U.S.C. § 1117;

5.    For an award of Plaintiff's actual damages sustained as a result of Defendants' unlawful conduct;

18                                                  COMPLAINT

6.     For treble damages, where appropriate, pursuant to 15 U.S.C. § 1117;

7.     For restitution and equitable relief pursuant to Cal. Bus. & Prof. Code § 17203;

8.     For an award of Plaintiff's costs of suit;

9.     For an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a) on the ground that this is an exceptional case; and

10.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

DATED: March 30, 2026          */s/ Jaymie Parkkinen*
                                Jaymie Parkkinen

                                *Counsel for Plaintiff*