# Exhibit 3

| To: | Rebecca Liebowitz(trademarkdocketing@venable.com) |
|---|---|
| Subject: | U.S. Trademark Application Serial No. 99331566 - THE LIFE OF A SHOWGIRL - - 124909-615253 |
| Sent: | November 05, 2025 09:33:13 PM EST |
| Sent As: | tmng.notices@uspto.gov |

**Attachments**

98905117
4800625
screencapture-barrymanilow-com-17623915273161
screencapture-barrymanilow-com-music_new-17623915590371
screencapture-www-timmcgraw-com-17623916611801
screencapture-store-timmcgraw-com-collections-music-17623916991071
screencapture-www-camilacabello-com-live-17623917257231
screencapture-www-camilacabello-com-music-17623917403991
screencapture-youngmikostore-com-17623918017961
screencapture-www-youngmiko-com-17623918231411

**United States Patent and Trademark Office (USPTO)**
**Office Action (Official Letter) About Applicant's Trademark Application**

**U.S. Application Serial No.** 99331566

**Mark:** THE LIFE OF A SHOWGIRL

**Correspondence Address:**
Rebecca Liebowitz
Venable LLP
P.O. Box 34385
Washington DC 20043-9998
United States

**Applicant:** TAS Rights Management, LLC

**Reference/Docket No.** 124909-615253

**Correspondence Email Address:** trademarkdocketing@venable.com

# NONFINAL OFFICE ACTION

**Response deadline.** File a response to this nonfinal Office action within three months of the "Issue date" below to avoid abandonment of the application. Review the Office action and respond using one of the links to the appropriate electronic forms in the "How to respond" section below.

2

**Request an extension.** For a fee, applicant may request one three-month extension of the response deadline prior to filing a response. The request must be filed within three months of the "Issue date" below. If the extension request is granted, the USPTO must receive applicant's response to this letter within six months of the "Issue date" to avoid abandonment of the application.

**Issue date:** November 5, 2025

The referenced application has been reviewed by the assigned trademark examining attorney. Applicant must respond timely and completely to the issue(s) below. 15 U.S.C. §1062(b); 37 C.F.R. §§2.62(a), 2.65(a); TMEP §§711, 718.03.

SUMMARY OF ISSUES:

- Prior Pending Application - partial cite
- Partial Trademark Act Section 2(d) Refusal
- Filing Basis Clarification
- Identification Requirement

Please note that the preliminary amendment seeking to add a claim of priority under Section 44(d) as to some of the goods and services in  the application is timely and has been entered into the record.

PRIOR PENDING APPLICATION - APPLIES TO CLASS 4 ONLY

The filing date of pending U.S. Application Serial No. 98905117 (SHOWGIRL) precedes applicant's filing date.  See attached referenced application.  If the mark in the referenced application registers, applicant's mark may be refused registration under Trademark Act Section 2(d) because of a likelihood of confusion between the two marks.  *See* 15 U.S.C. §1052(d); 37 C.F.R. §2.83; TMEP §§1208 *et seq.* Therefore, upon receipt of applicant's response to this Office action, action on this application may be suspended pending final disposition of the earlier-filed referenced application.

In response to this Office action, applicant may present arguments in support of registration by addressing the issue of the potential conflict between applicant's mark and the mark in the referenced application.  Applicant's election not to submit arguments at this time in no way limits applicant's right to address this issue later if a refusal under Section 2(d) issues.

TRADEMARK ACT SECTION 2(D) PARTIAL REFUSAL

Registration of the applied-for mark is refused because of a likelihood of confusion with International Classes 9 and 41 the mark in U.S. Registration No. 4800625 (CONFESSIONS OF A SHOWGIRL). Trademark Act Section 2(d), 15 U.S.C. §1052(d); *see* TMEP §§1207.01 *et seq.*  See the attached registration.

Trademark Act Section 2(d) bars registration of an applied-for mark that is so similar to a registered mark that it is likely consumers would be confused, mistaken, or deceived as to the commercial source of the goods and/or services of the parties. *See* 15 U.S.C. §1052(d). Likelihood of confusion is determined on a case-by-case basis by applying the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 1361, 177 USPQ 563, 567 (C.C.P.A. 1973) (called the "*du Pont* factors"). *In re i.am.symbolic, llc*, 866 F.3d 1315, 1322, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017). Any evidence of

3

record related to those factors need be considered; however, "not all of the *DuPont* factors are relevant or of similar weight in every case." *In re Guild Mortg. Co.*, 912 F.3d 1376, 1379, 129 USPQ2d 1160, 1162 (Fed. Cir. 2019) (quoting *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1406, 41 USPQ2d 1531, 1533 (Fed. Cir. 1997)).

Although not all *du Pont* factors may be relevant, there are generally two key considerations in any likelihood of confusion analysis: (1) the similarities between the compared marks and (2) the relatedness of the compared goods and/or services. *See In re i.am.symbolic, llc*, 866 F.3d at 1322, 123 USPQ2d at 1747 (quoting *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1164-65, 64 USPQ2d 1375, 1380 (Fed. Cir. 2002)); *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 1103, 192 USPQ 24, 29 (C.C.P.A. 1976) ("The fundamental inquiry mandated by [Section] 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods [or services] and differences in the marks."); TMEP §1207.01.

### *The Marks are Confusingly Similar*

Marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (citing *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014)), *aff'd per curiam*, 777 F. App'x 516, 2019 BL 343921 (Fed. Cir. 2019); TMEP §1207.01(b).

The marks in this case are confusingly similar because they look alike, sound alike, and convey a similar overall commercial impression. . Applicant's mark is THE LIFE OF A SHOWGIRL and the registration is CONFESSIONS OF A SHOWGIRL, both in standard character form. The marks share terms in common. In fact, marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), *aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); *In re Corning Glass Works*, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); *In re Pellerin Milnor Corp.*, 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

The marks are identical in part since they both consist of the terms OF A SHOWGIRL, so the marks are similar in appearance, and similar in sound somewhat similar. Similarity in sound alone may be sufficient to support a finding that the compared marks are confusingly similar. *In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007) (citing *Krim-Ko Corp. v. Coca-Cola Bottling Co.*, 390 F.2d 728, 732, 156 USPQ 523, 526 (C.C.P.A. 1968)); TMEP §1207.01(b)(iv).

Although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See In re Detroit Athletic Co.*, 903 F.3d 1297, 1305, 128 USPQ2d 1047, 1050 (Fed. Cir. 2018) (citing *In re Dixie Rests.*, 105 F.3d 1405, 1407, 41 USPQ2d 1531, 1533-34 (Fed. Cir. 1997)); TMEP §1207.01(b)(viii), (c)(ii). Greater weight is often given to this dominant feature when determining whether marks are confusingly similar. *See In re Detroit Athletic*

4

*Co.*, 903 F.3d at 1305, 128 USPQ2d at 1050 (citing *In re Dixie Rests.*, 105 F.3d at 1407, 41 USPQ2d at 1533-34). In spite of the additional wording, CONFESSIONS and THE LIFE, their addition is not sufficient to obviate the similarities between the marks or overcome a likelihood of confusion.

Applicant's mark creates a confusingly similar commercial impression with the registered mark because they share the similar terms OF A SHOWGIRL. Marks may be confusingly similar in appearance where similar terms or phrases or similar parts of terms or phrases appear in the compared marks and create a similar overall commercial impression. *See Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689, 690-91 (TTAB 1986), aff'd sub nom. Canadian Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n, 811 F.2d 1490, 1495, 1 USPQ2d 1813, 1817 (Fed. Cir. 1987) (finding COMMCASH and COMMUNICASH confusingly similar); In re Corning Glass Works, 229 USPQ 65, 66 (TTAB 1985) (finding CONFIRM and CONFIRMCELLS confusingly similar); In re Pellerin Milnor Corp., 221 USPQ 558, 560 (TTAB 1983) (finding MILTRON and MILLTRONICS confusingly similar); TMEP §1207.01(b)(ii)-(iii).

While the terms THE LIFE and CONFESSIONS are different, the resulting commercial impression by combining THE LIFE with OF A SHOWGIRL and CONFESSIONS with OF A SHOWGIRL is very similar. In neither case is there the idea of a familiar phrase in colloquial American English, so a consumer is not likely to have a specific reaction to either mark. Instead, the consumer is likely to focus on the dominant noun, the term SHOWGIRL. The shared term contributes more to the commercial impression of the marks. In fact, the proposed mark could be viewed as an extension of the registrant's brand.

With this in mind, the difference between the marks is less significant and does nothing to distinguish the marks for purposes of avoiding confusion. The similarities between the marks make a greater impression upon purchasers. Based on the above, the marks are similar and convey a similar overall commercial impression.

### *The Goods and Services are Closely Related*

The goods and/or services are compared to determine whether they are similar, commercially related, or travel in the same trade channels. *See Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369-71, 101 USPQ2d 1713, 1722-23 (Fed. Cir. 2012); *Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1165, 64 USPQ2d 1375, 1381 (Fed. Cir. 2002); TMEP §§1207.01, 1207.01(a)(vi).

Here, applicant's relevant goods and services are:

International Class 009: (Based on Intent to Use and 44(b)) Musical sound recordings; Downloadable musical sound recordings; Musical video recordings; Cases for mobile phones; Grip holders for mobile phones; Compact disc storage containers; Sunglasses; Downloadable electronic sheet music; Earbud cases; Refrigerator magnets; Turntable slipmats; Audio cassettes featuring music; Audio and video recordings featuring entertainment, music, stories, dramatic performances, and non-dramatic performances; Digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs featuring and promoting entertainment related to films, games, animation and music; Downloadable multimedia files containing artwork, text, audio, video, games, and Internet Web links relating to entertainment, music, stories, dramatic performances, and non-dramatic performances; Pre-recorded vinyl records featuring music; Motion picture films about entertainment, music, stories, dramatic performances, and non-dramatic performances; (Based on Intent to Use) Series of musical sound recordings; Audio recordings featuring music and musical entertainment; Downloadable audio

5

recordings featuring music and musical entertainment; Digital music downloadable from the Internet; Downloadable music files; Downloadable multimedia files containing audio relating to music and musical entertainment; Downloadable multimedia files containing video relating to music and musical entertainment; Video recordings featuring music and musical entertainment; Video recordings featuring entertainment in the nature of stage performances by a musical artist and entertainer; Downloadable video recordings featuring music and musical entertainment; Downloadable musical video recordings; Downloadable ring tones; Electronic publications, namely, books, booklets and book excerpts featuring entertainment, music and musical entertainment recorded on computer media; Downloadable electronic publications in the nature of books, booklets and book excerpts in the field of entertainment, music and musical entertainment; Downloadable electronic publications in the nature of songbooks in the field of music; Downloadable computer application software for mobile electronic devices, namely, software for use in downloading and streaming audio and video recordings featuring music and musical entertainment; Downloadable game software; Downloadable computer graphics software; Mobile phone covers; Protective covers and cases for cell phones, laptops and portable media players; Stands for handheld digital electronic devices, namely, mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, and portable media players; Devices for hands-free use of mobile phones; Earphone accessories, namely, earphone cushions, earphone pads, earphone cases, and earphone extension cords; Earphones and headphones; Loud speakers; Wireless speakers; Sound amplifiers; Camera cases; Spectacle lanyards; Downloadable electronic books in the field of entertainment, music and musical entertainment; Downloadable computer application software for mobile electronic devices, namely, software for accessing information about a musical artist and entertainer; Cases for eyeglasses and sunglasses; Lanyards for holding magnetic identity cards

International Class 041: (Based on Intent to Use and 44(d)) Entertainment services in the nature of live musical performances; Live musical theater performances; Fan clubs; Entertainment services, namely, providing non-downloadable prerecorded music via a website; Providing on-line videos featuring music, not downloadable; Providing on-line newsletters in the field of entertainment, music and musical entertainment; Entertainment services, namely, providing temporary use of non-downloadable computer games; Entertainment services, namely, conducting contests; Sweepstake services; Arranging of contests; Entertainment services, namely, providing online puzzle games; Providing a website featuring non-downloadable audio recordings in the field of entertainment, music and musical entertainment; Providing a website featuring non-downloadable videos in the field of entertainment, music and musical entertainment; Providing a website featuring non-downloadable audio recordings in the field of a musical artist and entertainer; Providing a website featuring non-downloadable videos in the field of a musical artist and entertainer; Providing online non-downloadable videos in the field of music, pre- recorded musical performances, stage performances, public appearances, interviews, news, photographs, and other information and multi-media materials relating to music and musical entertainment; Entertainment services in the nature of a television series in the field of music and the entertainment industry; Entertainment in the nature of theater productions; Theatrical shows provided at performance venues; Entertainment media production services for motion pictures, television and Internet; (Based on Intent to Use) Entertainment, namely, live music concerts; On-line journals, namely, blogs featuring information in the fields of entertainment, music and musical entertainment; Providing online non-downloadable electronic publications in the nature of articles in the field of entertainment, music and musical entertainment; Educational services, namely, providing online instruction in the field of entertainment, music and musical entertainment; Educational services, namely, conducting training in the field of entertainment, music and musical entertainment; Providing online non-downloadable electronic publications in the nature of articles, books, booklets, book excerpts, brochures, guides, magazines and newsletters, multi-media content, and audio and video recordings in the field of entertainment, music and musical entertainment; Educational services,

6

namely, conducting continuing programs, classes, conferences, coaching, lectures, educational meetings, camps, retreats, seminars, educational summits, educational symposiums, training programs, workshops, self-guided classes and self- guided online courses of instruction in the field of entertainment, music and musical entertainment and distribution of course and educational materials in connection therewith; Providing information in the field of music and entertainment; Entertainment information services, namely, providing information and news releases about a musical artist; Providing entertainment news and information specifically in the field of a musical artist and entertainer via a website; Providing on-line courses of instruction in the field of entertainment, music and musical entertainment via a website; Providing online non-downloadable videos in the field of music, pre-recorded musical performances, stage performances, public appearances, interviews, news, photographs, and other information and multi-media materials relating to a musical artist and entertainer; Entertainment services, namely, personal appearances by a musician or entertainer

The services in the registration are:

International Class 041: Entertainment and educational services in the nature of on-line publications, namely, blogs and non-downloadable e-zines in the field of entertainment, education, culture, and sports; Entertainment in the nature of live stage performances in the nature of theatrical productions in the field of music, singing, dancing, comedy and drama; Entertainment services in the nature of ongoing television programs and continuing movie series featuring drama and comedy

The compared goods and/or services need not be identical or even competitive to find a likelihood of confusion. *See On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 1086, 56 USPQ2d 1471, 1475 (Fed. Cir. 2000); *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329, 54 USPQ2d 1894, 1898 (Fed. Cir. 2000); TMEP §1207.01(a)(i). They need only be "related in some manner and/or if the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods and/or services] emanate from the same source." *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1369, 101 USPQ2d 1713, 1722 (Fed. Cir. 2012) (quoting *7-Eleven Inc. v. Wechsler*, 83 USPQ2d 1715, 1724 (TTAB 2007)); TMEP §1207.01(a)(i).

Turning to the relatedness of the goods and services, an analysis of the parties' goods and services, and their trade channels reveals that both marks are used in connection with general entertainment services that involve musical and/or theater performances. Both marks refer to music performances and theater productions. Neither the registration nor the application contain any limitations on these entertainment services.

As to the relatedness of applicant's Class 9 goods and the registrant's Class 41 services, musical artists can be the source of both live musical performances and recordings, as evidence by the websites of various musicians. (See attachments as evidence). They commonly promote both their musical performances and their recordings on their websites, as shown by the attached excerpts from the following websites. These excerpts are attached as a representative sample:

Barry Manilow | The official homepage of Barry Manilow, the showman of our generation See attachment.
Official Website of Tim McGraw See attachment.
Young Miko | Official Site See attachment.

In fact, there is an inherent connection between the recordings in class 9 and the performances recorded on them, which is evidence of relatedness as well.

Where the goods and/or services of an applicant and registrant are virtually identical, or closely related, the degree of similarity between the marks required to support a finding that confusion is likely declines. *See Cai v. Diamond Hong, Inc.*, 901 F.3d 1367, 1373, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018) (quoting *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012)); TMEP §1207.01(b). Here, the marks are more similar than dissimilar in appearance and sound, and sufficiently similar in commercial impression to lead consumers to assume a connection between the parties.

As such, in the eyes of the purchasing public, the trademarks will be confusingly similar since it can appear that the proposed mark identifies a line of musical entertainment goods services in registrant's already existing line of musical entertainment services. Thus, purchasers familiar with registrant's mark CONFESSIONS OF A SHOWGIRL entertainment performances, upon encountering applicant's musical recordings and performances offered under the very similar mark THE LIFE OF A SHOWGIRL, are likely to believe that registrant is authorizing applicant's use of the mark, and assume that applicant's goods and services are therefore licensed by or in some way associated with registrant. A likelihood of confusion exists because the marks create a confusingly similar commercial impression and the goods and services at issue are closely related.

*Conclusion*

Consumers may be confused into believing that the products come from the same source, or that the parties are affiliated. The issue is not likelihood of confusion between particular goods and services, but likelihood of confusion as to the source or sponsorship of those goods and services. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1316, 65 USPQ2d 1201, 1205 (Fed. Cir. 2003); *In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1689 (Fed. Cir. 1993); TMEP §1207.01.

The overriding concern is not only to prevent buyer confusion as to the source of the goods and/or services, but to protect the registrant from adverse commercial impact due to use of a similar mark by a newcomer. *See In re Shell Oil Co.*, 992 F.2d 1204, 1208, 26 USPQ2d 1687, 1690 (Fed. Cir. 1993). Therefore, any doubt regarding a likelihood of confusion determination is resolved in favor of the registrant. TMEP §1207.01(d)(i); *see Hewlett-Packard Co. v. Packard Press, Inc.,* 281 F.3d 1261, 1265, 62 USPQ2d 1001, 1003 (Fed. Cir. 2002); *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 464-65, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988).

Having conformed to both steps in the Section 2(d) analysis, the examining attorney herein makes the refusal to register because Applicant's mark so resembles the mark in U.S. Registration No. 4800625, as to be likely to cause confusion when used on or in connection with the goods and services identified in the application.

Although applicant's mark has been refused registration, applicant may respond to the refusal(s) by submitting evidence and arguments in support of registration. If applicant responds to the refusal(s), applicant must also respond to the requirement(s) set forth below.

FILING BASIS CLARIFICATION

For applications filed under Trademark Act Section 44(d) or 44(e), regardless of whether use in commerce is also asserted in the application under Section 1(a), the following statement must be provided, verified with an affidavit or signed declaration under 37 C.F.R. §2.20: "**Applicant has a**

8

**bona fide intention to use the mark in commerce.**" 37 C.F.R. §2.34(a)(3)(i), (a)(4)(ii); TMEP §1008; s*ee* 37 C.F.R. §2.193(e)(1); *In re Cyber-Blitz Trading Servs.*, 47 USPQ2d 1638 (Comm'r Pats. 1998). If this statement is not filed with the initial application, the verified statement must also allege that the applicant had a bona fide intention to use the mark in commerce as of the application filing date. 37 C.F.R. §2.34(a)(3)(i), (a)(4)(ii); TMEP §1008.

IDENTIFICATION REQUIREMENT

Some of the wording in the identification of goods and/or services is indefinite and/or overly broad; that is, it is not clear what the nature of the goods and/or services is and/or the identification could include goods and/or services in more than one international class. The identification of goods and/or services must be specific, definite, clear, accurate, and concise.  See 15 U.S.C. §§1051(a)(2), 1051(b)(2), 1053, 1126(d)-(e), 1141f; 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.01(b)-(c).

Therefore, applicant must either (1) delete the unacceptable wording or (2) amend it to definite wording that specifies the nature of the goods and/or services in greater detail and that is within the scope of the original identification.  See 37 C.F.R. §2.32(a)(6); TMEP §§1402.01, 1402.03.

Applicant is in the best position to know their goods and/or services, and the ID Manual is a good resource for finding an appropriate amendment.  Note that the identification must not be in narrative form, but rather, an understandable description of the goods and services, which is done by using the common commercial name for the goods [and/or services]." In re Gulf Coast Nutritionals, Inc., 106 USPQ2d 1243, 1247 (TTAB 2013) (citing In re Sones, 590 F.3d 1282, 1289, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009)). If there is no common, ordinary name for the goods and/or services, applicant should describe the goods and/or services using wording that would be generally understood by the average person. *See Schenley Indus., Inc. v. Battistoni*, 112 USPQ 485, 486 (Comm'r Pats. 1957); *Cal. Spray-Chem. Corp. v. Osmose Wood Pres. Co. of Am.,* 102 USPQ 321, 322 (Comm'r Pats. 1954); TMEP §1402.01.

Please follow along the wording in bold and underlined, which requires clarification, including explanations, stricken wording, and suggested amendments in parentheses.

*International Class 009*: (Based on Intent to Use and 44(b)) Musical sound recordings; Downloadable musical sound recordings; Musical video recordings; Cases for mobile phones; Grip holders for mobile phones; Compact disc storage containers; Sunglasses; Downloadable electronic sheet music; Earbud cases; Refrigerator magnets; Turntable slipmats; Audio cassettes featuring music; Audio and video recordings **featuring entertainment**, music, stories, dramatic performances, and non-dramatic performances; Digital media, namely, pre-recorded DVDs, downloadable audio and video recordings, and CDs featuring and promoting entertainment related to films, games, animation and music; Downloadable multimedia files containing artwork, text, audio, video, games, and Internet Web links relating **to entertainment,** music, stories, dramatic performances, and non-dramatic performances; Pre-recorded vinyl records featuring music; Motion picture films about **entertainment**, music, stories, dramatic performances, and non-dramatic performances; (Based on Intent to Use) Series of musical sound recordings; Audio recordings featuring music and musical entertainment; Downloadable audio recordings featuring music and musical entertainment; Digital music downloadable from the Internet; Downloadable music files; Downloadable multimedia files containing audio relating to music and musical entertainment; Downloadable multimedia files containing video relating to music and musical entertainment; Video recordings featuring music and musical entertainment; Video recordings featuring entertainment in the nature of stage performances by a musical artist and entertainer; Downloadable

9

video recordings featuring music and musical entertainment; Downloadable musical video recordings; Downloadable ring tones; Electronic publications, namely, books, booklets and book excerpts **featuring entertainment**, music and musical entertainment recorded on computer media; Downloadable electronic publications in the nature of books, booklets and book excerpts **in the field of entertainment**, music and musical entertainment; Downloadable electronic publications in the nature of songbooks in the field of music; Downloadable computer application software for mobile electronic devices, namely, software for use in downloading and streaming audio and video recordings featuring music and musical entertainment; Downloadable game software; Downloadable computer graphics software; Mobile phone covers; Protective covers and cases for cell phones, laptops and portable media players; Stands for handheld digital electronic devices, namely, mobile telephones, handheld computers, tablet computers, electronic book readers, portable computers, and portable media players; Devices for hands-free use of mobile phones; Earphone accessories, namely, earphone cushions, earphone pads, earphone cases, and earphone extension cords; Earphones and headphones; Loud speakers; Wireless speakers; Sound amplifiers; Camera cases; Spectacle lanyards; Downloadable electronic books **in the field of entertainment,** music and musical entertainment; Downloadable computer application software for mobile electronic devices, namely, software for accessing information about a musical artist and entertainer; Cases for eyeglasses and sunglasses; Lanyards for holding magnetic identity cards

The subject matter "entertainment," shown above in bold and underlined, is unacceptable as indefinite. The particular subject matter requires further specification in order to provide public notice and enable informed judgments concerning likelihood of confusion under 15 U.S.C §1052(d). Generally, the identification should include a particular subject matter.

*International Class 016*: (Based on Intent to Use and 44(b)) Blank writing journals; Stickers; Art prints; Lithographs; Printed posters; Printed calendars; Removable tattoo transfers; Temporary tattoo transfers; Printed greeting cards; Printed sheet music; Printed coloring books; Printed publications, namely, articles, books, booklets, book excerpts, brochures, guides, magazines and pamphlets **in the field of entertainment,** music and musical entertainment; Writing instruments; Bookmarks; Lanyards for name badge holders; (Based on Intent to Use) Printed notebooks; Note paper; Writing paper; Writing paper pads; Stationery; Decals; Decorative decals for use as home decor; Lithographic prints; Photographic prints; Art paper; Artists' brushes; Paint brushes; Painters' brushes; Artists' pens; Crayons; Pencils; Erasers; Arts and craft paint kits; Painting palettes; Drawing boards; Pen and pencil holders; Pen and pencil cases; Ink stamps; Rubber stamps; Stamp inks; Stamp pads; Stencils; Pens; Pouches for writing instruments; Pen and pencil cases and boxes; Desktop organizers; Boxes of paper or cardboard; Stationery boxes; Coasters of paper; Gift bags; Disposable napkins; Printed song books; Colored pencils; Pencils for painting and drawing; Chalks; Writing implements; Stencil cases; Paper gift tags; Envelopes; Party ornaments of paper

The subject matter "entertainment," shown above in bold and underlined, is unacceptable as indefinite. The particular subject matter requires further specification in order to provide public notice and enable informed judgments concerning likelihood of confusion under 15 U.S.C §1052(d). Identifications for publications must indicate the specific type (e.g., magazines, newsletters, periodicals, etc.) and the literary subject matter of the publications. Generally, the identification should include a particular subject matter, e.g., biology or history. However, "general human interest" and "general interest" are acceptable subject matters if they are recognized as terms of art in particular industries, such as the magazine and newsletter industries.

*International Class 041*: (Based on Intent to Use and 44(d)) Entertainment services in the nature of live

10

musical performances; Live musical theater performances; Fan clubs; Entertainment services, namely, providing non-downloadable prerecorded music via a website; Providing on-line videos featuring music, not downloadable; Providing on-line newsletters **in the field of entertainment,** music and musical entertainment; Entertainment services, namely, providing temporary use of non-downloadable computer games; Entertainment services, namely, conducting contests; Sweepstake services; Arranging of contests; Entertainment services, namely, providing online puzzle games; Providing a website featuring non-downloadable audio recordings **in the field of entertainment,** music and musical entertainment; Providing a website featuring non-downloadable videos **in the field of entertainment**, music and musical entertainment; Providing a website featuring non-downloadable audio recordings in the field of a musical artist and entertainer; Providing a website featuring non-downloadable videos in the field of a musical artist and entertainer; Providing online non-downloadable videos in the field of music, pre- recorded musical performances, stage performances, public appearances, interviews, news, photographs, and other information and multi-media materials relating to music and musical entertainment; Entertainment services in the nature of a television series in the field of music and the entertainment industry; Entertainment in the nature of theater productions; Theatrical shows provided at performance venues; Entertainment media production services for motion pictures, television and Internet; (Based on Intent to Use) Entertainment, namely, live music concerts; On-line journals, namely, blogs featuring information in the fields of entertainment, music and musical entertainment; Providing online non-downloadable electronic publications in the nature of articles **in the field of entertainment,** music and musical entertainment; Educational services, namely, providing online instruction **in the field of entertainment**, music and musical entertainment; Educational services, namely, conducting training in **the field of entertainment,** music and musical entertainment; Providing online non-downloadable electronic publications in the nature of articles, books, booklets, book excerpts, brochures, guides, magazines and newsletters, **multi-media content,** and audio and video recordings **in the field of entertainment**, music and musical entertainment; Educational services, namely, conducting continuing programs, classes, conferences, coaching, lectures, educational meetings, camps, retreats, seminars, educational summits, educational symposiums, training programs, workshops, self-guided classes and self- guided online courses of instruction in **the field of entertainment**, music and musical entertainment and distribution of course and educational materials in connection therewith; Providing information in the field of music and **entertainmen**t; Entertainment information services, namely, providing information and news releases about a musical artist; Providing entertainment news and information specifically in the field of a musical artist and entertainer via a website; Providing on-line courses of instruction **in the field of entertainment**, music and musical entertainment via a website; **Providing online non-downloadable videos in the field of music, pre-recorded musical performances, stage performances, public appearances, interviews, news, photographs, and other information and multi-media materials relating to a musical artist and entertainer;** Entertainment services, namely, personal appearances by a musician or entertainer

The subject matter "entertainment," shown above in bold and underlined, is unacceptable as indefinite. The particular subject matter requires further specification in order to provide public notice and enable informed judgments concerning likelihood of confusion under 15 U.S.C §1052(d). Generally, the identification should include a particular subject matter.

As to identifications for publications must indicate the specific type (e.g., magazines, newsletters, periodicals, etc.) and the literary subject matter of the publications. Generally, the identification should include a particular subject matter, e.g., biology or history. However, "general human interest" and "general interest" are acceptable subject matters if they are recognized as terms of art in particular industries, such as the magazine and newsletter industries.

11

Additionally, note that identifications for educational services, the subject matter or field must be specified with particularity.

As to the reference to "multi-media content," the wording providing multi-media content is considered broad. The nature of the content must be specified with particularity. Also, for proper classification in class 41, the multi-media content must be non-downloadable.

Finally, the identification "*Providing online non-downloadable videos in the field of music, pre-recorded musical performances, stage performances, public appearances, interviews, news, photographs, and other information and multi-media materials relating to music and musical entertainment*," requires clarification because it is broad. On the one hand, applicant identifies non-downloadable videos. However, the reference to "other information" is not sufficiently definite in terms of specifying a particular subject matter of the videos. Generally, the identification should include a particular subject matter. In addition, the reference to "multimedia materials" is overly broad. In the identification of goods, applicant must use the common commercial or generic names for the goods, be as complete and specific as possible, and avoid the use of indefinite words and phrases. TMEP §1402.03(a); *see* 37 C.F.R. §2.32(a)(6). If applicant uses indefinite words such as "apparatus," "components," "devices," "materials," or "parts," such wording must be followed by "namely," and a list of each specific product identified by its common commercial or generic name. *See* TMEP §§1401.05(d), 1402.03(a). Here, these could include multimedia files, audio material, video material. The type of multimedia material must be specified as to its common commercial name and the subject matter clearly identified. Note these multimedia materials could be in class 9 or 41.

*General Guidance for Identification Amendments*:

Applicant's goods and/or services may be clarified or limited, but may not be expanded beyond those originally itemized in the application or as acceptably amended. See 37 C.F.R. §2.71(a); TMEP §1402.06.

The USPTO has the discretion to determine the degree of particularity needed to clearly identify goods and/or services covered by a mark. *In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A*, 109 USPQ2d 1593, 1597 (TTAB 2014) (citing *In re Omega SA*, 494 F.3d 1362, 1365, 83 USPQ2d 1541, 1543-44 (Fed. Cir. 2007)). Accordingly, the USPTO requires the description of goods and/or services in a U.S. application to be specific, definite, clear, accurate, and concise. TMEP §1402.01; *see In re Fiat Grp. Mktg. & Corp. Commc'ns S.p.A*, 109 USPQ2d at 1597-98; *Cal. Spray-Chem. Corp. v. Osmose Wood Pres. Co. of Am.*, 102 USPQ 321, 322 (Comm'r Pats. 1954).

"The purpose of the identification of goods [and/or services] is to provide the general population, including consumers and members of the relevant industry, with an understandable description of the goods and services, which is done by using the common commercial name for the goods [and/or services]." *In re Gulf Coast Nutritionals, Inc.*, 106 USPQ2d 1243, 1247 (TTAB 2013) (citing *In re Sones*, 590 F.3d 1282, 1289, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009)). If there is no common, ordinary name for the goods and/or services, applicant should describe the goods and/or services using wording that would be generally understood by the average person. *See Schenley Indus., Inc. v. Battistoni*, 112 USPQ 485, 486 (Comm'r Pats. 1957); *Cal. Spray-Chem. Corp. v. Osmose Wood Pres. Co. of Am.*, 102 USPQ 321, 322 (Comm'r Pats. 1954); TMEP §1402.01.

An in depth knowledge of the relevant field should not be necessary for understanding a description of the goods and/or services. TMEP §1402.01. "[T]echnical, high-sounding verbiage" should be avoided.

*Cal. Spray-Chem. Corp. v. Osmose Wood Pres. Co. of Am.*, 102 USPQ at 322.

The USPTO follows the *International Classification of Goods and Services for the Purposes of the Registration of Marks* (also called the "Nice Classification" system), established by the World Intellectual Property Organization, to organize and classify goods and services for the purpose of registering marks. Nice Classification has 45 numbered classes with class headings that describe in broad terms the types of goods and services in each class. *See* 37 C.F.R. §2.85(a); TMEP §§1401.02, 1401.02(a).

An applicant must adopt the appropriate international classification number for the goods and/or services identified in the application. "Proper classification allows for administrative recordkeeping, enables accurate and efficient public searches of USPTO records, and facilitates examination of applications filed with the USPTO by aligning fees with costs." *In re Carlton Cellars, LLC*, 2020 USPQ2d 10150, at \*2 (TTAB 2020).

For assistance with identifying and classifying goods and services in trademark applications, please see the USPTO's online searchable *U.S. Acceptable Identification of Goods and Services Manual*. *See* TMEP §1402.04. For guidance on searching the ID Manual, see "Searching the Trademark ID Manual" located under "Guides, Manuals, and Resources" in the Trademark portion of USPTO.gov, linked here.

**How to respond.** File a **response form to this nonfinal Office action** or file a **request form for an extension of time to file a response**.

/Giselle Agosto/
Giselle Agosto Hincapie
Examining Attorney Advisor
Trademarks - Law Office 102
(571) 272-5868
Giselle.Agosto@USPTO.GOV

## RESPONSE GUIDANCE

- **Missing the deadline for responding to this letter will cause the application to abandon.** A response or extension request must be received by the USPTO before 11:59 p.m. **Eastern Time** of the last day of the response deadline. Trademark Electronic Application System (TEAS) system availability could affect an applicant's ability to timely respond. For help resolving technical issues with TEAS, email TEAS@uspto.gov.

- **Responses signed by an unauthorized party** are not accepted and can **cause the application to abandon.** If applicant does not have an attorney, the response must be signed by the individual applicant, all joint applicants, or someone with legal authority to bind a juristic applicant. If

13

applicant has an attorney, the response must be signed by the attorney.

- If needed, **find contact information for the supervisor** of the office or unit listed in the signature block.

**98905117**

# SHOWGIRL

| | |
|---|---|
| **Word Mark** | SHOWGIRL |
| **Goods/Services** | IC 003 US 001 004 006 050 051 052<br>Fragrances; Perfume; Eau de perfume |
| **Register** | PRINCIPAL |
| **Serial Number** | 98905117 |
| **Filing Date** | 2024-12-16T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1b |
| **Publication Date** | 2025-08-19 |
| **Owner** | (LAST LISTED OWNER) Harlem Brands, Inc. (CORPORATION; Delaware, USA); 2214 8th Avenue, Suite 205, New York, New York 10026, UNITED STATES |
| **Type of Mark** | TRADEMARK |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Live Dead Indicator** | LIVE |
| **Status** | NOTICE OF ALLOWANCE - ISSUED |
| **Attorney of Record** | Stephen P. McNamara |

**Print:** November 5, 2025 1:53 PM

15

**4800625**

# Confessions of a Showgirl

| | |
|---|---|
| **Word Mark** | CONFESSIONS OF A SHOWGIRL |
| **Goods/Services** | (CANCELLED) IC 016 US 002 005 022 023 029 037 038 050 [ [ Printed columns in the field of entertainment, education, culture, and sports ] ] FIRST USE: 2014-07-03. FIRST USE IN COMMERCE: 2014-07-03. |
| | IC 041 US 100 101 107 Entertainment and educational services in the nature of on-line publications, namely, blogs and non-downloadable e-zines in the field of entertainment, education, culture, and sports; Entertainment in the nature of live stage performances in the nature of theatrical productions in the field of music, singing, dancing, comedy and drama; Entertainment services in the nature of ongoing television programs and continuing movie series featuring drama and comedy FIRST USE: 2014-07-02. FIRST USE IN COMMERCE: 2014-07-02. |
| **Register** | PRINCIPAL |
| **Serial Number** | 86269349 |
| **Filing Date** | 2014-05-01T00:00:00 |
| **Original Filing Basis** | 1b |
| **Current Filing Basis** | 1a |
| **Publication Date** | 2014-10-28 |
| **Registration Number** | 4800625 |
| **Date Registered** | 2015-08-25 |
| **Owner** | (REGISTRANT) Flagg, Maren (INDIVIDUAL; USA); 907 Westwood Blvd., Suite 442, Los Angeles, California 90024, UNITED STATES |

16

**Type of Mark**

- TRADEMARK
- SERVICE MARK

**Mark Drawing Code**        (4) STANDARD CHARACTER MARK

**Live Dead Indicator**        LIVE

**Status**                PARTIAL SECTION 8 & 15 ACCEPTED AND ACKNOWLEDGED

**Attorney of Record**        Christopher Darrow

**Print:** November 5, 2025 1:53 PM

17





**BARRY MANILOW AND MARLO THOMAS NAMED 2026 RECIPIENTS OF AAF PRESIDENT'S AWARD FOR SPECIAL LIFETIME CONTRIBUTIONS TO ADVERTSING**

OCT 6, 2025

**A VERY BARRY CHRISTMAS RETURNS FOR FIFTH ANNIVERSARY SHOWS AT THE LEGENDARY WESTGATE LAS VEGAS RESORT & CASINO**

SEP 25, 2025

**MUSIC ICON BARRY MANILOW ANNOUNCES FAREWELL PERFORMANCES IN NINE US CITIES**

SEP 23, 2025

VIEW MORE ›

# MANILOW TV

Experience an exciting treasure trove of concerts, one time only benefits, award evenings, private shows, rehearsals and many more.

GO TO MANILOW TV ›







https://barrymanilow.com/music_new/    at 08:13:21, 11/05/2025



  



**NIGHT SONGS II**

FEBRUARY 14, 2020

LISTEN NOW  >



**THIS IS MY TOWN: SONGS OF NEW YORK**

APRIL 22, 2017

LISTEN NOW  >



**MY DREAM DUETS**

OCTOBER 27, 2014

LISTEN NOW  >



**NIGHT SONGS**

MARCH 25, 2014

LISTEN NOW  >



**THE CLASSIC CHRISTMAS ALBUM**

OCTOBER 2, 2012

LISTEN NOW  >



**LIVE IN LONDON**

APRIL 14,  2012

LISTEN NOW  >

24



**15 MINUTES**

JUNE 14, 2011

LISTEN NOW  >



**DUETS**

MAY 3, 2011

LISTEN NOW  >



**THE ESSENTIAL BARRY MANILOW 3.0**

APRIL 26, 2005

LISTEN NOW  >



**THE GREATEST LOVE SONGS OF ALL TIME**





**THE GREATEST SONGS OF THE EIGHTIES**

JANUARY 26, 2010

LISTEN NOW  >

**BEAUTIFUL BALLADS AND LOVE SONGS**

JANUARY 15, 2008

LISTEN NOW  >

NOVEMBER 24, 2008

LISTEN NOW  >



**IN THE SWING OF CHRISTMAS**

OCTOBER 01, 2007

LISTEN NOW  >



**THE GREATEST SONGS OF THE SEVENTIES**

NOVEMBER 18, 2007

LISTEN NOW  >



**THE GREATEST SONGS OF THE SIXTIES**

OCTOBER 31, 2006

LISTEN NOW  >









**GREATEST SONGS OF THE FIFTIES**

JANUARY 31, 2006

LISTEN NOW >



**PLAYLIST: THE VERY BEST OF BARRY MANILOW**

OCTOBER 12, 2010

LISTEN NOW >



**THE ESSENTIAL BARRY MANILOW**

APRIL 26, 2005

LISTEN NOW >



**SCORES: SONGS FROM COPACABANA AND HARMONY**

SEPTEMBER 28, 2004

LISTEN NOW >



**A CHRISTMAS GIFT OF LOVE**

NOVEMBER 12, 2002

LISTEN NOW >



**ULTIMATE MANILOW**

FEBRUARY 5, 2002

LISTEN NOW >

27




**HERE AT THE MAYFLOWER**

NOVEMBER 13, 2001

LISTEN NOW ›



**MANILOW SINGS SINATRA**

NOVEMBER 10, 1998

LISTEN NOW ›



**MANILOW TALKS**

JANUARY 11, 1996

LISTEN NOW ›





**SINGING WITH THE BIG BANDS**

OCTOBER 11, 1994



COPACABANA CAST ALBUM

**SUMMER OF '78**

NOVEMBER 19, 1996

LISTEN NOW  >

LISTEN NOW  >

COPACABANA CAST ALBUM

NOVEMBER 23, 1994

LISTEN NOW  >



THE COMPLETE COLLECTION AND THEN SOME...

NOVEMBER 10, 1992

LISTEN NOW  >



**SHOWSTOPPERS**

NOVEMBER 24, 1991

LISTEN NOW  >

**BECAUSE IT'S CHRISTMAS**

NOVEMBER 25, 1990

LISTEN NOW  >







29





**GREATEST HITS VOL. III**

JANUARY 11, 1989

LISTEN NOW  ›

**GREATEST HITS VOL. II**

APRIL 22, 1983

LISTEN NOW  ›

**LIVE ON BROADWAY**

JANUARY 5, 1990

LISTEN NOW  ›







**GREATEST HITS VOL.I**

JANUARY 11, 1989

LISTEN NOW  ›

**SWING STREET**

JANUARY 11, 1987

LISTEN NOW  ›

**GRANDES EXITOS EN ESPANOL**

MARCH 8, 1986

LISTEN NOW  ›

30



**MANILOW**

JANUARY 11, 1985

LISTEN NOW  ›



**PARADISE CAFE**

NOVEMBER 15, 1984

LISTEN NOW  ›



**HERE COMES THE NIGHT**

NOVEMBER 1, 1982

LISTEN NOW  ›



**IF I SHOULD LOVE AGAIN**

JANUARY 11, 1981

LISTEN NOW  ›



**BARRY**

APRIL 22, 1980

LISTEN NOW  ›



**ONE VOICE**

SEPTEMBER 25, 1979

31

SEPTEMBER 25, 1975

LISTEN NOW >



**EVEN NOW**

FEBRUARY 1, 1978

LISTEN NOW >



**BARRY MANILOW LIVE**

MAY 1, 1977

LISTEN NOW >



**THIS ONE'S FOR YOU**

AUGUST 1, 1976

LISTEN NOW >









**TRYIN' TO GET THE FEELING**

OCTOBER 1, 1975

LISTEN NOW >



**BARRY MANILOW II**

OCTOBER 1, 1974

LISTEN NOW >



**BARRY MANILOW**

JULY 7, 1973

LISTEN NOW >



35



35











https://youngmikostore.com/?utm_source=mira&utm_medium=referral                                                                                          at 08:16:46, 11/05/2025

Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pre-Save "Do Not Disturb" HERE    Pr

Archive







Do Not Disturb CD

$13.99

Pre-Order

Help & Support

Terms

Privacy

SIGN UP FOR UPDATES FROM YOUNG MIKO



42

Privacy

Do not sell my personal information

Cookie Choices

Enter your email

United States

POSTAL CODE

**Join a list**

☑ **Young Miko (US)**

☐ Capitol Records

**SIGN UP NOW**

Emails will be sent by or on behalf of umg recordings services, inc. 2220 colorado avenue, santa monica, ca 90404 (310) 865-4000. You may withdraw your consent at any time. See privacy policy at http://privacy.umusic.com.

If you are using a screen reader and are having problems using this website, please call 866-682-4413 for assistance.

Sign Up





45



### United States Patent and Trademark Office (USPTO)

## USPTO OFFICIAL NOTICE

### Office Action (Official Letter) has issued
on November 5, 2025 for
### U.S. Trademark Application Serial No. 99331566

A USPTO examining attorney has reviewed your trademark application and issued an Office action.  You must respond to this Office action to avoid your application abandoning.  Follow the steps below.

**(1)  Read the Office action**.  This email is NOT the Office action.

**(2)  Respond to the Office action by the deadline** using the Trademark Electronic Application System (TEAS).  Your response, or extension request, must be received by the USPTO on or before 11:59 p.m. **Eastern Time** of the last day of the response deadline.  Otherwise, your application will be abandoned.  See the Office action itself regarding how to respond.

**(3)  Direct general questions** about using USPTO electronic forms, the USPTO website, the application process, the status of your application, and whether there are outstanding deadlines to the Trademark Assistance Center (TAC).

After reading the Office action, address any question(s) regarding the specific content to the USPTO examining attorney identified in the Office action.

## GENERAL GUIDANCE

- **Check the status** of your application periodically in the Trademark Status & Document Retrieval (TSDR) database to avoid missing critical deadlines.

- **Update your correspondence email address** to ensure you receive important USPTO notices about your application.

- **Beware of trademark-related scams**.  Protect yourself from people and companies that may try to take financial advantage of you.  Private companies may call you and pretend to be the USPTO or may send you communications that resemble official USPTO documents to trick you.  We will never request your credit card number or social security number over the phone.  Verify the correspondence originated from us by using your serial number in our database, TSDR, to confirm that it appears under the "Documents" tab, or contact the Trademark Assistance Center.

- **Hiring a U.S.-licensed attorney.**  If you do not have an attorney and are not required to

have one under the trademark rules, we encourage you to hire a U.S.-licensed attorney specializing in trademark law to help guide you through the registration process.  The USPTO examining attorney is not your attorney and cannot give you legal advice, but rather works for and represents the USPTO in trademark matters.