UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MAREN FLAGG,

                Plaintiff,

       v.

TAYLOR SWIFT, et al.,

                Defendants.

Case No. 2:26-cv-03354-SRM-BFM

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [ECF NO. 16]**

## I.    BACKGROUND

On March 30, 2026, Plaintiff Maren Flagg ("Plaintiff") filed a Complaint against Defendants Taylor Swift ("Swift"), TAS Rights Management, LLC ("TAS"), UMG Recordings, Inc. ("UMG"), and Bravado International Group Merchandising Services Inc. ("Bravado") (collectively, "Defendants"), alleging trademark infringement and related claims under the Lanham Act, 15 U.S.C. § 1051 *et seq*. and California state law.

Plaintiff filed a Motion for a Preliminary Injunction seeking to enjoin Defendants from using THE LIFE OF A SHOWGIRL as a trademark or source-identifying designation in connection with goods and services within the classes identified in TAS's U.S. Trademark Application Serial No. 99331566 during the pendency of this action. The

-1-

Motion is supported by the Declarations of Maren Flagg and Jaymie Parkkinen with Exhibits 1 through 38.

Plaintiff owns U.S. Trademark Registration No. 4800625 for CONFESSIONS OF A SHOWGIRL, registered in 2015 for entertainment services and incontestable since 2021. Parkkinen Decl., Ex. 1. She has performed under that mark continuously since 2014. Plaintiff Decl. ¶ 3. In August 2025, Defendants adopted THE LIFE OF A SHOWGIRL and deployed it across a coordinated commercial program, including a branded retail storefront, individual product names, garment labels, and national brand collaborations. Compl. ¶¶ 42-47; Parkkinen Decl., Exs. 5-9. Defendants filed U.S. Trademark Application Serial No. 99331566, seeking registration of THE LIFE OF A SHOWGIRL across fourteen international classes, including musical recordings, live performances, and consumer merchandise. Parkkinen Decl., Ex. 2. On November 5, 2025, the United States Patent and Trademark Office ("USPTO") refused registration of Defendants' mark on the ground that it is confusingly similar to Plaintiff's mark, citing Plaintiff's registration by name and number. Parkkinen Decl., Ex. 3 at 3-5. Defendants did not cure the defect and continued to expand their commercial program.

**II.     LEGAL STANDARD**

A plaintiff seeking a preliminary injunction must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction serves the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, a plaintiff may obtain relief by raising "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff[.]" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

**III.    DISCUSSION**

**A.     Likelihood of Success on the Merits**

Plaintiff is the owner of an incontestable federal trademark registration for CONFESSIONS OF A SHOWGIRL. 15 U.S.C. § 1115(b); Parkkinen Decl., Ex. 1. To

establish infringement, Plaintiff must show that Defendants are using a confusingly similar mark. *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). As a threshold matter, the Court finds that the *Rogers v. Grimaldi* test, 875 F.2d 994 (2d Cir. 1989), does not apply. Under *Jack Daniel's Properties, Inc. v. VIP Products LLC*, 599 U.S. 140, 153, 155 (2023), *Rogers* does not apply when a defendant uses a mark as a designation of source. Defendants filed a trademark application seeking registration of THE LIFE OF A SHOWGIRL across fourteen international classes, including musical recordings and live entertainment services. Parkkinen Decl., Ex. 2. A trademark application is straightforward evidence that the applicant uses the designation to identify and distinguish its products. *Punchbowl, Inc. v. AJ Press LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024). Thus, Defendants' own trademark application, their product labeling, and their dedicated retail storefront establish that THE LIFE OF A SHOWGIRL is being used as a source identifier. Parkkinen Decl., Exs. 2, 5-9.

Turning to the *Sleekcraft* factors, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), the Court finds that the factors weigh in Plaintiff's favor. The marks share the same syntactic structure and resolve on the same dominant phrase, "OF A SHOWGIRL." The USPTO independently found the marks "similar in appearance, and similar in sound" with a "very similar" commercial impression. Parkkinen Decl., Ex. 3 at 4-5. The parties' goods and services overlap directly—Plaintiff's registration covers entertainment services, and Defendants' trademark application seeks registration in the same class. Parkkinen Decl., Exs. 1-3, 5. Defendants' commercial strength as the junior user is overwhelming, which in a reverse confusion case supports a finding of likelihood of confusion. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162-63 (9th Cir. 2021). Evidence of actual confusion, while limited at this preliminary stage, includes a consumer in the relevant market reporting personal confusion and consumers using Plaintiff's mark to refer to Defendants' products across multiple platforms. Parkkinen Decl., Exs. 16-33. Defendants had constructive notice of Plaintiff's mark under 15 U.S.C. § 1072, and their own clearance infrastructure—which manages more than 170

registrations—makes actual knowledge a near certainty. Parkkinen Decl., Ex. 10. Despite the USPTO's refusal, Defendants continued to expand their commercial program. The remaining factors—marketing channels, consumer care, and likelihood of expansion—also favor Plaintiff.

The Court finds that Plaintiff has demonstrated a likelihood of success on the merits.

### B.    Likelihood of Irreparable Harm

In trademark cases, a showing of likelihood of confusion establishes a presumption of irreparable harm. 15 U.S.C. § 1116(a); *InSinKerator, Ltd. Liab. Co. v. Joneca Co., Ltd. Liab. Co.*, 163 F.4th 608, 622 (9th Cir. 2025). Having found a likelihood of confusion, the presumption applies. Defendants have not rebutted it. Plaintiff did not unreasonably delay in seeking relief. She monitored the USPTO examination process and filed suit after Defendants declined to conform their conduct to the Office's determination. Plaintiff Decl. ¶¶ 7, 9.  The injury is not purely pecuniary. Plaintiff's mark is being progressively displaced in the digital channels through which she reaches her audience—eight of ten Google autocomplete suggestions for Plaintiff's exact mark direct consumers toward Defendants, and nine of ten YouTube results do the same. Parkkinen Decl., Exs. 34-36. No damages award can recalibrate a search algorithm or restore a mark's source-identifying capacity once consumers have come to associate it with someone else. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) ("Evidence of loss of control over business reputation . . . can constitute irreparable harm." (cleaned up)). Defendants' use of THE LIFE OF A SHOWGIRL as a trademark is ongoing and expanding. Parkkinen Decl., Exs. 5-6, 9.

The Court finds that Plaintiff is likely to suffer irreparable harm absent preliminary relief.

### C.    Balance of Equities

CONFESSIONS OF A SHOWGIRL is Plaintiff's sole trademark and the foundation of her professional identity for more than a decade. Plaintiff Decl. ¶¶ 3-5. She

does not have a portfolio of alternative brands or corporate resources to counteract the harm. By contrast, THE LIFE OF A SHOWGIRL is one designation among more than 170 in Defendants' portfolio. Parkkinen Decl., Ex. 10. The injunction would not foreclose Defendants from selling merchandise under other designations or affect any of Defendants' other trademarks or creative works. *See Sajahtera, Inc. v. Kitross Apparel L.A., LLC*, 2024 WL 3086551, 2024 U.S. Dist. LEXIS 113163, at *23 (C.D. Cal. June 10, 2024). Moreover, the burden Defendants would bear from an injunction is largely self-inflicted. Defendants' clearance infrastructure would have identified the conflict before the designation was adopted, and the USPTO confirmed it in November 2025. Parkkinen Decl., Ex. 3. Defendants chose to continue expanding the commercial program. *See Cadence Design Sys. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (a defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities").

The balance of equities tips in Plaintiff's favor.

### D.      Public Interest

The public has an interest in not being deceived or confused about the source of goods and services. *El Pollo Loco, Inc. v. MIK Food Inc.*, 2021 WL 6104875, 2021 U.S. Dist. LEXIS 219176, at *5 (C.D. Cal. Nov. 1, 2021). The USPTO has independently concluded that these marks are likely to cause confusion, and instances of consumer confusion have been documented. Enjoining infringing conduct serves the public interest.

### E.      Bond

Pursuant to Federal Rule of Civil Procedure 65(c), the Court has discretion to set a bond in such sum as "the court considers proper[.]" The Court exercises that discretion here in light of the circumstances of this case. The risk of a wrongful injunction is low. The Court has found a likelihood of success on the merits, and the USPTO independently reached the same conclusion when it refused registration of Defendants' mark on likelihood-of-confusion grounds. Parkkinen Decl., Ex. 3. The injunction is narrowly scoped to the classes of goods and services identified in Defendants' own trademark

application and does not affect any of Defendants' other trademarks or commercial activities. The burden of compliance is manageable within Defendants' existing operations. Plaintiff is a solo performer whose sole trademark is at issue and who does not possess the corporate resources of Defendants. *See Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (the court has "discretion as to the amount of security required, *if any*" (emphasis in original, citation omitted)). Setting a bond at a level that would effectively foreclose preliminary relief would deny Plaintiff access to the remedy trademark law provides. *See* 15 U.S.C. § 1116(a). The Court sets the bond at $_____.

## IV.    CONCLUSION

Having considered Plaintiff's Motion, the supporting declarations and exhibits, the opposition and reply papers, and the arguments of counsel, the Court finds that Plaintiff has satisfied all four *Winter* factors. The Court **GRANTS** Plaintiff's Motion for a Preliminary Injunction and **ORDERS** as follows:

1. Defendants Taylor Swift, TAS Rights Management, LLC, UMG Recordings, Inc., and Bravado International Group Merchandising Services Inc., together with their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them who receive actual notice of this Order, are **ENJOINED** during the pendency of this action from using THE LIFE OF A SHOWGIRL, or any confusingly similar designation, as a trademark or source-identifying designation in connection with any goods or services within the classes of goods and services identified in TAS's U.S. Trademark Application Serial No. 99331566, including but not limited to merchandise, consumer goods, and entertainment services;

2. Pursuant to Federal Rule of Civil Procedure 65(c), Plaintiff shall post a bond in the amount of $_____ within fourteen (14) days of the date of this Order; and

3. This Order shall take effect upon the posting of the bond required by Paragraph 2.

**IT IS SO ORDERED.**

Dated:

_____

HON. SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE