**VENABLE LLP**
Max N. Wellman (CA SBN 291814)
  mwellman@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

J. Douglas Baldridge (*Pro Hac Vice*)
  jbaldridge@venable.com
Katherine Wright Morrone, Esq. (*Pro Hac Vice*)
  kwmorrone@venable.com
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

Attorneys for Defendants Taylor Swift, TAS Rights Management, LLC, UMG Recordings, Inc., Bravado International Group Merchandising Services Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAREN FLAGG, an individual,<br><br>                    Plaintiff,<br><br>        v.<br><br>TAYLOR SWIFT, an individual; TAS RIGHTS MANAGEMENT, LLC, a Tennessee limited liability company; UMG RECORDINGS, INC., a Delaware corporation; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES INC., a California corporation; and DOES 1-25,<br><br>                    Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      May 27, 2026<br><br>Action Filed:  March 30, 2026<br>Trial Date:    No Date Set |

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

FACTS RELEVANT TO DENIAL OF THE MOTION ................................2

    A.    Plaintiff's Purported Goods and Services....................................2

    B.    Taylor Swift and *The Life of A Showgirl* ................................4

    C.    Plaintiff Tries to Associate Herself with Ms. Swift and the Album...................................................................................................5

    D.    Plaintiff Lies in Wait for Eight Months .......................................7

STANDARD.............................................................................................................7

ARGUMENT...........................................................................................................7

I.    PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS ...............................................................................................7

    A.    Plaintiff's Unclean Hands Mandates Denial of the Motion.........7

    B.    Plaintiff Seeks to Impede Defendants' First Amendment Rights. ....................................................................................................9

    C.    There Is No Likelihood Of Confusion .......................................11

II.    PLAINTIFF HAS NOT SHOWN ANY IRREPARABLE INJURY ..20

    A.    Plaintiff's 8-Month Delay Negates A Finding of Irreparable Harm............................................................................................21

    B.    Any Purported Harm is Compensable, Not Irreparable.............21

III.    THE BALANCE OF HARDSHIPS WEIGHS STRONGLY AGAINST AN INJUNCTION.................................................................22

IV.    THE PUBLIC INTEREST WEIGHS AGAINST AN INJUNCTION 24

V.    ANY BOND MUST COMPENSATE DEFENDANTS FOR A WRONGFUL INJUNCTION. .........................................................25

CONCLUSION....................................................................................................25

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. For the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011).........................................................................7

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979)..............................................................11, 12, 20

*Arcona, Inc. v. Farmacy Beauty, LLC*,
976 F.3d 1074 (9th Cir. 2020).......................................................................15

*ArcSoft, Inc. v. CyberLink Corp.*,
153 F. Supp. 3d 1057 (N.D. Cal. 2015).....................................................22, 24

*Betty's Found. for the Elimination of Alzheimer's Disease v. Trinity
Christian Ctr. of Santa Ana, Inc.*,
2021 WL 3046889 (C.D. Cal. 2021)................................................................10

*Big Time Worldwide Concert & Sport Club at Town Center, LLC v.
Marriott Int'l, Inc.*,
236 F. Supp. 2d 791 (E.D. Mich. 2003).....................................................12, 16

*Blue Bottle Coffee, LLC v. Liao*,
2024 WL 2061259 (N.D. Cal. May 7, 2024).....................................................15

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998)..............................................................18

*Caiz v. Roberts*,
382 F. Supp. 3d 942 (C.D. Cal. 2019)..........................................................9, 23

*Car Body Lab Inc. v. Lithia Motors, Inc.*,
2021 WL 2652774 (S.D. Fla. June 21, 2021)....................................................21

*Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*,
2015 WL 12656954 (C.D. Cal. May 12, 2015)....................................................8

*Echo Drain v. Newsted*,
307 F. Supp. 2d 1116 (C.D. Cal. 2003).......................................................12, 13

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

ii

*Equinox Hotel Mgmt v. Equinox Holdings, Inc.*,
2018 WL 659105 (N.D. Cal. Feb. 1, 2018).........................................................18

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
2007 WL 9733755 (C.D. Cal. Oct. 9, 2007) .....................................................24

*Freelancer Int'l Pty. v. Upwork Glob., Inc.*,
851 F. App'x 40 (9th Cir. 2021)........................................................................22

*GFR, Ltd. v. Farner*,
2019 WL 1198538 (W.D. Mich. Mar. 14, 2019) ...............................................16

*Glow Indus. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002).......................................11, 12, 14, 16, 23

*Groupion, LLC v. Groupon, Inc.*,
859 F. Supp. 2d 1067 (N.D. Cal. 2012) .............................................................14

*Grubhub Inc. v. Kroger Co.*,
2022 WL 2774986 (N.D. Ill. May 25, 2022) .....................................................17

*Grupo Bimbo v. Snak-King, Corp.*,
2013 WL 12133892 (C.D. Cal. July 22, 2013) ..................................................16

*Horos v. Locol, LLC*,
2015 WL 12656946 (C.D. Cal. Feb. 11, 2015)...................................................12

*Instant Media, Inc. v. Microsoft Corp.*,
2007 WL 2318948 (N.D. Cal. Aug. 13, 2007)................................12, 14, 17, 19

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
287 F.3d 866 (9th Cir. 2002) ...............................................................................8

*Jensen v. W. Irr. & Mfg., Inc.*,
650 F.2d 165 (9th Cir. 1980)..............................................................................21

*Lamps Plus, Inc. v. Lamps Pro, LLC*,
2024 WL 4556963 (C.D. Cal. Oct. 23, 2024) ...................................................21

*Lost Int'l, LLC v. Germanotta*,
2025 WL 4058219 (C.D. Cal. Dec. 15, 2025) ........................................9, 10, 11

*M2 Software, Inc. v. Madacy Ent.*,
421 F.3d 1073 (9th Cir. 2005).............................................................................18

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

*Marketquest Grp., Inc. v. BIC Corp.*,
  862 F.3d 927 (9th Cir. 2017) ................................................................................ 20

*Masangsoft Inc. v. Azua*,
  2025 WL 3050217 (C.D. Cal. Aug. 27, 2025) .................................................... 21

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
  290 F. Supp. 2d 1083 (C.D. Cal. 2003) ......................................... 13, 15, 19, 20

*Metro Publ'g Co. v. San Jose Mercury News Inc.*,
  1993 WL 266786 (N.D. Cal. July 12, 1993) ........................................................ 8

*Move Press, LLC v. Peloton Interactive, Inc.*,
  2019 WL 4570018 (C.D. Cal. Sept. 5, 2019) ....................................... 13, 16, 17

*Murray v. CNBC*,
  86 F.3d 858 (9th Cir. 1996) ................................................................................ 11

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011) ..................................................................... 17, 19

*Oakland Trib., Inc. v. Chron. Publ'g Co., Inc.*,
  762 F.2d 1374 (9th Cir. 1985) ............................................................................ 21

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
  757 F.2d 1058 (9th Cir. 1985) ............................................................................ 20

*Playboy Enters. v. Netscape Commc'ns. Corp.*,
  55 F. Supp. 2d 1070 (C.D. Cal. 1999) ............................................................... 21

*Playmakers*, LLC v. ESPN, Inc.,
  297 F. Supp. 2d 1277 (W.D. Wash. 2003) ..................................... 13, 15, 16, 23

*Real USFL, LLC v. Fox Sports, Inc.*,
  2022 WL 1134487 (C.D. Cal. Apr. 14, 2022) ................................... 22, 24, 25

*Sarieddine v. Connected Int'l, Inc.*,
  2025 WL 1513777 (9th Cir. May 28, 2025) ..................................... 14, 15, 20

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*,
  2013 WL 12244286 (C.D. Cal. Feb. 19, 2013) ................................................. 25

*Spiraledge, Inc. v. SeaWorld Ent., Inc.*,
  2013 WL 3467435 (S.D. Cal. July 9, 2013) .................................................. 21, 22

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

iv

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

*Stonefire Grill, Inc. v. FGF Brands, Inc.*,
   987 F. Supp. 2d 1023 (C.D. Cal. 2013) ................................................................20

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) .............................................................................18, 19

*Toytrackerz LLC v. Koehler*,
   2009 WL 2591329 (D. Kan. Aug. 21, 2009) .........................................................10

*Tsiolis v. Interscope Records, Inc.*,
   946 F. Supp. 1344 (N.D. Ill. 1996) .......................................................................17

*Twentieth Century Fox Television v. Empire Dist., Inc.*,
   875 F.3d 1192 (9th Cir. 2017) .................................................................................9

*UA Corp. v. United Artist Studios LLC*,
   2020 WL 4369778 (C.D. Cal. July 7, 2020) .........................................................15

*Wild v. HarperCollins Publishers LLC*,
   2013 WL 12137684 (C.D. Cal. Jan. 2, 2013) ........................................................23

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008) ................................................................................................7, 22

**Statutes**

15 U.S.C. § 1114(1)(a) ...........................................................................................11

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

# INTRODUCTION

This Motion, just like Maren Flagg's lawsuit, should never have been filed. It is simply Ms. Flagg's latest attempt to use Taylor Swift's name and intellectual property to prop up her brand, and it fails every single step of the preliminary injunction inquiry. Putting aside the fact that the marks at issue are not confusingly similar, it is beyond the bounds of reason that consumers would believe that Plaintiff's Mark "CONFESSIONS OF A SHOWGIRL"—or Plaintiff's cabaret shows—are in any way affiliated with Taylor Swift or her album, *The Life of A Showgirl* (the "Album").

Far from showing any concern about the Album after its announcement, Ms. Flagg spent several months centering her brand on *The Life of a Showgirl's* name, artwork, music, and lyrics to promote her little-known cabaret show. In fact, a mere four days after Ms. Swift announced her Album title and artwork in August 2025, Ms. Flagg announced a brand-new podcast mimicking Ms. Swift's Album artwork, logo, title, and taglines. Then, Plaintiff flooded her Instagram and TikTok pages with 40+ advertisements for her brand using Ms. Swift's music, trademarks, and other intellectual property without permission. Each of these advertisements constitutes actionable infringement, and TASRM will be pursuing appropriate remedies for that intentional, commercial misuse.

However, when Plaintiff's attempts to exploit Ms. Swift's intellectual property failed to garner the desired attention (likely because, despite Ms. Flagg's best efforts, consumers were *not* confused into believing these two brands were even remotely connected), she concocted a meritless lawsuit and brought this Motion for Preliminary Injunction ("Motion" or "Mot."). The Motion fails at every turn.

First, Plaintiff cannot show likelihood of success on her trademark claims. As a threshold matter, the Album title—and its associated promotional goods—are expressive works protected by the First Amendment, rendering the traditional likelihood of confusion test inapplicable. However, even if the Lanham Act likelihood of confusion test did apply (it does not), each of the factors to be considered weigh

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

heavily in Defendants' favor and against injunctive relief.

Second, Plaintiff has not and cannot identify any irreparable harm. From the moment the Album was announced, Plaintiff embraced and sought to associate herself with it and Ms. Swift. Plaintiff cannot now claim confusion or harm over an association she tried to manufacture. Not once did Plaintiff take any action to contest the growth of the Album and its related goodwill. Instead, Plaintiff waited for <u>eight months</u>, all the while using Album materials in her advertising, before claiming to need immediate relief. The fact that Ms. Flagg did not get the marketing boost she wanted from exploiting Ms. Swift's Album is not irreparable harm. And to the extent any harm is cognizable here (it is not), money damages would readily compensate Plaintiff.

Third, the balance of hardships weighs heavily in Defendants' favor. Given the breadth of the injunction sought, if it were to issue, the Album would be pulled, merch destroyed, and access to heavily sought after goods curtailed. Such relief would result in a ban on Ms. Swift's expressive work, and tens of millions of dollars in lost revenue to the Defendant entities. Fourth, the public would also be harmed as streaming platforms and business partners would have to remove products, and myriad fans and consumers would no longer be able to access music and goods that are in high demand.

The Motion should be denied.

## FACTS RELEVANT TO DENIAL OF THE MOTION

### A.    Plaintiff's Purported Goods and Services

Plaintiff Maren Flagg p/k/a Maren Wade is a former Las Vegas showgirl. Complaint ("Compl.") ¶ 23. She owns U.S. Trademark Registration No. 4800625 for CONFESSIONS OF A SHOWGIRL ("Mark") with respect to blogs, theatrical productions, and television programs in Class 41. Mot. at 10. She claims to use the Mark in a "column in *Las Vegas Weekly*", a "live theatrical production," "a book, a podcast, and video content distributed through television, YouTube and social media." Dkt. 16-40 ¶¶ 3, 4; Mot. at 26. The reality is very different. The last blog from her

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

Website is dated March 10, 2021—over five years ago. Ex. 2[1]; Decl. ¶ 3. Plaintiff's book is "out of stock," referencing only a "pre-order" with no stated release date, and her e-book is unavailable for purchase. Decl. ¶¶ 4, 5; Exs. 3, 4. Defendants have found no use of Plaintiff's Mark in connection with a podcast outside of one podcast "teaser" ("Teaser") created days after the announcement of Ms. Swift's Album, copying its branding and using the Album title to summarize the podcast. Decl. ¶ 6; Ex. 5. To date, no episodes of the podcast have been released. Decl. ¶ 6. And while she may have originally produced printed columns under her Mark, these were abandoned along the way as evidenced by the deletion of those goods from her trademark registration. Ex. 1 at 6 ("entire class [16] is to be permanently deleted").

Plaintiff also claims her Mark covers "live stage performances" that are limited to "theatrical productions" (Dkt. 16-2 at 2)—namely, her cabaret show. She performs, if at all, in small intimate venues, such as a: "55+ active community"; "55+ golf resort"; "RV & Golf Resort"; "90 seat cabaret-style venue" that offers dinner; hotel; and private supper club. Decl. ¶¶ 7-13; Exs. 6-12. Her Website lists no upcoming performances, and Plaintiff does not identify any in her Motion. Decl. ¶ 7; Ex. 6.

When using and promoting her Mark, Plaintiff highlights "CONFESSIONS" depicting it larger, above other text, and in a color setting it apart. It appears with a bright yellow and red, or bright yellow and pink color scheme, usually together with Ms. Flagg's image. *See* Ex. 1 at 9, 18-21, 23, 28, 30, 39; Ex. 3.

  

---

[1] Exhibits 1–93 are attached to the Declaration of Max N. Wellman ("Decl."). Exhibits A–D are attached to the Declaration of John R. Dorris, Jr. ("Dorris Decl.").

3

### B.    Taylor Swift and *The Life of A Showgirl*

Taylor Swift is a singer-songwriter and global icon. In the wake of the groundbreaking stadium tour Taylor Swift | The Eras Tour ("The Eras Tour"), on August 13, 2025, Ms. Swift announced her twelfth studio album, titled *The Life of A Showgirl*. Decl. ¶ 78. The title has clear artistic meaning as the Album "is about what was going on behind the scenes in [Ms. Swift's] inner life during [The Eras Tour], which was so exuberant and electric and vibrant." *Id*. It reflects upon the complexities, good and bad, of the life of a performer: a *showgirl*. The Album was released on October 3, 2025, and was immediately successful. In its first week, in the U.S. alone, it sold over 4 million units and was streamed nearly 681 million times—the largest first week of sales in modern music history. Dorris Decl. ¶ 6. The Album was the highest selling album of 2025, with over 6 million units sold that year. *Id*. The Album includes, as its twelfth track, the song titled "The Life of a Showgirl." Ex. B (Album Tracklist), Ex. C. To date, no songs from the Album have been performed live.

As shown on the Album cover, Defendants often depict "THE LIFE OF A SHOWGIRL" in uniform size font, in a glittery orange color, with "The", "Life", "Of", "A", and "Showgirl" all distributed on separate lines complemented by accent use of a mint green color. *See* Ex. A. And, Defendants' use of THE LIFE OF A SHOWGIRL is typically accompanied by the unmistakable likeness of Ms. Swift. *Id.*; *see* Ex. D.

On August 11, 2025, Defendant TAS Rights Management, LLC ("TASRM") filed an <u>intent to use</u> trademark application with the USPTO ("Application") for THE LIFE OF A SHOWGIRL. Dkt. 16-3. Because the Application is based on an intent-to-use (rather than a prior use), the USPTO could not evaluate any specimens of use showing how THE LIFE OF A SHOWGIRL actually appears to consumers. On November 5, 2025, the USPTO issued a "NONFINAL OFFICE ACTION" for the Application (again, solely based on a review of the words themselves, without any evaluation of how the words are actually used by Defendants or viewed by consumers). Dkt. 16-4. A *Nonfinal* Office Action is exactly what it sounds like, <u>not</u> final (and not

**Venable LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

4

uncommon); it allows the applicant to submit materials and context to cure any perceived defects, often resulting in a registration issuing. Decl. ¶ 77; Ex. 75.

### C.   Plaintiff Tries to Associate Herself with Ms. Swift and the Album

Since the Album announcement, Plaintiff has reframed her brand around the Album, flooding her social media accounts with posts attempting to align herself with Ms. Swift and the Album.[2] Prior to the Album announcement, Plaintiff had never used "the life of a showgirl" in her social media promotion. Following the announcement, Plaintiff used the phrase or posted generally about Ms. Swift or the Album over 40 times on her branded Instagram and TikTok accounts ("Posts"). Decl. ¶ 74; Exs. 27-72. On TikTok, 34 of the 38 <u>total</u> posts on Plaintiff's account are celebrating Ms. Swift and exploiting Album IP. Decl. ¶ 74. In fact, Ms. Flagg's brand bio reads: "The Life of a Showgirl: Baby, That's TikTok" (identifying her brand using the Album title and a version of Ms. Swift's Album tag line, "And baby, that's show business for you"). *Id.* ¶ 76; Ex. 74. The Posts also consistently use: (i) hashtags such as #thelifeofashowgirl, #TS12, #taylorswift, #swifties, #taylornation, #TLOAS, and #deartaylor (encouraging Ms. Swift's fandom to find Plaintiff's posts when searching for Album-related content); (ii) song titles from the Album; (iii) captions such as "In my showgirl era" (referencing The Eras Tour and the well-known use of the word "era" to describe Ms. Swift's albums), and (iv) audio clips from various songs by Ms. Swift. *Id.* ¶¶ 28-73; Exs. 27-72. Some Posts contain all of the above. *See* Exs. 38, 61, 65.

In one Post (screenshot below), Plaintiff used an Album cover logo, audio from the Album title track, hashtags including #thelifeofashowgirl; #swifties; #ts12; and #taylornation, and discussed an official Album release event. Decl. ¶ 61; Ex. 60. In addition to attempting to confuse consumers, Plaintiff's commercial use of Ms. Swift's art constitutes clear infringement under federal law.

---

[2] Each of Plaintiff's Posts referencing Ms. Swift and/or the Album in connection with Plaintiff's self-promotion are summarized in the chart attached at Exhibit 73.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

| The Album Cover | Plaintiff's Oct. 4, 2025 TikTok Post |
|---|---|
|  |  |

Furthermore, four days after the Album announcement, Plaintiff released a podcast Teaser dramatically rebranding her materials to mimic Ms. Swift's. Describing her podcast as "The life of a showgirl[,]" Ms. Flagg suddenly shifted her branding from pinks and yellows with bolded sans serif fonts to a mint backdrop with an elongated, thin font backed by cut-out shapes, stacking the text to create an overall blocked shape, with her name slightly set-off in a smaller font, clearly evoking the imagery of the Album and its related promotional materials. *See* Decl. ¶ 6 and comparison below.

| Album Cover | Plaintiff's Historical Branding | Plaintiff's Post-Announce Branding |
|---|---|---|
| | | |

Prior to August 17, 2025, Plaintiff did not have a podcast and Defendants have found no mention of her intention to start one. Defendants have also found zero evidence of Plaintiff's use of this color scheme and logo visual prior to the Album announcement.[3]

---

[3] The Posts are not Plaintiff's first attempt to use Ms. Swift's music for her own gain. As early as 2022 Plaintiff used Ms. Swift's music without authorization on her website and social media—even featuring "Shake It Off" in the sizzle reel currently featured on her website. Exs. 80, 81, 82, 83.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

### D.    Plaintiff Lies in Wait for Eight Months

Plaintiff admits she knew about the Album in August 2025 and consulted with counsel at that time (Mot. at 17), but did nothing to contest the Album's release and/or approach Defendants regarding her purported concerns. Notwithstanding her own admission that she was aware of the Album from day one, as well as the myriad social media uses shown in Exhibits 27-72, Plaintiff did nothing and said nothing about any alleged "harm." Instead, she did her best to shout from the proverbial rooftops to forge a connection to the Album, attempting to get the attention of Ms. Swift's fandom for her own gain. Meanwhile, in 2025 alone, over 6 million *The Life of a Showgirl* Albums were sold, and 681 million streams occurred. Dorris Decl. ¶ 6. Now, eight months later, having first voluntarily availed herself of the Album's release and its related goodwill, Plaintiff seeks to preclude Defendants, essentially, from any use of the creative expression "THE LIFE OF A SHOWGIRL."

## STANDARD

A preliminary injunction is an "extraordinary remedy, never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). For preliminary injunctive relief, Plaintiff must make a "clear showing" that (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; <u>and</u> (4) an injunction is in the public interest. *Id.* at 20, 22.[4] Plaintiff's Motion fails at every step.

## ARGUMENT

### I.    Plaintiff Has No Likelihood of Success on the Merits

### A.    Plaintiff's Unclean Hands Mandates Denial of the Motion

As a threshold matter, Plaintiff's Motion should be denied because she has come

---

[4] Where a plaintiff merely raises "serious questions" as to the merits, a showing that the balance of hardships tips <u>sharply in plaintiff's favor</u>, in conjunction with demonstrating irreparable injury and that the public interest supports injunctive relief, may also suffice. *All. For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Plaintiff misstates this standard twice (Mot. at 12, 26), ignoring that she must still satisfy the irreparable harm and public interest factors. *Cottrell*, 632 F.3d at 1135.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

to this Court in bad faith and with unclean hands after repeated attempts—over an extended period of time—to associate herself with Ms. Swift and the Album, and to profit off their associated goodwill by infringing upon Ms. Swift's intellectual property. The doctrine of unclean hands applies as a defense to alleged trademark infringement. *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 870-71 (9th Cir. 2002) (collecting cases). Where a plaintiff, like Ms. Flagg, deliberately attempts to create confusion surrounding trademark use, unclean hands is found, and injunctive relief is denied. *See, e.g.*, *Metro Publ'g Co. v. San Jose Mercury News Inc.*, 1993 WL 266786, at *6 (N.D. Cal. July 12, 1993) (denying preliminary injunction in trademark action based on unclean hands); *Cochran Firm, P.C. v. Cochran Firm Los Angeles, LLP*, 2015 WL 12656954, at *6, 8-9 (C.D. Cal. May 12, 2015).

In *Metro* the plaintiff ("Metro"), a publisher, alleged infringement of its "Public Eye" trademark against the defendant ("San Jose"), another publisher distributing a tabloid section called "eye." *Id.* at *1. After Metro learned of San Jose's use of "eye," Metro changed its use of "Public Eye" to feature "eye" in a typeface similar to San Jose's and continued to do so beyond the range of its normal prior use. *Id.* at *6. Plaintiff's conduct was enough for the court to find unclean hands, and deny injunctive relief stating, "even if Metro had shown a likelihood of confusion, it would not be entitled to equitable relief." *Id*.

Ms. Flagg's conduct is far more egregious. She went beyond changing a typeface, instead using a nearly identical typeface, color palette, *and* design layout in her Teaser, coupled with over 40 promotional social media Posts using *actual* Album logos, imagery, hashtags, audio, and lyrics. *Supra* at 5-6; Exs. 27-73. Plaintiff's Posts do not just reference the Album title, but specifically reference Ms. Swift, her music, her albums, and The Eras Tour, attempting to associate her brand with them. Plaintiff's repeated references to Ms. Swift and/or the Album were intentionally designed to *benefit* Plaintiff by causing association and/or confusion where none existed. Such conduct bars her from the relief she now seeks. *Metro Publ'g*, 1993 WL 266786, at *6.

8

### B.    Plaintiff Seeks to Impede Defendants' First Amendment Rights

Plaintiff's claims also fail because Defendants' expressive use of "*The Life of a Showgirl*" is protected by the First Amendment. "When the allegedly infringing use [of a trademark] is in the title of an expressive work" the Ninth Circuit applies the *Rogers v. Grimaldi* test. *Lost Int'l, LLC v. Germanotta*, 2025 WL 4058219, at *3 (C.D. Cal. Dec. 15, 2025) (quoting *Twentieth Century Fox Television v. Empire Dist., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017)). Under *Rogers*, if a work is expressive, a plaintiff cannot establish infringement without showing the title (1) is either not artistically relevant to the underlying work; or (2) explicitly misleads as to the source or content of the work. *Lost*, 2025 WL 4058219, at *3 (citation omitted). This is because titles of expressive works "implicate the First Amendment rights of freedom of speech" and "consumers are less likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement." *Id.*

Songs and album titles are the core type of expressive First Amendment work that *Rogers* protects. *Twentieth Century*, 875 F.3d at 1196 (finding songs and albums are expressive works); *Caiz v. Roberts*, 382 F. Supp. 3d 942, 949 (C.D. Cal. 2019) ("Musical recordings, like Defendants' album, are expressive works."). "Promotional efforts" related to the expressive work are also protected by *Rogers*. *Twentieth Century*, 875 F.3d at 1196–97. First, the Album title has clear artistic relevance to the underlying work, as it both describes the central theme of the Album and shares its title with one of its songs, "The Life of a Showgirl" (which includes the central lyric, "[b]ut you don't know the life of a showgirl, babe"). Ex. C. Indeed, Ms. Swift has explained that inspiration for the title came from her experiences while performing during The Eras Tour, combining the physical exhaustion of grueling 3.5 hour performances with the creative stimulation of songwriting—"literally living the life of a showgirl." Decl. ¶ 78. Second, there is nothing misleading (explicitly or otherwise) about the Album source. It is readily apparent that the Album is associated with Ms. Swift, as it depicts her instantly recognizable name and/or likeness on the Album and all related marketing

9

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

and promotional materials. *See* Exs. A, D. Because the First Amendment protects the expressive Album title, the promotional goods associated therewith benefit, too. *Lost*, 2025 WL 4058219, at *3-4; *Betty's Found. for the Elimination of Alzheimer's Disease v. Trinity Christian Ctr. of Santa Ana, Inc.*, 2021 WL 3046889, at *2 (C.D. Cal. 2021).

In an almost identical case, in December 2025, a sister court in this District denied a preliminary injunction where a plaintiff—Lost Surfboards, owner of a MAYHEM trademark for surfboards in Class 28—sought to preclude musical artist Lady Gaga from using "Mayhem" as the title of her album and on related goods. *Lost*, 2025 WL 4058219, at *3. *Lost* recognized and applied *Jack Daniels* and *Punchbowl* (both cited by Plaintiff), but denied injunctive relief, finding the album, including its title, was an expressive work. *Id.* at *4. *Lost* also found that the promotional merchandise in connection with the Mayhem album was protected by *Rogers* because it applies "not only to the title or body of an expressive work, but also to auxiliary, revenue-generating promotional activities, including the sale or licensing of consumer goods." *Id.* at *3-4 (citing *Twentieth Century*, 875 F.3d at 1196-97). This holding is on all fours with the Album and associated goods at issue here.[5]

Plaintiff claims *Rogers* is inapplicable. Mot. at 12-15. Plaintiff is wrong. As an initial matter, the mere filing of a trademark application does not transform the title of a musical work into a source identifier. *Betty's Found.*, 2021 WL 3046889, at *2-4; *see Toytrackerz LLC v. Koehler*, 2009 WL 2591329, at *5 (D. Kan. Aug. 21, 2009) ("No rights are conferred by the mere filing of a federal trademark application[.]"). Thus, at a minimum, the Album is protected here. *See supra*. Furthermore, just like in *Lost*, the use on merchandise such as clothing is a logical extension of the expressive work and also protected. Indeed, Defendants' webstore (the only place authorized

---

[5] None of Plaintiff's caselaw (Mot. at 12-13) compels a different result. They are all either (1) procedurally distinct, including one decision that came *six* years after protracted litigation; (2) based upon trademark filings showing actual use of the marks in commerce (unlike the Application here); or (3) the mark at issue was the name of a business, which unequivocally is not the case here.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

10

merchandise is available for purchase) (Dorris Decl. ¶ 10), is organized by Album name to group promotional merchandise associated with each of Ms. Swift's albums and has a "Shop By Album" filter. *See* Dkt. 16-7. At the forefront of that webstore is "TAYLOR SWIFT," denoting the source of the albums and promotional merchandise, along with TAYLOR SWIFT® depicted as a registered trademark. *See* Dkt. 16-8; Dkt. 16-9. Defendants do not use a ™ symbol near use of THE LIFE OF A SHOWGIRL.

Because Defendants' use of *The Life of a Showgirl* is expressive and otherwise satisfies the two-part *Rogers* test, the Lanham Act does not apply and Plaintiff "cannot succeed on [her] claims for trademark infringement." *Lost*, 2025 WL 4058219, at *5.

### C.    There Is No Likelihood Of Confusion

Even if the Lanham Act likelihood of confusion analysis applies (it does not), Plaintiff utterly fails to meet her burden under that test. Plaintiff must demonstrate a likelihood of consumer confusion over the source of her goods or services. *See* 15 U.S.C. § 1114(1)(a). In a reverse confusion action (like here), this requires evidence that an appreciable number of consumers believe or are likely to believe that Defendants, rather than Ms. Flagg, are the source of her cabaret and related services. *Murray v. CNBC*, 86 F.3d 858, 861 (9th Cir. 1996). This test is viewed through the lens of a "reasonably prudent consumer" in the marketplace. *See Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 986 (C.D. Cal. 2002). In practical terms, this means an appreciable number of consumers would have to believe Plaintiff's cabaret performances were somehow associated, sponsored, or authorized by Ms. Swift. No one can seriously contend this to be the case.

In any event, courts apply the *Sleekcraft* factors to analyze likelihood of confusion: (1) Strength of the mark; (2) Proximity of the goods; (3) Similarity of the marks; (4) Evidence of actual confusion; (5) Marketing channels used; (6) Degree of care likely to be exercised by the purchaser; (7) Defendant's intent in selecting the mark; and (8) Likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979). The first three *Sleekcraft* factors are

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

11

"particularly important" in reverse confusion cases. *Instant Media, Inc. v. Microsoft Corp.*, 2007 WL 2318948, at *7 (N.D. Cal. Aug. 13, 2007) (citations omitted); *see also Glow*, 252 F. Supp. 2d at 986. When evaluating, "the Court must consider the factors taken together, and in context." *Horos v. Locol, LLC*, 2015 WL 12656946, at *9 (C.D. Cal. Feb. 11, 2015). The *Sleekcraft* factors weigh against any likelihood of confusion.

**Plaintiff's Mark is Weak**. In reverse confusion cases, the strength of the mark factor compares the commercial strength of a defendant's alleged trademark use, with the conceptual strength of a plaintiff's trademark use. *See, e.g.*, *Glow*, 252 F. Supp. 2d at 990-91. Without a conceptually strong mark, Plaintiff **"will be unable to establish a likelihood of confusion, even if [Defendants'] commercial strength is likely to overwhelm the plaintiff in the marketplace**." *Instant Media*, 2007 WL 2318948, at *12 (citing *Glow*, 252 F. Supp. 2d at 990-92).

First, Plaintiff admits her mark is suggestive (Mot. at 20) and therefore conceptually weak. *Echo Drain v. Newsted*, 307 F. Supp. 2d 1116, 1124 (C.D. Cal. 2003) (citing *Brookfield Comm'ns v. West Coast Ent.*, 174 F.3d, 1036, 1058 (9th Cir. 1999)). Plaintiff is correct in that admission, as she has readily described her services as providing real-life "confessions" of a showgirl in a cabaret setting. This type of mark, which on its face suggests the very service provided,[6] undercuts the potential for any purported confusion. *Instant Media*, 2007 WL 2318948, at *12-13.

Additionally, extensive third-party use of a trademark further weakens its strength. *Big Time Worldwide Concert & Sport Club at Town Center, LLC v. Marriott Int'l, Inc.*, 236 F. Supp. 2d 791, 799-800 (E.D. Mich. 2003). Here, third parties have widely used (and/or registered) "CONFESSIONS OF A", "SHOWGIRL", and "OF A SHOWGIRL" in connection with entertainment products/services for years prior to Plaintiff's use, and have continued to do so after her registration (including but not limited to "Confessions of a Goddess", "Confessions of a Vegas Showgirl", "Portrait

---

[6] It could also reasonably be considered descriptive of the services for which Plaintiff is using it, and thus even weaker. *Echo Drain*, 307 F. Supp. 2d at 1122.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

of a Showgirl", and "The Last Showgirl"). Dkt. 16-39; Exs. 19-26, 90-93. Plaintiff cannot monopolize "SHOWGIRL"—formative marks in entertainment. Given the weakness of Plaintiff's Mark, she is unable to show likelihood of confusion.

**Lack of Proximity of the Goods and Services.** Differences in products or services "negate reverse confusion, even when the products are superficially within the same category." *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003) (citation omitted); *see also Move Press, LLC v. Peloton Interactive, Inc.*, 2019 WL 4570018, at *12 (C.D. Cal. Sept. 5, 2019); *Playmakers*, *LLC v. ESPN, Inc.*, 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003) (denying injunction finding "sports" related services not proximate). This is particularly true in the entertainment field where, as here, the nature of the entertainment is demonstrably different. *Echo Drain*, 307 F. Supp. 2d at 1125 (no proximity where both parties were music bands playing different styles).

Plaintiff attempts to broadly lump her cabaret show and Defendants' musical Album together as "entertainment services." Mot. at 19. That comparison is absurd. Plaintiff's registered services focus around "live stage performances" that are limited to "theatrical productions"—namely, her cabaret show (Dkt. 16-2 at 2), which take place at small, limited venues. *Supra* at 3. *The Life of a Showgirl* does not overlap with any of Plaintiff's services. First, *The Life of a Showgirl* is a musical Album, not a live theatrical cabaret show. And while Ms. Swift has not performed Album music as of this submission, historically her performances are musical concerts at sold-out stadiums with thousands of attendees, not at golf resorts or cabaret-style venues. Dorris Decl. ¶ 18. As for Plaintiff's other alleged services, Ms. Flagg has not posted any podcast episodes or produced a column or television content in connection with her Mark, and it is doubtful whether she is currently selling a book. *Supra* at 3, 6.

Finally, as to consumer goods, Plaintiff does not sell (and never sold), any apparel or merchandise, negating the assertion that Defendants' promotional apparel or merchandise are proximate. Notably, despite repeatedly pointing to the USPTO's

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

13

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

office action, Plaintiff ignores that the USPTO <u>found no issue with any of Defendants applied-for goods outside of classes 9 and 41</u>. Dkt. 16-4. The vast differences between the parties' respective goods and services weigh decidedly against an injunction.

**[Dis]similarity of the Marks.** The alleged trademarks are not similar. When evaluating this factor, courts look at the sight, sound, and meaning of the marks at issue. *Glow*, 252 F. Supp. 2d at 994. Courts do not consider trademarks in the abstract (even where, as here, a plaintiff has a standard character registration), but rather "in light of the way the marks are <u>encountered in the marketplace and the circumstances surrounding the purchase</u>." *Sarieddine v. Connected Int'l, Inc.*, 2025 WL 1513777, at *2 (9th Cir. May 28, 2025) (emphasis added).

Tellingly, the Motion does not include <u>any</u> example of how Plaintiff's Mark appears to consumers. That is because Defendants' use of *The Life of a Showgirl* is highly distinct from Plaintiff's use. Specifically, they differ as to dominant terms, font, coloration, meaning, spacing, and total commercial impression (depicted below).

  

Where marks appear in the marketplace with dissimilar visual or contextual appearances, confusion is unlikely. *See, e.g.*, *Groupion, LLC v. Groupon, Inc.*, 859 F. Supp. 2d 1067, 1073 (N.D. Cal. 2012); *Instant Media*, 2007 WL 2318948, at *8.

***Sight.*** Visually, CONFESSIONS, Plaintiff's dominant highlighted term, is not present in the Album title. As Plaintiff's own authority makes clear (Mot. at 17, citing *In re Detroit Athletic Co.*) "the lead words" in marks (i.e. Plaintiff's use of CONFESSIONS) "are their dominant portion and are likely to make the greatest impression on consumers." 903 F.3d 1297, 1303 (Fed. Cir. 2018). Additionally, the

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

color choices and imagery initially associated with Plaintiff's Mark are highly distinct from the Album. Plaintiff's Mark is customarily depicted with a yellow/red, or yellow/pink color scheme, and in connection with Plaintiff's image and likeness. Defendants depict *The Life of a Showgirl* differently in terms of font, color, spacing, design elements, and imagery. Plaintiff does not address these marketplace differences, likely because where these types of attributes are different, no likelihood of confusion is found. *See Arcona, Inc. v. Farmacy Beauty, LLC*, 976 F.3d 1074, 1077 (9th Cir. 2020) (cream products both called "EYE DEW" dissimilar); *Playmakers*, 297 F. Supp. 2d at 1283 (no confusion with "PLAYMAKERS" and "PLAY MAKERS"). Moreover, Ms. Swift's likeness is almost always prominently displayed in conjunction with *The Life of a Showgirl*, further dispelling any likelihood of confusion. Exs. A, D. *Matrix Motor Co.*, 290 F. Supp. 2d at 1093 (use of an accompanying mark reduces or eliminates confusion in reverse confusion case).

The unmistakable differences in how the terms are actually depicted to consumers also undercuts the relevance of the USPTO preliminary office action relied on so heavily by Plaintiff. Mot. at 18; *see Sarieddine*, 2025 WL 1513777, at *2-3 (affirming denial of injunction). USPTO analysis "generally is decided upon 'a comparison of the marks in the abstract,' whereas courts assess the market as it actually exists." *Blue Bottle Coffee, LLC v. Liao*, 2024 WL 2061259, at *12, 14 (N.D. Cal. May 7, 2024) (finding marks dissimilar "contrary to USPTO conclusion"). Thus, where office actions involve intent-to-use applications, like here, courts afford them very little weight because they do not show marketplace conditions. *See id.* at *13; *accord Sarieddine*, 2025 WL 1513777, at *2 (citing cases). Here, the Court has the benefit of starkly contrasting marketplace evidence not available to the USPTO; thus, any reliance on the USPTO's preliminary office action would be misplaced.[7]

---

[7] The sole case relied upon by Plaintiff, *UA Corp. v. United Artist Studios LLC*, 2020 WL 4369778 (C.D. Cal. July 7, 2020) (Mot. at 18), is inapposite. There, the USPTO applications were based on "use of the marks in commerce" and specimens of use. *UA Corp.*, 2020 WL 4369778, at *4. That is not the case here.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

15

***Sound***. CONFESSIONS OF A SHOWGIRL and *The Life of a Showgirl* sound different. When spoken, Plaintiff's Mark starts with a sharp "C" sound (absent from the Album title) and contains a different number of syllables (seven versus six). *Grupo Bimbo v. Snak-King, Corp.*, 2013 WL 12133892, at *6 (C.D. Cal. July 22, 2013). To disregard these obvious differences, Plaintiff relies on *In re Nat'l Data Corp.* for the premise that a similarity in cadence can support confusion. Mot. at 16. However, Plaintiff omits that the marks at issue were "CASH MANAGEMENT ACCOUNT" and "THE CASH MANAGEMENT EXCHANGE," where the dominant portions were identical; facts obviously not present here.[8] Just because marks contain an overlapping term does not mean there is a likelihood of confusion. *E.g.*, *Glow*, 252 F. Supp. 2d at 994-95 ("GLOW" and "GLOW BY J.LO" distinct); *Marriott*, 236 F. Supp. 2d at 802 (BIG TIME WORLDWIDE, and BIG TIME TICKETS dissimilar).

***Meaning***. The meaning of "Confessions of a Showgirl" and "The Life of a Showgirl" also differ significantly. When evaluating meaning, courts look to dictionary definitions, and root origins of words. *Move Press*, 2019 WL 4570018, at *12. When a dictionary is consulted (something Plaintiff did not do), "CONFESSIONS" is associated with (1) an acknowledgement of guilt, (2) a formal statement of religious beliefs, and/or (3) disclosure of one's sins. Ex. 15. In contrast, "LIFE" is associated with the physical and mental experiences that make up the existence of an individual (Ex. 16), obviously a completely different meaning. The different implications of services purporting to share "The Confessions" of a showgirl versus musical art relating to "The Life of" a showgirl are readily apparent.

**Consumers are Likely to Exercise a High Degree of Care.** Where a consumer exercises a high degree of care, confusion is unlikely. *Playmakers*, 297 F. Supp. 2d at 1284. "[M]usic is intensely a matter of personal taste," and purchasing a "concert ticket is not an impulse purchase." *GFR, Ltd. v. Farner*, 2019 WL 1198538, at *11 (W.D.

---

[8] Similar issues pervade *Sajahtera* (Mot. at 16) where the dominant portion of the marks (BEVERLY HILLS) and (THE BEVERLY HILLS HOTEL) were identical.

16

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

Mich. Mar. 14, 2019) (finding purchaser care weighed "strongly" against a finding of confusion); *Tsiolis v. Interscope Records, Inc.*, 946 F. Supp. 1344, 1356-57 (N.D. Ill. 1996) (denying injunction as "reasonable consumers will exercise care to ensure that the concert or recording features the artist they seek before spending their money").

Here, Plaintiff's cabaret services and the Album are not impulse buys. It is widely known that Ms. Swift's fanbase is a dedicated, and informed set of consumers. Exs. 76, 77. Their attention to detail is legendary when it comes to information about Ms. Swift's albums or merchandise, with fans eagerly detecting "easter eggs" and pouring over Ms. Swift's works in connection with numerology codes and word searches. *Id.* There is no chance they would be confused between Plaintiff's cabaret shows and Ms. Swift's Album and related promotional merchandise. Plaintiff provides no evidence to the contrary, and merely declares that the "degree of care is at its lowest" for promotional merchandise purchased online. Mot. at 23. That is not the case. Putting aside that the Album is available in physical stores, Plaintiff's authority (Mot. at 24), issued in 2000, has long been supplanted in the Ninth Circuit with caselaw that more accurately reflects the internet savvy buying public of today's world. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1152 (9th Cir. 2011) (finding internet purchasers "generally quite sophisticated about such matters"). It is undeniable that consumers today exercise a high degree of care when selecting expressive works or tickets for live entertainment. Even more so when the work involves Ms. Swift.

**There Is No Credible Evidence Of Actual Consumer Confusion.** "Relevant confusion is that which affects purchasing decisions, not confusion generally." *Instant Media,* 2007 WL 2318948, at *14 (citing *Echo Drain*, 307 F. Supp. 2d at 1126-27). Importantly, "a handful of examples of anecdotal confusion are insufficient to support a finding [of] confusion," as are "isolated unauthenticated web postings." *Move Press*, 2019 WL 4570018, at *14 (citing cases); *Grubhub Inc. v. Kroger Co.*, 2022 WL 2774986, at *5, 7 (N.D. Ill. May 25, 2022) (finding isolated social media posts of "little

17

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

probative value"); *see also Equinox Hotel Mgmt v. Equinox Holdings, Inc.*, 2018 WL 659105, at \*7-8 (N.D. Cal. Feb. 1, 2018) (finding eleven purported instances of confusion insufficient for injunction).[9] At best, that is all Plaintiff has. *See* Mot. at 21-23, Dkts. 16-17-16-34 (twelve isolated social media posts depicting no clear confusion on the part of anyone); *see also* Ex. 84 (explaining deficiencies with Plaintiff's cherry-picked "evidence"). In reality, of the innumerable social posts related to the Album and Ms. Swift since its announcement, Defendants are aware of <u>no instances of actual consumer confusion between these brands</u>, nor has Plaintiff identified any.

**Plaintiff's Services have Contracted, Not Expanded.** For this factor, courts ask whether "the allegedly infringing mark is hindering the plaintiff's expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005). "[M]ere speculation is not evidence" of expansion. *Id.* (citation omitted). A "<u>strong</u> possibility of expansion into competing markets" must be shown. *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1085 (9th Cir. 2005).

Plaintiff provides no evidence that she intends to expand her Mark into merchandise, apparel, records, musical concerts, or other goods and services. She failed to provide evidence that she even released a single podcast episode, or "video content" in connection with her Mark outside of social media. Rather, all evidence indicates that over the years Plaintiff's trademark use has <u>contracted</u> in scope. Plaintiff deleted an entire class of goods from her Mark, is not currently selling her alleged book or writing her alleged column, and has not performed in months. *See supra* at 3. There is simply nothing to support Plaintiff's bald assertion of expansion.

While Plaintiff heavily relies on the Application to show Defendants' likely expansion (Mot. at 25-26), that is not enough. Even where a defendant has previously filed an intent-to-use application related to other goods or services, where a plaintiff

---

[9] Plaintiff's representation that she did not have opportunity to conduct a consumer survey (Mot. at 21) is contradicted by her 8-month delay and weighs against injunctive relief. *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1040 (C.D. Cal. 1998).

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

fails to provide any "concrete evidence" that the defendant plans to use the alleged mark in connection with the sort of product that would **compete** with the plaintiff, this factor weighs against confusion. *Instant Media*, 2007 WL 2318948, at *16; *see also Surfvivor Media*, 406 F.3d at 634. That is exactly the case here.

**The Parties Use Different Marketing Channels.** The three sentences Plaintiff devotes to this factor (Mot. at 23) fail to provide evidence of the customer base for any of her alleged services or products, or that there is overlap in the parties' marketing channels. "Advertising, the existence of direct competition, and retail distribution are considered when addressing whether the parties use similar marketing channels." *Matrix Motor Co.*, 290 F. Supp. 2d at 1094. Where the parties advertise or distribute their products differently, likelihood of confusion is diminished. *Id.*

While Plaintiff claims to use YouTube to market her services, the most recent video on her channel (@Maren Wade) is from ten years ago.[10] Decl. ¶ 14. And while she claims to promote on television, the only evidence Defendants can locate is from over a year and a half ago. Ex. 78. With respect to the Internet, Plaintiff's performances appear to be promoted via her website www.confessionsofashowgirl.com, which does not allow consumers to currently purchase any cabaret tickets, books, etc. In contrast, Defendants' merchandise is sold exclusively on www.store.taylorswift.com, immediately conveying via the domain name, website header, and merchandise (which prominently displays Ms. Swift's name and likeness) that the source is Ms. Swift, not Plaintiff.[11] The Album is also sold in third-party retailers, and streamed on music streaming platforms, two channels that Plaintiff does not use. Of the prior shows listed on Plaintiff's Website, Ms. Swift has never performed there. Dorris Decl. ¶ 18. There is no meaningful overlap in marketing channels.

---

[10] Additionally, the YouTube channel @marenwade3132012 has no posts for over a year. Decl. ¶ 15.

[11] In any event, Plaintiff's focus on Internet channels is of limited utility because "the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation*, 638 F.3d at 1151.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

19

**Defendants Have No Intention To Infringe.** "[I]nfringement is not willful if the defendant . . . reasonably thought that its proposed usage was not barred." *Matrix Motor*, 290 F. Supp. 2d at 1096 (citing cases). And, "[m]erely conducting a trademark search and discovering plaintiff's use is insufficient to demonstrate intent." *Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1055 (C.D. Cal. 2013).

Here, Plaintiff failed to provide evidence that Defendants intended to associate with her business, or intended to push Plaintiff out of the cabaret performance market. Plaintiff's broad references to TASRM's trademark portfolio (Mot. at 24) have nothing to do with the instant matter and certainly nothing to do with Defendants' intent in this instance. And, as explained throughout, the USPTO proceeding for the Application is ongoing and <u>non-final</u>.  In any event, the very case Plaintiff cites (Mot. at 24) explains that "[a]n inference of bad faith does not arise from mere knowledge of a mark when the use is otherwise objectively fair, even in a case presenting reverse confusion." *Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 937 (9th Cir. 2017). Given the dissimilarity, and lack of proximity (among other *Sleekcraft* factors), Defendants clearly have a good faith belief that there is no infringement. There is no reason Defendants could have (or should have) anticipated that Ms. Flagg would claim to possess a monopoly over the descriptor "of a Showgirl," even in expressive works.

Taken as a whole, the *Sleekcraft* factors favor Defendants, there is no likelihood of confusion, and the Motion should be denied.[12]

## II.    Plaintiff Has Not Shown any Irreparable Injury

Because Plaintiff has failed to demonstrate a likelihood of success on the merits, no presumption of irreparable harm applies. *Sarieddine*, 2025 WL 1513777, at *3 (citing 15 U.S.C. § 1116(a)). However, even if the presumption applied, it is readily

---

[12] Plaintiff also failed to allege personal jurisdiction over Ms. Swift or TASRM (*see generally* Compl.), further requiring denial of the Motion. *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1061 (9th Cir. 1985) (vacating preliminary injunction due to lack of personal jurisdiction). Defendants will make a fulsome personal jurisdiction argument in their forthcoming Motion to Dismiss and specifically reserve the right to do so.

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

rebutted due to Plaintiff's delay and the fact that any harm to Plaintiff (which Defendants vigorously contest exists) is readily compensable with money damages.

### A. Plaintiff's 8-Month Delay Negates A Finding of Irreparable Harm

A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm" negating a need for preliminary injunctive relief. *Oakland Trib., Inc. v. Chron. Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985); 4 McCarthy *Trademarks and Unfair Competition* § 31:32 (5th ed. 20226) (delay of a few weeks can negate irreparable injury). Here, Plaintiff admits to knowing about the Album in August 2025 when she consulted with counsel. Mot. at 27. Plaintiff then inexplicably waited for eight months before filing the Motion, all the while intentionally <u>attempting to associate herself</u> with Ms. Swift and the Album. This delay is <u>longer</u> than cases where allegations of irreparable harm were rejected at the preliminary injunction stage. *E.g.*, *Masangsoft Inc. v. Azua*, 2025 WL 3050217, at *5 (C.D. Cal. Aug. 27, 2025) (5-months); *Lamps Plus, Inc. v. Lamps Pro, LLC*, 2024 WL 4556963, at *7 (C.D. Cal. Oct. 23, 2024) (7-months); *Playboy Enters. v. Netscape Commc'ns. Corp.*, 55 F. Supp. 2d 1070, 1090 (C.D. Cal. 1999) (5-months, and citing cases with as little as 60-days).

Plaintiff's excuse for her unreasonable delay—allowing the "USPTO examination process to run its course" (Mot. at 27)—is non-sensical. First, the nonfinal office action occurred in November 2025 (four months before Plaintiff's Motion), and second the USPTO examination is still ongoing. Ninth Circuit precedent is clear that other proceedings do not provide an excuse for delay. *Jensen v. W. Irr. & Mfg., Inc.*, 650 F.2d 165, 168 (9th Cir. 1980) ("Patentee not permitted to wait silently until litigation became worthwhile[.]"); *Spiraledge, Inc. v. SeaWorld Ent., Inc.*, 2013 WL 3467435, at *5 (S.D. Cal. July 9, 2013) (replacing counsel and settlement discussions no excuse); *see also Car Body Lab Inc. v. Lithia Motors, Inc.*, 2021 WL 2652774, at *11 (S.D. Fla. June 21, 2021) (rejecting excuse based on TTAB proceeding).

### B. Any Purported Harm is Compensable, Not Irreparable

"Economic injury alone does not support a finding of irreparable harm, because

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

such injury can be remedied by a damages award." *ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015). Assuming Plaintiff could show she was actually injured (she cannot), there is nothing to suggest that money damages would be an insufficient remedy. Specifically, the harm Plaintiff claims—loss of customers, goodwill, and/or ability to control her business reputation (Mot. at 27-28)—can all be remedied by money damages. *Id.* at 1073-75; *Spiraledge*, 2013 WL 3467435, at *4.

Moreover, to satisfy *Winter*, Plaintiff must show irreparable harm is "*likely*, not a mere possibility." *Freelancer Int'l Pty. v. Upwork Glob., Inc.*, 851 F. App'x 40, 41 (9th Cir. 2021). Plaintiff has utterly failed to do so, relying solely on unsubstantiated claims that consumers have come to associate her Mark with someone else. *Id.* (finding conclusory statements of irreparable harm insufficient); *Real USFL, LLC v. Fox Sports, Inc.*, 2022 WL 1134487, at *11 (C.D. Cal. Apr. 14, 2022) (requiring "concrete" evidence of loss of control over business reputation and damage to goodwill). Plaintiff's declaration is <u>silent</u> as to any of her alleged injuries, pecuniary or irreparable. *See* Dkt. 16-40. That is because they do not exist. As such, it's unsurprising that, the only "evidence" Plaintiff points to—screenshots of Google searches run by Plaintiff's counsel—are speculative at best, do not show actual "harm," and have previously been rejected as sufficient evidence of irreparable harm. *Spiraledge*, 2013 WL 3467435, at *4 (noting that plaintiff "cited no authority indicating that irreparable injury may be found or presumed based upon positioning in Google searches"). Algorithmic results reflect consumer preference, not consumer confusion.

There simply is no irreparable harm here; denial of the Motion is mandated.

## III.   The Balance of Hardships Weighs Strongly Against An Injunction.

In evaluating the balance of hardships factor, courts must consider the impact on both parties. *Winter*, 555 U.S. at 24. Absent an injunction Plaintiff's business will remain unchanged; Defendants on the other hand would incur significant harm.

Where a plaintiff, like Ms. Flagg, has delayed seeking relief, the balance of hardships favors defendants. *See, e.g.*, *Real USFL*, 2022 WL 1134487, at *12 (denying

22

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

injunction where plaintiff delayed seeking relief while aware of defendant's investments); *Playmakers*, 297 F. Supp. 2d at 1285 (similar). This recognizes that a plaintiff should not be permitted to stand on the sidelines, watching a defendant make significant investments in products and services, only to belatedly attempt to stop the impact of those investments. *See, e.g.*, *Glow*, 252 F. Supp. 2d at 1005 (recognizing significant investment and delays that would result from product packaging modifications and lost sales weigh against injunctive relief); *Wild v. HarperCollins Publishers LLC*, 2013 WL 12137684, at *3 (C.D. Cal. Jan. 2, 2013). Plaintiff seeks to do just that. She admits she was aware of the Album in August 2025 and its release in October 2025; she admits she was aware of the August 2025 Application and the November 2025 USPTO nonfinal office action. Dkt. 16-40 ¶ 7. Yet she raised no alarm for months. Even worse, she actively tried to connect herself to the Album / Ms. Swift on social media, using Ms. Swift's intellectual property and littering Posts with hashtags related to Ms. Swift. Does this comport with Ms. Flagg's claim now that the threat to her mark is "existential"? Mot. at 28. Of course not.

While Plaintiff said nothing, filed nothing, and centered her brand on Ms. Swift's art, Defendants spent millions of dollars releasing an Album with an extensive, global marketing and branding campaign; creating, manufacturing, and marketing accompanying merchandise and related goods. Dorris Decl.¶ 13; Declaration of Joshua Doebler ("Doebler Decl.") ¶ 7; Declaration of Joseph Schmidt ("Schmidt Decl.") ¶ 15. Were a preliminary injunction to issue, the status quo would be <u>significantly</u> altered, and fundamental creative rights would be curtailed. Specifically, it would require Defendants to remove all Album and Album-related products from the physical and digital marketplace (both their own and third-party platforms), cancel sales, destroy goods, and most importantly, impose immeasurable harm to Ms. Swift's own First Amendment rights. Dorris Decl. ¶¶ 15-17; Doebler Decl. ¶¶ 10-13; Schmidt Decl. ¶¶ 8-14; *Caiz*, 382 F. Supp. 3d at 949 (musical albums are expressive works protected by the First Amendment). The hard costs of this loss of revenue and investment would

likely total in the tens of millions of dollars just in the first two years. Doebler Decl ¶ 14; Schmidt Decl. ¶¶ 12, 14. And this financial cost does not come close to that of stifling an artist's ability to create and share her work—it is impossible to put a price tag on that. Plaintiff's situation, on the other hand, would be unchanged.

This is not a situation of "self-inflicted" harm as Plaintiff claims. Mot. at 29. As explained throughout, the USPTO nonfinal office action is just that—nonfinal and subject to rebuttal; examination of the Application is ongoing; and as described above, the nonfinal office action should not be afforded weight in this proceeding. Nor does the fact that "Defendants have not yet toured in support of the release" (Mot. at 30) support an injunction. If anything, it counsels against one. *Real USFL*, 2022 WL 1134487, at *11; *ArcSoft, Inc.*, 153 F. Supp. 3d at 1071 ("The threat of irreparable harm must also be 'immediate' to warrant preliminary injunctive relief.").[13]

Given these realities, it is not surprising that Defendants have not identified a single case—and Plaintiff cites none—imposing the significant preliminary relief involving an artist's music and related goods that Plaintiff seeks here. The balance of hardships tips fully in Defendants' favor.

## IV.    The Public Interest Weighs Against An Injunction

"[I]f there is no likelihood of confusion among consumers, there is no public interest in granting the injunction." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 2007 WL 9733755, at *2 (C.D. Cal. Oct. 9, 2007). Where a movant— like Plaintiff—has not made a clear showing that she is entitled to any preliminary relief, the public interest is against imposing injunctions. *See, e.g.*, *Real USFL*, 2022 WL 1134487, at *12. Here, for the reasons detailed above, there is simply no likelihood

[13] None of the authority cited by Plaintiff (Mot. at 28-30) compels a different conclusion as (1) their facts vastly differ (*Cadence Design Systems*, involving a copyright matter; *Sajahtera*, involving a near-identical trademark; *Boldface*, involving an identical mark and evidence of plaintiff's investment of hundreds of thousands of dollars in its brand) or (2) actually supports Defendants (*Sardi*, affirming denial of injunction; *McCarthy* explicitly recognizing that when a plaintiff delays filing suit "harm to the defendant increases with the passage of time." McCarthy, § 30:51).

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

of confusion between Plaintiff's cabaret show and Defendants' Album and associated goods, so the public interest weighs against an injunction.

Further, where the impact of an injunction would significantly affect third parties (like here), the public interest is not served. *Id.* At a minimum, if forced to cease sales and recall the Album and its promotional materials, at least the following parties would be negatively and significantly affected: (1) co-writers, producers, mixers, and other royalty-based musicians who contributed to the Album, whose income in connection with the Album/songs would cease; (2) retailers, which would need to remove the Album from hundreds of stores and online; and (3) music streaming platforms, which would need to remove the Album. Dorris Decl. ¶ 15. The removal of music and related goods will also, of course, significantly impact millions who wish to listen to and/or purchase Ms. Swift's music. Given the commercial success of the Album (*supra* at 4), the impact of such removal cannot be overstated.[14] Plaintiff fails to acknowledge the harm an injunction would inflict on these parties, and the public interest weighs strongly against the relief Plaintiff seeks.

## V.    Any Bond Must Compensate Defendants for a Wrongful Injunction.

Because an injunction is unwarranted, the Court need not reach the issue of the bond amount. However, should the Court reach the issue, any bond must compensate Defendants for damages sustained in the event of a wrongful injunction. Fed. R. Civ. P. 65(c); *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2013 WL 12244286, at *2 (C.D. Cal. Feb. 19, 2013) (citing cases). As explained above, any injunction would cause Defendants to suffer substantial losses. Should a bond be necessary, this Court should hold a bond hearing to determine the appropriate amount. Plaintiff's attempt to skirt the bond requirement (Mot. at 30), must be rejected.

**CONCLUSION**

Plaintiff's Motion for a Preliminary Injunction should be denied.

---

[14] Plaintiff's caselaw (Mot. at 30-31) is inapposite (involving holdover licensees/franchisees, or an identical mark used with virtually identical software).

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Dated: May 6, 2026                    VENABLE LLP

                              By:    */s/ Max N. Wellman*
                                     Max N. Wellman
                                     J. Douglas Baldridge
                                     Katherine Wright Morrone

                                     Attorneys for Defendants Taylor Swift, TAS
                                     Rights Management, LLC, UMG Recordings,
                                     Inc., Bravado International Group
                                     Merchandising Services Inc.

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

26

# CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 25 pages, in compliance with the 25 pages set forth in Section VII(D) of this Court's Standing Order.

Dated: May 6, 2026             By:    */s/ Max N. Wellman*
                                             Max N. Wellman

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

27

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

I certify that on May 6, 2026, I caused a true and correct copy of the foregoing Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and accompanying supporting documents, to be served on counsel of record for Plaintiff via the Court's ECF system. Any documents filed provisionally under seal are being served on counsel of record for Plaintiff via alternative means.

Dated: May 6, 2026                                      By: /s/*Max N. Wellman*
                                                                  Max N. Wellman

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 3400
LOS ANGELES, CA 90067
310.229.9900

28

DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION