JAYMIE PARKKINEN (S.B. #318394)
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone:   (323) 919-3590
Email:        jp@prkknn.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MAREN FLAGG,<br><br>            Plaintiff,<br>      v.<br><br>TAYLOR SWIFT, et al.,<br><br>            Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>Assigned to Hon. Serena R. Murillo<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:     May 27, 2026<br>Time:    1:30 p.m.<br>Place:   Courtroom 5D (5th Fl.)<br>            350 W. First Street<br>            Los Angeles, CA 90012 |

**INTRODUCTION**

Defendants argue against themselves. They reach for *Rogers*, but their conduct rules it out. They tout their scale, but their scale is the problem. They say Plaintiff's claim is meritless, and that she should have brought it sooner. And they have been here before—on the other side. When UMG was the plaintiff in another trademark case, it argued that side-by-side comparison is the wrong test, that loss of brand control is irreparable harm, and that a defendant who proceeds "full speed ahead" after notice of infringement acts in bad faith. They now claim the opposite. Defendants are quick to enforce trademark law against others. They just will not apply it to themselves.

**ARGUMENT**

**I.    *ROGERS* DOES NOT APPLY**

The dispositive question under *Jack Daniel's Props. v. VIP Prods. LLC* is not whether a mark has expressive content—most marks do. 599 U.S. 140, 158 (2023). It is whether the mark functions "as a designation of source." *Id.* at 153. Defendants' conduct speaks for itself. They filed a trademark application asserting source-identifying use. *Punchbowl, Inc. v. AJ Press, LLC,* 90 F.4th 1022, 1031 (9th Cir. 2024) (application is "straightforward" evidence of trademark use). They repeatedly register album titles as trademarks and sue to enforce them. Exs. 10, 37[1]; *Jack Daniel's*, 599 U.S. at 160. And their own opposition describes their "global marketing and branding campaign." A branding campaign is textbook source-identifying activity. *Id.* at 156 (*Rogers* does not insulate marks used to "brand [a defendant's] goods").

Defendants' authorities do not save them. In neither *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192 (9th Cir. 2017), nor *Lost International, LLC v. Germanotta*, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025), did the defendant file a trademark application, maintain a litigation history of enforcing album titles as marks, or describe its own program as a "branding" campaign. Neither defendant faced a USPTO refusal of its trademark application as confusingly similar

---

[1] References to "Ex." are to Plaintiff's exhibits.

REPLY ISO P'S MPI

to a senior incontestable mark—the central fact here. Defendants' citation to *Toytrackerz LLC v. Koehler*, 2009 WL 2591329 (D. Kan. Aug. 21, 2009), is a straw man. Plaintiff does not argue that an application confers rights. She argues it is an admission of source-identifying use. *Betty's Foundation v. Trinity Christian*, 2021 WL 3046889 (C.D. Cal. Apr. 7, 2021), is also inapposite: it predates *Jack Daniel's* and *Punchbowl*, did not analyze whether an application is evidence of trademark use, and addressed the unrelated question of premature cancellation. *Rogers* does not apply.

## II.    DEFENDANTS HAVE NOT SHOWN UNCLEAN HANDS

### A.    Defendants Mischaracterize the Facts.

Plaintiff is an active performer and comedian whose creative identity has centered on the same premise since 2014: the gap between the glamorous fantasy of showgirl life and its unglamorous reality. She has presented that premise in *Las Vegas Weekly* columns, on stage, and on camera. Exs. 43–47. As Defendants' own exhibits show, a typical installment presents Plaintiff in showgirl attire doing something unglamorous: struggling to fit into a car in a large headdress, Dkt. 40-40; Exs. 46–47, taking out the trash, Dkt. 40-58, picking up after the dog, Dkt. 40-46.

When Defendants released an album presenting showgirls as glamorous, Plaintiff's longstanding premise acquired a prominent new foil. She responded to the glamorous archetype the way she always has—by making comedy about it. She posted videos online, but offered no goods or services through them, made no sales, claimed no affiliation, and did not pass off her brand as Defendants' or theirs as hers. She referenced Swift and her album because humorous commentary requires reference to what it comments on. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 588 (1994) ("Parody's humor, or in any event its comment, necessarily springs from . . . allusion to its object."). Congress has protected exactly this type of engagement. 15 U.S.C. § 1125(c)(3)(A)(ii). Plaintiff used hashtags referencing Swift alongside #redbull, Dkt. 40-63, #backstreetboys, Dkt. 40-69, and #corporatehumor, Dkt. 40-64. She used her own audio and drew from Swift, Meghan Trainor, Dkt. 40-72, and Billy Joel, Dkt. 40-

46. That is how social media works, and Defendants know it—their posts do the same. Ex. 56 (Swift using audio by GloRilla); Ex. 57 (Swift using audio by Chamillionaire).

Plaintiff also participated online as a fan, exactly how Defendants intended. The video Defendants now characterize as "infringement" used an album-cover filter and audio ***Defendants themselves*** created and distributed—used identically by more than 625,000 other fans. Ex. 55. Defendants cannot build a filter for fans, court its use, then call one fan's posts misconduct when they get sued.

Defendants claim Plaintiff never used the term "life of a showgirl" before their album. That is false. Plaintiff has used it for years, as Defendants' own exhibits show. Dkts. 40-2 at 21, 40-3 at 2, 5; Ex. 43 (2014: *A Night in The Life of a Showgirl at Sea*); Ex. 44 (2015: *The Secret Life of a Showgirl*); Ex. 45 (2024: "*Maren Wade: The Real, Raw and Unglamorous Side of The Glamorous Life of a Showgirl*"). They likewise call Plaintiff's podcast art a "dramatic rebrand." It is not. The green photography is from 2023 and appeared on materials promoting Plaintiff's show in 2024—a year before the album. Exs. 39–42, 58. Even Defendants' own "Historical Branding" exhibit shows the same color scheme (green, yellow, pink). Defendants saw Plaintiff's preexisting visual identity and assumed it was derivative of theirs. That is reverse confusion.

**B.     The Unclean Hands Defense Fails on Every Element.**

Unclean hands must be "scrutinized with a critical eye." *Coca-Cola Co. v. Koke Co. of Am.*, 254 U.S. 143, 145 (1920). Defendants must show four things by clear and convincing evidence: (1) wrongful conduct undertaken with bad intent, *Pinkette Clothing, Inc. v. Cosmetic Warriors Ltd.*, 894 F.3d 1015, 1029 (9th Cir. 2018); (2) bearing an "immediate and necessary" relation to the accrual of Plaintiff's cause of action, *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 932 (9th Cir. 2014); (3) that has not ceased, *Coca-Cola*, 254 U.S. at 147; and (4) that survives balancing against Defendants' own misconduct and the public interest, *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 350 (9th Cir. 1963). Defendants establish none.

***No misconduct.*** Unclean hands requires "wrongfulness, willfulness, bad faith,

4                                                    REPLY ISO P'S MPI

or gross negligence, proved by clear and convincing evidence." *Pinkette*, 894 F.3d at 1029. Defendants identify two categories of conduct: Plaintiff's podcast photography and her social media posts. The first collapses on the documentary record. Plaintiff's photography and color scheme predate the album by two years. That leaves the videos, through which Plaintiff offered no goods, made no sales, and claimed no affiliation. She performed her decade-old comedic premise in showgirl attire. The doctrine reaches conduct that "affirmatively demonstrate[s]" consumer deception, *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1178 (9th Cir. 2007); it does not reach ordinary social media posts recast as misconduct after litigation begins.

The intent element fails as well. "[T]he doctrine is unclean hands, not impure thoughts." *TrafficSchool.com, Inc. v. eDriver Inc.*, 653 F.3d 820, 834 (9th Cir. 2011). Bad intent requires specific intent "to deceive consumers" about source. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002). Even if Plaintiff sought to engage with public interest surrounding the album, "capitaliz[ing] on a market demand . . . does not indicate an intent to confuse." 3 McCarthy on Trademarks § 23:124. Engaging with a cultural phenomenon is not deception.

***No nexus.*** Even assuming misconduct, it must bear an "immediate and necessary" relation to the accrual of Plaintiff's cause of action. *Zaffina*, 762 F.3d at 932; *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1110 (C.D. Cal. 2010) (conduct must "directly infected the actual cause of action"). Had Plaintiff never posted the podcast or a single video, the evidence supporting this Motion would be identical. Plaintiff's claim derives from the similarity of the marks, which is what the USPTO evaluated to reach its refusal—not Plaintiff's social media. *Metro Publ'g v. San Jose Mercury News*, 861 F. Supp. 870 (N.D. Cal. 1994), does not apply. The plaintiff there modified its mark to copy defendant's, tainting the very rights it sought to enforce. *Id*. at 880. Plaintiff's mark is unchanged. *Cf. Monster Energy Co. v. Vital Pharms., Inc.*, 2025 WL 1111495, at *2 (9th Cir. 2025) (misconduct "too far afield").

***Conduct ceased.*** The defense also fails because the conduct ceased. A plaintiff's

REPLY ISO P's MPI

equity is judged "by the facts existing as they were when suit was begun, not…an earlier time." *Coca-Cola*, 254 U.S. at 147. When conduct ends before litigation, unclean hands is "preclude[d]." *Pilates, Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286, 314 (S.D.N.Y. 2000); 4 McCarthy § 31:55 (cannot invoke conduct "discontinued …prior to suit"). Plaintiff's posts stopped in October 2025—five months before suit.

***Balance favors Plaintiff.*** Whatever survives must be balanced against Defendants' own conduct and the public interest. *Republic Molding*, 319 F.2d at 350. On one side: podcast art using preexisting photography, and a few weeks of comedy videos, voluntarily ceased, with no documented harm. On the other: knowingly expanded exploitation of a designation the USPTO found confusingly similar and refused to register. In *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, the plaintiff's executives strategized to ***increase*** the consumer confusion on which plaintiff's trademark claim rested. 383 F.3d 110, 129 (3d Cir. 2004). The Third Circuit reversed, finding the lower court had "improperly weighted that [conduct] to the exclusion of the merits of [plaintiff's] claim and the public interest." *Id*. If a campaign to manufacture confusion could not carry the defense there, ordinary social media posts cannot carry it here.

## III.    THE *SLEEKCRAFT* FACTORS FAVOR PLAINTIFF

***Strength.*** Defendants do not contest their commercial strength. They document it. Opp. at 4. And they concede Plaintiff's mark is suggestive, which in a reverse confusion case against a commercially strong defendant, is dispositive. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021). Indeed, Plaintiff's mark is suggestive using Defendants' dictionary. "Confessions" connotes guilt or sin; neither "describes" Plaintiff's services. Defendants' crowded field argument fails. The analysis evaluates third-party ***trademark use***, not bare registrations. *Boldface Licensing v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1191 (C.D. Cal. 2013) ("third-party registrations are not probative of conceptual weakness without evidence that the marks were actually used in commerce"); 2 McCarthy § 11:89 ("mere citation of third

party registrations is not proof of third party uses for . . . showing a crowded field and relative weakness"). Defendants offer registrations across unrelated categories (SEO services, women's health) and expressive work titles that, under their *Rogers* theory, are not trademarks at all. Neither shows actual trademark use in the relevant field.

 ***Similarity.*** Defendants build their argument on a side-by-side comparison. "It is axiomatic in trademark law that 'side-by-side' comparison is not the test." *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980). Defendants know it. UMG has told another court that "side-by-side comparison" is "an incorrect test." Ex. 54 at 12. True, because marks "must be compared in the light of what occurs in the marketplace, not in the courtroom." *Red Bull GmbH v. Matador Concepts, Inc.*, 2006 WL 4749923, at *7 (C.D. Cal. Jan. 13, 2006). These are not bottles of ketchup on a shelf. The marks live in Google suggestions, search results, and plain text. As UMG explained: "differences are not present . . . when the parties' marks appear in text on their websites, social media, [or] . . . press coverage." Ex. 54 at 13. Because Defendants' application covers standard characters, which are "not limited to any particular rendition," *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014), the USPTO properly evaluated the marks as text and refused registration. Comparison of visual renditions makes sense only when the marks are consistently presented one way. *Id.* at 1128 n.7. The record here shows multiple variations of each.

 Defendants' argument that Swift's accompanying likeness dispels confusion is misplaced. *First*, the accompanying-mark logic does not hold in text channels—Google autocomplete, social media text—which do not carry Swift's likeness. *Second*, the Ninth Circuit has rejected the theory that house marks cure confusion in reverse confusion cases. *Ironhawk*, 2 F.4th at 1164-65. A junior user's fame is the ***engine*** of confusion, not the antidote. *Id.*; *Marketquest Grp. v. BIC*, 2011 WL 5360899, at *9 (S.D. Cal. Nov. 7, 2011) (use of "celebrity housemark" heightens confusion).

 Defendants contend lead words dominate, but the confusion evidence shows the opposite. In every instance, consumers retained "of a Showgirl" and swapped only the

Reply ISO P's MPI

lead words. Exs. 16–32. Defendants do the same. Ex. 14 at 3 ("Official Release Party of a Showgirl"). Defendants claim a six- and seven-syllable difference is meaningful, but the case they cite refutes them. *In re National Data Corp.*, 753 F.2d 1056, 1060 (Fed. Cir. 1985) (six- and seven-syllable marks similar). Their "sharp 'C'" argument makes no difference. *See Crown Radio v. Soundscriber*, 506 F.2d 1392, 1393 (C.C.P.A. 1974). Defendants only compare "Life" to "Confessions," but must compare the marks "in their entirety." *Pom*, 775 F.3d at 1127-28. As wholes, both share an inner view of showgirl life—exactly how Swift describes the album. Wellman Decl. ¶ 78; *CytoSport v. Vital Pharms.*, 617 F. Supp. 2d 1051, 1066 (E.D. Cal. 2009).

***Proximity.*** This factor asks whether ordinary consumers would perceive a relationship between the goods. *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012) (direct competition not required). Consumers expect brands to extend across categories. 3 McCarthy § 24:8 ("Consumers are used to the notion of a trademark owner in market A licensing its mark to sometimes far-flung markets X, Y and Z."). The licensing of musicians' marks into staged theatrical entertainment is familiar to consumers. *E.g.*, *MJ The Musical*; *Jersey Boys*; *We Will Rock You*.

***Consumer care.*** This factor evaluates the "reasonably prudent consumer," not a party's fans. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). Even so, Defendants' own evidence cuts against them. It describes an eager fanbase that analyzes "clues, hints, and secret messages in everything." Dkt. 40-77 at 8. Consumers trained to hunt for connections everywhere are ***more*** likely to connect Plaintiff's similarly named showgirl brand to Defendants, not less. *See Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 170-71 (2d Cir. 1991).

***Channels and expansion.*** Defendants' only response regarding channels is that Plaintiff has not recently posted on her website. That is not the test. Plaintiff's brand is also expanding. A new edition of her book and more podcast episodes are planned. Plaintiff Decl. ¶ 2. Live shows are paused due to personal safety concerns. *Id*. ¶ 3.

***Actual confusion.*** When UMG was the plaintiff, it told the court that "actual

confusion need not be shown" and "when such proof exists, very little proof of actual confusion is necessary." Ex. 54 at 15. It also asserted that a demand for survey evidence at the preliminary injunction stage "fails." *Id*. at 16. Defendants take the opposite position here. The law has not changed—only Defendants' side of the caption has.[2]

**Intent.** Defendants argue Plaintiff has not shown their intent to associate with her brand. That is the wrong test. Reverse confusion intent is established where the defendant "culpably disregarded the risk of reverse confusion." *Marketquest Grp. v. BIC*, 862 F.3d 927, 934-35 (9th Cir. 2017). Their argument that their use is "objectively fair" cannot survive the USPTO refusal. Ex. 53 at 32 (UMG: defendant "proceed[ing] full speed ahead despite [notice of infringement] is evidence of . . . bad faith").[3]

All doubts "are resolved in favor of the senior user." *Dr. Seuss Enters. v. Penguin Books USA*, 109 F.3d 1394, 1404 n.14 (9th Cir. 1997).

## IV.    DEFENDANTS' IRREPARABLE HARM ARGUMENTS FAIL

**Delay.** Delay rebuts the harm presumption only where it is "unexplained." *2die4kourt v. Hillair Capital Mgmt., LLC*, 2016 WL 4487895, at *7 (C.D. Cal. Aug. 23, 2016). The timeline is explained. Plaintiff consulted counsel when Defendants announced the album in August 2025, but believed at the time that an album title alone was beyond trademark law's reach. Plaintiff Decl. ¶ 4. As Defendants emphasize, the USPTO's November 5 refusal was nonfinal and the issues potentially curable. A reasonable person could expect Defendants to attempt to cure, but they did not. On March 3, 2026, Defendants suspended their application and continued using the refused designation. The case crystallized then. *See Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 462 (4th Cir. 1996). Plaintiff retained counsel and filed suit that same month.

Defendants' position that Plaintiff should have sued in August is irreconcilable

---

[2] Defendants' evidentiary objections fail. *See* Pl.'s Resp. to Defs.' Objs., filed herewith.

[3] Defendants suggest they will challenge jurisdiction over Swift and TAS, and that the absence of jurisdiction over them is a ground to deny relief. Not so. Defendants do not challenge jurisdiction over UMG or Bravado, which alone is sufficient to support relief. Fed. R. Civ. P. 65(d)(2) (injunctions bind parties and those in concert with them).

REPLY ISO P'S MPI

with their *Rogers* argument. A claim ripens not on first awareness of a mark but when it "became actionable and provable." *Champagne Louis Roederer v. J. Garcia Carrion, S.A.*, 569 F.3d 855, 859 (8th Cir. 2009). Otherwise, mark owners would be "hoisted upon the horns of an inequitable dilemma—sue immediately and lose . . . or wait and be dismissed for unreasonable delay." *Id.*; *Arc of California v. Douglas*, 757 F.3d 975, 991 (9th Cir. 2014) (waiting "is prudent rather than dilatory"). The defense is also available "only [to] a party acting in good faith." *Nat'l Customer Eng'g, Inc. v. Lockheed Martin*, 1997 WL 363970, at \*5 (C.D. Cal. Feb. 14, 1997). Continued mark use after registration refusal is not good faith. *Id.*; *see also* Ex. 53 at 32.

    ***Compensability.*** Reverse confusion is not about lost revenue. It is about erasure. The senior user's mark is displaced by the junior user's market saturation until the senior user's brand is irreversibly subordinate. *Ironhawk*, 2 F.4th at 1160. Defendants characterize the search-result evidence as "consumer preference, not consumer confusion." The distinction collapses in a reverse confusion case. When the marks are similar enough to compete for space (e.g., on Google), consumer engagement at Defendants' scale does not coexist with the senior user's mark—it overwrites it. Erasure is not an economic harm. Damages cannot fix it.

    Quality issues compound the injury. *Fuddruckers, Inc. v. Doc's B.R. Others*, 826 F.2d 837, 845 (9th Cir. 1987). That harm is acute where the infringing product is "of poor quality, or simply not worth the price." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971). Consumers rate the album 3.7 out of 10. Ex. 52. The merchandise draws repeated quality complaints. Exs. 48–51. Plaintiff cannot correct these issues, but through mark similarity, is tied to them. Ex. 53 at 34.

## V.    THE BALANCE OF HARDSHIPS FAVORS PLAINTIFF

    Defendants frame the injunction as disrupting the status quo. It is not. The relevant status quo is "the last uncontested status which preceded the pending controversy," *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)—i.e., before the album. Defendants also invoke catastrophic consequences

REPLY ISO P's MPI

unmoored from the actual scope of relief. Defendants' merchandise is sold exclusively through their own website, making compliance largely a single channel adjustment. The injunction merely pauses use of the mark. It does not require inventory destruction. It does not reach Swift's broader catalog or career, the eleven album tracks not titled with the contested designation, or any planned tour (there is none). Defendants' concerns are overstated. Ex. 53 at 36 (UMG: defendant "would not be substantially harmed . . . it would simply have to change the name under which it offers [services]"). "[R]elative size of the respective businesses . . . [is] relevant to the potential hardship." *Sardi's Rest. Corp. v. Sardie*, 755 F.2d 719, 726 (9th Cir. 1985). Crediting Defendants' projected loss, that figure is **0.1%** of UMG's 2025 revenue alone.[4] *See Home Comfort v. Ken Starr, Inc.*, 2018 WL 3816745, at *6-7 (C.D. Cal. July 24, 2018) (lost profits merit little consideration). Plaintiff, however, faces erasure of the only brand she has.

## VI.    PUBLIC INTEREST FAVORS RELIEF; BOND SHOULD BE WAIVED

Defendants' public interest and bond arguments share the same defect: both treat commercial scale as a reason against trademark remedies, and both would render reverse confusion nugatory. If wide popularity defeated the public interest in injunctive relief, every successful infringer would be immune. Further, the Ninth Circuit holds courts may order nominal bond or none at all. *GoTo.com*, 202 F.3d at 1211 ($25,000 bond against $20M request). A bond set to Defendants' scale would exceed Plaintiff's means by orders of magnitude, deny the relief Congress restored, 15 U.S.C. § 1116(a), and nullify application of reverse confusion. *Boldface*, 940 F. Supp. 2d at 1200 (rejecting bond that "would essentially deny...the injunction"). The Lanham Act would protect smaller plaintiffs on paper but price them out of court. That cannot be the law.

## CONCLUSION

The Motion should be granted. A preliminary injunction should issue.

---

[4] Defendants foreground projected losses but provide no annual revenue figures against which to measure them. Plaintiff's analysis thus proceeds from public data, including revenue of UMG's parent. (UMG revenue: $14.7B (Ex. 12). "Tens of millions" over two years, estimated at $30M ÷ 2 = $15M/year. $15M ÷ $14.7B = 0.1%).

REPLY ISO P'S MPI

DATED: May 13, 2026                    Respectfully submitted,

                                        _/s/ Jaymie Parkkinen_
                                         Jaymie Parkkinen

                                        *Counsel for Plaintiff*

REPLY ISO P'S MPI

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 10 pages, in compliance with the 10-page limit set forth in Section VII(D) of this Court's Standing Order.

DATED: May 13, 2026                    _/s/ Jaymie Parkkinen_
                                                    Jaymie Parkkinen

                                                    *Counsel for Plaintiff*