JAYMIE PARKKINEN (S.B. #318394)
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone:  (323) 919-3590
Email:        jp@prkknn.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAREN FLAGG,<br><br>        Plaintiff,<br><br>   v.<br><br>TAYLOR SWIFT, et al.,<br><br>        Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>Assigned to Hon. Serena R. Murillo<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' EVIDENTIARY OBJECTIONS, DKT. 40-85**<br><br>Date:    May 27, 2026<br>Time:   1:30 p.m.<br>Place:   Courtroom 5D (5th Fl.)<br>           350 W. First Street<br>           Los Angeles, CA 90012 |

**INTRODUCTION**

Together with her Reply in Support of Motion for Preliminary Injunction, Plaintiff Maren Flagg submits this Response to Defendants' evidentiary objections to twelve exhibits. Dkts. 16-17–16-34. Defendants captioned that filing as "Exhibit 84" to the declaration of their counsel Max N. Wellman. Dkt. 40-85 (hereinafter "Exhibit 84"). In substance, however, it is no exhibit at all: it is an eleven-page memorandum of points and authorities replete with case citations, signal phrases, footnotes, and merits argument appended to a declaration that, under Local Rule 7-7, must "contain only factual, evidentiary matter." That mismatch between form and content raises threshold concerns the Court should address before reaching the objections themselves. Those objections, regardless, fail on the merits.

This Response proceeds in four parts. Part I addresses the form of Defendants' filing. Part II sets out the governing evidentiary standard at the preliminary injunction stage. Part III responds to each objection. Part IV addresses Defendants' own submissions under that same standard.

## I.    THE FORM OF OBJECTIONS RAISES THRESHOLD CONCERNS

Local Rule 7-7 provides that "[d]eclarations shall contain only factual, evidentiary matter and shall conform as far as possible to the requirements of F.R.Civ.P. 56(c)(4)." C.D. Cal. L.R. 7-7. Legal argument is not factual evidentiary matter, and a brief is not an exhibit. Exhibit 84 is, by its own description, eleven pages of legal argument disputing Plaintiff's evidence—material that belongs in an opposition brief, not appended to a declaration. Tellingly, Defendants' opposition itself does not analyze the twelve exhibits at issue; the analytical work of addressing Plaintiff's evidence is offloaded entirely to Exhibit 84. The Court's Standing Order limits briefs to twenty-five pages. Standing Order § VII(D). Defendants' opposition consumed every one of them. Opp. at 27. Taken together, the two filings amount to thirty-six pages of opposition briefing, and the Court should treat them accordingly.

P'S RESPONSE TO OBJS.

## II.    THE GOVERNING STANDARD AT THIS PRELIMINARY STAGE

### A.    Hearsay Is Permitted.

The Ninth Circuit has long held that a district court "may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). That deference reflects the nature of the inquiry itself: preliminary injunctions are "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981); *see Disney Enters., Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017) ("The Court is permitted to consider inadmissible evidence in deciding a motion for a preliminary injunction."). Consistent with that principle, courts in this District routinely overrule evidentiary objections at this stage. *Juanita's Foods v. Dominguez Family Enter., Inc.*, 2022 WL 18278390, at *11 (C.D. Cal. Oct. 17, 2022); *Arcsoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1074 n.9 (N.D. Cal. 2015) (overruling evidentiary objections at preliminary injunction stage (citing *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013))); *see also Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc).

The cases Defendants invoke to exclude anonymous social media evidence as stale or inadmissible in fact did the opposite: they admitted such evidence and weighed it. *GoSMiLE, Inc. v. Levine*, 769 F. Supp. 2d 630, 647 (S.D.N.Y. 2011) (admitting anonymous online consumer reviews as non-hearsay under Fed. R. Evid. 803(3)); *Good Meet Project v. Good Meat, Inc.*, 716 F. Supp. 3d 783, 801 (N.D. Cal. 2024) (weighing confusion evidence). Nor is Plaintiff's evidence stale. It is contemporaneous with Defendants' use of the mark—running from August 2025 through March 2026, with suit filed the same month.

### B.    The Posts Are Not Hearsay.

The hearsay rule reaches only statements offered "to prove the truth of the matter

P'S RESPONSE TO OBJS.

asserted." Fed. R. Evid. 801(c). These posts are not. They are offered to show that consumers refer to Defendants' product by Plaintiff's mark and otherwise treat the two marks as interchangeable. The probative fact is the consumer's use of Plaintiff's mark in connection with Defendants' product—not the truth of any proposition embedded within the post. That is settled law in this Circuit. *Lahoti v. VeriCheck, Inc.*, 636 F.3d 501, 509 (9th Cir. 2011) (consumer statements about junior user's website admissible); 3 McCarthy on Trademarks § 23:15 (5th ed.) (collecting cases). Rule 803(3) provides an independent ground for admission. Statements of "then-existing state of mind" are admissible. Fed. R. Evid. 803(3). Each post captures the user's then-existing impression of the marks as interchangeable.

### C.     The "Fanbase" Framing Misstates the Test.

Defendants object to Plaintiff's evidence because certain social media users are "not part of Ms. Swift's fanbase, and [are] therefore not indicative of consumers in the relevant purchasing public." That is not the law. The relevant consumer is the "reasonably prudent consumer" in the marketplace. *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 986 (C.D. Cal. 2002) (cited by Defendants, Opp. at 11); *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). And in a reverse confusion case, the question is whether the consuming public may perceive the senior user's brand as derivative of the junior user's—not whether the consumer happens to be a fan. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1160 (9th Cir. 2021).

## III.     RESPONSE TO EACH OBJECTION

### A.     Exhibit 16 (Dkt. 16-17).

The post is offered not for any truth it asserts, but to show that on the very day Defendants announced their album, the user's father encountered the announcement and processed it as Plaintiff's mark. That is textbook consumer substitution of one mark for the other—admissible under Fed. R. Evid. 801(c) and independently under Rule 803(3) as state-of-mind evidence. *See* Part II.B. The post shows three points simultaneously: that the marks are similar, that consumers perceive them as such, and

4                                    P'S RESPONSE TO OBJS.

that confusion in fact occurred. Defendants do not contest the depiction. They reframe it, insisting the user is merely poking fun at her father for being out of touch with pop culture. That reframing is no defense. A daughter poking fun at her father for confusing the marks is *still* a father confusing the marks. Defendants' own reading thus confirms, rather than diminishes, the post's evidentiary value.

### B.    Exhibit 17 (Dkt. 16-18).

A consumer used Plaintiff's mark as a caption to an image of Swift on the day of Defendants' album release. The post is offered not for any truth it asserts but to show how a consumer understood and (mis)used the marks. It is admissible under Fed. R. Evid. 801(c) and, as a record of the user's then-existing impression of the marks, independently under Rule 803(3). *See* Part II.B; *Lahoti*, 636 F.3d at 509. The post demonstrates that consumers find the marks similar enough to use interchangeably and that the two carry the same commercial impression.

### C.    Exhibit 18 (Dkt. 16-19).

Defendants' "mistyped hashtag" framing requires the user to have mistyped not once but twice—first as "#COAS" (Plaintiff's own abbreviation) and again as "#confessionsofashowgirl." The far more natural reading is the correct one: a consumer used Plaintiff's mark, and Plaintiff's own shorthand, to refer to Defendants' album. The post is offered not for any truth it asserts but to show how a consumer used the marks. *See* Part II.B. Defendants point out that the same user tagged @taylorswift13, "indicating an understanding of this Album's source." That observation cuts against them. It confirms the harm. A consumer who can identify the formal source of a product yet still reaches for Plaintiff's mark to describe and index it is confusing the marks.

### D.    Exhibit 19 (Dkt. 16-20).

A consumer used "Confessions of a Showgirl" to refer to Defendants' album in a December 14, 2025 post mocking it as "a red herring of a flop year." That is Plaintiff's registered mark, verbatim, used to name Defendants' product. The post is not offered

P'S RESPONSE TO OBJS.

to prove the album was a flop. It is offered to show how a consumer used and understood the marks. It is admissible under Fed. R. Evid. 801(c) and, as a record of the user's then-existing impression of the album, independently under Rule 803(3). *See* Part II.B.

Defendants respond that the post "does not mention the Plaintiff, any of the Defendants, or the Album." That cannot be squared with the record. The post was made in response to news that the Kansas City Chiefs had been eliminated from playoff contention. Travis Kelce (Swift's fiancé) plays for the Chiefs. Wellman Decl. ¶ 78 (Swift announcing her album on Kelce's *New Heights* podcast); Dkt. 40-77 at 17 (photo of Swift in Chiefs sweater). The consumer is unmistakably referencing Defendants' album. Defendants' alternative reading is not credible. The fanbase point is answered in Part II.C.

### E.      Exhibit 20 (Dkt. 16-21).

On August 30, 2025, two weeks after the album announcement, the user publicly asked what had happened to "the much anticipated drop of 'Confessions of a showgirl.'" The phrasing anchors the reference in time: the album had just been announced; Swift's engagement, also referenced in the post, reportedly occurred on August 26, 2025, a mere four days before the post; the "much anticipated drop" describes Defendants' as-yet-unreleased album. The user used Plaintiff's mark to name it. The post is offered to show how the marks are used and understood, not for the truth of any embedded proposition. Fed. R. Evid. 801(c), 803(3); *see* Part II.B.

### F.      Exhibits 21–22 (Dkts. 16-22, 16-23).

A consumer recorded a video about Defendants' album, overlaid Plaintiff's registered mark on the screen as her chyron, and spoke Plaintiff's mark aloud as the album's title. That is not a typo. The post is offered to show how a consumer used and understood the marks. Fed. R. Evid. 801(c), 803(3); *see* Part II.B.

Defendants' staleness and fanbase objections fare even worse here. The post is two days after the album's release—the freshest possible evidence of consumer

reception. And the user listened to the album, formed a view, and recorded a video about it. By Defendants' fanbase logic, she should be excluded from the relevant consumer population because she did not like the album. That, plainly, is not the test. *See* Part II.C.

**G.  Exhibits 23–24 (Dkts. 16-24, 16-25).**

A consumer posted a TikTok video about Defendants' album and tagged it with #confessionsofashowgirl. This is admissible under Fed. R. Evid. 801(c) and 803(3) as evidence of how consumers use the similar marks. *See* Part II.B.

**H.  Exhibits 25–26 (Dkts. 16-26, 16-27).**

The analysis tracks Exhibits 23–24, and the post is admissible on the same grounds. The fanbase point is answered in Part II.C. Defendants further offer a bare URL to a separate post by the same user, purportedly to demonstrate that she is "not a member of Ms. Swift's fanbase." But the URL arrives unaccompanied—no declaration, no date, no authenticating context of any kind. An objection cannot rest on a record this thin.

**I.  Exhibits 27–28 (Dkts. 16-28, 16-29).**

A consumer tagged a post about Defendants' album with #confessionsofashowgirl. This is admissible under Fed. R. Evid. 801(c) and 803(3) as evidence of how consumers use the similar marks. *See* Part II.B. Defendants return once more to the fanbase theory, seizing on the user's remark that "[o]bviously, her music is not my thing." That a confused consumer dislikes Defendants' music does not make her any less confused—nor any less a consumer. The argument is answered in Part II.C.

**J.  Exhibits 29–30 (Dkts. 16-30, 16-31).**

A consumer posted an Instagram reel set to a track from Defendants' album, and tagged it with Plaintiff's mark. The exhibit fits the same pattern documented in Exhibits 23–28 and is admissible on the same grounds: Fed. R. Evid. 801(c) and 803(3), as evidence of how consumers use the similar marks. *See* Part II.B.

P'S RESPONSE TO OBJS.

### K.      Exhibits 31–32 (Dkts. 16-32, 16-33).

A social media marketing account referred to Defendants' album announcement as the "Confessions of a Showgirl Announcement"—not only in the written caption but spoken aloud on camera in the accompanying video. The exhibit is admissible on the grounds set out for Exhibits 23–30 and shows a consumer using Plaintiff's mark to identify Defendants' product. *See* Part II.B. Defendants' "typo" theory founders on a simple fact: a speaker cannot mistype words she is saying out loud.

### L.      Exhibit 33 (Dkt. 16-34).

Defendants argue that the YouTube user's account has limited posting history and that the comment the user posted was "edited." Neither contention bears on admissibility. The "(edited)" indicator on YouTube signals only that a comment has been modified at some point in time; it carries no implication that the substance changed, and Defendants offer nothing to suggest it did. Defendants' footnote dismissing the surrounding YouTube video as "full of falsehoods and inaccuracies" is wholly unsupported and beside the point. It concerns content distinct from the comment itself. The comment is what matters, and its substance is unambiguous: a consumer who had attended Plaintiff's show stated publicly that she "was confused by Taylor Swift['s] album title." That is direct percipient testimony of actual confusion—precisely the evidence courts look for, from precisely the kind of witness best positioned to give it. *Lahoti*, 636 F.3d at 509.

## IV.      THE STANDARD DEFENDANTS URGE WOULD EXCLUDE THEIR OWN EVIDENCE

Plaintiff maintains that hearsay and authentication do not bar consideration of either party's exhibits at the preliminary injunction stage, and does not invoke that principle selectively. Should the Court nevertheless embrace the heightened standard Defendants press against Plaintiff's evidence, the same standard must apply with equal rigor to Defendants' own submissions—including the rebuttal exhibits attached to the Wellman Declaration (Exs. 85–89) and the substantive declarations of John R. Dorris,

Jr. (Dkt. 40-95), Joshua Doebler (Dkt. 40-96), and Joseph Schmidt (Dkt. 40-97). Each is riddled with material that Defendants' own standard would readily exclude:

- ***Speculation and lay opinion about a third party's subjective experience.*** Dorris attests that an injunction "stifling [the] expressive works" of Swift would be "devastating and immeasurable" to her, Dorris Decl. ¶ 17—yet Swift herself has offered no such testimony, and Dorris does not purport to relay any statement of hers. *See also id.* ¶ 14.

- ***Hearsay.*** Dorris recites that "[i]t was recently reported that Ms. Swift is the most streamed artist of all time on Spotify," citing a press release. Dorris Decl. ¶ 15 n.1. The press release is not in evidence, has not been authenticated, and is offered for the truth of what it reports—quintessential hearsay under Fed. R. Evid. 801(c). *See also id.* ¶ 6; Schmidt Decl. ¶¶ 4, 11.

- ***Speculative projections.*** Schmidt projects revenue losses two years into the future, while conceding in the same breath that "[t]his projection may be updated as Republic receives further information." Schmidt Decl. ¶ 14. The declarant identifies no methodology, no expert qualification, and no factual inputs that would permit the Court to test the projection's reliability. Conclusory projections untethered from foundation will not do. *See also id.* ¶ 12; Doebler Decl. ¶¶ 12, 14.

- ***Lay opinion on legal conclusions.*** Dorris labels Plaintiff's use of Swift's music as "commercial," Dorris Decl. ¶ 19—but "commercial use" is a legal conclusion, not a fact a lay witness is competent to declare. *See also id.* ¶¶ 20-21.

No standard can fairly exclude consumer posts as hearsay while admitting executive declarations that depend on the same—or greater—defects.

## CONCLUSION

Defendants' evidentiary objections should be overruled, and Plaintiff's exhibits considered on the merits. To the extent the Court applies the heightened standard Defendants urge, however, that standard must be applied symmetrically.

DATED: May 13, 2026              Respectfully submitted,

                              */s/ Jaymie Parkkinen*
                                Jaymie Parkkinen

                            *Counsel for Plaintiff*

                         P'S RESPONSE TO OBJS.