**VENABLE LLP**
Max N. Wellman (CA SBN 291814)
 mwellman@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

J. Douglas Baldridge (*Pro Hac Vice*)
 jbaldridge@venable.com
Katherine Wright Morrone (*Pro Hac Vice*)
 kwmorrone@venable.com
600 Massachusetts Avenue NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

Maria R. Sinatra (*Pro Hac Vice*)
 mrsinatra@venable.com
151 W. 42nd Street
New York, NY 10036
Telephone: (212) 370-6247
Facsimile: (212) 307-5598

Attorneys for Defendants Taylor Swift, TAS Rights Management, LLC, UMG Recordings, Inc., Bravado International Group Merchandising Services Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAREN FLAGG, an individual,<br><br>                     Plaintiff,<br><br>     v.<br><br>TAYLOR SWIFT, an individual; TAS RIGHTS MANAGEMENT, LLC, a Tennessee limited liability company; UMG RECORDINGS, INC., a Delaware corporation; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES INC., a California corporation; and DOES 1-25,<br><br>                     Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:  October 7, 2026<br>Time:  1:30 PM<br>Place:  Courtroom 5D (5th Fl.)<br>          350 W. First Street<br>          Los Angeles, CA 90012 |

**VENABLE LLP**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 7, 2026 or as soon thereafter as the matter may be heard before the Honorable Serena Murillo, in Courtroom 5D (5th Fl.) of the First Street U.S. Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendants Taylor Swift ("Ms. Swift"); TAS Rights Management, LLC ("TASRM"); UMG Recordings, Inc. ("UMG"); and Bravado International Group Merchandising Services Inc. ("Bravado") (collectively, "Defendants"), will and hereby do move to dismiss the First Amended Complaint ("Amended Complaint" or "FAC") (Dkt. 50) filed by Plaintiff Maren Flagg ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2).

This Motion is made on the following grounds:

1. **Fed. R. Civ. P. 12(b)(6) (All Defendants)**. Plaintiff's Amended Complaint should be dismissed for its failure to state a claim upon which relief can be granted. As a threshold matter, Plaintiff's claims should be dismissed under the *Rogers v. Grimaldi* doctrine as *The Life of a Showgirl* album (the "Album") is an expressive work protected by the First Amendment. Even if *Rogers* is not applied, Plaintiff still fails to plausibly allege any likelihood of confusion between Plaintiff's services in connection with her trademark and Defendants' Album and related promotional material. Plaintiff's allegations of vicarious and contributory Lanham Act liability (while not separate counts) should also be dismissed, as Plaintiff has not made factual allegations sufficient to support those claims and has failed to establish any direct trademark infringement liability required for secondary liability to attach.

Additionally, Plaintiff's Amended Complaint still fails to state a California Unfair Competition Law ("UCL") claim because: (1) Plaintiff seeks to impermissibly apply it extraterritorially, citing insufficient and largely false factual allegations that the complained of conduct emanated from California or resulted in harm to Plaintiff there; and (2) Plaintiff fails to plead any anti-competitive acts as required under the

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

UCL "unfair" prong, and instead merely rephrases and relies upon the inapposite alleged conduct from its infringement claims.

2.    **Fed. R. Civ. P. 12(b)(2) (Defendants Taylor Swift and TAS Rights Management, LLC).** Plaintiff's Amended Complaint should also be dismissed as to Ms. Swift and TAS Rights Management LLC because it fails to allege sufficient facts supporting personal jurisdiction in California. Plaintiff's allegations are conclusory, inaccurate, and fail to establish general or specific jurisdiction over these Defendants.

Pursuant to Local Rule 7-3, counsel for Defendants held a meet and confer with Plaintiff's counsel about the issues raised in this Motion on June 22, 2026. Plaintiff declined to withdraw her Amended Complaint, thus Court intervention is required to resolve this Motion.

In support of the Motion, Defendants also submit the accompanying Supplemental Declaration of John R. Dorris, Jr. ("Dorris Decl."), the Declaration of Daniel Getz ("Republic Decl."), the Declaration of Matt Young ("Bravado Decl."), and Request for Judicial Notice ("RJN"). The RJN asks that the Court take notice of generally known public materials not subject to reasonable dispute that are relevant to the instant Motion, including dictionary definitions, United States Patent and Trademark Office ("USPTO") materials, images of the Album and promotional merchandise incorporated into the Amended Complaint by reference, printouts from publicly available websites, and court records. In the RJN, Defendants detail authority for why judicial notice of each of the materials is proper at the motion to dismiss stage.

Additionally, pursuant to L.R. 7-3, enclosed herewith is the Declaration of Max N. Wellman ("Wellman Decl.") detailing Defendants' compliance with the local rule conference of counsel prior to filing motions requirement.

A proposed order granting Defendants' Motion is simultaneously submitted to the Court pursuant to L.R. 5-4.4. and the Court's Standing Order for Civil Cases III.C.

VENABLE LLP

2

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Dated: June 30, 2026                    VENABLE LLP

                                By:    */s/ Max N. Wellman*
                                       Max N. Wellman
                                       J. Douglas Baldridge
                                       Katherine Wright Morrone
                                       Maria R. Sinatra

                                       Attorneys for Defendants Taylor Swift, TAS
                                       Rights Management, LLC, UMG Recordings,
                                       Inc., Bravado International Group
                                       Merchandising Services Inc.

**VENABLE LLP**

3

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

FACTUAL BACKGROUND AND ALLEGATIONS .............................................. 2

    A.   Plaintiff's Alleged Trademark and Services ............................... 2

    B.   Plaintiff Is One of Many Using "CONFESSIONS OF A," "OF A SHOWGIRL," and/or "SHOWGIRL" ................................... 3

    C.   Plaintiff's Conclusory and Inaccurate Allegations ..................... 4

LEGAL STANDARDS ........................................................................................ 7

ARGUMENT ..................................................................................................... 8

    I.   The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(6). ................................................................................ 8

    A.   Plaintiff's Claims are Barred by the First Amendment .............. 8

    B.   Plaintiff Still Fails to Plausibly Allege Likelihood of Confusion ............................................................................... 10

    C.   Plaintiff's New Secondary Liability Allegations Are Insufficient. ................................................................................ 14

    D.   Plaintiff's UCL Claim Still Fails As a Matter of Law .............. 15

        1.   The UCL Does Not Apply Extraterritorially .................. 16

        2.   Plaintiff's "Unfair" Allegations Fail as a Matter of Law 18

    II.   The Court Lacks Personal Jurisdiction Over Ms. Swift and TASRM 19

    A.   There is No General Jurisdiction Over Ms. Swift or TASRM .. 19

    B.   Specific Jurisdiction over Ms. Swift and TASRM is Also Lacking ................................................................................... 20

CONCLUSION ................................................................................................. 25

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adidas Am., Inc. v. Cougar Sport, Inc.*,
   169 F. Supp. 3d 1079 (D. Or. 2016)....................................................................24

*Agher v. Envoy Air, Inc.*,
   2018 WL 6444888 (C.D. Cal. Oct. 12, 2018) .......................................................19

*Alcon Vision, LLC v. Lens.com, Inc.*,
   2020 WL 4810778 (E.D.N.Y. Aug. 11, 2020) ...............................................22, 23

*Aliya Medcare Fin. LLC v. Nickell*,
   156 F. Supp. 3d 1105 (C.D. Cal. 2015)................................................................16

*AMDL Collections, Inc. v. Kleeger Prods., LLC*,
   2022 WL 19569518 (C.D. Cal. Sept. 22, 2022)....................................................21

*Applied Underwriters, Inc. v. Lichtenegger*,
   913 F.3d 884 (9th Cir. 2019)................................................................................13

*Beckett v. Urban*,
   2015 WL 12552044 (C.D. Cal. July 6, 2015) .................................................11, 12

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco
   Cnty.*,
   582 U.S. 255 (2017) ........................................................................................24, 25

*C5 Medical Werks, LLC v. CeramTec GMBH*,
   937 F.3d 1319 (10th Cir. 2019)............................................................................22

*Caiz v. Roberts*,
   382 F. Supp. 3d 942 (C.D. Cal. 2019)....................................................................8

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
   824 F.3d 1156 (9th Cir. 2016).................................................................................7

*Cannon v. Wells Fargo Bank, N.A.*,
   917 F. Supp. 2d 1025 (N.D. Cal. 2013) ...........................................................16, 17

**VENABLE LLP**

ii

*Carpenter v. Sikorsky Aircraft Corp.*,
101 F. Supp. 3d 911 (C.D. Cal. 2015)..................................................................23

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal. 4th 163 (1999)........................................................................................18

*Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.*,
2021 WL 3053201 (N.D. Cal. July 20, 2021)..................................19, 20, 24, 25

*Core-Vent Corp. v. Nobel Indus. AB*,
11 F.3d 1482 (9th Cir. 1993)..............................................................................25

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .....................................................................................19, 20

*Dex Prods., Inc. v. Houghteling*,
2006 WL 1751903 (N.D. Cal. June 23, 2006) ....................................................25

*Dole Food Co., Inc. v. Watts*,
303 F.3d 1104 (9th Cir. 2002)............................................................................20

*Down to Earth Organics LLC v. Efron*,
2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024) ................................................9, 10

*DrVita, Inc. v. NatureLab N. Am., Inc.*,
2025 WL 656652 (C.D. Cal. Feb. 7, 2025).........................................................22

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
807 F. Supp. 2d 732 (N.D. Ill. 2011)..................................................................22

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002).............................................................................11

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
592 U.S. 351 (2021) ............................................................................................24

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015).................................................................7

*GoDigital Media Grp., LLC v. GoDigital Inc.*,
2018 WL 4944543 (C.D. Cal. Sept. 5, 2018)......................................................15

*Goodyear Dunlop Tires Operations v. Brown*,
564 U.S. 915 (2011) ......................................................................................19, 20

**Venable LLP**

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Growcentia, Inc. v. Jemie B.V.*,
2021 WL 3510764 (D. Col. Aug. 10, 2021) ..........................................................22

*Gustafson v. BAC Home Loans Serv'g, LP*,
2012 WL 4761733 (C.D. Cal. Apr. 12, 2012).................................................16, 17

*Haas Automation, Inc. v. Steiner*,
750 F. Supp. 3d 1107 (C.D. Cal. 2024)................................................................7, 8

*Hara v. Netflix, Inc.*,
146 F.4th 872 (9th Cir. 2025)....................................................................................8

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024)............................................................21, 23

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001).............................................................................19, 20

*Kransco Mfg., Inc. v. Markwitz*,
656 F.2d 1376 (9th Cir. 1981)..................................................................................22

*Lost Int'l, LLC v. Germanotta*,
2025 WL 4058219 (C.D. Cal. Dec. 15, 2025) .......................................................8, 9

*Mandel v. Associated Collection Serv. Inc.*,
2015 WL 1508842 (D. Ariz. Mar. 31, 2015) ...........................................................17

*Mophie, Inc. v. Shah*,
2014 WL 10988339 (C.D. Cal. July 24, 2014) ..................................................14, 15

*Murray v. Cable Nat'l Broad. Co.*,
86 F.3d 858 (9th Cir. 1996)................................................................................10, 11

*Nasser v. Julius Samann, Ltd.*,
2020 WL 10457001 (S.D. Cal. Aug. 28, 2020) .......................................................13

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
165 F. Supp. 3d 937 (S.D. Cal. 2016) ...............................................................15, 18

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006).................................................................................21

*Pepperdine Univ. v. Netflix, Inc.*,
2026 WL 902061 (C.D. Cal. Mar. 31, 2026) .........................................................8, 9

VENABLE LLP

iv

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007).................................................................................14

*Performance Designed Prods. LLC v. Plantronics, Inc.*,
    2019 WL 3082160 (S.D. Cal. July 15, 2019)........................................................12

*Pocket Socks, Inc. v. Louis Vuitton N. Am., Inc.*,
    2025 WL 1239348 (S.D. Cal. Apr. 29, 2025) .................................................11, 13

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
    148 F.3d 1355 (Fed. Cir. 1998)..............................................................................21

*Rounds v. Case-Mate Inc.*,
    2025 WL 1873999 (C.D. Cal. July 2, 2025) .....................................................21, 23

*Sarieddine v. Connected Int'l, Inc.*,
    2025 WL 1513777 (9th Cir. May 28, 2025) ......................................................13, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004).........................................................................7, 20, 24

*SDS Korea Co. v. SDS USA, Inc.*,
    732 F. Supp. 2d 1062 (S.D. Cal. 2010) ............................................................22, 24

*Sec. Alarm Fin. Enters., L.P. v. Nebel*,
    200 F. Supp. 3d 976 (N.D. Cal. 2016) ...............................................................7, 21

*Sussman v. Playa Grande Resort*,
    2020 WL 5223751 (C.D. Cal. May 14, 2020)........................................................19

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008)..........................................................................15, 18

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
    813 F. App'x 316 (9th Cir. 2020)......................................................................21, 23

*Tovey v. Nike, Inc.*,
    2012 WL 7017821 (N.D. Ohio July 3, 2012)........................................................15

*Twentieth Century Fox Television v. Empire Dist.*,
    875 F.3d 1192 (9th Cir. 2017)...............................................................................10

*Warner v. Tinder Inc.*,
    105 F. Supp. 3d 1083 (C.D. Cal. 2015).............................................................16, 17

**VENABLE LLP**

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Woodway USA, Inc. v. LifeCORE Fitness*,
  2025 WL 1490301 (S.D. Cal. May 23, 2025) ........................................................ 18

*Yamashita v. LG Chem, Ltd.*,
  62 F.4th 496 (9th Cir. 2023) ....................................................................24, 25

**Statutes**

15 U.S.C. § 1114(1)(a) ..................................................................................... 10

15 U.S.C. § 1125 ............................................................................................. 10

Cal. Bus. & Prof. Code §§ 17200, 17204 ................................................................ 15

Cal. Civ. Proc. Code § 410.10 ............................................................................ 19

California's Unfair Competition Law ...............................1, 2, 15, 16, 17, 18, 19, 20

Lanham Act ..................................................................1, 8, 10, 15, 18, 20

**Court Rules**

Fed. R. Civ. P. 12(b)(2) ................................................................................ 1, 7

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 7, 8

**VENABLE LLP**

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2), Defendants respectfully move for an Order dismissing Plaintiff's Amended Complaint (Dkt. 50).

By filing the Amended Complaint, Plaintiff concedes that her original claims were deficient—and her second attempt fares no better. Plaintiff is clearly unable to remedy the fatal flaws in her Complaint, instead littering her new pleading with incorrect assumptions about Defendants' businesses and irrelevant references to award show attendance, "industry relationships," and Prince tribute bands, among other things. Nothing in the Amended Complaint changes that the crux of her trademark infringement and unfair competition claims is absurd: that consumers will believe Plaintiff's cabaret-style goods and services under the CONFESSIONS OF A SHOWGIRL trademark are sponsored by or affiliated with Ms. Swift or her expressive work, and twelfth studio album, *The Life of a Showgirl* (the "Album"). This lawsuit is merely Plaintiff's latest attempt to generate publicity by associating herself with Ms. Swift. Unsurprisingly, the amended claims asserted by Plaintiff remain deficient and fail as a matter of law.

Plaintiff's claims fail at the threshold: they are barred by the First Amendment under *Rogers v. Grimaldi*. Defendants' use of "*The Life of a Showgirl*" is undisputedly expressive as the Album's title (and feature track on the Album), and Plaintiff cannot (and does not) plausibly allege it lacks artistic relevance or is explicitly misleading. Even if *Rogers* did not control (it does), Plaintiff fails to allege any likelihood of confusion between her Mark (defined below) and Defendants' Album or promotional goods, warranting dismissal of her Lanham Act and California Unfair Competition Law ("UCL") claims. Plaintiff's new secondary liability allegations also fail: direct liability cannot be established, and Plaintiff pleads no facts supporting contributory or vicarious trademark infringement.

Plaintiff's UCL claim independently fails on two separate grounds because:

1

VENABLE LLP

(1) she impermissibly seeks extraterritorial application—Plaintiff is not a California resident and alleges no facts supporting conduct emanating from or harming her in California; and (2) she pleads no anti-competitive facts as required under the UCL's "unfair" prong.

Finally, even if Plaintiff could state a claim (she cannot), this Court lacks personal jurisdiction over Ms. Swift and TASRM. Plaintiff's conclusory and inaccurate allegations of nationwide commercial activity—contradicted by several declarations—fail to show forum-specific conduct purposefully directed at California. Absent such allegations, exercising personal jurisdiction over Ms. Swift or TASRM in this Action would violate Due Process.

Plaintiff's pleading failures are fatal. Having already amended once, and still failing to state a viable claim, Plaintiff's lawsuit should be dismissed with prejudice.

**FACTUAL BACKGROUND AND ALLEGATIONS**[1]

**A. Plaintiff's Alleged Trademark and Services**

Plaintiff Maren Flagg a/k/a Maren Wade is a Nevada resident and performer. FAC ¶ 24. Although Plaintiff claims an "audience" and "following" in California (*id.* ¶ 36), she alleges no facts showing she has ever performed there or sold any goods or services to California residents. In fact, Plaintiff sells no goods at all, *anywhere*. Plaintiff also claims to have "industry relationships" in California (*id.*) but cites no party in particular and identifies no signed agreements or contracts.

Plaintiff owns U.S. Trademark Registration No. 4800625 for CONFESSIONS OF A SHOWGIRL (the "Mark"), solely in Class 41, covering blogs, theatrical productions, and television programs. *Id.* ¶ 43; *see* RJN at Ex. 6. She claims to have used the Mark since 2014 in a column, a "live cabaret show," a book, podcast, "television appearances", and social media content. FAC ¶¶ 33-35, 39. Yet Plaintiff

---

[1] For purposes of this Motion only, Defendants accept the non-conclusory factual allegations in the Amended Complaint as true, though many are incorrect. *See generally* Dkt. 40.

2

omits the frequency, scale, or current status of her performances—alleging only a single show in January 2026—and fails to allege where or when (or even if) her book, podcast, or digital content were or are distributed.[2] *Id.* ¶¶ 35, 39. Notably, she does not allege she has ever distributed a musical album,[3] apparel, or any other physical goods in connection with her Mark.

Despite amending her complaint, Plaintiff still omits images showing how her Mark appears *to consumers*—a defect Defendants previously raised. Dkt. 44 at 3, 11-12. Plaintiff nonetheless claims Defendants' use of "*The Life of a Showgirl*" for the Album and promotional merchandise is likely to cause reverse confusion, asserting without basis that consumers may believe her services are affiliated with or derived from Defendants. FAC ¶¶ 83-84. Her supporting allegations are bald assertions that Defendants' scale has "overwhelmed" her Mark and impaired control of her brand—with zero facts supporting actual confusion or demonstrating how consumers actually experience her brand, compared to Ms. Swift's Album. *Id.* ¶¶ 81, 83.

### B. Plaintiff Is One of Many Using "CONFESSIONS OF A," "OF A SHOWGIRL," and/or "SHOWGIRL"

Plaintiff's Amended Complaint again conveniently ignores that "Confessions of a" and "Showgirl" are common terms extensively used by third parties in the entertainment field. RJN at Exs. 1-3. Multiple USPTO registrations containing "CONFESSIONS OF A" co-exist with Plaintiff's Mark in Class 41, including (but not limited to) CONFESSIONS OF AN SEO, CONFESSIONS OF A CEO WITH KELCI BORGES, CONFESSIONS OF A FOUNDER, and CONFESSIONS OF A HAIRSTYLIST. RJN at Ex. 4. The same is true for registrations containing

---

[2] As explained in the Preliminary Injunction ("PI") Opposition, Plaintiff has no scheduled performances, her book is unavailable, no podcast episodes exist despite a "teaser" posted nine months ago, and her only digital content since September 2025 are social media posts attempting to associate with Ms. Swift through unauthorized use of Ms. Swift's music and other intellectual property. Dkt. 40 at 3, 5-6.

[3] During the May 27, 2026 PI hearing, Plaintiff's counsel admitted that Plaintiff has never published a musical album. Wellman Decl. Ex. 1 at 10:24-11:3; 12:11-14.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

"SHOWGIRL" for entertainment services in Class 41. RJN at Ex. 5. These registrations merely scratch the surface. Numerous entertainment-industry uses of "CONFESSIONS OF A," "SHOWGIRL," and "OF A SHOWGIRL" have long co-existed with Plaintiff's Mark—including (but not limited to) DEATH OF A SHOWGIRL, PORTRAIT OF A SHOWGIRL, THE LAST SHOWGIRL, CONFESSIONS OF A VEGAS SHOWGIRL, CONFESSIONS OF A SHOPAHOLIC, and CONFESSIONS OF A DANGEROUS MIND. RJN at Exs. 14-23. Plaintiff never alleges that her Mark's phrases are unique, nor does she account for this crowded field. Defendants raised this issue in their original motion to dismiss. Dkt. 44 at 3-4. Plaintiff did nothing to address this deficiency, because she cannot.

### C. Plaintiff's Conclusory and Inaccurate Allegations

Plaintiff's Amended Complaint lacks specific factual allegations as to each Defendant and contains inaccurate jurisdictional allegations, summarized below.

**Allegations as to Ms. Swift**. Plaintiff alleges Ms. Swift "maintains a residence" in this District. FAC ¶ 25. Even if this was sufficient to establish jurisdiction (it is not), it ignores undisputed evidence that Ms. Swift is domiciled in Tennessee. *See* Dorris Decl., Ex. A ¶ 5; RJN at Ex. 24. Plaintiff's remaining allegations—even if true (nearly all are not)—do not describe California-directed conduct related to her claims. Ms. Swift's alleged "invite" for the public to attend a "release-party film" (FAC ¶ 17) was filmed in Tennessee, posted online globally, and included a general statement that the Release Party would be available in participating theaters around the world, with no California reference whatsoever. Dorris Decl. ¶ 9. Billboards and fan activities were available promoting the Album (an expressive work) throughout the United States, and all of Ms. Swift's actual promotional appearances for the Album occurred outside of California. *Id.* ¶ 8. The allegation that Ms. Swift "shot photography" of the *The Life of a Showgirl* merchandise launch line in California (FAC ¶ 17) is false. Dorris Decl. ¶ 10. And Plaintiff's references to Ms. Swift's involvement with *Toy Story 5* (FAC ¶ 22)—obviously an entirely different project—have nothing to do with

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

the Album or Plaintiff's claims. And even crediting the unsupported allegation that Ms. Swift directed or wrote a music video for an Album track in Los Angeles and appeared at an awards show there (FAC ¶ 17), that conduct is unrelated to alleged trademark use claims, and her creation of a music video and receipt of an award for her music are both protected by the First Amendment. Plaintiff ignores that Ms. Swift "[does] not own, operate, or control an office in California" and that her business is based in Tennessee. Dorris Decl., Ex. A ¶¶ 7, 11.

**Allegations as to TASRM.** TASRM is a Tennessee LLC (FAC ¶ 26) with its principal place of business in Tennessee, and has no California offices and no California-domiciled employees. Dorris Decl., Ex. A ¶¶ 8-11. Plaintiff's allegations that TASRM conducts business in California by licensing Ms. Swift's entertainment projects (FAC ¶ 18) ignore that all of TASRM's work—including IP ownership, licensing, and commercialization—is directed from Tennessee. Dorris Decl., Ex. A ¶ 10. It also ignores that nearly all of TASRM's licensing activity is directed to locations outside of California, with fulfillment of orders (i.e. distribution to customers) of Album promotional merchandise occurring outside California, and Bravado and UMG promotional decisions made primarily in New York. *Id.* ¶ 6 & Ex. A; Republic Decl. ¶¶ 8-9; Bravado Decl. ¶¶ 8, 10. Plaintiff's conclusory assertion that "TAS authorized, licensed, and controlled the use of [*The Life of a Showgirl*] as a trademark on goods made and sold in California" (FAC ¶ 18), lacks any factual support, and is not accurate. Dorris Decl. ¶ 6. And her claim that TASRM "actively manages Swift's commercial affairs, including by commissioning photography and controlling coverage of her California appearances" (FAC ¶ 18) is both unrelated to Plaintiff's claims and false—TASRM does not manage Ms. Swift's appearances or commission merchandise photoshoots. Dorris Decl. ¶ 7.

**Allegations as to UMG.** UMG is a Delaware corporation with its principal place of business in California. FAC ¶ 27. Plaintiff alleges UMG "distributes and commercially exploits Swift's music releases and related goods" (*id.*), but fails to

VENABLE LLP

5

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

specify what goods or how UMG "commercially exploited" them. She further alleges—without factual support—that UMG released the Album "from its California operations." FAC ¶ 19. But as Plaintiff herself notes, Republic Records "serves as Swift's record label" (*id.*), and Republic is based in New York—not California. RJN at Exs. 27-31; Republic Decl. ¶¶ 4, 9. Decisions concerning the Album were made there, not California. Republic Decl. ¶¶ 8, 9.

**Allegations as to Bravado.** Bravado is a California corporation headquartered in California. FAC ¶ 20. Plaintiff alleges that the "design, branding, manufacture, and sale of [Album promotional merchandise] were conceived and carried out in substantial part in California." *Id.* This is false. The Bravado team handling Album promotional merchandise was based outside California, and Bravado's fulfillment of orders (i.e. distribution to customers) occurs outside of California. Bravado Decl. ¶¶ 8-10; RJN at Exs. 25, 26.

**Allegations as to "Defendants" Generally.** Plaintiff alleges "Defendants" operate retail channels for the Album and its promotional goods (FAC ¶ 47), but identifies only "the Taylor Swift online store"—available globally—and vaguely references "California-based affiliates" (*id.* ¶¶ 16, 17, 47, 107) without identifying them or alleging facts showing the required common control or ownership. And Plaintiff's new vicarious and contributory liability allegations (*id.* ¶¶ 77, 95) are formulaic recitations that lump Defendants together without factual support.

**Plaintiff's Admissions Regarding the Application.** Plaintiff now acknowledges that U.S. Trademark Application Serial No. 99331566 ("Application") covering potential uses of THE LIFE OF A SHOWGIRL was filed solely by TASRM (FAC ¶¶ 57-59), but ignores (yet again) that it was filed on an <u>intent to use</u> basis— TASRM made no representation that it was using THE LIFE OF A SHOWGIRL in commerce and submitted no specimen of use. RJN at Ex. 8.  It is indisputable that the issues before this Court involve how consumers view Plaintiff's Mark and the Album as they appear in the marketplace.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

On November 5, 2025, the USPTO issued a <u>Nonfinal</u> Office Action identifying certain purported deficiencies in the Application. FAC ¶ 59 (admitting office action as "nonfinal"); RJN at Ex. 9. A nonfinal action allows the applicant to cure defects, often resulting in registration.[4] Plaintiff also admits the office action is <u>partial</u>, affecting none of the Application's Classes 14, 15, 16, 18, 20, 21, 24, 25, 26, 28, or 35. FAC ¶ 59; RJN at Exs. 8, 9. And while the Application is currently voluntarily suspended (FAC ¶ 59 n.2), TASRM will have the opportunity to respond substantively when the suspension concludes. RJN at Exs. 7, 10.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, Plaintiff must plead "more than labels and conclusions" showing entitlement to relief and must plead "more than labels and conclusions" or a formulaic recitation of the elements of a cause of action. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015) (citation omitted). Failure to do so requires dismissal. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). The Court may consider allegations in the complaint, documents incorporated therein, and judicially noticeable facts. *Haas Automation, Inc. v. Steiner*, 750 F. Supp. 3d 1107, 1115 (C.D. Cal. 2024). Where, as here, a complaint alleges infringement but omits images of the accused conduct, courts take judicial notice of the allegedly infringing materials. *Id.*

Lack of personal jurisdiction over any defendant requires dismissal of that defendant. Fed. R. Civ. P. 12(b)(2). Jurisdiction must be analyzed separately for each defendant and each claim. *Sec. Alarm Fin. Enters., L.P. v. Nebel*, 200 F. Supp. 3d 976, 984 (N.D. Cal. 2016). Plaintiff bears the burden of establishing jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

---

[4] RJN at Ex. 7 ("If your response satisfies each legal problem in the nonfinal office action and doesn't raise any new problems, your application will proceed toward registration.").

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

## ARGUMENT

**I.      The Amended Complaint Should Be Dismissed Pursuant to Rule 12(b)(6).**

Despite amendment, Plaintiff still fails to state a claim upon which relief can be granted. The entire Amended Complaint should be dismissed with prejudice.

**A. Plaintiff's Claims are Barred by the First Amendment**

Notwithstanding Plaintiff's attempts to characterize the Album as a "brand," the reality is that it is a musical album.[5] It is an expressive work titled *The Life of a Showgirl*, and is protected by the First Amendment. This protection extends to associated merchandise. Plaintiff's claims therefore fail as a matter of law.

Where "the allegedly infringing use [of a trademark] is in the title of an expressive work[,]" courts apply the *Rogers v. Grimaldi* test. *Lost Int'l, LLC v. Germanotta*, 2025 WL 4058219, at *3 (C.D. Cal. Dec. 15, 2025) (citing *Twentieth Century Fox Television v. Empire Dist.*, 875 F.3d 1192, 1196 (9th Cir. 2017)); *accord Pepperdine Univ. v. Netflix, Inc.*, 2026 WL 902061, at *4 (C.D. Cal. Mar. 31, 2026). Under *Rogers*, a plaintiff cannot state a claim unless she plausibly alleges the challenged title: (1) has no artistic relevance to the underlying work; or (2) explicitly misleads consumers as to the work's source or content. *Pepperdine*, 2026 WL 902061, at *3. Failure to plead either prong warrants dismissal. *Id.* at *6-7 (dismissing Lanham Act and related state-law claims); *Hara v. Netflix, Inc.*, 146 F.4th 872, 882-84 (9th Cir. 2025) (affirming dismissal); *Haas*, 750 F. Supp. 3d at 1118-19 (dismissing with prejudice where title was expressive and did not indicate source).

Songs and album titles are the core expressive works *Rogers* protects. *Caiz v.*

---

[5] During the May 27, 2026 PI hearing, the Court highlighted the significance of the fact that the Parties dispute focuses on a musical album, and that musical albums have been held to be expression protected by the First Amendment. *See* Wellman Decl., Ex. 1 at 8:21-9:6; 10:15-16 (Court: "Well, but significantly it's also an album, though; right? And I'm not sure -- and you would be in the best position to let me know, but my understanding of plaintiff's protected works include things like a podcast, a book, a show -- other things that seem to be, in this Court's mind, different from an album.").

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

VENABLE LLP

*Roberts*, 382 F. Supp. 3d 942, 949 (C.D. Cal. 2019) ("Musical recordings, like Defendants album, are expressive works."); *Lost Int'l*, 2025 WL 4058219, at \*3-5 (denying injunction applying *Rogers* and analyzing *Jack Daniels* where musical album title and associated promotional merchandise were part of expressive work). Plaintiff does not—and cannot—allege that the Album title lacks artistic relevance to the underlying work. Nor does she plausibly allege the title explicitly misleads (or misleads at all) as to source. To the contrary, the Album prominently displays Ms. Swift's name and likeness, making its origin unmistakable. RJN at Exs. 11, 12. Indeed, Plaintiff admits that "use of the TAYLOR SWIFT name and brand" is "**pervasive**" in connection with the Album and promotional merchandise. FAC ¶ 83.

A closely analogous decision confirms dismissal is warranted. In *Down to Earth Organics LLC v. Efron*, 2024 WL 1376532 (S.D.N.Y. Mar. 31, 2024), a plaintiff sought to preclude Netflix and its lead actor Zac Efron from using "Down to Earth" in a television series title and related promotional activities. The court applied *Rogers*, found the series was expressive, and dismissed the complaint. *Id.* at \*4-5. Critically, the court held that promotional activities—including cross-promotion of snack bars—were protected under *Rogers* even though revenue-generating. *Id.* The same reasoning applies here.

Plaintiff's attempt to avoid *Rogers* by recharacterizing "*The Life of a Showgirl*" as a source identifier fails. FAC ¶ 45. Labeling an expressive work's title as "source identifying" does not make it so. *See Pepperdine*, 2026 WL 902061, at \*6-7 (dismissing complaint despite plaintiff alleging "[t]he use of these marks by Defendants is classic trademark use," and "[t]he marks are used as source-identifiers"); *Down to Earth*, 2024 WL 1376532, at \*2, 9 (dismissing complaint despite allegation that defendants "intended to create a Down to Earth brand"). Indeed, *Lost* squarely rejected this argument denying injunctive relief applying *Rogers* to an album title and merchandise—post-*Jack Daniels*—despite the plaintiff's claim that the title was a source identifier. 2025 WL 4058219, at \*3-5.

9

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Notably, Plaintiff provides no images showing how the Album or promotional goods appear to consumers—which would reveal the Taylor Swift and Republic Records trademarks prominently denoting source. RJN at Exs. 11, 13. Regardless, Plaintiff admits that the "TAYLOR SWIFT" brand is consistently and **pervasively** identified on both the Album and promotional merchandise. FAC ¶ 83. Indeed, the webstore URL (www.store.taylorswift.com) and storefront masthead are branded exclusively with "TAYLOR SWIFT," and Plaintiff herself calls it "the Taylor Swift online store." *Id.* ¶ 47; RJN at Exs. 12-13. Plaintiff also explicitly calls out the tags and labels attached to promotional merchandise—which "identif[y] the source" of the products—but conveniently omits that all such labels prominently feature TAYLOR SWIFT alongside the Album title. RJN at Ex. 12. Courts reject trademark claims where defendant's branding makes the true source unmistakable. *Twentieth Century*, 875 F.3d at 1199 (finding content not explicitly misleading where the defendant's own branding was clear); *Down to Earth*, 2024 WL 1376532, at *6-9 (finding expressive work identified the producers of the series and promotional activities prominently involved the movie's lead actor). That is clearly the case here.

Because Plaintiff has not plausibly alleged either *Rogers* prong—that "*The Life of a Showgirl*" lacks artistic relevance or explicitly misleads as to source—the Lanham Act does not apply, and the Album and its promotional materials are protected under the First Amendment. Dismissal with prejudice is required.

## B. Plaintiff Still Fails to Plausibly Allege Likelihood of Confusion

Even if *Rogers* does not bar Plaintiff's claims (it does), she again fails to plausibly allege likelihood of confusion—an essential element of her claims. 15 U.S.C. §§ 1114(1)(a), 1125. Plaintiff must allege facts showing that reasonably prudent consumers are likely to be confused as to the source, sponsorship, or affiliation of the goods and services at issue. *See Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 861 (9th Cir. 1996). For reverse confusion, Plaintiff must also show consumers would believe Defendants are the source of *Plaintiff's* services—here, that

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Ms. Swift is the source of a live cabaret performance (January 2026) at a small venue.[6] *Id.* "If the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." *Id.* at 860. Among other bases, Courts dismiss where: (1) marks are "obviously dissimilar"; (2) products target different purchasers/marketing channels; or (3) goods or services are unrelated. *Pocket Socks, Inc. v. Louis Vuitton N. Am., Inc.*, 2025 WL 1239348, at *3 (S.D. Cal. Apr. 29, 2025). All three bases apply and warrant dismissal.

**Plaintiff's Mark is Conceptually Weak.** Plaintiff concedes that her alleged mark is conceptually weak. Dkt. 16 at 20. And with good reason. It is comprised of common dictionary terms describing her cabaret-style show. This weakness, combined with widespread third-party use of "CONFESSIONS OF A," "SHOWGIRL," and "OF A SHOWGIRL" in the entertainment industry, negates any likelihood of confusion. *See Beckett v. Urban*, 2015 WL 12552044, at *3 (C.D. Cal. July 6, 2015) (dismissing where dictionary terms and crowded field existed). Plaintiff's alleged incontestability (FAC ¶ 43) does not change this. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1142 n.3 (9th Cir. 2002) ("incontestable status of [plaintiff's mark] does *not* require a finding that the mark is strong").

**Plaintiff's Alleged Goods/Services Are Dissimilar to the Album and Its Promotional Goods.** Plaintiff's amended pleading also fails to cure this defect. In connection with *The Life of a Showgirl*, Plaintiff alleges Defendants released a musical Album and promotional merchandise including brushes, towels, rings, candles, tumblers, personal care, and home goods. FAC ¶¶ 45, 48. In contrast, Plaintiff allegedly offers a "live cabaret show," book, podcast, and video content. *Id.* ¶¶ 34, 39. She does not allege she sold **any** products—much less those attributed to Defendants—or released musical albums or performed concerts. *Id.* ¶ 34. Plaintiff unsuccessfully attempts to plead around this glaring lack of overlap by alleging "both

---

[6] Plaintiff's performances occur in "90 seat cabaret-style venues", and "55+ golf resorts." Dkt. 40 at 3.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

parties' offerings center on live musical performance" (*id.* ¶ 53), and that all "consumer-facing entertainment products" are related in consumers' minds. *Id.* ¶ 52. Plaintiff's conclusory assertions are ludicrous and unsupported. *See Performance Designed Prods. LLC v. Plantronics, Inc.*, 2019 WL 3082160, at *5 (S.D. Cal. July 15, 2019) (dismissing for lack of likelihood of confusion facts even where headset products used virtually identical designs); *Beckett*, 2015 WL 12552044, at *3 (dismissing despite both parties' music-related goods). Plaintiff is a "comedian" and cabaret performer (FAC ¶¶ 24, 32, 34) that has never released any music. In contrast, Ms. Swift has never offered a cabaret show (comedic or otherwise), or any live performance in connection with the Album.[7] Labelling distinct services as "entertainment" does not mean they are similar to consumers.

Even taking Plaintiff's allegations as true (they are not), Plaintiff has not alleged anything more than legal conclusions regarding the purported minds of consumers.

**The Alleged Channels of Trade Are Dissimilar.** Plaintiff's channels— performances at the "Laurie Beechman Theatre" and "Myron's at The Smith Center", a *Las Vegas Weekly* column, and her website and social media (FAC ¶¶ 2, 33-35, 40)—bear no resemblance to Defendants' channels. She fails to allege when these activities occurred or that Defendants marketed the Album through those venues or publications. Defendants' only alleged channels are "retail channels" and "the Taylor Swift online store" (*id.* ¶ 47), www.store.taylorswift.com, making it unmistakably clear who Defendants' Album and associated goods are affiliated with. FAC ¶ 83; RJN at Exs. 11-13; *Beckett*, 2015 WL 12552044, at *3 (dismissing where "by Keith Urban" source indicator was present). Plaintiff's conclusory assertion that these channels target "the same audience" (FAC ¶ 7) lacks factual support—she provides no information about her audience or why it would overlap with Ms. Swift's. *Id.* ¶ 40.

**Plaintiff's Mark and the Album Are Dissimilar to Consumers.** Plaintiff

---

[7] PI briefing is clear that no songs from the Album have been performed live, and Plaintiff never contested that evidence. Dkt. 40 at 4.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

claims the similarity between "CONFESSIONS OF A SHOWGIRL" and "*The Life of a Showgirl*" is "immediate" and that they share a "dominant phrase" and commercial impression. FAC ¶ 8. Not so, and these are conclusory assertions unsupported by facts about how consumers encounter the phrases in the marketplace.[8] Tellingly, despite Defendants identifying this glaring omission in their prior motion to dismiss (Dkt. 44 at 11-12), Plaintiff **still** omits photographs or descriptions of how her Mark or the Album appear to consumers. Courts have dismissed trademark infringement claims with <u>far more</u> information than Plaintiff provides. *See Pocket Socks*, 2025 WL 1239348, at *5 (dismissing despite photographs of parties' sock products); *Nasser v. Julius Samann, Ltd.*, 2020 WL 10457001, at *2 (S.D. Cal. Aug. 28, 2020) (dismissing despite photographs and allegations of overlapping California consumer base).

When viewing Plaintiff's Mark, the Album and its promotional goods as they appear in the marketplace, they are clearly dissimilar: differing in dominant terms, meaning, font, coloration, spacing, and overall commercial impression, examples of which are depicted below. *See also* RJN at Exs. 1, 2, 3, 6, 11, 12, and 13.

| Album Branding | Plaintiff's Historical Branding |
|---|---|
|   |  |

**Plaintiff's Allegations Regarding Actual Confusion Are Conclusory.** Plaintiff asserts, without any evidence, that "multiple instances of actual consumer confusion have been documented across public platforms." FAC ¶ 82. Such vague allegations are insufficient. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884,

---

[8] Whether Plaintiff has a "plain text" registration does not change this analysis as they must be compared in the market. *Sarieddine v. Connected Int'l, Inc.*, 2025 WL 1513777, at *2 (9th Cir. May 28, 2025).

897 (9th Cir. 2019) (affirming dismissal based on "scant, conclusory allegations of consumer confusion"). Nor does Plaintiff adequately plead reverse confusion—although she alleges Defendants' scale may "overwhelm" her brand (FAC ¶ 99), even after being put on notice of this issue by Defendants, she is not able to allege facts showing that an appreciable number of (or any) consumers believe Defendants are the source of Plaintiff's cabaret performances, or vice versa.[9]

Plaintiff's reliance on the USPTO's purported "refusal" to register the intent-to-use Application also fails; the USPTO's preliminary office action is <u>nonfinal</u> and raised no objection to twelve proposed classes of goods. FAC ¶¶ 58-59; RJN at Exs. 8, 9, 10. Dressing up a nonfinal office action (involving an intent-to-use Application) as proof of confusion underscores Plaintiff's lack of plausible facts. In sum, Plaintiff's allegations simply amount to formulaic recitations of the elements of trademark infringement insufficient to sustain the claim and requiring dismissal.

### C. Plaintiff's New Secondary Liability Allegations Are Insufficient

Plaintiff's direct infringement claims fail under *Rogers* and for a lack of likelihood of confusion. Absent direct infringement, Plaintiff's secondary liability claims must also be dismissed. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007). But even if Plaintiff's direct infringement allegations survive (they should not), her formulaic recitation of vicarious and contributory liability elements is insufficient to sustain her secondary liability claims.

Vicarious trademark infringement requires facts showing "the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *Mophie, Inc. v. Shah*, 2014 WL 10988339, at *4 (C.D. Cal.

---

[9] Plaintiff's best confusion analogy—a Prince tribute show featuring an impersonator performing Prince songs (FAC ¶ 66)—actually undermines her case. Unlike tribute acts designed to replicate the original artist, Ms. Flagg's brand and services bear no resemblance to Ms. Swift's. No reasonable consumer would confuse the two. And, as previously explained, Plaintiff's reliance on alleged "search engine" results (*id.*), do not support these claims of harm and have been rejected. *See* Dkt. 40 at 22.

July 24, 2014). Without such control, vicarious liability cannot exist. *Id.* Contributory trademark infringement requires facts showing the defendant "(1) 'intentionally induced' the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Id.* (citing cases). Conclusory allegations amounting to a "formulaic recitation of the elements" must be dismissed. *Id.* (dismissing secondary liability claims devoid of facts); *GoDigital Media Grp., LLC v. GoDigital Inc.*, 2018 WL 4944543, at *3-4 (C.D. Cal. Sept. 5, 2018) (dismissing secondary claims absent facts defendant allegedly controlled the infringing conduct, induced it, had authority to stop it, and had financial interest). Dismissal is warranted where defendants are lumped together without differentiating direct from secondary conduct. *Tovey v. Nike, Inc.*, 2012 WL 7017821, at *11-12 (N.D. Ohio July 3, 2012) (dismissing where complaint failed to differentiate direct from secondary infringement).

Plaintiff's Amended Complaint contains only two nearly identical paragraphs referencing vicarious and contributory liability (FAC ¶¶ 77, 95)—formulaic recitations without facts showing how any defendant "intentionally induced" another, supplied products it knew to be infringing, or had authority to bind or control co-defendants. Nor does Plaintiff explain how Defendants can be liable for both direct and secondary infringement for the same conduct. Dismissal is required.

### D. Plaintiff's UCL Claim Still Fails As a Matter of Law

Plaintiff's amended allegations still fail under California's Unfair Competition Law ("UCL"). The UCL requires an "unlawful, unfair, or fraudulent business act or practice" causing "injury in fact" and "lost money or property." Cal. Bus. & Prof. Code §§ 17200, 17204. Plaintiff alleges only "unlawful" and "unfair" conduct.[10]

---

[10] Plaintiff's "unlawful" UCL claim is based solely upon alleged conduct related to violation of the Lanham Act; thus, if the Court finds she has failed to state Lanham Act claims, the UCL claim must also be dismissed. *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC,* 165 F. Supp. 3d 937, 953 (S.D. Cal. 2016); *see also Sybersound Records, Inc. v. UAV Corp.,* 517 F.3d 1137, 1153 (9th Cir. 2008).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

Neither theory alleges facts sufficient to survive dismissal.

### 1. The UCL Does Not Apply Extraterritorially

Plaintiff fails to allege conduct by each Defendant in California sufficient to state a UCL claim. Courts reject UCL claims where misconduct or injury occurs outside California or the challenged conduct is not tied to the state. *See Aliya Medcare Fin. LLC v. Nickell*, 156 F. Supp. 3d 1105, 1139 (C.D. Cal. 2015) (dismissing claim by Nevada plaintiff where facts were absent tying the unlawful practices to California); *Ice Cream Distribs. of Evansville*, 2010 WL 3619884, at *8 (accord); *see also Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096-97 (C.D. Cal. 2015). Plaintiff fails to allege facts showing relevant conduct "emanated from" or caused injury in California. At most, she alleges certain Defendants conduct business in California and that products may reach consumers there, among other places (FAC ¶¶ 16, 21)—that is woefully insufficient.

First, Plaintiff is a Nevada resident who does not allege she ever performed or sold goods in California; her alleged time previously living in California (of unknown duration) and unspecified "industry relationship(s)" (FAC ¶ 36) there are irrelevant and at best conclusory. Second, Plaintiff does not allege facts showing the relevant conduct was "conceived, reviewed, approved, [or] controlled" in California by each Defendant. *See Cannon v. Wells Fargo Bank, N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal. 2013) (finding mere possibility that decisions may have been made in California insufficient); *Warner*, 105 F. Supp. 3d at 1097. Her allegations that Defendants engaged in California-based sales or participated in unspecified "coordinated activities" purportedly "directed and controlled" in part by California-based entities (UMG and Bravado) are entirely conclusory, largely inaccurate, and fail to identify where the alleged misconduct actually "emanated" from. FAC ¶¶ 21-22; *see Gustafson v. BAC Home Loans Serv'g, LP*, 2012 WL 4761733, at *5-6 (C.D. Cal. Apr. 12, 2012) (holding allegation that defendants' scheme was devised, implemented, and directed from offices in California was too conclusory and that the

mere possibility decisions were made in California does not justify UCL application).

That UMG and Bravado are headquartered in California does not change this. *See Cannon*, 917 F. Supp. 2d at 1055-56; *Warner*, 105 F. Supp. 3d at 1096-97. Plaintiff alleges UMG released the Album "from its California operations" (FAC ¶ 19), but admits Republic Records is UMG's division that "serves as Swift's record label" (*id*.)—Republic Records is based in **New York**. RJN at Exs. 27-31. Likewise, although Bravado is incorporated in California, Plaintiff provides no facts to support her assumption that "goods were sold from California to consumers in California." FAC ¶ 106; *Gustafson*, 2012 WL 4761733, at \*6; *see also* RJN at Ex. 25.

Plaintiff's UCL claim is even weaker as to Ms. Swift and TASRM. TASRM is a Tennessee company that does business from Tennessee (FAC ¶ 26) and has no specific connection (alleged or otherwise) to California, let alone to the complained-of conduct. All TASRM work—including IP ownership, licensing, and commercialization—is directed from Tennessee. *See* RJN at Ex. 8 (Application depicting TASRM's Tennessee address). Ms. Swift is domiciled in Tennessee (RJN at Ex. 24 ¶ 3), and Plaintiff provides no nexus between Ms. Swift allegedly owning a California property (FAC ¶ 25) and Plaintiff's UCL claim. Plaintiff's allegations as to Ms. Swift (even if true) do not establish that any relevant Album decisions occurred in California. Billboards and fan activities promoting the Album (an expressive work) were available throughout the United States, and Plaintiff does not identify a single relevant promotional appearance in California (because there were none).

Moreover, Plaintiff provides no facts showing Ms. Swift or TASRM have "California-based affiliates" or are "affiliates" of UMG or Bravado. FAC ¶ 17. "Affiliate" is a term with specific legal meaning related to common entity ownership. *Mandel v. Associated Collection Serv. Inc.*, 2015 WL 1508842, at \*4 (D. Ariz. Mar. 31, 2015). Even if such affiliation was alleged (it is not), it would not establish California-emanating conduct absent specific forum-directed acts. *Cannon*, 917 F. Supp. 2d at 1056. Plaintiff's UCL claim should be dismissed on this ground alone.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

### 2.  Plaintiff's "Unfair" Allegations Fail as a Matter of Law

Plaintiff re-alleges that Defendants' conduct is "unfair" within the meaning of the UCL (FAC ¶ 109), but again pleads no facts to sustain her claim. An "unfair" UCL claim requires conduct tantamount to a "violation **of an antitrust law**" threatening or harming competition in the market. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999) (emphasis added); *Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 165 F. Supp. 3d 937, 953-54 (S.D. Cal. 2016) (discussing how acts that may satisfy this standard include price fixing, exclusive dealing, or monopolization). "Unfair" claims predicated on trademark infringement typically fail to meet this standard. *Obesity Rsch.*, 165 F. Supp. 3d at 953-54 (dismissing UCL claim predicated on Lanham Act); *Woodway USA, Inc. v. LifeCORE Fitness*, 2025 WL 1490301, at *4-5 (S.D. Cal. May 23, 2025) (accord).

Plaintiff does not plead facts supporting an antitrust violation—she merely alleges, without support, that Defendants' "conduct violates the policy and spirit of state and federal trademark law." FAC ¶ 109. She recasts her Lanham Act claims as something they are not with buzzwords about "market power" and harms "to competition" without factual support. This is precisely the type of ambiguous allegations California courts find insufficient. *Cel-Tech*, 20 Cal. 4th at 185; *see also Sybersound Records*, 517 F.3d at 1153 (dismissing UCL claim where an incipient violation of antitrust law was not alleged).

Plaintiff's alleged injuries—impairment of brand control, diminished mark value, loss of source-identifying function, and displacement in digital channels (FAC ¶ 111)—even if supported (they are not)—describe trademark harm to Plaintiff as an *individual*, not antitrust harm to competition required by the UCL. *See Obesity Research*, 165 F. Supp. 3d at 953; *Woodway USA*, 2025 WL 1490301, at *4-5. Her vague references to "prospective California performance engagements" and an unnamed production company fare no better. *Id.*

Having failed to overcome the UCL's extraterritoriality bar or to adequately

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

allege "unfair" conduct, Plaintiff's UCL claim must be dismissed.

## II.    The Court Lacks Personal Jurisdiction Over Ms. Swift and TASRM

The Amended Complaint still fails to establish personal jurisdiction over Ms. Swift and TASRM. Personal jurisdiction over non-resident defendants (like Ms. Swift and TASRM) requires "'minimum contacts' with the relevant forum such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Cole-Parmer Instrument Co. v. Prof'l Labs., Inc.*, 2021 WL 3053201, at *4 (N.D. Cal. July 20, 2021) (citation omitted). Each defendant's alleged conduct and connections must be such "that the defendant 'should reasonably anticipate being haled into court here.'" *Id.* (citing cases). California's long-arm statute extends jurisdiction to the limits of due process. Cal. Civ. Proc. Code § 410.10.

Personal jurisdiction exists in two forms: general (based on continuous presence in California regardless of where the cause of action arose) and specific (contacts related to the claims at issue). *Agher v. Envoy Air, Inc.*, 2018 WL 6444888 at *2 (C.D. Cal. Oct. 12, 2018) (citation omitted); *Sussman v. Playa Grande Resort*, 2020 WL 5223751, at *4 (C.D. Cal. May 14, 2020). Plaintiff fails to establish either as to Ms. Swift or TASRM, requiring dismissal.

### A. There is No General Jurisdiction Over Ms. Swift or TASRM

Ms. Swift and TASRM are not subject to general jurisdiction in California. For entities (like TASRM), general jurisdiction requires "continuous and systematic" contacts—in almost all instances, the place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For individuals (like Ms. Swift), the "paradigm forum" is domicile—not merely where one owns property, but one's permanent home. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 924 (2011); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

Plaintiff does not allege, and cannot establish, general jurisdiction over Ms. Swift or TASRM. Ms. Swift allegedly "maintains a residence" in California (FAC ¶¶ 22, 25), but she is domiciled in Tennessee. Dorris Decl., Ex. A ¶¶ 5-6; RJN at Ex. 24

VENABLE LLP

19

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

¶ 3. Property ownership does not equate to domicile. *Kanter*, 265 F.3d at 857. All other alleged California contacts Plaintiff asserts are irrelevant to general jurisdiction over Ms. Swift (for example, her involvement with *Toy Story 5*, or that she attended an awards show in the state). *Goodyear*, 564 U.S. at 924; Dorris Decl. ¶¶ 8-10.

TASRM is undisputedly a Tennessee company (FAC ¶ 26), with its principal place of business there. Dorris Decl., Ex. A ¶ 8. Licensing with California entities (FAC ¶ 18) (even if true) does not remotely render TASRM "essentially at home" in California. *Daimler*, 571 U.S. at 119; *Cole-Parmer*, 2021 WL 3053201, at *6. By Plaintiff's logic, TASRM could be haled into court wherever any licensee has an office—an insufficient nexus for general jurisdiction over Ms. Swift or TASRM.

**B. Specific Jurisdiction over Ms. Swift and TASRM is Also Lacking**

Because general jurisdiction is absent, Plaintiff must establish specific jurisdiction over Ms. Swift and TASRM. She has, yet again, failed to do so.

To exercise specific jurisdiction, Plaintiff must allege facts supporting: (1) Ms. Swift and TASRM purposefully directed activities at California; (2) Plaintiff's claims arise out of or relate to Ms. Swift and TASRM's forum-related activities; and (3) the exercise of jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802 (rejecting jurisdiction in trademark dispute). Plaintiff bears the burden on the first two prongs; if either fails, specific jurisdiction is absent. *Id*. Here, Plaintiff still fails to allege facts supporting any of the three requirements.

**No Purposeful Direction Towards California Exists.** For tort-based claims like Lanham Act and UCL claims, courts apply the *Calder* "effects" test: Plaintiff must show Ms. Swift and TASRM: (1) committed an intentional act; (2) expressly aimed at California; and (3) causing harm they knew would likely be suffered there. *Schwarzenegger*, 374 F.3d at 803-04; *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citations omitted). Express aiming requires "something more" than a foreign act with foreseeable California effects. *Cole-Parmer*, 2021 WL 3053201, at *8. Courts decline to find express aiming where specific defendants did

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

not personally sell allegedly infringing products or products were generally available to the public. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006); *ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020); *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1170 (C.D. Cal. 2024) ("[I]n the context of an interactive website, operation of the website alone does not constitute express aiming[.]"); *AMDL Collections, Inc. v. Kleeger Prods., LLC*, 2022 WL 19569518, at *3 (C.D. Cal. Sept. 22, 2022) (citation omitted) ("A sale into the forum is not a substantial contact where it 'involved the forum state only because that is where the purchaser happened to reside'"); *Rounds v. Case-Mate Inc.*, 2025 WL 1873999, at *6 (C.D. Cal. July 2, 2025) (dismissing for lack of jurisdiction; distinguishing *Briskin v. Shopify*).

Plaintiff has not satisfied *Calder*. She cannot establish jurisdiction by pointing to unrelated activities (like Ms. Swift's *Toy Story 5* involvement) or by aggregating UMG's, Bravado's, or other third parties' California contacts—personal jurisdiction must be assessed as to each defendant. *Sec. Alarm Fin. Enters.*, 200 F. Supp. 3d at 984; *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) (discussing how in the licensing context "doing business with a company that does business in Minnesota is not the same as doing business in Minnesota").

Plaintiff does not allege Ms. Swift personally sold, distributed, or placed billboards related to the Album or promotional materials in California, or that any such placement targeted California more than any other state. Album promotional merchandise was not photographed in California. Dorris Decl. ¶ 10. Ms. Swift's alleged "invite" for fans to attend a "release-party film" was filmed in Tennessee, distributed globally online, and did not include a single mention of California. *Id.* ¶ 9. And while Plaintiff alleges Ms. Swift wrote and directed a music video and appeared at an awards show in California (FAC ¶ 17), those actions (some of which did not even occur in California) are unrelated to Plaintiff's claims. First, neither the creation of a music video under the First Amendment nor receiving an award is a commercial

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

activity.  Even if deemed "promotion" (it is not), the alleged conduct is fortuitous and not purposeful availment sufficient to sustain jurisdiction. *See C5 Medical Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323 (10th Cir. 2019) (declining jurisdiction where defendant attended tradeshows in Colorado to promote product); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379-80 (9th Cir. 1981) (affirming lack of jurisdiction even though defendant attended trade show in forum); *SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1076-77, 1079 (S.D. Cal. 2010) (no jurisdiction despite trade show attendance promoting allegedly infringing items). Plaintiff alleges no facts that Ms. Swift controlled where the iHeart Music Awards were presented, or the music video was filmed, negating purposeful availment.

Plaintiff's remaining allegations rely on the existence of a theoretical license agreement, which is insufficient. Even if such a relationship existed, "[t]he mere existence of a licensor-licensee relationship, without more, is 'insufficient to impute the contacts of a licensee on the licensor for the purpose of establishing personal jurisdiction.'" *Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 737 (N.D. Ill. 2011) (citation omitted); *Growcentia, Inc. v. Jemie B.V.*, 2021 WL 3510764, at *6-7 (D. Col. Aug. 10, 2021) (dismissing licensor trademark holding company for lack of personal jurisdiction). Typically, allegations **must** include that the license was "exclusive" or creates continuing forum-state obligations to give rise to personal jurisdiction. *See, e.g.*, *Alcon Vision, LLC v. Lens.com, Inc.*, 2020 WL 4810778, at *6 (E.D.N.Y. Aug. 11, 2020). Alleging "control" generally is insufficient because trademark holders must exercise quality control. *Id.* (finding lack of jurisdiction where license was exclusive and licensor exercised quality control).

Plaintiff's allegations that Ms. Swift "selected and adopted" the Album title and "authorized and licensed" California entities to use it (FAC ¶ 17) (even if true) are insufficient to show California-directed conduct or requisite control over UMG or Bravado. *Growcentia*, 2021 WL 3510764, at *6-7; *DrVita, Inc. v. NatureLab N. Am., Inc.*, 2025 WL 656652, at *5, 9 (C.D. Cal. Feb. 7, 2025) (dismissing trademark licensor

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

for lack of personal jurisdiction).

Plaintiff's TASRM allegations fail for the same reasons. Even if TASRM "owns, administers, and enforces" intellectual property rights behind THE LIFE OF A SHOWGIRL and exercises "active control" over licensing with UMG and Bravado (FAC ¶ 18), that does not show California-directed conduct. Trademark quality control is expected of any trademark holder—particularly here, where Plaintiff alleges the TAYLOR SWIFT trademark is on the Album and promotional materials; it is not enough to merely allege "control" generally. *Alcon Vision*, 2020 WL 4810778, at *6. Further, nothing in Plaintiff's pleadings supports that TASRM expressly aimed conduct at California (as opposed to other states). *Heiting*, 743 F. Supp. 3d at 1170. As detailed, TASRM does not manage Ms. Swift's commercial appearances, and all operations occur in Tennessee. Dorris Decl. ¶ 7 & Ex. A ¶ 10.

Plaintiff's allegations about selling the Album and merchandise through an "online store" accessible in California (FAC ¶ 18) are also insufficient. Making goods broadly available online without specific California-directed advertising does not support jurisdiction. *ThermoLife Int'l*, 813 F. App'x at 318; *Heiting*, 743 F. Supp. 3d at 1171; *Carpenter v. Sikorsky Aircraft Corp.*, 101 F. Supp. 3d 911, 923 (C.D. Cal. 2015). Plaintiff's allegations—even if true—do not demonstrate that Ms. Swift or TASRM's purported "contacts with California did not merely arise from California *consumers'* choice to purchase goods from [Defendants]" making them insufficient to confer personal jurisdiction. *Rounds*, 2025 WL 1873999, at *6.

Finally, nothing supports that Ms. Swift or TASRM were aware of any California harm, or that any exists. Plaintiff is a Nevada resident (FAC ¶ 24), does not allege she performed or sold goods in California, and her purported California "industry relationship(s)" and "prospective business" (*id.* ¶¶ 36, 107) are vague and unspecified. Plaintiff has failed to satisfy the purposeful direction prong, which alone defeats jurisdiction over Ms. Swift and TASRM.

**The Claims Do Not Arise From Any California Activities by Ms. Swift or**

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

**TASRM**. On the second prong of the specific jurisdiction analysis, Plaintiff must show each claim arises out of or relates to the defendant's forum-related conduct. *Schwarzenegger*, 374 F.3d at 802. A direct nexus between forum contacts and alleged injury is required; if absent, specific jurisdiction fails. *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 264 (2017). The Ninth Circuit applies a "but for" test: would Plaintiff have suffered the alleged injury but for defendant's California conduct? *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1092 (D. Or. 2016). Here, Ms. Swift's and TASRM's activities lack any California connection to Plaintiff's claims, requiring dismissal. *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 369-70 (2021); *Cole-Parmer*, 2021 WL 3053201, at *9-10 (dismissing where conclusory allegations of California sales lacked factual support).

*Yamashita* and *Cole-Parmer* are instructive: despite forum product sales, jurisdiction was rejected because plaintiffs could not tie their injury to those contacts. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504-05 (9th Cir. 2023); *Cole-Parmer*, 2021 WL 3053201, at *9-10. The same defect exists here. Plaintiff is a Nevada resident with no meaningful California connection, and nothing to show that her alleged injury arises from conduct occurring in or directed to California. FAC ¶¶ 24, 36. She does not allege she performed or sold goods in California, and her alleged "online content" was available nationwide. *Id.* Nor does she allege facts supporting that the purported infringement or resulting harm is tied to California-specific activity. Ms. Swift filming a music video or attending an awards show does not give rise to Plaintiff's claims—she alleges no California consumer confusion from those activities, nor could she, as Ms. Swift was exercising her First Amendment rights. *SDS Korea*, 732 F. Supp. 2d at 1079 (no jurisdiction absent injury tied to California trade show attendance).

Likewise, as in *Cole-Parmer*, Plaintiff fails to provide any factual support for the notion that Ms. Swift or TASRM individually sold the Album or promotional merchandise in California. Purported licensing activity with a California entity is

24

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

VENABLE LLP

insufficient. *Dex Prods., Inc. v. Houghteling*, 2006 WL 1751903, at \*4-5 (N.D. Cal. June 23, 2006) (granting motion to dismiss). This is especially so where the bulk of actions taken by those entities occurred outside of California. Republic Decl. ¶¶ 4, 8, 9; Bravado Decl. ¶¶ 8-10; RJN at Exs. 25-31. As in *Yamashita* and *Cole-Parmer*, Plaintiff identifies generalized, assumed forum contacts but fails to connect them to her claims. *Bristol-Myers*, 582 U.S. at 264. The second prong is not satisfied, and specific jurisdiction cannot be established.

**Exercising Jurisdiction Is Unreasonable.** Even if Plaintiff could satisfy the first two prongs (she cannot), jurisdiction would be unreasonable. The reasonableness factors—purposeful interjection, burden on defendant, conflict with defendant's state sovereignty, forum state interest, judicial efficiency, plaintiff's interest in convenient relief, and alternative forums—all weigh against jurisdiction. *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488-89 (9th Cir. 1993). Ms. Swift and TASRM's purported activities are nationwide, lacking any California nexus. Requiring Tennessee domiciliaries to defend in California would be burdensome and implicate Tennessee's interest in adjudicating its citizens' rights—especially where Plaintiff is not a California resident, and no operative facts tie to California. This District offers no efficiency advantage (it had the second-highest caseload of any court in the country in 2025, RJN at 8), and adequate alternative forums exist, including Tennessee where Ms. Swift and TASRM are domiciled.

\*\*\*

Plaintiff does not plausibly allege that Ms. Swift or TASRM have purposefully directed any activities toward California, let alone related to her claims, and it would otherwise be unreasonable to require Ms. Swift or TASRM to defend themselves in this District. Personal jurisdiction is lacking, and they should be dismissed accordingly.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion and dismiss the Amended Complaint with prejudice.

25

VENABLE LLP

Dated: June 30, 2026                VENABLE LLP

                        By:    */s/ Max N. Wellman*
                               Max N. Wellman
                               J. Douglas Baldridge
                               Katherine Wright Morrone
                               Maria R. Sinatra

                               Attorneys for Defendants Taylor Swift,
                               TAS Rights Management, LLC, UMG
                               Recordings, Inc., Bravado International
                               Group Merchandising Services Inc.

VENABLE LLP

26

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 25 pages, in compliance with the 25-page limit set forth in Section VII(D) of this Court's Standing Order.

Dated: June 30, 2026                    By: /s/*Max N. Wellman*
                                                  Max N. Wellman

**VENABLE LLP**

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT