# EXHIBIT 1

1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

MAREN FLAGG,                          ) Case No. CV 26-3354-SRM (BFMx)
                                      )
        Plaintiff,                    ) Los Angeles, California
                                      ) Wednesday, May 27, 2026
             v.                       ) 2:00 P.M. to 2:33 P.M.
                                      )
TAYLOR SWIFT, et al.,                 )
                                      )
        Defendants.                   )
_____      )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE SERENA R. MURILLO
UNITED STATES DISTRICT JUDGE

Appearances:                  See Page 2

Deputy Clerk:                 Gabriela Garcia

Court Reporter:               Recorded; CourtSmart

Transcription Service:        JAMS Certified Transcription
                              16000 Ventura Boulevard #1010
                              Encino, California  91436
                              (661) 609-4528

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:


For the Plaintiff:          JAYMIE PARKKINEN
                            808 Wilshire Boulevard, Suite 200-255
                            Santa Monica, California  90401
                            (323) 919-3590
                            jp@parkknn.com


For the Defendants:         Venable LLP
                            By:  J. DOUGLAS BALDRIDGE
                                 KATHERINE W. MORRONE
                            600 Massachusetts Avenue N.W.
                            Washington, D.C.  20001
                            (202) 344-4000
                            jbaldridge@venable.com
                            kwmorrone@venable.com

LOS ANGELES, CALIFORNIA, WEDNESDAY, MAY 27, 2026, 2:00 P.M.

THE CLERK:  Calling item No. 3, CV 26-3354-SRM, *Maren Flagg v. Taylor Swift, et al.*

Counsel, please step forward and state your appearances.

THE COURT:  You can take your time.  I know you need to set up.

(Pause.)

JAYMIE PARKKINEN:  Good afternoon, Your Honor. Jaymie Parkkinen on behalf of plaintiff.

THE COURT:  Thank you.

J. DOUGLAS BALDRIDGE:  Good afternoon, Your Honor. Doug Bladridge along with Katherine Morrone on behalf of the defendants.

THE COURT:  Which one of you will be arguing the motion?

MR. BALDRIDGE:  I will, Your Honor.

THE COURT:  All right.  Thank you.

(Pause.)

THE COURT:  While the parties are kind of getting settled, we're here today on the motion filed by the defendant seeking an preliminary injunction of the -- I'm sorry -- plaintiff's motion for preliminary injunction that was filed on April 7th.  I'm going to review the documents that I have considered in -- before today's hearing, and then

invoke when they're the plaintiff, which is often.  At the end of the day, plaintiff owns the mark, and defendants' conduct is eroding it.  Money cannot fix that.

Now, the Ninth Circuit focuses in a reverse confusion case, like this one, on three primary *Sleekcraft* factors.  Those are strength, similarity, and relatedness; so I'd like to just go over those briefly with the balance of my time.

On strength there are two points: first, the analysis, then defendants' response.  Let's begin with the framework.  We get it from *Ironhawk*, Ninth Circuit precedent: In reverse confusion cases, you compare the conceptual strength of the senior user's mark -- that's my client -- with the commercial strength of the junior user.  When plaintiff is at least suggestive -- when her mark is at least suggestive and defendant is commercially dominant, that factor favors plaintiff.  Both are established here, and the parties agree.  First, plaintiff's mark --

THE COURT:  Can I -- I hate to interrupt you --

MR. PARKKINEN:  Sure.

THE COURT:  -- because you're on a roll, but I do want to allow you to address the real concern that this Court has in this inquiry, which is why -- why is it that I should adopt the *Sleekcraft* factors, as opposed to the *Rogers* test, in this situation when we're talking about an album and

something that has been held to be an expression of the plaintiff and potentially protected by the First Amendment? Why would I go with the Lanham Act inquiry, as you were pointing to *Sleekcraft*, versus the *Rogers* test?  And I'll allow you to get back to the Lanham, but that's the real kind of crucible of what the Court's concerned about.

MR. PARKKINEN:  Yes.  Happy to pivot to *Rogers*.

So there are three points with respect to *Rogers*. Rogers does not apply when the designation functions as a source identifier.  That's *Jack Daniel's*.  That's *Punchbowl* -- *Jack Daniel's*, Supreme Court; *Punchbowl*, the Ninth Circuit. The dispositive question isn't whether a mark has expressive conduct.  Most marks do.  If you think about the McDonald's "M," it has very colorful and creative -- the target logo. All of those have to be designed by artists.  They all say something.

So the test can't be Is there expressive content within a mark? because *Rogers* would then eat the Lanham Act alive.  Instead, the question is Does the mark identify source?  Defendants don't really answer that question in their brief, but their conduct does on numerous different grounds.

First, their trademark application.  *Punchbowl* says that a trademark application is straightforward evidence of trademark use, and that seems clear enough.  They're telling

the federal government, "We're going to use this as a trademark."  They then put the album out and a bunch of merchandise out using it as a trademark.  That's straightforward enough.

Second, their registration history.  Defendants routinely register album titles as trademarks.  That's also *Jack Daniel's*.  If there's a history of similar registrations for similar, quote-unquote, "expressive" uses, that indicates that actually it's a source identifier.

Third, placement on merchandise.  Defendants place "Life of a Showgirl" on the neck tag, where, you know, it says, "made in China" or "made in Vietnam."  They put it on SKU tags.  They put it on barcode labels.  These are all source --

THE COURT:  Well, but significantly it's also an album, though; right?  And I'm not sure -- and you would be in the best position to let me know, but my understanding of plaintiff's protected works include things like a podcast, a book, a show -- other things that seem to be, in this Court's mind, different from an album.  Can you hone -- can you address that?

MR. PARKKINEN:  I think what you're asking is about the relatedness of the parties?

THE COURT:  Yes.  And has the plaintiff ever published under that -- under her name an album -- a musical

album?  I mean, this is different from McDonald's, to me.

MR. PARKKINEN:  Sure.  No, she hasn't published an album.  But, Your Honor, if we want to go to the relatedness inquiry, direct, one-for-one products is not the analysis.  Relatedness asks -- if you'd like me to pivot, I can pivot there?

THE COURT:  No, that's okay.  You can pivot.  Go ahead and pivot and address relatedness.

MR. PARKKINEN:  Oh, okay.  Sure.

So relatedness -- it doesn't require direct competition.  Plaintiff need not have released an album in order to be viewed as related in the scope of what we're talking about.  Instead, the question is could one company -- could one business offer both services?  And the answer is absolutely.  If so, then they're related.

So here we have a substantial relation.  We have solo female performers.  Both perform live music on stage.  Both produce recorded entertainment and operate the same digital channels: social media, streaming, television, online.  Both embody the showgirl story and aesthetic.  It isn't a near miss across distant fields.  Plaintiff isn't selling, you know, swamp coolers and toothpaste.  They're both performers in the same space, telling the same showgirl story, reaching similar audiences through similar channels.  So it's not particularly germane to the analysis that

plaintiff hasn't per se published an album.

THE COURT:  No, I guess I misspoke.  I understand that.  But within the meaning of the *Rogers* test and the first element, when we're talking about whether a work is expressive, my point is, here, the defendant put out an album called "Life of a Showgirl," and you're focusing on a lot of the other merchandising that occurred in connection with that album, such as the T-shirts and things that have tags.  I understand that.  I'm just trying to draw a distinction between, obviously, which test would best apply.  As a factual question, I just was wondering, if in addition to the items you mentioned, plaintiff also put out an album -- a musical album.  She did not; correct?

MR. PARKKINEN:  She did not.  But I guess the --

THE COURT:  I understand your point that that's not germane to the inquiry.  It was just a factual question that I had.  But you can continue to address whether *Rogers* versus Lanham -- let's go back to that because I think that's more -- that will inform the inquiry more effectively.

MR. PARKKINEN:  Sure.

So to -- you know, the trademark application that defendants files [sic] includes recordings, includes albums, CDs.  They're saying they're using -- they're using "Life of a Showgirl" as a source identifier, including on those expressive works.  That's really, I think, the key inquiry