JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAREN FLAGG,<br><br>Plaintiff,<br>v.<br><br>TAYLOR SWIFT, et al.,<br><br>Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>Hon. Serena R. Murillo<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Date: October 7, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5D (5th Fl.)<br>350 W. First Street<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 10
LEGAL STANDARD ........ 10
ARGUMENT ........ 11
I. *ROGERS* DOES NOT APPLY ........ 11
II. THE FAC PLEADS LIKELIHOOD OF CONFUSION ........ 13
III. THE FAC PLEADS SECONDARY LIABILITY ........ 20
IV. THE FAC STATES A UCL CLAIM ........ 23
A. The Conduct Occurred in California. ........ 23
B. The FAC Pleads Unfair Conduct. ........ 24
V. THE COURT HAS JURISDICTION OVER SWIFT AND TAS ........ 26
A. Swift Purposefully Availed Herself of California. ........ 26
B. TAS Consummated Transactions with California Entities. ........ 28
C. Swift and TAS Purposefully Directed the Program at California. ........ 30
D. The Claims Arise Out of and Relate to Their California Conduct. ........ 32
E. Exercising Jurisdiction Is Reasonable. ........ 33
F. In the Alternative, Jurisdictional Discovery Is Warranted. ........ 34
CONCLUSION ........ 34
CERTIFICATE OF COMPLIANCE ........ 36

# TABLE OF AUTHORITIES

**CASES**

*Activision Publ'g, Inc. v. Warzone.com, LLC*,
No. 2:21-cv-03073, 2024 WL 6467326 (C.D. Cal. Apr. 11, 2024) .............13

*Air Doctor, LLC v. Lonni, Inc.*,
No. 23-cv-00353, 2023 WL 9319060 (C.D. Cal. Aug. 21, 2023) ...............25

*AirWair Int'l Ltd. v. Schultz*,
73 F. Supp. 3d 1225 (N.D. Cal. 2014) .............33

*Alignment Healthcare USA, LLC v. MindHYVE.ai, Inc.*,
No. 8:25-cv-01354, 2025 WL 4041927 (C.D. Cal. Dec. 19, 2025).............20

*Aliya Medcare Fin., LLC v. Nickell*,
156 F. Supp. 3d 1105 (C.D. Cal. 2015) .............24

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) .............13, 14, 15, 19, 20

*Applied Underwriters, Inc. v. Lichtenegger*,
913 F.3d 884 (9th Cir. 2019) .............14, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............11

*Aurora World, Inc. v. Ty Inc.*,
719 F. Supp. 2d 1115 (C.D. Cal. 2009) .............20

*Beckett v. Urban*,
No. 15-cv-1407, 2015 WL 12552044 (C.D. Cal. July 6, 2015).............17

*Belin v. Starz Ent., LLC*,
No. 2:21-cv-09586, 2024 WL 4720795 (C.D. Cal. Sept. 20, 2024) .............13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............10

*Boldface Licensing + Branding v. By Lee Tillett, Inc.*,
940 F. Supp. 2d 1178 (C.D. Cal. 2013) .............19

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) .............26, 28, 31

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
174 F.3d 1036 (9th Cir. 1999) .............16, 17

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985).............28

*Calder v. Jones*,
465 U.S. 783 (1984)....................26, 28, 30

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal.4th 163 (1999)....................24, 25

*Charisma Brands, LLC v. AMDL Collections, Inc.*,
No. 19-cv-00312, 2019 WL 6331399 (C.D. Cal. Sept. 3, 2019)....................20

*Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*,
No. 20-cv-08493, 2021 WL 3053201 (N.D. Cal. July 20, 2021)....................33

*CollegeSource, Inc. v. AcademyOne, Inc.*,
653 F.3d 1066 (9th Cir. 2011)....................29

*Davis v. Blue Tongue Films*,
No. 23-3968, 2024 WL 5182630 (9th Cir. Dec. 20, 2024)....................13

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001)....................26, 30

*DrVita, Inc. v. NatureLab N. Am., Inc.*,
No. 2:24-cv-03314, 2025 WL 656652 (C.D. Cal. Feb. 7, 2025)....................28

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014)....................23

*Entrepreneur Media, Inc. v. Smith*,
279 F.3d 1135 (9th Cir. 2002)....................14

*Fleischmann Distilling Corp. v. Maier Brewing Co.*,
314 F.2d 149 (9th Cir. 1963)....................19

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
592 U.S. 351 (2021)....................29, 30, 32

*Freeman v. 3Commas Techs. OU*,
No. 24-6158, 2026 WL 579391 (9th Cir. Mar. 2, 2026)....................31

*Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018)....................26, 28, 32

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015)....................14

*GoDigital Media Grp., LLC v. GoDigital Inc.*,
No. 17-cv-07796, 2018 WL 4944543 (C.D. Cal. Sept. 5, 2018)....................22

*Gordon v. Drape Creative, Inc.*,
909 F.3d 257 (9th Cir. 2018)....................13

*Grocery Outlet, Inc. v. Albertson's, Inc.*,
497 F.3d 949 (9th Cir. 2007) .......... 13

*Growcentia, Inc. v. Jemie B.V.*,
No. 20-cv-2619, 2021 WL 3510764 (D. Colo. Aug. 10, 2021) .......... 29

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*,
784 F.2d 1392 (9th Cir. 1986) .......... 27, 30

*Hancock v. Am. Steel & Wire Co. of N.J.*,
203 F.2d 737 (C.C.P.A. 1953) .......... 15

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) .......... 34

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) .......... 31

*Impossible Foods Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023) .......... 32, 33

*In re Detroit Ath. Co.*,
903 F.3d 1297 (Fed. Cir. 2018) .......... 15

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*,
456 U.S. 844 (1982) .......... 21, 22

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
2 F.4th 1150 (9th Cir. 2021) .......... 14, 16, 17, 18

*IYO, Inc. v. IO Prods., Inc.*,
No. 25-4028, 2025 WL 3471705 (9th Cir. Dec. 3, 2025) .......... 18

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023) .......... 10, 11, 12

*Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*,
140 F.4th 1304 (11th Cir. 2025) .......... 29

*JL Beverage Co. v. Jim Beam Brands Co.*,
828 F.3d 1098 (9th Cir. 2016) .......... 16, 19

*Jordache Enters., Inc. v. Hogg Wyld, Ltd.*,
828 F.2d 1482 (10th Cir. 1987) .......... 15

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .......... 31

*Kransco Mfg., Inc. v. Markwitz*,
656 F.2d 1376 (9th Cir. 1981) .......... 28

*Laub v. U.S. Dep't of the Interior*,
342 F.3d 1080 (9th Cir. 2003) .......... 34

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 11, 24

*LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*,
No. 18-cv-02573, 2019 WL 160335 (N.D. Cal. Jan. 10, 2019) .......... 25

*Lerner & Rowe, PC v. Brown Engstrand & Shely LLC*,
119 F.4th 711 (9th Cir. 2024) .......... 18

*Levi Strauss & Co. v. Blue Bell, Inc.*,
632 F.2d 817 (9th Cir. 1980) .......... 15

*Life Alert Emergency Response, Inc. v. ConnectAmerica.com, LLC*,
No. 13-cv-03455, 2014 WL 12596489 (C.D. Cal. May 13, 2014) .......... 21-22

*Lockheed Martin Corp. v. Network Sols., Inc.*,
194 F.3d 980 (9th Cir. 1999) .......... 21

*Lost Int'l, LLC v. Germanotta*,
No. 25-cv-00592, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025) .......... 12

*M2 Software, Inc. v. Madacy Ent.*,
421 F.3d 1073 (9th Cir. 2005) .......... 18

*Mar Vista Ent., LLC v. THQ Nordic AB*,
No. 2:23-cv-06924, 2024 WL 3468933 (C.D. Cal. July 8, 2024) .......... 13

*MGA Ent. Inc. v. Harris*,
No. 2:20-cv-11548, 2023 WL 8896883 (C.D. Cal. Dec. 8, 2023) .......... 13

*Mophie, Inc. v. Shah*,
No. 13-cv-01321, 2014 WL 10988339 (C.D. Cal. July 24, 2014) .......... 22

*Murray v. Cable Nat'l Broad. Co.*,
86 F.3d 858 (9th Cir. 1996) .......... 16

*Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods., Inc.*,
No. 12-cv-05586, 2013 WL 245594 (N.D. Cal. Jan. 22, 2013) .......... 32

*NBA Props., Inc. v. HANWJH*,
46 F.4th 614 (7th Cir. 2022) .......... 33

*Nigro v. Sears, Roebuck & Co.*,
784 F.3d 495 (9th Cir. 2015) .......... 29

*Norwest Mortg., Inc. v. Superior Court*,
72 Cal.App.4th 214 (1999) .......... 23

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
757 F.2d 1058 (9th Cir. 1985) .......... 26

*PAE Gov't Servs., Inc. v. MPRI, Inc.*,
514 F.3d 856 (9th Cir. 2007) .......... 21

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .......... 32, 33

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) .......... 21, 22

*Petunia Prods. Inc. v. Anastasia Beverly Hills, LLC*,
No. 25-cv-02312, 2026 U.S. Dist. LEXIS 158354
(C.D. Cal. July 15, 2026) .......... 13

*Pocket Socks, Inc. v. Louis Vuitton N. Am., Inc.*,
No. 24-cv-1076, 2025 WL 1239348 (S.D. Cal. Apr. 29, 2025) .......... 14

*Pom Wonderful LLC v. Hubbard*,
775 F.3d 1118 (9th Cir. 2014) .......... 14, 15, 20

*Punchbowl, Inc. v. AJ Press, LLC*,
90 F.4th 1022 (9th Cir. 2024) .......... 11, 12

*Rearden LLC v. Rearden Com., Inc.*,
683 F.3d 1190 (9th Cir. 2012) .......... 16

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) .......... 28, 30

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......... 11, 12, 13

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 26, 30, 32, 33

*SDS Korea Co. v. SDS USA, Inc.*,
732 F. Supp. 2d 1062 (S.D. Cal. 2010) .......... 28

*Simpson Strong-Tie Co. v. MiTek Inc.*,
No. 20-cv-06957, 2021 WL 1253803 (N.D. Cal. Apr. 5, 2021) .......... 25

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) .......... 31

*Solofill, LLC v. Rivera*,
No. 17-cv-02956, 2017 WL 5953105 (C.D. Cal. Oct. 16, 2017) .......... 19

*Sullivan v. Oracle Corp.*,
51 Cal.4th 1191 (2011) .......... 23, 24

*Sushi Nozawa, LLC v. HRB Experience, LLC,*
No. 2:19-cv-07653, 2020 WL 1529379 (C.D. Cal. Mar. 31, 2020) ....... 16, 20

*Taylormade Golf Co. v. Topgolf Callaway Brands Corp.,*
No. 3:26-cv-250, 2026 WL 2244259 (S.D. Cal. Aug. 4, 2026) .................... 25

*Tovey v. Nike, Inc.,*
No. 1:12-cv-0448, 2012 WL 7017821 (N.D. Ohio July 3, 2012) ................. 21

*Trader Joe's Co. v. Trader Joe's United,*
150 F.4th 1040 (9th Cir. 2025) .................................................. 14, 15, 17, 19

*Trimble Inc. v. PerDiemCo LLC,*
997 F.3d 1147 (Fed. Cir. 2021) ......................................................................... 29

*Twentieth Century Fox TV v. Empire Distrib., Inc.*,
875 F.3d 1192 (9th Cir. 2017) .......................................................................... 13

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
505 U.S. 763 (1992) ......................................................................................... 25

*Vanity Fair Mills, Inc. v. T. Eaton Co.,*
234 F.2d 633 (2d Cir. 1956) ............................................................................. 32

*Vapor Spot, LLC v. Breathe Vape Spot, Inc.,*
No. 15-cv-02110, 2015 WL 12839123 (C.D. Cal. Sept. 15, 2015) .............. 20

*Walter v. Mattel, Inc.,*
210 F.3d 1108 (9th Cir. 2000) .......................................................................... 18

*Warner v. Tinder Inc.,*
105 F. Supp. 3d 1083 (C.D. Cal. 2015) ........................................................... 23

*Wershba v. Apple Comput., Inc.,*
91 Cal.App.4th 224 (2001) ............................................................................... 23

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,*
433 F.3d 1199 (9th Cir. 2006) .......................................................................... 26

*Yamashita v. LG Chem, Ltd.,*
62 F.4th 496 (9th Cir. 2023) ............................................................................. 33

*Yuga Labs, Inc. v. Ripps,*
144 F.4th 1137 (9th Cir. 2025) .............................................................. 11, 12

**STATUTES**

15 U.S.C. § 1051 .......... 12
15 U.S.C. § 1065 .......... 18
15 U.S.C. § 1127 .......... 12, 25
Cal. Bus. & Prof. Code § 17204 .......... 25

**RULES**

Fed. R. Civ. P. 8 .......... 21
Fed. R. Civ. P. 12 .......... 10
Fed. R. Civ. P. 15 .......... 34

**OTHER AUTHORITIES**

3 McCarthy on Trademarks and Unfair Competition § 24:6 (5th ed. 2026) .......... 17

## INTRODUCTION

Defendants move to dismiss on the premise that THE LIFE OF A SHOWGIRL is an album title and nothing more. But Defendants have a problem: they swore the opposite to the USPTO. They applied to register that name as a trademark—first abroad, then in the United States—across fourteen classes spanning recordings, live performances, hairbrushes, and Christmas tree skirts. They operate a webstore under the name. They print it on shirts at the back of the neck, beside the country of origin. They put it on barcode stickers. They swore to this Court it was part of a "branding" campaign. Under *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023), a designation used that way receives no special First Amendment protection. Sued, Defendants now claim it was never a trademark at all.

Unable to defeat the allegations, Defendants try to disprove them. Their likelihood-of-confusion argument rests on three declarations, thirty-one exhibits, dictionary definitions, web printouts, and a chart of images their counsel assembled—all offered to establish that the allegations are "false." A motion to dismiss does not ask whether allegations are false, and one that labors to prove them so all but concedes they are sufficient. Rule 12(b)(6) asks only whether a claim is plausible, and claims that track the USPTO's own findings of confusing similarity are at least that.

Problems recur throughout the Motion. Defendants take positions contradicted by their own exhibits. They omit the parts of each test they cannot answer. They press arguments rejected by the Supreme Court. On that footing, they ask the Court to throw out every claim against every Defendant, with prejudice.

The Motion should be denied.

## LEGAL STANDARD

A complaint survives Rule 12(b)(6) if it pleads "enough facts to state a claim to relief that is plausible on its face."[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court assumes their veracity and draws inferences in Plaintiff's favor,

[1] Unless otherwise indicated, all internal quotation marks and citations are omitted.

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and "may not consider any material beyond the pleadings." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

## ARGUMENT

### I. *ROGERS* DOES NOT APPLY

The dispositive question under *Jack Daniel's* is not whether a designation carries expressive content—most marks do. 599 U.S. at 158. It is whether the designation functions "as a designation of source for the infringer's own goods." *Id.* at 153. Where it does, the "cabined doctrine" of *Rogers* does not apply, *id.* at 155, even when "the use of a mark has other expressive content," *id.* at 157. The Ninth Circuit has conformed: "To the point that our precedents previously held that *Rogers* applies when an expressive mark is used as a mark … our prior precedents are no longer good law." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024). *Rogers* does not apply to a designation used "at least in part for source identification." *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1166-67 (9th Cir. 2025). That this case involves an album is beside the point. The inquiry is whether THE LIFE OF A SHOWGIRL functions, at least in part, as a trademark. The FAC alleges that it does, and Defendants confirm it.[2]

***The applications.*** A trademark application is straightforward evidence that a party uses a designation as a mark, *Punchbowl*, 90 F.4th at 1031, and constitutes the party's "own admission that it is using the … trademarks as trademarks, to identify product source," *Jack Daniel's*, 599 U.S. at 160. TAS applied to register THE LIFE OF A SHOWGIRL in Jamaica and then in the U.S. before the album was announced. First Amended Complaint ("FAC") ¶¶ 57-58. The application covers the album itself as well as live performances and merchandise. *Id.* ¶ 58. TAS holds more than 175 registrations and applications on Swift's behalf, registers titles as marks, and sues to enforce them. *Id.* ¶¶ 9, 61, 69; *see Jack Daniel's*, 599 U.S. at 160 (defendant's prior "practice as to other products" is evidence of trademark use).

[2] Taylor Swift ("Swift"), TAS Rights Management, LLC ("TAS"), UMG Recordings, Inc. ("UMG"), and Bravado International Group Merchandising Services Inc. ("Bravado") are collectively "Defendants" except where otherwise indicated.

Defendants do not distinguish *Jack Daniel's*, citing it only through district court decisions, and they never mention *Punchbowl* or *Yuga*. They do not dispute that TAS filed the application or what it covers. Their sole answer is that the application was filed on an intent-to-use basis. But such a filing is a verified statement of intent to use the designation as a trademark. 15 U.S.C. §§ 1051(b)(3)(B), 1127. They have since done what they swore they intended: their goods now bear the mark. FAC ¶¶ 47-49.

***The labels.*** Defendants operate a store titled "THE LIFE OF A SHOWGIRL SHOP," in which the mark serves as the product name, e.g., "The Life of a Showgirl Hair Brush." *Id.* ¶¶ 47-48. On garments it appears "at the back of the neck on tops, and at the rear of the waistband on pants—alongside the country of origin," and on barcode stickers. *Id.* ¶ 49. Those are positions "reserved for the mark that identifies who makes the product." *Id.*; *see Jack Daniel's*, 599 U.S. at 160 (hangtag placement indicates trademark use). That TAYLOR SWIFT appears with THE LIFE OF A SHOWGIRL confirms the point rather than rebutting it. *Id.* (two marks on a single label can both "serve the same source-identifying function"); *Punchbowl*, 90 F.4th at 1031 (similar).

***Defendants' own description.*** The Motion opens by objecting to "Plaintiff's attempts to characterize the Album as a 'brand.'" Mot. 8. That characterization is Defendants'. In May 2026, Bravado's declarant swore that it "assists with a comprehensive marketing and branding campaign" for the album. Dkt. 40-96 ¶ 7. The same sentence, resworn for this Motion by another declarant, deletes "and branding." Dkt. 57-3 ¶ 7. Defendants do not explain the deletion, and the Motion continues to refer to the album's "[b]randing" anyway. Mot. 13. *Rogers* does not insulate marks used to "brand" the defendant's goods. *Jack Daniel's*, 599 U.S. at 156.

***Defendants' authorities.*** In none did the defendant apply to register the designation as a trademark at home and abroad, describe its own program as a "branding" campaign, or stand refused registration over the plaintiff's mark. *See, e.g.*, *Lost Int'l, LLC v. Germanotta*, No. 25-cv-00592, 2025 WL 4058219 (C.D. Cal. Dec. 15, 2025) (no trademark application, no "branding" admission). At a minimum, source

identification "is a fact-specific inquiry," *MGA Ent. Inc. v. Harris*, No. 2:20-cv-11548, 2023 WL 8896883, at *4 (C.D. Cal. Dec. 8, 2023), and courts decline to apply *Rogers* on the pleadings where source-identifying use is alleged, *see Davis v. Blue Tongue Films*, No. 23-3968, 2024 WL 5182630, at *1-2 (9th Cir. Dec. 20, 2024) (film title; reversing dismissal); *Belin v. Starz Ent., LLC*, No. 2:21-cv-09586, 2024 WL 4720795, at *4-5 (C.D. Cal. Sept. 20, 2024) (series title); *Activision Publ'g, Inc. v. Warzone.com, LLC*, No. 2:21-cv-03073, 2024 WL 6467326, at *3-4 (C.D. Cal. Apr. 11, 2024) (video game title); *Petunia Prods. Inc. v. Anastasia Beverly Hills, LLC*, No. 25-cv-02312, 2026 U.S. Dist. LEXIS 158354, at *15-16 (C.D. Cal. July 15, 2026) (memoir title).

*Rogers* does not apply, and would not save the Motion if it did. Under its second prong, a junior user who uses a mark "in the same way as the senior user" can explicitly mislead, and titles "confusingly similar to other titles" can mislead "regardless of artistic relevance." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 270 (9th Cir. 2018) (quoting *Rogers v. Grimaldi*, 875 F.2d 994, 999 n.5 (2d Cir. 1989)).[3] Both parties use their designations to title their works. FAC ¶¶ 33-35, 45. Defendants use theirs in Plaintiff's market, in her registered class, after USPTO notice that confusion was likely, and consumers have in fact conflated the marks. *Id.* ¶¶ 53, 58-59, 62, 82. Allegations of that kind cannot be resolved against a plaintiff on the pleadings. *Mar Vista Ent., LLC v. THQ Nordic AB*, 2024 WL 3468933, at *4 (C.D. Cal. July 8, 2024).

## II. THE FAC PLEADS LIKELIHOOD OF CONFUSION

Infringement requires two elements: that Plaintiff own "a valid, protectable mark" and that Defendants use "a confusingly similar mark." *Grocery Outlet, Inc. v. Albertson's, Inc.*, 497 F.3d 949, 951 (9th Cir. 2007). Defendants do not contest the first. That leaves likelihood of confusion, measured by the eight *Sleekcraft* factors, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), none of which

[3] *Cf. Twentieth Century Fox TV v. Empire Distrib., Inc.*, 875 F.3d 1192, 1197 (9th Cir. 2017) (declining to apply *Rogers*' footnote 5 as a threshold exception, not addressing its bearing on the second prong), *abrogated on other grounds by Jack Daniel's*, 599 U.S. 140, *as recognized in Punchbowl*, 90 F.4th at 1029-31.

controls and none of which is required. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1161 (9th Cir. 2021). "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). Dismissal on the pleadings is thus "generally disfavored," *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1049 (9th Cir. 2025), and "rare," *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019).

***Similarity.*** Similarity "is best evaluated by appearance, sound, and meaning." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1127 (9th Cir. 2014).

*Appearance.* The marks "share the same grammatical structure and resolve on the same dominant phrase, OF A SHOWGIRL." FAC ¶ 8. The parties agree that the marks must be compared as consumers encounter them, and the FAC alleges that such encounters occur largely in search results, on webpages, and in social feeds. *Id.* ¶¶ 55, 66. There, the marks appear as words on a screen where OF A SHOWGIRL dominates, and Defendants "cannot avoid the similarity … through their choice of design or coloration." *Id.* ¶ 79; *Sleekcraft*, 599 F.2d at 351 (mark "is frequently found alone in trade journals, company stationery, and various advertisements"); *Entrepreneur Media*, 279 F.3d at 1145 (marks in "textual sentences" appear similar). UMG argued as much when it appeared as the plaintiff: stylistic "differences are not present … when the parties' marks appear in text on their websites [or] social media." Dkt. 41-17 at 13.

Defendants do not address that similarity. They offer pictures: their "[b]randing" beside two of Plaintiff's fliers.[4] Neither mark, however, is fixed in the form Defendants have selected. Plaintiff's registration is in standard characters, so her rights "are not limited to any particular font, color, or stylization." FAC ¶ 79. Defendants present their

[4] Defendants fault the FAC for omitting photographs but cite no authority imposing such a requirement. *Pocket Socks, Inc. v. Louis Vuitton N. Am., Inc.* held that side-by-side photographs "are not … sufficient"—not that a plaintiff must supply them. No. 24-cv-1076, 2025 WL 1239348, at *4 (S.D. Cal. Apr. 29, 2025). And their own authority declined to consider a counsel-created comparison chart. *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1022 (C.D. Cal. 2015).

own mark in text and in varying colors and arrangements. Dkt. 57-15 at 2, 4, 6; Dkt. 57-16 at 2-3, 7-10; Dkt. 57-17 at 2, 8. Marks "must be compared in the light of what occurs in the marketplace, not in the courtroom," *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1488 (10th Cir. 1987), which is why side-by-side comparison "is not the test," *Levi Strauss & Co. v. Blue Bell, Inc.*, 632 F.2d 817, 822 (9th Cir. 1980).

Sound. Both marks are "built on the identical construction '[___] OF A SHOWGIRL'" and "share the dominant, terminal phrase[.]" FAC ¶ 79. A terminal phrase carries the stress when spoken, so what a listener retains from either is "of a showgirl." *See In re Detroit Ath. Co.*, 903 F.3d 1297, 1303 (Fed. Cir. 2018) (courts "give greater weight to … 'dominant' parts"). Non-visual similarity is "particularly important" where consumers do not encounter the marks side by side. *Pom Wonderful*, 775 F.3d at 1129 n.9. Defendants do not address sound similarity. The FAC alleges the marks sound alike, FAC ¶ 79; the USPTO found the same, *id.* ¶ 59.

Meaning. Both marks "convey the same connotation of an intimate, behind-the-scenes account of a showgirl's life." *Id.* ¶ 79. "Closeness in meaning can itself substantiate a claim of similarity of trademarks," *Sleekcraft*, 599 F.2d at 352, even when the marks share no words at all, *Hancock v. Am. Steel & Wire Co. of N.J.*, 203 F.2d 737, 740-41 (C.C.P.A. 1953) (CYCLONE and TORNADO confusingly similar). These marks share three words, and consumers draw the equivalence, "using Plaintiff's mark to refer to Defendants' goods." FAC ¶ 8.

Defendants respond by citing dictionary definitions of "life," "confession," and "showgirl." That piecemeal comparison is impermissible; marks must be "considered in their entirety." *Pom Wonderful*, 775 F.3d at 1127-28. No one disputes that "life" and "confession" are different words, and defining "showgirl"—a word both marks share—cannot establish that the meanings diverge. How marks read to consumers, in any event, "cannot be resolved at the pleading stage." *Trader Joe's*, 150 F.4th at 1052.

Defendants' own authority provides that dismissal follows only where the court can determine, "as a matter of law from the pleadings," that "the goods are unrelated

and confusion is unlikely." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996). Defendants do not argue from the pleadings, which answer *Murray*'s question against them. The FAC alleges that the USPTO examined these marks and refused Defendants' application, finding them identical in their shared terms, similar in appearance and sound, alike in commercial impression, and the parties' offerings "closely related." FAC ¶ 59. Defendants downplay the refusal as nonfinal, but that describes its posture, not its analysis. *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) ("Regardless of whether the [USPTO's] statement was the result of a preliminary assessment, it suggests that others found the marks similar."). Courts dismiss where the marks are "patently dissimilar," *Sushi Nozawa, LLC v. HRB Experience, LLC*, No. 2:19-cv-07653, 2020 WL 1529379, at *3 (C.D. Cal. Mar. 31, 2020), and two marks the USPTO found similar are not.

***Relatedness.*** Goods are related when they are "complementary, sold to the same class of purchasers, or similar in use and function." *Ironhawk*, 2 F.4th at 1163. Any one of these suffices, and competition between the parties is not required. *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1212 (9th Cir. 2012).

*<u>Function.</u>* Plaintiff "combines music, singing, and live performance"; Swift "does the same and includes cabaret versions of the songs, drawing on the same cabaret register" as Plaintiff. FAC ¶ 53. Relatedness may rest on considerably less. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) (goods related where both parties "offer[ed] products and services relating to the entertainment industry" and "movies"). Plaintiff requires nothing that broad. The functional overlap alleged is not a shared industry but a shared service: live musical performance, in the same cabaret register, drawn from the same showgirl subject.

*<u>Purchasers.</u>* Both "reach overlapping audiences of entertainment consumers through the same channels—stage, television, online retail, social media"; consumers searching for Plaintiff are shown "results dominated by Defendants[.]" FAC ¶ 55.

*<u>Complementarity.</u>* Protection reaches "any goods related in the minds of

consumers." *Brookfield*, 174 F.3d at 1056. Live performance, music, and merchandise are not substitutes but complements. The FAC alleges that "[c]onsumers understand that entertainment marks routinely extend across formats and into adjacent categories," FAC ¶ 54, and take live shows, recordings, and merchandise under a mark "to emanate from a single source," *id.* ¶ 80. *See* 3 *McCarthy on Trademarks and Unfair Competition* § 24:6 (5th ed. 2026). Defendants' own application reflects the same understanding: they applied to register the mark for live musical performances and theatrical shows in Class 41—Plaintiff's registered class—and in thirteen further classes. FAC ¶ 58.

The USPTO found the same, concluding that "the parties' goods and services are closely related," that "both marks are used in connection with entertainment services involving live musical performances, and that consumers encountering both marks would be likely to assume a connection between the parties." *Id.* ¶ 59.

Defendants respond that Plaintiff "has never released any music" and that Swift "has never offered a cabaret show." Mot. 12. Both assertions describe an absence of direct competition, which is not the test. "[T]he basic premise—that a trademark provides protection only when the defendant uses the mark on directly competing goods—is no longer good law," *Trader Joe's*, 150 F.4th at 1050; *Brookfield*, 174 F.3d at 1056 (courts must not "overemphasize[] differences in principal lines of business"). The Ninth Circuit reversed a dismissal built this way, holding it "too narrow" to focus on the single good both parties sold where the rest were "sufficiently complementary" that "consumers may nevertheless be confused about the source or sponsorship of these products." *Trader Joe's*, 150 F.4th at 1050. Defendants ask for the same error.[5]

Defendants' arguments also misread the pleadings. The FAC does not allege that Swift performs cabaret; it alleges that her release "includes cabaret versions of the

---

[5] Defendants' remaining authority does not reach this case. *Beckett v. Urban* found no confusion between a rock band's mark and a guitar kit sold as "Player by Keith Urban," because the tagline "denotes that Keith Urban is the good's source, dispelling any potential confusion." No. 15-cv-1407, 2015 WL 12552044, at *3 (C.D. Cal. July 6, 2015). That is forward-confusion reasoning. Plaintiff pleads reverse confusion, in which a junior user's house mark "aggravate[s] confusion by reinforcing the association between the mark and the junior user." *Ironhawk*, 2 F.4th at 1164.

songs, drawing on the same cabaret register in which Plaintiff performs," FAC ¶ 53—an allegation Defendants do not deny. And their observation that Swift has never performed the album live sits awkwardly beside their preliminary-injunction opposition, whose lost-revenue estimate predicted that merchandise "might be sold at live performances by Ms. Swift." Dkt. 40-96 ¶ 12 n.1.

***Strength***. Strength has two dimensions: conceptual strength, meaning "inherent distinctiveness," and commercial strength, meaning "actual marketplace recognition." *Lerner & Rowe, PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 719 (9th Cir. 2024). In a reverse confusion case, the court "evaluate[s] the conceptual strength of [the senior user's] mark and compare[s] it to the commercial strength of [the junior user's] mark." *Ironhawk*, 2 F.4th at 1162. Courts assess "whether the junior mark is so strong as to overtake the senior mark," *Walter v. Mattel, Inc.*, 210 F.3d 1108, 1111 n.2 (9th Cir. 2000), and "how much the market is saturated by the junior mark," *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1089 (9th Cir. 2005). As to commercial strength, "THE LIFE OF A SHOWGIRL sold more than four million U.S. album-equivalent units in its first week, … the largest first week of sales in modern music history," distributed through a global merchandising operation and "national brand collaborations reaching millions." FAC ¶¶ 64, 68. Defendants' use is "of an entirely different order of magnitude" and "likely to swamp the source-identifying capacity of Plaintiff's … mark." *Id.* ¶ 84. Less has sufficed. *IYO, Inc. v. IO Prods., Inc.*, No. 25-4028, 2025 WL 3471705, at *2 (9th Cir. Dec. 3, 2025) (commercial strength evidenced by "extensive coverage … in national media"). Defendants do not contest any of this.

As to conceptual strength, CONFESSIONS OF A SHOWGIRL is "inherently distinctive," federally registered, and incontestable under 15 U.S.C. § 1065. FAC ¶¶ 43-44. Registration is "*prima facie* evidence that the [senior user's] mark is inherently distinctive (i.e., at least suggestive)," and a suggestive mark is all this factor requires. *Ironhawk*, 2 F.4th at 1162. Defendants contend that Plaintiff conceded her mark is weak, but the brief they cite states the mark is suggestive. Dkt. 16 at 20-21.

Defendants' remaining argument that the field is crowded rests on the register rather than the marketplace. "[R]egistrations are not probative of conceptual weakness without evidence that the marks were actually used in commerce and viewed by consumers," *Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1191 (C.D. Cal. 2013), and use in unrelated fields—here, a hairstylist, a search-engine consultancy—does not diminish a mark's strength, *see Fleischmann Distilling Corp. v. Maier Brewing Co.*, 314 F.2d 149, 154 (9th Cir. 1963). In any event, whether a field is crowded is a question of fact and "but one factor," not "dispositive." *JL Beverage Co.*, 828 F.3d at 1108; *Solofill, LLC v. Rivera*, No. 17-cv-02956, 2017 WL 5953105, at *2 (C.D. Cal. Oct. 16, 2017) ("pleading stage is not the appropriate time for [strength] analysis"). The remaining printouts depict titles of works. Defendants devote pages to arguing that titles are not trademarks, then count titles as trademarks. If titles are not marks, these prove nothing about the field; if they are, then so is Defendants'.

***Actual confusion.*** This factor is not required, and its absence would not matter here. The Ninth Circuit has "repeatedly held" that "actual confusion" is "not necessary to find a likelihood of confusion," and it reversed a dismissal where the plaintiff "failed to plausibly allege actual confusion" at all. *Trader Joe's*, 150 F.4th at 1053-54. Plaintiff has pleaded it regardless. "[M]ultiple instances of actual consumer confusion have been documented across public platforms, including consumers who have referred to Defendants' goods by Plaintiff's mark." FAC ¶ 82. The USPTO refused Defendants' application on confusion grounds, citing Plaintiff's registration. *Id.* ¶¶ 10, 59.

Defendants' single authority does not help. *Applied Underwriters* dismissed because the allegations were "belied by the allegedly infringing email attached to the complaint," which established fair use on the face of the pleading. 913 F.3d at 897. Defendants assert no fair-use defense; nothing attached to the FAC contradicts it.

***Marketing channels.*** Channels converge where "the general class of … purchasers exposed to the products overlap." *Sleekcraft*, 599 F.2d at 353. The inquiry

asks "whether the predominant purchasers of the parties' goods are similar … and whether the marketing approaches used resemble each other." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1162 (C.D. Cal. 2009). "[O]utlets and customer bases need not be identical; rather, some degree of overlap suffices." *Vapor Spot, LLC v. Breathe Vape Spot, Inc.*, No. 15-cv-02110, 2015 WL 12839123, at *13 (C.D. Cal. Sept. 15, 2015). Dismissal is appropriate where "the channels in which the marks are used are completely unrelated." *Sushi Nozawa*, 2020 WL 1529379, at *3.

"The parties reach overlapping audiences of entertainment consumers through the same channels—stage, television, online retail, social media[.]" FAC ¶ 55. Those channels have converged: a consumer searching for Plaintiff "is now presented with results dominated by Defendants[.]" *Id.* ¶¶ 55, 66. Beyond search, each party promotes through the same channels. *Id.* ¶¶ 39, 45. Both reach audiences through television. *Id.* ¶ 38; *see also* Dkt. 57-1 at 2 ¶ 8. That the parties appear on different programs is immaterial: a channel of trade "includes the same type of distribution channel," and convergence exists "even when different submarkets are involved." *Pom Wonderful*, 775 F.3d at 1130; *Alignment Healthcare USA, LLC v. MindHYVE.ai, Inc.*, No. 8:25-cv-01354, 2025 WL 4041927, at *6 (C.D. Cal. Dec. 19, 2025) (no "heightened pleading" requiring plaintiff to "identify specific customers or 'consumer bases'").

Defendants respond that they sell goods through their website. That website is one channel, and it is a channel through which Plaintiff also sells. FAC ¶ 40. That is convergence, not its absence. *Charisma Brands, LLC v. AMDL Collections, Inc.*, No. 19-cv-00312, 2019 WL 6331399, at *4 (C.D. Cal. Sept. 3, 2019); *Vapor Spot*, 2015 WL 12839123, at *5 (the question is "best left for decision after discovery").

***Consumer care, intent, and expansion.*** Defendants do not address the remaining three *Sleekcraft* factors. Each is pleaded. FAC ¶¶ 39, 47-48, 52, 55 (consumer care); *id.* ¶¶ 9-10, 59, 61-63, 85 (intent); *id.* ¶¶ 54, 58, 65 (expansion).

## III. THE FAC PLEADS SECONDARY LIABILITY

Secondary liability reaches a party that does not itself use the mark but enables

another's use. Plaintiff pleads secondary liability in the alternative to direct liability, FAC ¶¶ 77, 95, as Rule 8 permits, Fed. R. Civ. P. 8(d)(2)-(3), "even if the alternatives are mutually exclusive," *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 859 (9th Cir. 2007). Defendants ask how the same conduct can ground both theories. It need not. If TAS's licensing is itself trademark use, TAS is liable directly; if it is not, that same licensing is what enabled UMG's and Bravado's use. The FAC pleads the first and, only if the Court rejects it, the second. FAC ¶¶ 76-77, 94-95. Defendants' own authority permits no less. *Tovey v. Nike, Inc.*, No. 1:12-cv-0448, 2012 WL 7017821, at *11 (N.D. Ohio July 3, 2012) (party "may be liable for both"), *report and recommendation adopted as modified*, 2013 WL 486341 (N.D. Ohio Feb. 6, 2013).

Contributory liability attaches where a defendant "intentionally induces another to infringe a trademark, or … continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982). Where what is supplied is not a "product," the second prong reaches "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Vicarious liability requires "joint ownership or control over the infringing product." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) ("*Visa*").

***TAS.*** The same facts support both theories. "TAS owns the trademark," FAC ¶ 77, "and its role is one of active control, not passive ownership," *id.* ¶ 18. With knowledge of Plaintiff's mark and the USPTO's refusal of its application, "TAS authorized and licensed UMG and Bravado to use the designation as a trademark on the goods sold to consumers." *Id.* ¶ 77. That is inducement and continued supply. The license constitutes the "authorization those entities require in order to manufacture, distribute, and sell the goods." *Id.* ¶ 30. TAS retained "the right and ability to control that use," *id.* ¶ 77, and polices the mark against others, *id.* ¶ 18; Dkt. 57-1 at 6 ¶ 10. That is control and monitoring. *See Life Alert Emergency Response, Inc. v.*

*ConnectAmerica.com, LLC*, No. 13-cv-03455, 2014 WL 12596489, at *9 (C.D. Cal. May 13, 2014) ("absent Defendant's agreement with the Sellers, the telemarketers would not be … sell[ing] Defendant's products"), *aff'd sub nom. Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 473 (9th Cir. 2015) (same control supports contributory and vicarious liability). TAS is also vicariously liable on the same facts. FAC ¶ 77 (ownership); *id.* ¶¶ 18, 77 & Dkt. 57-16 at 4 (control).

***Swift.*** Swift "authorized and licensed [the] exploitation" of the mark to UMG and Bravado through "agreements … governing the release, distribution, and merchandising of the material she created." FAC ¶¶ 17, 30. That authorization is what permits their use at all. Directing UMG and Bravado to exploit the mark—selecting it, approving it, and building the program around it, *id.*—with knowledge of Plaintiff's registration and the USPTO's refusal, *id.* ¶¶ 61-62, 85, is inducement and supply. She is also vicariously liable: as the "principal who selected, approved, and promoted the designation and directed its exploitation," *id.* ¶ 30, she exercises control over it.

***UMG and Bravado.*** Bravado "designed, manufactured, marketed, and sold the consumer merchandise bearing" the mark. FAC ¶ 20; Dkt. 57-3 ¶ 7. UMG "released and distributed the recordings," FAC ¶ 19, "placing them into the California market through digital platforms and physical retailers," *id.* ¶ 106. Both supply the goods to retailers that sell them. *Id.* ¶¶ 21, 106. The USPTO "told them their designation was likely to be confused with" Plaintiff's, and they "continued anyway." *Id.* ¶ 62. That is continued supply with knowledge, *Inwood*, 456 U.S. at 854, and parties that make the goods and bring them to market control the infringing product, *Visa*, 494 F.3d at 807.

Defendants recite the vicarious standard but do not apply its joint-ownership alternative, and the authorities they cite are inapposite. *GoDigital* dismissed where the complaint pleaded no facts establishing that the defendant controlled the conduct or had authority to stop it. *GoDigital Media Grp., LLC v. GoDigital Inc.*, No. 17-cv-07796, 2018 WL 4944543, at *3-4 (C.D. Cal. Sept. 5, 2018). *Mophie* dismissed as to a deal-promotion platform that could not "even … impede sales[.]" *Mophie, Inc. v. Shah*,

No. 13-cv-01321, 2014 WL 10988339, at *4-5, *8 (C.D. Cal. July 24, 2014). Here, each Defendant can stop the infringement. TAS and Swift can withdraw permission, FAC ¶¶ 17-18, 30; Bravado and UMG can stop making and distributing goods, *id.* ¶¶ 19-20. The platform in *Mophie* could withdraw no more than an advertisement.

## IV. THE FAC STATES A UCL CLAIM

Defendants raise two objections to Plaintiff's UCL claim: that the statute cannot reach conduct occurring outside California, and that their conduct is not "unfair."[6]

### A. The Conduct Occurred in California.

The UCL "reaches any unlawful business act or practice committed in California," *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1208 (2011), and "may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California," *Norwest Mortg., Inc. v. Superior Court*, 72 Cal.App.4th 214, 224-25 (1999). In determining whether the UCL applies, courts consider (1) "where the defendant does business," (2) "whether the defendant's principal offices are located in California," (3) "the location from which the relevant decisions were made," *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1096 (C.D. Cal. 2015), and (4) "the place [plaintiff] w[as] injured," *Norwest*, 72 Cal.App.4th at 227.

***The conduct occurred here.*** Bravado "carries out from [California] its design, manufacturing, merchandising, marketing, and sales operations for the goods bearing the designation," and UMG "conducts from [California] the distribution and commercial exploitation of the goods … placing them into the California market through digital platforms and physical retailers in this State." FAC ¶ 106. That is sufficient. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014) (practices "conceived, reviewed, [and] approved" in California); *Wershba v. Apple Comput., Inc.*, 91 Cal.App.4th 224, 241-42 (2001) (material "prepared in and distributed" here), *disapproved on other grounds by Hernandez v. Rest. Hardware, Inc.*, 4 Cal.5th 260 (2018). TAS's authorization supplies "the contractual arrangements

---

[6] Plaintiff's unlawful-prong claim survives with her well-pleaded Lanham Act claims.

[UMG and Bravado] require in order to manufacture, distribute, and sell the goods." FAC ¶¶ 18, 107. Swift, in turn, wrote and directed the brand's promotional music video and filmed it in Los Angeles, shot photography for merchandise here, funded and drove promotion "target[ing] the California market through fan activations and physical billboards," and appeared at an award show here to promote the brand. *Id.* ¶ 107.

***Defendants have offices and do business here.*** UMG and Bravado maintain their principal offices in this State. *Id.* ¶¶ 19-20, 27-28. TAS licenses the mark to them, *id.* ¶¶ 18, 107, and Swift's business in California is described above, *id.* ¶¶ 17, 107.

***The injury occurred here.*** The accused goods are advertised and sold in this State, *id.* ¶¶ 19, 21, 106-07, and the confusion alleged occurs among consumers here, *id.* ¶¶ 66, 82, 111. Plaintiff's injury is to her "California business interests": her California audience, industry relationships, prospective performance engagements here, and a project in development with a Los Angeles production company. *Id.* ¶ 111.

Defendants' authorities involve plaintiffs who failed to allege any California conduct at all. *See, e.g., Aliya Medcare Fin., LLC v. Nickell*, 156 F. Supp. 3d 1105, 1140 (C.D. Cal. 2015) (did not "allege [conduct] … took place in California"). Defendants claim that the allegations are "largely inaccurate, and fail to identify" from where the conduct "emanated." Mot. 16. The FAC identifies each Defendant's conduct and where it occurred. FAC ¶¶ 106-07. Whether those allegations are accurate is not a dismissal question, *Lee*, 250 F.3d at 688, and "***largely*** inaccurate" grants that some of the conduct occurred here, which is all the UCL requires. *Sullivan*, 51 Cal.4th at 1208.[7]

**B. The FAC Pleads Unfair Conduct.**

Unfair conduct is defined three different ways: conduct that "threatens an incipient violation of an antitrust law," "violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law," or "otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 187 (1999). Defendants read all three as

[7] Republic Records' New York office changes nothing. Republic is not a defendant, and Defendants' own exhibit places Republic in California as well. Dkt. 57-34 at 4.

requiring an antitrust violation, but none does. *LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-cv-02573, 2019 WL 160335, at *18 (N.D. Cal. Jan. 10, 2019) (rejecting "argument that plaintiffs must 'state an antitrust claim'").

The second definition follows from the claims already pleaded: "violations of the Lanham Act … can serve as a predicate basis for a claim of … unfair practices under the UCL." *Simpson Strong-Tie Co. v. MiTek Inc.*, No. 20-cv-06957, 2021 WL 1253803, at *7 (N.D. Cal. Apr. 5, 2021); *accord Air Doctor, LLC v. Lonni, Inc.*, No. 23-cv-00353, 2023 WL 9319060, at *5 (C.D. Cal. Aug. 21, 2023). The Lanham Act exists to protect against "unfair competition," 15 U.S.C. § 1127, and trademarks serve that end by "foster[ing] competition" and preserving consumers' capacity to identify what they are buying, *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). Defendants have disabled that function: consumers "can no longer reliably identify the source of goods offered under Plaintiff's … mark," and Defendants' conduct "corrupts the source-identifying function on which the competitive market depends." FAC ¶ 109.

The third definition asks whether the conduct "otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal.4th at 187. Defendants deployed their mark at "an entirely different order of magnitude," FAC ¶¶ 64, 84, "displac[ing] the goodwill of [Plaintiff] through sheer commercial scale, substituting market power for fair competition," until consumers can no longer "reliably identify the source of goods," *id.* ¶ 109. Consumers now conflate the brands, referring to Defendants' goods by Plaintiff's mark. *Id.* ¶¶ 8, 66, 82. The deprivation of "the ability to make informed source-based choices," *id.* ¶ 109, is harm to the market, not merely to Plaintiff. *See Taylormade Golf Co. v. Topgolf Callaway Brands Corp.*, No. 3:26-cv-250, 2026 WL 2244259, at *15 (S.D. Cal. Aug. 4, 2026) (conduct "threatens to harm competition by undermining consumers' ability to make informed … decisions"). Defendants cite Paragraph 111 and assert Plaintiff alleges only injury to herself. That paragraph pleads her injury because Cal. Bus. & Prof. Code § 17204 requires it. The harm to competition is pleaded in paragraphs Defendants pass over. FAC ¶¶ 8, 82, 84.

## V. THE COURT HAS JURISDICTION OVER SWIFT AND TAS

Plaintiff asserts specific jurisdiction, which requires that the defendant "purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum"; that the claim "arise[] out of or relate[] to the defendant's forum-related activities"; and that "the exercise of jurisdiction … be reasonable." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (en banc). The first requirement is disjunctive: purposeful direction, purposeful availment, or "some combination thereof" will suffice. *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). Plaintiff "need only make a prima facie showing of jurisdictional facts"; "uncontroverted allegations in the complaint must be taken as true," *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004); and allegations a declaration does not "directly controvert[]" are accepted, *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). Swift availed herself of this forum by performing in California acts giving rise to this suit; TAS's transactions placed the designation on goods made and sold in this State; and both directed their commercial program at California. Any one is enough.

### A. Swift Purposefully Availed Herself of California.

Purposeful availment "is satisfied if the defendant has taken deliberate action within the forum state." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). Defendants address availment only in passing, and brief the *Calder* effects test on the premise that trademark sounds in tort and so always calls for purposeful direction. The Ninth Circuit disagrees. *Id.* at 605 (error to "rigidly apply[] the *Calder* effects test without taking into account where the allegedly tortious conduct occurred"). Where conduct occurred in the forum, the availment inquiry, not the effects test, "is the proper starting place," *id.* at 606, and "[t]he commission of an intentional tort in a state is a purposeful act that will satisfy" both purposefulness and relatedness, *id.* at 603 (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d

1058, 1064 (9th Cir. 1985)). Swift's contacts consist of what she did in California.

***Swift produced the brand's promotional work here.*** Swift "personally wrote and directed the music video for … THE LIFE OF A SHOWGIRL, [and] filmed it at the Los Angeles Theatre[.]" FAC ¶ 17. No declaration denies it, and Plaintiff's evidence confirms it. Exs. 1–2; Ex. 3 at 2.[8]

***Swift shot photography for the brand here.*** Swift "shot photography ***for*** her merchandise" at the Los Angeles Theatre. FAC ¶ 17. Defendants deny only that Swift "shot photography ***of*** the ... merchandise launch line in California." Mot. 4. But Plaintiff does not allege Swift photographed shirts and sweaters at the theatre. She alleges that Swift shot photographs there that ended up on those goods. The theatre's interior is distinctive, and matching it to Defendants' goods requires no expertise:

| | | |
|---|---|---|
|  *Ladies' powder room at the Los Angeles Theatre.* Ex. 6 at 2-6. |  *Photograph of Swift.* Ex. 6 at 5-6; Ex. 8. |   *Sweater for sale on Swift's site.* Ex. 7.[9] |

***Swift came here to promote the brand.*** Swift "appeared in person in Los Angeles at the 2026 iHeartRadio Music Awards to promote THE LIFE OF A SHOWGIRL." FAC ¶ 17. She took the stage, accepted seven awards, and spoke in promotion of THE LIFE OF A SHOWGIRL. Ex. 12. Defendants do not deny that Swift was here, on that stage, speaking about the album. They dispute what to call it, but "[t]he substance, not form, of the defendant's activities is dispositive." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir. 1986). Advertising is purposeful contact. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007,

[8] All references to "Ex." are to the Parkkinen Declaration submitted herewith.
[9] *See also* Exs. 9–11; *compare* Ex. 4 at 18 *with* Ex. 5 *and* Dkt. 57-17 at 8.

1020-21 (9th Cir. 2002). Swift did not just direct advertising into this forum. She came here to deliver it.

Defendants respond that this conduct was "fortuitous," citing cases in which a trade show was the defendant's only in-person forum contact. *See, e.g., SDS Korea Co. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1080 (S.D. Cal. 2010); *Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981) (attendance came "after this action was filed" and "could not have given rise to" it). *Freestream* rejected the same argument. The defendant there "voluntarily traveled to Nevada to attend the aviation industry conference, and voluntarily agreed to speak" with two people while there—jurisdiction was proper because his presence was voluntary rather than compelled. 905 F.3d at 607. Swift chose to come here, take the stage here, and promote her brand here.

Defendants further argue that Swift's music video is protected by the First Amendment and so cannot be considered. The Supreme Court addressed that argument. *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("We also reject the suggestion that First Amendment concerns enter into the jurisdictional analysis.").

**B. TAS Consummated Transactions with California Entities.**

Jurisdiction is proper over a defendant that "consummate[s] some transaction with the forum or resident thereof." *Briskin*, 135 F.4th at 750. TAS licensed the mark to California entities UMG and Bravado under "contractual arrangements those entities require in order to manufacture, distribute, and sell the goods bearing it." FAC ¶¶ 18, 27-28. A contract creating "continuing obligations" to forum residents is "manifestly" sufficient. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). For a licensor, the question is whether the license contemplates a relationship beyond royalty payments, such as a shared right to litigate infringement or licensor control over the licensee's sales or marketing. *DrVita, Inc. v. NatureLab N. Am., Inc.*, No. 2:24-cv-03314, 2025 WL 656652, at *5 (C.D. Cal. Feb. 7, 2025). Each is alleged.

***Enforcement.*** TAS "polices" its marks, "pursu[es] infringing uses," "challeng[es] conflicting trademark applications," and "exercise[s] that control over

the designation at issue." FAC ¶¶ 18, 61.[10] TAS filed the application for THE LIFE OF A SHOWGIRL and prosecutes it still. *Id.* ¶¶ 26, 57, 59 n.2; Dkt. 57-1 at 6 ¶ 10 (TAS performs "any and all work related to" that application). TAS also coordinates with its California licensees[11] in defending this action, through joint counsel—coordination that courts credit in finding jurisdiction over a licensor. *See Jekyll*, 140 F.4th at 1322.

***Sales.*** Nothing bearing the mark may be made or sold without TAS's authorization, which it granted to UMG and Bravado. FAC ¶¶ 18, 30. TAS "retained and exercised the right and ability to control that use," *id.* ¶ 77, and says so at the point of sale, Dkt. 57-16 at 4, 6-8, 11 (goods appear "BY PERMISSION" of TAS). That is the very control Defendants' own authority found missing. *Growcentia, Inc. v. Jemie B.V.*, No. 20-cv-2619, 2021 WL 3510764, at *5 (D. Colo. Aug. 10, 2021) (result "might be different" with "evidence of direction and control over … sales").

***Marketing.*** Defendants' own declarants describe the arrangement: TAS "invested significant time, effort, and money for the past year and a half to . . . promote" the brand, Dkt. 40-95 ¶ 13, while Bravado merely "assists with . . . marketing," Dkt. 57-3 ¶ 7. A licensee that assists with marketing is not directing it. Defendants selected those words, and they must be construed "in the plaintiff's favor." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

Defendants do not deny the operative allegations. Their declarant states that TAS "does not authorize, license, and control the use of the Album title as a trademark on goods made and sold in California." Dkt. 57-1 at 2 ¶ 6. That is a denial of the legal conclusion in dispute, not of any fact—and a declaration "that states only conclusions" may be disregarded. *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). The same declarant supplies the facts four pages later. Dkt. 57-1 at 6 ¶ 10 (TAS's work

---

[10] Defendants argue quality control is not enough; nothing alleged is quality control.

[11] Defendants suggest that a license must be "exclusive." But after *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351 (2021), "limiting [jurisdiction] to relationships with exclusive licensees" no longer holds. *Jekyll Island-State Park Auth. v. Polygroup Macau Ltd.*, 140 F.4th 1304, 1322 n.17 (11th Cir. 2025) (citing *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156 (Fed. Cir. 2021)).

comprises the "ownership, control, licensing, and/or commercialization" of Swift's intellectual property, including "THE LIFE OF A SHOWGIRL"). TAS does not deny that it owns the designation, supplies the license without which UMG and Bravado could not produce the accused goods, controls that use at the point of sale, polices it, and is compensated on all of it. FAC ¶¶ 18, 30, 77; *Unocal*, 248 F.3d at 922 (allegations not "directly controverted" are taken as true). That TAS sits in Tennessee makes no difference. *See Haisten*, 784 F.2d at 1397-98 (jurisdiction over Cayman fund that insured California residents even though it made decisions abroad and had no California offices).

**C. Swift and TAS Purposefully Directed the Program at California.**

Purposeful direction under *Calder* requires an intentional act, expressly aimed at the forum, causing harm there. *Schwarzenegger*, 374 F.3d at 803.[12]

***Express aiming.*** Advertising placed in the forum satisfies express aiming. *Rio*, 284 F.3d at 1020-21 (*Calder* satisfied where defendant "targeted consumers in Nevada by running radio and print advertisements in Las Vegas"); *see Ford*, 592 U.S. at 365 (in-forum billboards). Swift "funded and drove" the promotion of the mark, "target[ing] the California market, including through fan activations and physical billboards across Los Angeles County." FAC ¶¶ 17, 107; Exs. 13–18. Defendants confirm that TAS and Swift "invested significant time, effort, and money [on] … promot[ion.]" Dkt. 40-95 ¶ 13. No declaration denies this or either Defendant's role.[13]

Defendants argue that Plaintiff did not allege the billboards "targeted California more than any other state," Mot. 21, and that "[m]aking goods broadly available online without specific California-directed advertising does not support jurisdiction," *id.* 23. The first argument is not a defense. Express aiming requires no "differential treatment

---

[12] Defendants do not dispute that their conduct was intentional.

[13] Defendants argue that Plaintiff does not allege Swift "personally sold, distributed, or placed billboards" in California. Mot. 21. No authority requires her to have hung them herself. What matters is whether she was a primary participant in conduct directed here. *Calder*, 465 U.S. at 790 ("primary participants in an alleged wrongdoing intentionally directed"). The California promotion Swift "funded and drove" was hers. FAC ¶ 17.

of the forum state." *Briskin*, 135 F.4th at 758. That the mark appeared on billboards elsewhere says nothing about whether it appeared on billboards here. Defendants do not dispute that it did. The second argument states the law correctly but ignores the facts. What is required is "something more" than "mere passive nationwide [website] accessibility." *Id.* at 752. In-forum advertising, such as Defendants', is the paradigm of something more. *Id.* at 753. Their webstore supplies more still: "legal compliance schemes that are focused on the laws of a specific state … can support a showing of 'something more.'" *Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1171 (C.D. Cal. 2024); *Freeman v. 3Commas Techs. OU*, No. 24-6158, 2026 WL 579391, at *1 (9th Cir. Mar. 2, 2026) (California privacy page "indicates that [defendant] intentionally directed its activities toward California"). The webpages Defendants themselves submitted carry a data privacy "California Resident Option[.]" Dkt. 57-16 at 12; Dkt. 57-17 at 5-8. That is a page built for this State's law and no other.

Defendants' authorities involved a website as the only forum contact. *See, e.g., Heiting*, 743 F. Supp. 3d at 1170-71. Their further contention that these contacts "merely arise from California consumers' choice to purchase goods," Mot. 23, ignores that those choices followed from Defendants' California advertising. FAC ¶¶ 17, 107; *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1198 (9th Cir. 1988) (defendant that "pursu[ed] … California clients by advertising" had "sufficient minimum contacts"). Erecting billboards and staging a fan activation in Los Angeles were Defendants' "own choice[s] and not random, isolated, or fortuitous." *Briskin*, 135 F.4th at 758.

***Harm.*** Defendants point to Plaintiff's Nevada residence and to her not having yet performed live in California. Mot. 23. Neither is the measure. The element asks whether the defendant knew harm was likely to be suffered in the forum, not whether it knew of the plaintiff's ties to it. A forum's interest extends "to the injury that in-state [conduct] causes within [the State] to a nonresident," and harm may be suffered "even in a State in which [the plaintiff] has hitherto been anonymous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-77 (1984). The harm alleged is consumer confusion,

and confusion occurs where the goods are sold. *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956). Defendants advertised the mark across California and sold goods bearing it here. FAC ¶¶ 17, 19, 21, 107. That confusion would follow was not merely foreseeable: the USPTO warned Defendants, but they expanded their use anyway. *Id.* ¶¶ 59, 61-62.

**D. The Claims Arise Out of and Relate to Their California Conduct.**

This requirement asks whether the claims "arise[] out of or relate[] to the defendant's forum-related activities." *Schwarzenegger*, 374 F.3d at 802. The standard is disjunctive: the first half concerns causation, while "the back half … contemplates that some relationships will support jurisdiction without a causal showing." *Ford*, 592 U.S. at 362. Defendants address only causation. Both halves are satisfied here.[14]

The claims relate to Defendants' California conduct. A trademark claim "can … arise out of, or at the very least relate to, trademark building activities in a forum state." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1094 (9th Cir. 2023). Between Swift's photoshoot and awards-show promotion, FAC ¶ 17, TAS's licensing of the mark to California companies to brand and sell the merchandise, *id.* ¶¶ 18, 107, and advertising staged here, *id.* ¶¶ 17, 107, Defendants built their mark in California.

The claims arise out of Defendants' California conduct as well. "[I]f the defendant's infringing conduct harms the plaintiff in the forum state, this element is satisfied." *Natural Wellness Ctrs. of Am., Inc. v. Golden Health Prods., Inc.*, No. 12-cv-05586, 2013 WL 245594, at *5 (N.D. Cal. Jan. 22, 2013) (citing *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998)). Without TAS's or Swift's license, no California company could have placed the mark on a single good. FAC ¶¶ 17-18, 30, 106. Without the promotion both Defendants drove into this State, the goods would not have reached or penetrated the California market as they did. *Id.* ¶¶ 17, 107. Plaintiff's injury is the confusion that followed. *Id.* ¶¶ 66, 82, 111.

[14] As to Swift, relatedness need not be separately shown. *See* § V(A). Her in-forum conduct "satisf[ies] the first two requirements" of the test. *Freestream*, 905 F.3d at 603.

Defendants' authorities involved forum sales unconnected to the accused goods. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) ("little reason to believe" in-forum contacts had "anything to do with Hawaii residents' acquisition of" accused product); *Cole-Parmer Instrument Co. v. Pro. Lab'ys, Inc.*, No. 20-cv-08493, 2021 WL 3053201, at *9-10 (N.D. Cal. July 20, 2021) (forum sales bore no infringing mark). The goods sold in California bear the mark, and the promotion staged here displayed it. FAC ¶¶ 17, 19, 21, 107. *Yamashita* suggests a single sale of an accused product to one resident may suffice. 62 F.4th at 506 (citing *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 625-27 (7th Cir. 2022)). Plaintiff alleges far more than one.

**E. Exercising Jurisdiction Is Reasonable.**

Once the first two prongs are satisfied, Defendants must "present a compelling case" that jurisdiction would be unreasonable. *Schwarzenegger*, 374 F.3d at 802. They assert, without evidence, that requiring "Tennessee domiciliaries to defend in California would be burdensome." Mot. 25. But "unless the inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Panavision*, 141 F.3d at 1323. Swift maintains a residence here, works here, FAC ¶¶ 17, 22, has litigated in this District for years, and has admitted that she does "business in the State of California and this judicial district," Dkt. 57-28 ¶ 3; *Impossible Foods*, 80 F.4th at 1099 ("Undermining any assertion of inconvenience, [defendant's principal] has made many trips to California").

The remaining factors favor Plaintiff. California has a "strong interest in protecting its citizens from … consumer confusion." *AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1240 (N.D. Cal. 2014). Tennessee has no countervailing interest in shielding its domiciliaries from claims arising out of California conduct, and where both forums would apply the same federal law, sovereignty concerns are not implicated. *Panavision*, 141 F.3d at 1323. The evidence is here, where the accused goods are designed and marketed. FAC ¶ 106. Moreover, UMG and Bravado do not contest jurisdiction, so this action will proceed in this District regardless: dismissing

Swift and TAS would remove the parties that own and control the mark while leaving their licensees, and would place the same questions on the same facts before a second court. Defendants' response is a statistic concerning this District's caseload. They cite no authority holding that a court's docket renders jurisdiction unreasonable, and their position would burden two dockets rather than one. That is not a compelling case.

**F. In the Alternative, Jurisdictional Discovery Is Warranted.**

Should the Court conclude that Plaintiff's showing falls short, the appropriate remedy is discovery, not dismissal. *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted"); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (leave appropriate where "discovery … might well demonstrate facts sufficient to constitute a basis for jurisdiction"). Defendants controvert the pertinent facts, but their submissions sit uneasily with their denials. They call TAS's license "theoretical," Mot. 22, while their declarant swears TAS "licens[es]" Swift's intellectual property, including "THE LIFE OF A SHOWGIRL," Dkt. 57-1 at 6 ¶ 10, and their webstore states the material appears "BY PERMISSION" of TAS, Dkt. 57-16 at 4. They claim that decisions occurred "primarily" outside California, Dkt. 57-3 ¶ 8, conceding that some took place here.

The documents that would resolve these questions are in Defendants' possession: (1) the agreements among them, including provisions governing control over sales, marketing, and enforcement of the mark; (2) records concerning the Los Angeles filming and photography sessions and the billboards and fan activation; and (3) records of California sales. Plaintiff requests leave to take that discovery.

**<u>CONCLUSION</u>**

The Motion should be denied. In the alternative, Plaintiff requests jurisdictional discovery as to Swift and TAS, and leave to amend as to any claim the Court finds deficient. Fed. R. Civ. P. 15(a)(2).

DATED: September 16, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 25 pages, in compliance with the 25-page limit set forth in Section VII(D) of this Court's Standing Order.

DATED: September 16, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*