JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAREN FLAGG,<br><br>Plaintiff,<br>v.<br><br>TAYLOR SWIFT, et al.,<br><br>Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>Hon. Serena R. Murillo<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND, IF NECESSARY, FOR LIMITED JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed with: Supplemental Declaration of Jaymie Parkkinen; Declaration of Jaymie Parkkinen Pursuant to L.R. 7-3; [Proposed] Order]<br><br>Date: January 20, 2027<br>Time: 1:30 p.m.<br>Place: Courtroom 5D (5th Fl.)<br>350 W. First Street<br>Los Angeles, CA 90012 |

# NOTICE OF MOTION AND MOTION

**TO THE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on January 20, 2027, at 1:30 p.m., or on December 9, 2026, at 1:30 p.m., if the Court approves the parties' concurrently filed stipulation to advance the hearing, in Courtroom 5D of the above-entitled Court, 350 West First Street, Los Angeles, California 90012, before the Honorable Serena R. Murillo, Plaintiff Maren Flagg will and hereby does move for an order:

1. Granting leave, under Local Rule 7-10, to file the Supplemental Declaration of Jaymie Parkkinen lodged with this Motion, with Exhibits 20 through 40, in opposition to the Rule 12(b)(2) portion of Defendants' Motion to Dismiss the First Amended Complaint, Dkt. 57 (the "Motion to Dismiss"), set for hearing on December 9, 2026, Dkt. 67; and
2. Should the Court find Plaintiff's prima facie showing of specific jurisdiction over Defendants Taylor Swift and/or TAS Rights Management, LLC ("TAS") insufficient on the present record, granting limited jurisdictional discovery on the subjects and schedule set out in Part III.C below, and deferring ruling on the Rule 12(b)(2) portion of the Motion to Dismiss until that discovery is complete.

The Motion is made on the grounds that the lodged declaration attaches evidence of events occurring on and after September 23, 2026, the day Defendants filed their Reply in support of their Motion to Dismiss ("Reply"), and of facts that became known to Plaintiff only after that date; that the evidence bears directly on factual contentions in the Motion to Dismiss and the Reply concerning Swift's California conduct; that the Court may consider evidence on a Rule 12(b)(2) motion; and that, if the Court finds the record insufficient, the controverted jurisdictional facts identified below are the kind on which the Ninth Circuit directs that discovery "should ordinarily be granted." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

This Motion is made following the conference of counsel under Local Rule 7-3 and Section VII.A of the Court's Standing Order, which took place by videoconference on October 2, 2026. Counsel thoroughly discussed the substance and potential resolution of the Motion. Defendants stated that they oppose the relief sought. Declaration of Jaymie Parkkinen Pursuant to Local Rule 7-3 ("L.R. 7-3 Declaration") ¶¶ 6-7.

The Motion is based on this Notice, the Memorandum of Points and Authorities below, the L.R. 7-3 Declaration, the lodged Supplemental Declaration of Jaymie Parkkinen and its Exhibits 20 through 40, the papers on file in this action, and any argument the Court permits.

DATED: October 9, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Since Defendants' Reply was filed, the following has come to light. On September 23, 2026—the day the Reply was filed—Swift announced that she would soon release an expanded version of her album, *The Life of a Showgirl: The Encore*, and on September 25, she released it. On September 27, 2026, Swift appeared at the MTV Video Music Awards ("VMAs") in Los Angeles, accepted an inaugural award for artist-directed videos that, on the VMA executive producer's own account, appears to have been created at the request of Swift's team, and premiered from the Los Angeles stage the video for "Patient Zero," a single from the expanded edition released two days earlier. The "Patient Zero" video was shot in Beverly Hills on March 13, 2026, seventeen days before this action was filed, under a City permit applied for in January by Merman Branded, LLC ("Merman"), the Los Angeles production company credited on both "Patient Zero" and "The Fate of Ophelia." Swift's own behind-the-scenes film of the making of "Patient Zero" shows her planning the Los Angeles premiere from the Beverly Hills set in March 2026.

None of this could have been placed before the Court with Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition"), and all of it bears on arguments Defendants have made. Plaintiff contends that, even without this additional evidence, there is ample basis to assert personal jurisdiction over Swift and TAS. If the Court concludes that, even with this additional evidence, it still cannot find a prima facie case on this record, the same facts show why jurisdictional discovery is necessary.

## I. WHAT THE SUPPLEMENTAL DECLARATION SHOWS

The declaration attaches and authenticates the following.

***The expansion and the Los Angeles premiere.*** On September 23, 2026, Swift announced *The Life of a Showgirl: The Encore*, an expanded edition of the album adding four songs, sold and streamed under the same title, which *Rolling Stone* described as "the extended version of *Showgirl*." Ex. 20; Ex. 29 at 2-3; Ex. 28 at 2

(*Variety* describing "Patient Zero" as Swift's new single from "Showgirl: Encore"). It was released September 25, 2026. Ex. 21; Ex. 29 at 3. On September 27, 2026, Swift appeared in person at the MTV VMAs at the Peacock Theater in Los Angeles. Ex. 28 at 6, 9. She accepted the inaugural Artist Director award and, in the course of accepting it, premiered from the stage the video for "Patient Zero," the single from *The Life of a Showgirl: The Encore* released two days earlier. Ex. 28 at 2-3. She also accepted an award for Video of the Year for "The Fate of Ophelia," the video the FAC alleges she wrote, directed, and filmed at the Los Angeles Theatre, FAC ¶ 17; Ex. 28 at 3; Ex. 29 at 2-3. On September 24, three days before the VMAs, the VMAs' executive producer, Bruce Gillmer, said in a published interview that the idea for the new Artist Director award "came from *external*, I'll leave it at that." Ex. 37 at 00:12–00:19 (vocal emphasis in original).

***"Patient Zero" was shot in California in March 2026.*** On September 27, 2026, Swift posted a clip revealing, as *Variety* reported, "for the first time that the 'Patient Zero' video was shot all the way back in March." Ex. 28 at 7. On October 4, 2026, Swift released an extended behind-the-scenes film of the shoot. Ex. 38. In it she states that the filming date was "the thirteenth," *id*. at 05:41–05:45; that she wanted the video to premiere on television and that she asked her production designer, Ethan Tobman, to look up when the VMAs would be held, *id*. at 03:14–03:33.

Still frames from the "Patient Zero" music video correspond to the listing photographs of a residence at 410 Trousdale Place, Beverly Hills, California—the pool and rear exterior, an interior hallway, and the front exterior. Exs. 22–27, 30; Supp. Decl. ¶ 11. The behind-the-scenes film features the Beverly Hills residence and Swift describes the importance of the house to the music video. Ex. 38 at 05:39–05:58. Swift and actress Dakota Johnson remark on its view of the city and the ocean, and the camera moves in on the Los Angeles skyline. *Id*. at 05:58–06:33; Ex. 39; *see also* Ex. 38 at 00:56–01:00. The video concludes on a card reading "THE LIFE OF A SHOWGIRL" above "Patient Zero © 2026 Taylor Swift." Ex. 38 at 08:10; Ex. 40.

The City of Beverly Hills film permit for 410 Trousdale Place confirms the shoot. Applied for on January 20, 2026, and issued March 10, 2026, it authorized a 90-person production, code-named "Quarry," to film at the residence on Friday, March 13, 2026. Ex. 31 at 2, 4; *see also* Ex. 38 at 05:41–05:45 (Swift stating filming date was "the thirteenth"). The applicant was Merman, of Los Angeles, Ex. 31 at 2, which is credited as the production company on both "Patient Zero" and "The Fate of Ophelia," Ex. 36 at 2, and Jil Hardin, who runs the Los Angeles-based production company Source Pictures Inc., is credited as a producer on both, Ex. 33 at 3; Ex. 34 at 3.

The shoot wrapped on March 13, seventeen days before Plaintiff filed this action on March 30, 2026, Dkt. 1, and had been in the works since at least January 20, when the permit application was submitted, Ex. 31 at 2. It became public six months later, in September 2026, after briefing on the Motion to Dismiss had closed, when Swift chose to announce it. Ex. 28 at 2, 5. And by her own account, Swift had been planning the video's Los Angeles premiere since March 2026 from the Beverly Hills set. Ex. 38 at 03:14–03:33; Ex. 28 at 7 (Swift's behind-the-scenes video gives "confirmation that she hatched the idea for a VMAs premiere half a year ago, and held onto it as a secret till this date").

## II. LEAVE SHOULD BE GRANTED

On a Rule 12(b)(2) motion decided on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts," and the Court considers evidence. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The events described in Part I occurred, or were first disclosed, on or after the day Defendants' Reply was filed. None of them could have accompanied the Opposition, and all of it is responsive to arguments made in Defendants' papers.

Local Rule 7-10 permits a filing after the reply only on "prior written order of the Court." This Motion asks for that order. The evidence is the lodged supplemental declaration and associated exhibits; this memorandum explains what they show and why they bear on the Motion to Dismiss; and Defendants' opposition to this Motion

and Plaintiff's reply will complete the briefing on both. The Ninth Circuit has held it error to refuse a supplemental declaration offered after the reply and before the hearing, where the party offering it could not have done so earlier. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (reversing denial of leave when defendants' reply introduced new facts; affirming denial of leave when facts were already in movant's possession). Here the facts themselves arose, or were first made public, not merely after Plaintiff's Opposition was filed but even after Defendants' Reply, and Defendants will have an opportunity to answer them in their opposition.

The evidence bears on the Motion in three ways.

*First*, it is purposeful availment of the kind Defendants deny exists. A defendant purposefully avails itself of a forum by "deliberately . . . engag[ing] in significant activities" there and "creat[ing] continuing obligations" with its residents, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)—by, for example, "executing or performing a contract" in the forum, *Schwarzenegger*, 374 F.3d at 802. The "Patient Zero" shoot was that. A Los Angeles production company, Merman, applied for a City of Beverly Hills permit on January 20, 2026, obtained it on March 10, and brought a 90-person production onto a Beverly Hills property on March 13 to film a video directed by and starring Swift. Ex. 31 at 2, 4; Ex. 28 at 3. Merman is the credited production company on both "Patient Zero" and "The Fate of Ophelia." Ex. 36 at 2. The producer of both is Jil Hardin, whose company is based in Los Angeles and who has produced Swift's videos for a decade. Ex. 33 at 3; Ex. 34 at 3. That is Swift engaging California vendors, in California, over an eight-week period ending seventeen days before this suit was filed, to produce a video in support of "THE LIFE OF A SHOWGIRL," Ex. 38 at 08:10—one of the "[m]usical video recordings" TAS's own application lists among the goods and services sold under THE LIFE OF A SHOWGIRL. Dkt. 57-12 at 3.

*Second*, Swift's September 27 appearance at the VMAs in Los Angeles was not passive attendance at an event; it was the result of a plan six months in the making.

Swift's own behind-the-scenes film records her, on the Beverly Hills set in March 2026, deciding that the video should premiere on television and directing her production designer to determine when the VMAs would be held. Ex. 38 at 03:14–03:33; Ex. 28 at 7 (Swift "hatched the idea for a VMAs premiere half a year ago"). Six months later she accepted the inaugural award for artist-directed music videos—an award whose idea, the show's executive producer admitted, "came from *external*, I'll leave it at that," Ex. 37 at 00:12–00:19—and premiered from a stage in California the video she had made in California, under contracts with California vendors. Ex. 28 at 2. Defendants claim "all of Ms. Swift's actual promotional appearances for the Album occurred outside of California," Dkt. 57 at 4, 17, but seem to mean only that Swift has not appeared on any talk shows here, Dkt. 57-1 ¶ 8. A six-month plan to launch a new video under THE LIFE OF A SHOWGIRL, from a Los Angeles stage, two days after the album's expanded release, is promotion by any ordinary meaning of the word, and it is the second such appearance in the forum this year. FAC ¶ 17.

*Third*, the forum conduct predates the suit, and what followed is the infringement Plaintiff has alleged from the outset. The Beverly Hills production was planned in January 2026, filmed on March 13, and Swift had by then begun the plan for a VMA premiere—all before Plaintiff filed this action on March 30. Ex. 31 at 2, 4; Ex. 38 at 03:14–03:33; Dkt. 1. The events that came after the complaint—the expanded release under THE LIFE OF A SHOWGIRL, the Los Angeles "Patient Zero" premiere, the award-show appearance—are not new contacts; they are the "ongoing and expanding" use alleged in the original Complaint, maintained in the FAC, and the reason Plaintiff seeks preliminary relief. Dkt. 1 ¶ 55; FAC ¶¶ 62, 65; Dkt. 16 at 28, 31. The record now shows that use continuing in this forum, on a schedule developed before the suit was filed.

These facts surfaced by chance. The VMAs and the release of *The Life of a Showgirl: The Encore* and "Patient Zero" happened to fall before the hearing on Defendants' Motion to Dismiss, originally set for October 7, 2026. The California

production, the Beverly Hills permit, the Los Angeles-based vendors, and the planning date from January through March 2026—all of it was known to Defendants when they told the Court that discovery into "records about *The Fate of Ophelia* music video shoot and similar photography" would be "futile." Dkt. 63 at 10.

## III. IF NECESSARY, LIMITED JURISDICTIONAL DISCOVERY SHOULD BE ORDERED

Plaintiff renews the request for jurisdictional discovery made in the alternative in her Opposition to Defendants' Motion to Dismiss. Dkt. 61 at 34. Defendants objected that a request for jurisdictional discovery "is not proper when raised for the first time in an opposition." Dkt. 63 at 10 n.7. Neither case they cite involved personal jurisdiction, a Rule 12(b)(2) motion, or the *Laub* standard. *Smith v. Premiere Valet Services* involved a pro se plaintiff's motion to compel interrogatories; the "affirmative relief" point concerned a defendant's request, made in its opposition, for an order restricting the plaintiff to written communications. 2020 WL 7034346, at *14 (C.D. Cal. Aug. 4, 2020). *Estate of Moore v. FH & HF-Torrance I, LLC* was a remand order in which the court denied a removing defendant's request for discovery on subject-matter jurisdiction after finding the record sufficient to answer pure questions of law bearing on federal jurisdiction. 2022 WL 44002, at *2 (C.D. Cal. Jan. 4, 2022). In any event, this Motion presents the request by noticed motion on evidence that did not exist when the Opposition was filed, and moots Defendants' objection.

### A. The Standard Is Met.

Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub*, 342 F.3d at 1093. Denying it is an abuse of discretion where "further discovery . . . might well demonstrate" facts sufficient to establish jurisdiction. *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). What does not suffice is "a mere hunch that discovery might yield jurisdictionally relevant facts." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496,

507 (9th Cir. 2023) (citation omitted).

This request does not rest on a hunch. Public records show Swift working with the same Los Angeles production company and the same Los Angeles producer to make two videos for THE LIFE OF A SHOWGIRL in this District, seven months apart. Merman pulled the City of Los Angeles permit for the Los Angeles Theatre shoot in August 2025 and the City of Beverly Hills permit for the Trousdale Place shoot in March 2026, Ex. 31 at 2; Ex. 32 at 2, and is the credited production company on both videos, Ex. 36 at 2. Jil Hardin, whose company is based in Los Angeles, is the producer of record on the Los Angeles permit and a credited producer on both videos. Ex. 32 at 2; Ex. 33 at 3; Ex. 34 at 3. The Beverly Hills production filmed on March 13, Ex. 31 at 2, 4—and on that set Swift, the video's director, decided it would premiere at the VMAs in Los Angeles. Ex. 38 at 03:14–03:33. That is a working relationship with California vendors, conducted in California, to produce videos relevant to this action in California. The engagement letters, production agreements, invoices, and communications that document it are in Defendants' files, and they are what Plaintiff asks leave to obtain.

**B. The Video Productions Are Jurisdictional Contacts.**

Defendants have argued that the Los Angeles Theatre shoot does not count as a jurisdictional contact because the "The Fate of Ophelia" music video is not the album, and that music videos bear no relation to Plaintiff's trademark claims. On the first point, Jil Hardin, the Los Angeles-based producer of "The Fate of Ophelia" video, describes it as having "premiered as part of the album's promotional film, *The Official Release Party of a Showgirl*." Ex. 35 at 2.

The second point does not survive Defendants' own materials. TAS's trademark application lists "[m]usical video recordings" among the goods and services sold under THE LIFE OF A SHOWGIRL in Class 9, Dkt. 57-12 at 3—the very class the USPTO refused TAS registration over Plaintiff's mark, Dkt. 57-13 at 3. And the "Patient Zero" video is released as one of those goods: the behind-the-scenes film closes on a card

bearing "THE LIFE OF A SHOWGIRL" above the line "Patient Zero © 2026 Taylor Swift." Ex. 38 at 08:10; Ex. 40. The videos serve to promote THE LIFE OF A SHOWGIRL, and are credited and claimed as goods under that mark. That is the use TAS applied to register, and it took place in this District.

The Ninth Circuit has held that a defendant purposefully directed its conduct at California where it "sent promotional copies" of a song and album into the State as part of "a coordinated plan to distribute" them. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 899 (9th Cir. 2002). The promotional works here were not just sent into California. They were made in California, by California vendors, for a California launch. The agreements and communications with those vendors are the records Plaintiff seeks.

**C. Proposed Scope.**

Plaintiff proposes the following, to be completed within sixty days of the Court's order, with the Rule 12(b)(2) portion of the Motion to Dismiss deferred until completion:

1. Document requests to TAS and Swift, not to exceed fifteen each, limited to:
   a. agreements, invoices, and communications with Merman; Source Pictures Inc. and Jil Hardin; Taylor Swift Productions, Inc.; and Film This!, *see* Ex. 31 at 2, concerning the production of "The Fate of Ophelia," *The Official Release Party of a Showgirl*, and "Patient Zero";
   b. permits, location agreements, call sheets, and production schedules for the Los Angeles Theatre (August 7-9, 2025) and 410 Trousdale Place, Beverly Hills (January 20 through March 14, 2026), including communications with the location managers and on-site contacts identified on the permits, Exs. 31–32;
   c. documents concerning Swift's in-person appearances in California in connection with the album, including the iHeartRadio Music Awards and the MTV VMAs, and communications with MTV, Paramount Global, or their agents concerning the Artist Director award and the premiere of

"Patient Zero";

d. documents sufficient to identify each other person or entity located in California with which TAS or Swift contracted since May 15, 2025 (the date TAS's Jamaican application was filed), in connection with the production, promotion, or sale of the album, the videos, or merchandise bearing THE LIFE OF A SHOWGIRL, and the agreements with each;

e. TAS's licenses for THE LIFE OF A SHOWGIRL with licensees located or operating in California, including the licenses underlying the goods identified at FAC ¶¶ 47-49; and

f. documents concerning TAS's permission legend used in connection with merchandise sold through the Taylor Swift webstore, Dkt. 61 at 34.

2. Interrogatories to TAS and Swift, not to exceed five each, concerning production and/or promotional events in California since May 15, 2025, in connection with the album, the music videos, or merchandise bearing THE LIFE OF A SHOWGIRL, and concerning persons or entities located in California with which TAS or Swift has contracted in connection with any such productions and/or promotional events.

3. Rule 30(b)(6) deposition of TAS, not to exceed four hours, and a deposition of Swift, not to exceed three hours, each limited to the topics in paragraph 1.

The scope is confined to the jurisdictional facts Defendants have placed in dispute. It does not reach the merits of confusion, damages, or Defendants' finances.

## **CONCLUSION**

Plaintiff respectfully requests that the Court grant leave to file the lodged Supplemental Declaration of Jaymie Parkkinen and Exhibits 20 through 40 in opposition to the Motion to Dismiss. If necessary, should the Court find the present record insufficient for a prima facie showing as to Swift or TAS, Plaintiff requests an order permitting the jurisdictional discovery described in Part III.C and deferring decision on the Rule 12(b)(2) portion of the Motion until that discovery is complete.

DATED: October 9, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 9 pages, in compliance with the 25-page limit set forth in the Court's Standing Order.

DATED: October 9, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen