JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MAREN FLAGG,<br><br>Plaintiff,<br>v.<br><br>TAYLOR SWIFT, et al.,<br><br>Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>Hon. Serena R. Murillo<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING THE USPTO'S SEPTEMBER 22, 2026 OFFICE ACTION**<br><br>[Filed with: Declaration of Jaymie Parkkinen; Request for Judicial Notice; [Proposed] Order]<br><br>Date: December 9, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5D (5th Fl.)<br>350 W. First Street<br>Los Angeles, CA 90012 |

## INTRODUCTION

The Court has asked how the USPTO's September 22, 2026 Office Action ("Office Action"), Parkkinen Decl. Ex. 1, informs Defendants' Motion to Dismiss ("Motion") and Plaintiff's Opposition. Dkt. 67. It does so by confirming the First Amended Complaint's ("FAC") allegations, supporting Plaintiff's Opposition to the Motion, and countering Defendants' characterizations of TAS Rights Management, LLC's ("TAS") trademark application. The USPTO has now found Plaintiff's and Defendants' marks confusingly similar twice, on a record Defendants do not dispute, and TAS continues to prosecute the application—seeking to register THE LIFE OF A SHOWGIRL as its trademark while telling this Court that it is not one. The Motion must, of course, be decided on the FAC's allegations, but the Office Action's relevance is that the agency charged with answering the core question in this case has reached the same conclusion the FAC pleads. That is enough to render the allegations plausible, which is all Rule 12(b)(6) requires.

### I. WHAT THE OFFICE ACTION DOES

The Office Action does three things. *First*, it maintains the Section 2(d) refusal over Plaintiff's mark as to Classes 9 (musical recordings) and 41 (live performances): "[TAS] has not presented any arguments in favor of withdrawing this refusal. Therefore, the examining attorney herein incorporates by reference the arguments presented in the November 5, 2025 Office Action, and maintains and continues the refusal." Ex. 1 at 3. The incorporated findings are that the marks "are identical in part since they both consist of the terms OF A SHOWGIRL," that "the consumer is likely to focus on the dominant noun, the term SHOWGIRL," that "the proposed mark could be viewed as an extension of the registrant's brand," and that the parties' goods and services "are closely related." Dkt. 57-13 at 4-5, 8.

*Second*, it ends the suspension TAS requested on February 4, 2026. TAS asked for that suspension pending a third party's application for SHOWGIRL and stated that it "will address all remaining issues in the Office Action once Serial No. 98905117 is

either registered or abandoned." Dkt. 57-14 at 2. SHOWGIRL registered on May 26, 2026. Ex. 1 at 15. TAS addressed nothing in the four months that followed, and the USPTO lifted the suspension on its own motion. *Id.* at 3.

*Third*, the USPTO now refuses registration in Classes 4, 14, 18, 25, and 35 over SHOWGIRL, finding again that consumers are "likely to focus on the dominant noun in the proposed mark, the term SHOWGIRL," and that "the addition of THE LIFE OF A reinforces the connotation of the term 'SHOWGIRL.'" Ex. 1 at 3, 5. Those classes cover the candles, jewelry, clothing, and webstore the FAC alleges are sold or operated under TAS's mark. FAC ¶¶ 47-49. The USPTO also asked whether TAS intends to perfect a Section 44(e) basis—that is, register in the U.S. on the strength of TAS's registered Jamaican trademark. Ex. 1 at 8; 15 U.S.C. § 1126(e); *see* Dkt. 57-12 at 2.

## II. TAS CLAIMS THE TITLE AS ITS MARK

*Rogers* does not apply when the designation is used "as a designation of source for the infringer's own goods." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 153 (2023). The Supreme Court found such use in VIP's conduct, including that "it has chosen to register the names of still other dog toys." *Id.* at 160. Following *Jack Daniel's*, the Ninth Circuit held *Rogers* inapplicable to a news publisher, noting that "AJ Press has filed trademark applications to register the marks." *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024). Defendants try to distinguish those cases on the ground that VIP conceded trademark use and Punchbowl was a publication's name, but despite each designation's expressive content, the court treated defendant's trademark filings as evidence of trademark use. TAS's filings are the same evidence, and the Office Action shows TAS pressing them through a second refusal.

An intent-to-use application is "a verified statement" of "the applicant's bona fide intention to use the mark in commerce," 15 U.S.C. § 1051(b)(1), (b)(3)(B), to "identify and distinguish" the applicant's goods and "indicate the source of the goods," *id.* § 1127. TAS made that verified statement. FAC ¶ 58. Told in November 2025 that its mark was confusingly similar to Plaintiff's, TAS neither contested the refusal nor

withdrew the application. Dkt. 57-14 at 2; Ex. 1 at 3. Defendants respond that TAS "has never represented it used the Album title as a source identifier in U.S. commerce." Dkt. 63 at 3. That representation is not required. The USPTO asked whether TAS will complete U.S. registration under Section 44(e) based on its ***registered*** Jamaican trademark,[1] Ex. 1 at 8; *see* Dkt. 57-12 at 2—a basis for which "use in commerce [is not] required." 15 U.S.C. § 1126(e). So the absence Defendants assert proves nothing. What TAS did is what matters: it swore that it intends THE LIFE OF A SHOWGIRL to identify source, it registered the mark abroad, and it has abandoned neither.

Defendants contend that "[f]iling a Section 1(b) intent-to-use application confers no trademark rights and is not trademark use." Dkt. 63 at 3. Plaintiff does not claim the application conferred rights. She cites it as TAS's own sworn account that the designation is meant to "indicate the source of the goods," 15 U.S.C. § 1127—the question *Jack Daniel's* requires a court to answer before any *Rogers* analysis begins, 599 U.S. at 153. The Office Action shows that account still standing as of September 22, 2026, maintained through a second refusal. Ex. 1 at 3. *Rogers* does not apply.

## III. THE REFUSALS SUPPORT THE FAC'S ALLEGATIONS

Defendants called the November 2025 refusal "a preliminary, non-final office action" with "no legal relevance to how the Album or Plaintiff's Mark are actually viewed in the marketplace." Dkt. 63 at 1, 5. But "the same likelihood-of-confusion standard applies to both registration and infringement," because "the operative language of each statute is essentially the same," and the factors each tribunal uses "are not fundamentally different." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 154-55 (2015). The USPTO, the federal agency with special competence in this area of law, applied the *DuPont* factors—similarity of the marks in appearance, sound, connotation, and commercial impression; relatedness of the goods and services, Dkt. 57-13 at 4-5, 8—which are the *Sleekcraft* factors in another register. *See Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 835 (C.D. Cal. 2018). And in *JL Beverage*,

---

[1] Jamaica's register is not searchable online, so filings remain confidential.

where the defendant argued that the USPTO's refusal of its application "was only a preliminary assessment," the Ninth Circuit answered that "[r]egardless of whether the statement was the result of a preliminary assessment, it suggests that others found the marks similar," and reversed summary judgment for the defendant. *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016). Courts treat USPTO refusals, even those that are non-final, as "strong evidence": and while "not conclusive, it is entitled to 'great weight.'" *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL 1913163, at *8 (C.D. Cal. Mar. 27, 2008), *aff'd*, 327 F. App'x 723 (9th Cir. 2009). The Court need not accept the USPTO's conclusions as true. It is enough that specialist officials, doing this work every day, applied the same standard twice and reached the conclusion the FAC pleads. FAC ¶ 59.

Defendants' "distinct first words" argument, Dkt. 63 at 5, is one the USPTO has already rejected. "While the terms THE LIFE and CONFESSIONS are different, the resulting commercial impression by combining THE LIFE with OF A SHOWGIRL and CONFESSIONS with OF A SHOWGIRL is very similar," because "the consumer is likely to focus on the dominant noun, the term SHOWGIRL." Dkt. 57-13 at 5. The USPTO has now made that finding again, as to a third party's SHOWGIRL registration, where "the addition of THE LIFE OF A reinforces the connotation of the term 'SHOWGIRL.'" Ex. 1 at 5.

Nor does it matter that the examiner compared the marks as applied for. "If a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the TTAB is deciding the same likelihood-of-confusion issue as a district court in infringement litigation." *B&B Hardware*, 575 U.S. at 156. Defendants argue that the Court "is not bound by any USPTO office action, much less one that did not evaluate any specimen of use." Dkt. 63 at 5 (citing *Sarieddine v. Connected Int'l, Inc.*, No. 24-6476, 2025 WL 1513777 (9th Cir. May 28, 2025)). Plaintiff has not argued otherwise. The question is whether the refusal supports the FAC's plausibility. The USPTO found the marks confusingly similar because they

are alike in sound and impression, and the parties' services are "closely related." Dkt. 57-13 at 4-5, 8. Defendants do not contend the agency's record was incomplete on any of those factors. If Defendants' "branding," Dkt. 57 at 13, would save the application, TAS could have supplied it. By September 22, 2026, Defendants' goods had been in the market for nearly a year, and TAS could have put any of them before the USPTO; it "presented [no] arguments," and the agency maintained its findings on the record as it stood. Ex. 1 at 3. An omission TAS chose is not a fault in the USPTO's analysis.

## IV. KNOWLEDGE AND CONTINUED USE

Defendants argue that no Defendant other than TAS knew of Plaintiff's mark, and that TAS's knowledge rests on "a non-final office action" issued after the album launched. Dkt. 63 at 6 & n.4. The Office Action answers both. It was transmitted on September 22, 2026, to TAS's counsel at Venable LLP, the firm that appears for all four Defendants in this action. Ex. 1 at 2. And knowledge acquired after launch is the knowledge "continued supply" requires: contributory liability attaches to one who "continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). TAS is the Defendant that supplies the designation to the others, FAC ¶ 46, and Defendants' use "is ongoing and expanding," *id.* ¶ 65—an allegation they have never denied and, as the weeks since the Office Action have made plain, could not deny. What Defendants dismiss as TAS's mere "involvement in a non-final office action" is now two office actions, delivered to the counsel representing every Defendant, concerning a use that has only expanded.

## CONCLUSION

The Office Action confirms allegations in the FAC and supports arguments in the Opposition. Each point for which the Opposition relied on the November 2025 refusal, Dkt. 61 at 16-17, 19, 21-22, now rests on a refusal the USPTO has maintained and TAS has never contested, in an application TAS still prosecutes to register THE LIFE OF A SHOWGIRL as its trademark. The Motion should be denied.

DATED: October 9, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 5 pages, in compliance with the 5-page limit set forth in the Court's September 30, 2026 Order, Dkt. 67.

DATED: October 9, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen