JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MAREN FLAGG,

Plaintiff,

v.

TAYLOR SWIFT, et al.,

Defendants.

Case No. 2:26-cv-03354-SRM-BFM

Hon. Serena R. Murillo

**PLAINTIFF'S NOTICE OF MOTION AND SECOND MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

[Filed with: Second Supplemental Declaration of Jaymie Parkkinen; Declaration of Jaymie Parkkinen Pursuant to L.R. 7-3; [Proposed] Order]

Date: February 3, 2027
Time: 1:30 p.m.
Place: Courtroom 5D (5th Fl.)
350 W. First Street
Los Angeles, CA 90012

## NOTICE OF MOTION AND MOTION

**TO THE COURT, DEFENDANTS, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on February 3, 2027, at 1:30 p.m., or on December 9, 2026, at 1:30 p.m., if the Court approves the parties' contemplated stipulation to advance the hearing to the date of the Motion to Dismiss hearing, in Courtroom 5D of the above-entitled Court, 350 West First Street, Los Angeles, California 90012, before the Honorable Serena R. Murillo, Plaintiff Maren Flagg will and hereby does move for an order granting leave, under Local Rule 7-10, to file the Second Supplemental Declaration of Jaymie Parkkinen lodged with this Motion ("Second Supplemental Declaration"), with Exhibits 41 through 46, in opposition to the Rule 12(b)(2) portion of Defendants' Motion to Dismiss the First Amended Complaint, Dkt. 57 (the "Motion to Dismiss"), set for hearing on December 9, 2026, Dkt. 67, and in further support of Plaintiff's pending Motion for Leave to File Supplemental Declaration and, if Necessary, for Limited Jurisdictional Discovery, Dkt. 68.

The Motion is made on the grounds that the lodged Second Supplemental Declaration attaches evidence of Defendant Taylor Swift's first live performance of "The Fate of Ophelia" from *The Life of a Showgirl* at the Academy Museum of Motion Pictures in Los Angeles on October 17, 2026; that the performance occurred after briefing on the Motion to Dismiss closed and after Plaintiff's first Motion for Leave was filed; that the evidence bears directly on factual contentions in the Motion to Dismiss concerning Swift's promotional appearances in California and live performances in connection with *The Life of a Showgirl*, and the involvement of Defendant TAS Rights Management, LLC ("TAS") in those appearances; and that the Court may consider evidence on a Rule 12(b)(2) motion.

This Motion is made following the conference of counsel under Local Rule 7-3 and Section VII.A of the Court's Standing Order, which took place by videoconference

on October 22, 2026. Counsel thoroughly discussed the substance and potential resolution of this Motion. Defendants stated that they oppose the relief sought and would not stipulate to the filing of the Second Supplemental Declaration. Declaration of Jaymie Parkkinen Pursuant to Local Rule 7-3 ("L.R. 7-3 Declaration") ¶¶ 2-4.

The Motion is based on this Notice, the Memorandum of Points and Authorities below, the L.R. 7-3 Declaration, the lodged Second Supplemental Declaration of Jaymie Parkkinen and its Exhibits 41 through 46, the papers on file in this action, and any argument the Court permits.

DATED: October 29, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On October 17, 2026, Swift performed "The Fate of Ophelia," the first track on *The Life of a Showgirl*, live for the first time, at the Academy Museum of Motion Pictures' annual gala in Los Angeles. She introduced it from the stage as a song "we are playing for the very first time." Ex. 42 at 3; *see also* Ex. 41 at 2. Three days later she posted photographs of the performance with "TAS Rights Management" in the credit line. Ex. 43 at 2. That is a live performance of *The Life of a Showgirl*'s music in this District, a live stage performance of the kind Plaintiff's incontestable trademark registration covers, with TAS's name on the promotion of it. The performance postdates Plaintiff's Opposition to Defendants' Motion to Dismiss ("Opposition"), Dkt. 61, and Plaintiff's first Motion for Leave, Dkt. 68; evidence of it could have accompanied neither. When the last post-briefing development arose—the September 22, 2026 USPTO Office Action—the Court called for supplemental briefing. Dkt. 67. Plaintiff asks for leave to file evidence so that the Motion to Dismiss is decided on a current record.

## I. WHAT THE SECOND SUPPLEMENTAL DECLARATION SHOWS

The Second Supplemental Declaration attaches and authenticates six exhibits.[1]

***The performance.*** On Saturday, October 17, 2026, Swift performed a four-song set with her band at the Academy Museum of Motion Pictures' sixth annual gala in Los Angeles. Ex. 41 at 2-3; Ex. 42 at 2-4. *Rolling Stone* reported that, after the opening song, "Swift told the audience that they were about to witness the debut performance of a Life of a Showgirl track," and quotes her: "This song, which we are playing for the very first time for you beautiful people, this is called 'The Fate of Ophelia.'" Ex. 42 at 2-3. *Billboard* likewise reported that Swift "performed 'The Fate of Ophelia' live for the first time," describing the song as "[t]he track, from her 2025 chart-topping

[1] The exhibits continue the numbering of the declaration lodged with the first Motion for Leave, Dkt. 68-2, which ended at Exhibit 40.

album *The Life of a Showgirl*." Ex. 41 at 2. "The Fate of Ophelia" is the first track on the album, Dkt. 57-1 ¶ 9, and the lead single, whose video the FAC pleads Swift filmed at the Los Angeles Theatre. FAC ¶ 17.

***Swift's Instagram account, and TAS's credit.*** On October 20, 2026, Swift posted eight photographs of the event to her Instagram account, with the caption: "A night at the museum I'll never forget! Thank you to the @academymuseum for inviting us! Getting to perform with the band again for the first time in almost 2 years was a VIBE." Ex. 43 at 2. The photographs, which include images of Swift performing on stage in Los Angeles with her band, carry the credit line "@gina_gizella / @stefaniekeenan / @gettyimages / TAS Rights Management." *Id.*

## II. LEAVE SHOULD BE GRANTED

### A. The Evidence Is Timely and Properly Before the Court on Leave.

On a Rule 12(b)(2) motion decided on written materials, "the plaintiff need only make a prima facie showing of jurisdictional facts," and the Court considers evidence. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The performance took place more than one month after Plaintiff filed her Opposition and eight days after Plaintiff's first Motion for Leave was filed. Evidence of the live performance in Los Angeles could have accompanied neither filing.

Local Rule 7-10 permits a filing after the reply only on "prior written order of the Court." This Motion asks for that order. The Ninth Circuit has held that a district court "erred in not considering plaintiffs' supplemental declaration" filed after the reply and before the hearing, because new matter may not be put before the court "without affording [the other side] an opportunity to respond," while affirming the denial of reconsideration based on evidence the plaintiffs had known of "well before" their opposition. *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). The line *Provenz* draws is whether the evidence could have accompanied the opposition. Here it could not.

A court "does not abuse its discretion in considering new arguments or evidence

if the opposing party had an opportunity to respond." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024); *see El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040-41 (9th Cir. 2003). Defendants' opposition to this Motion and Plaintiff's reply will complete the briefing, and Defendants will have every opportunity to answer the evidence. Counsel also have "a 'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation." *Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring)); *see also Lall v. Corner Inv. Co.*, Nos. 23-15489, 23-16210, 2025 WL 1219010, at *3 (9th Cir. Apr. 28, 2025) (mem.) (applying *Pastore* to counsel's duty to inform the district court).

In opposing Plaintiff's motion for a preliminary injunction, Defendants told the Court that "no songs from the Album have been performed live." Dkt. 40 at 10. The Motion to Dismiss repeated the statement and called it "evidence" that "Plaintiff never contested." Dkt. 57 at 22 & n.7. That statement is no longer true, and this Motion corrects the record.

**B. The Evidence Bears on the Motion to Dismiss.**

Swift's October 17 performance was a live musical performance, a service both parties' marks cover in overlapping terms, rendered in this forum, with TAS's name on the promotion of it. It bears on the Motion to Dismiss in three ways. *First*, it is a forum contact Plaintiff's claims concern. Plaintiff's Class 41 registration for CONFESSIONS OF A SHOWGIRL covers "Entertainment in the nature of live stage performances in the nature of theatrical productions in the field of music, singing, dancing, comedy and drama." Dkt. 57-10 at 2. TAS's own trademark application seeks to register THE LIFE OF A SHOWGIRL for overlapping services: its Class 41 identification includes, among other things, "Entertainment services in the nature of live musical performances; Live musical theater performances." Dkt. 57-12 at 4. A live performance in Los Angeles of *The Life of a Showgirl*'s first track, Ex. 41 at 2; Ex. 42

at 2-3, is that service—the one Plaintiff registered and the one TAS applied to register for THE LIFE OF A SHOWGIRL—rendered in this forum. That is not, as Defendants argued, a contact "unrelated to Plaintiff's claims." Dkt. 57 at 31.

*Ford Motor Co. v. Montana Eighth Judicial District Court* asks not whether the performance caused Plaintiff's claims but whether it is a contact of the kind the claims concern. 592 U.S. 351, 362 (2021). The Ninth Circuit analyzes whether "similar injuries will tend to be caused by those contacts," and whether "the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 505-06 (9th Cir. 2023). Swift's October 17 live performance answers both in the affirmative. Plaintiff's claims concern Defendants' use of THE LIFE OF A SHOWGIRL for the services her registration covers. FAC ¶¶ 53, 58. Swift's live performance of *The Life of a Showgirl*'s lead track is the Class 41 service TAS claims for the designation, rendered in this District. A contact that is itself an instance of the conduct alleged is one from which "similar injuries will tend to be caused." *Yamashita*, 62 F.4th at 505.

And the risk was not one Defendants should have foreseen but one they knew. By October 17, 2026, the USPTO had twice refused TAS's application to register THE LIFE OF A SHOWGIRL over Plaintiff's mark, Dkt. 57-13 at 3; Dkt. 72-3 at 3, and this action had been pending for nearly seven months, Dkt. 1. The Ninth Circuit distinguishes "undifferentiated nationwide sales and marketing," which do not support jurisdiction, from "trademark building activities in a forum state," which do. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1094, 1097 (9th Cir. 2023). *The Life of a Showgirl*'s nationwide release is the former. A first live performance of its lead track in Los Angeles is the latter.

*Second*, it is the fact Defendants told the Court did not exist. In opposing the preliminary injunction, Defendants told the Court that "no songs from the Album have been performed live." Dkt. 40 at 10; *see id.* at 19. The Motion to Dismiss repeated that Swift "has never offered … any live performance in connection with the Album," and

added that "Plaintiff never contested that evidence." Dkt. 57 at 22 & n.7. Defendants' Motion to Dismiss reply faulted the FAC for not alleging "any live performances in connection with the Album." Dkt. 63 at 7. Defendants made the point for a reason: Plaintiff's registration covers live stage performances in the field of music, and Defendants argued that the parties' services are unrelated because Swift had never performed *The Life of a Showgirl*'s music live. Dkt. 57 at 22. Plaintiff's claims do not turn on live performance; Defendants' argument did, and they made it in May, June, and September. On October 17, Swift performed *The Life of a Showgirl*'s lead track live, in Los Angeles. Exs. 41–42. On Defendants' own account of what would connect *The Life of a Showgirl* to Plaintiff's services, the connection now exists, and it was made in this forum.

*Third*, it bears on TAS. The FAC alleges that TAS "commission[s] photography and control[s] coverage of her California appearances." FAC ¶ 18. TAS's declarant responded that TAS does not "control Ms. Swift's appearances (whether in California or otherwise)" and does not "commission merchandise photoshoots." Dkt. 57-1 ¶ 7. Those are not the allegations. Paragraph 18 does not allege that TAS controls Swift's appearances; it alleges that TAS controls coverage of them. It does not allege merchandise photoshoots; it alleges that TAS commissions photography of Swift's California appearances. The declaration denies neither.

The photographs of the October 17 appearance that Swift posted to promote it are credited to two photographers, Stefanie Keenan (credited as @stefaniekeenan) and Gina Manning (credited as @gina_gizella), to Getty Images, and to "TAS Rights Management." Ex. 43 at 2. Keenan's Instagram profile states that she is "Based in L.A." Ex. 44 at 2. Manning is based in Los Angeles and New York. Ex. 45 at 2; Ex. 46 at 2. That is coverage of a California appearance, by California-based photographers, under a rights arrangement in which TAS is named. A credit of that kind does not arise on its own. Whether TAS commissioned the photographs, acquired rights in them, or licensed them for Swift's use, the credit places TAS in a rights arrangement for

photographs taken in Los Angeles, by Los Angeles photographers, at a Los Angeles performance of *The Life of a Showgirl*'s music. Which it is, and on what terms, is what discovery would show. That is the conduct the FAC pleads, commissioning photography and controlling coverage of a California appearance, in this forum, with California vendors. FAC ¶ 18.

The performance itself is a second TAS contact. TAS's application claims THE LIFE OF A SHOWGIRL for "Entertainment services in the nature of live musical performances," Dkt. 57-12 at 4, and TAS has told the USPTO that it is not perfecting the application under Section 44(e), Dkt. 71 at 3 n.2, so the application can mature only on use of the mark for those services. 15 U.S.C. § 1051(d). A live performance of *The Life of a Showgirl*'s music in California is the use the application contemplates—a TAS contact or a controverted fact for discovery either way.

Together, the credit and the performance are further evidence of TAS contacts with California sufficient to support jurisdiction. At a minimum, they establish that TAS's role in Swift's California appearances, and in the coverage of them, is a "pertinent fact[] bearing on the question of jurisdiction" that is "controverted," on which jurisdictional discovery "should ordinarily be granted." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Yamashita*, 62 F.4th at 507. The agreements behind both are within the scope Plaintiff has already proposed. Dkt. 68, Part III.C.

**C. The Performance Is Not Excluded Because It Postdates the FAC.**

During the parties' L.R. 7-3 conference, Defendants argued that the performance cannot be considered because it occurred after the FAC was filed, citing *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911, 913 (9th Cir. 1990). L.R. 7-3 Decl. ¶¶ 3-4. That reads *Farmers* for more than it holds. *Farmers* states that "[o]nly contacts occurring prior to the event causing the litigation may be considered." 907 F.2d at 913. The rule is keyed to the ***event***, not to the complaint. Where the event is a single occurrence, contacts that come after it are not

part of it. Where the complaint alleges a continuing use, each use is an event causing the litigation, and a performance of the accused album in the forum is not a contact that came after the event. It is the event, occurring again, in California.

The Ninth Circuit measures a defendant's contacts "at the time of the events underlying the dispute," because "the fair warning that due process requires arises not at the time of the suit, but when the events that gave rise to the suit occurred." *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987). *Farmers* applied that rule to an insurance-coverage dispute arising from a single automobile accident. The contacts given "little weight" were the insurer's "post-accident investigation and settlement contacts"—conduct in response to the accident, not a further instance of it—and the court's stated concern was that counting such contacts "would deter good faith attempts by insurers to settle." 907 F.2d at 913. Nothing in *Farmers* or *Steel* suggests that a defendant's continued commission in the forum of the very conduct sued upon is disregarded. The fair-warning rationale on which both rest points the other way: a defendant who repeats the accused conduct in the forum after two USPTO refusals and a lawsuit has more than fair warning.

The event underlying this dispute is not a single occurrence. It is the use of an infringing trademark that the FAC alleges "is ongoing and expanding," FAC ¶ 65; *see id.* ¶ 62, that Plaintiff has sought to enjoin from the outset, Dkt. 1 ¶ 55 & at 18 (Prayer ¶¶ 1-2); Dkt. 16 at 28, 31, and that is still occurring. Exs. 41–42. Infringement "involves a multiple and not a discrete injury," because a claim "arises every time an infringing product is … sold." *Wilden Pump & Eng'g Co. v. Versa-Matic Tool, Inc.*, 20 U.S.P.Q.2d 1788, 1790-91 (C.D. Cal. 1991). For that reason, courts confronting continuing conduct have declined to read *Steel* and *Farmers* as fixing a defendant's contacts at the filing of the complaint.

For instance, in *Kruzel v. Molina Healthcare, Inc.*, the defendants opposed supplemental declarations describing post-complaint conduct on the ground that jurisdiction "depends upon contact with the forum state at the time of the Complaint,"

citing *Farmers* and *Steel*. No. 6:23-cv-01183-AA, 2025 WL 2388434, at *3-4 (D. Or. Aug. 18, 2025). The court held that those cases "do not support Defendants' assertion," that defendants' cases, "almost all of which are insurance cases, involved a single 'event,'" and that where a plaintiff alleges continuing violations, "[e]ach new violation is an event that gives rise to an additional claim." *Id.* It granted leave to file the declarations. *Id.* at *4.

The Federal Circuit has addressed the same objection in an infringement case and rejected it. Distinguishing *Farmers* as "a single tortious act which inflicted discrete injury," it held: "In a case involving a continuous tort, it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1563 (Fed. Cir. 1994) (holding post-complaint declaration "properly a part of the record"); *cf. Impossible Foods*, 80 F.4th at 1099 (rejecting "ironclad personal jurisdiction timing rule"). The filing date is that arbitrary moment. Fixing contacts there would leave a plaintiff facing continuing infringement two choices: wait for the defendant's forum conduct to accumulate before suing, causing the delay Defendants have already sought to fault Plaintiff for, Dkt. 40 at 27, or amend the complaint after each forum act to capture it, which would require Plaintiff to amend every time Swift performs in California or TAS executes a new license with California vendors. The first trades jurisdiction for timely relief. The second is perpetual motion practice. Neither is required by *Farmers* or *Steel*, and neither is the law. Should the Court nonetheless conclude that conduct after the filing of the FAC may be considered only on a supplemental pleading, Plaintiff will move under Rule 15(d).

**D. The Evidence Bears on Reasonableness Regardless of Timing.**

Even on Defendants' reading of *Farmers*, later forum contacts are weighed on the reasonableness prong. *Farmers* itself did so, counting the insurer's post-accident investigation and payments in Montana as reducing "the additional burden of

litigating" there. 907 F.2d at 915. Defendants contend, without evidence, that requiring "Tennessee domiciliaries to defend in California would be burdensome." Dkt. 57 at 35. Swift's third voluntary appearance in Los Angeles this year in connection with *The Life of a Showgirl* that Plaintiff has placed before the Court, after the iHeartRadio Music Awards, FAC ¶ 17, and the MTV Video Music Awards, Dkt. 68 at 4-5, answers that contention. *See Impossible Foods*, 80 F.4th at 1099 (defendant's "many trips to California" undermined "any assertion of inconvenience"). These are a series of forum contacts, not a "fleeting" one. *Cf. id.* at 1098.

## CONCLUSION

Plaintiff respectfully requests that the Court grant leave to file the lodged Second Supplemental Declaration of Jaymie Parkkinen and Exhibits 41 through 46 in opposition to the Rule 12(b)(2) portion of the Motion to Dismiss, Dkt. 57, and in further support of Plaintiff's Motion for Leave, Dkt. 68.

DATED: October 29, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 9 pages, in compliance with the 25-page limit set forth in the Court's Standing Order.

DATED: October 29, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen