JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MAREN FLAGG,

Plaintiff,

v.

TAYLOR SWIFT, et al.,

Defendants.

Case No. 2:26-cv-03354-SRM-BFM

Hon. Serena R. Murillo

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STAY DISCOVERY [DKT. 74]**

Date: December 9, 2026
Time: 1:30 p.m.
Place: Courtroom 5D (5th Fl.)
350 W. First Street
Los Angeles, CA 90012

# TABLE OF CONTENTS


PAGE

INTRODUCTION ..... 6
BACKGROUND ..... 8
DEFENDANTS' REFUSAL TO HOLD THE RULE 26(f) CONFERENCE ..... 9
LEGAL STANDARD ..... 11
ARGUMENT ..... 12
I. DISCOVERY IS NOT STAYED UNLESS THE COURT ORDERS IT, AND DEFENDANTS MAY NOT GRANT THEMSELVES THE STAY ..... 12
  A. No Order Has Stayed Discovery or Excused the Conference. ..... 12
  B. The Continued Absence of a Schedule Is the Product of Defendants' Refusal to Confer, Not a Justification for It. ..... 13
II. THE TWO-PART TEST IS NOT MET ..... 14
  A. A Preliminary Peek Shows the Motion to Dismiss Will Not Dispose of This Case. ..... 14
    1. *Rogers* does not apply to a designation Defendants use, and TAS has applied to register, as a trademark ..... 14
    2. The USPTO has twice found a likelihood of confusion ..... 17
    3. The remaining grounds reach one claim or two Defendants, and dismissing either would not narrow discovery ..... 17
    4. Swift and TAS continue to avail themselves of California ..... 18
  B. Either Way, Discovery Must Proceed: Plaintiff's Jurisdictional Showing Is Sufficient, and If It Were Not, Jurisdictional Discovery Would Be Warranted ..... 19
III. THE REMAINING CONSIDERATIONS FORECLOSE A STAY ..... 22
  A. Defendants' Burden Arguments Are Hypothetical and Unmoored From the Record ..... 22
  B. A Stay Would Prejudice Plaintiff ..... 24
  C. Defendants' Anticipated Counterclaims Confirm That Discovery Will Proceed. ..... 26
  D. Discovery From UMG and Bravado, Which Do Not Contest Jurisdiction, Is Not "Piecemeal." ..... 26
IV. IN THE ALTERNATIVE, ANY STAY SHOULD BE LIMITED ..... 27
CONCLUSION ..... 28
CERTIFICATE OF COMPLIANCE ..... 29

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Activision Publ'g, Inc. v. Warzone.com, LLC*, No. 2:21-cv-03073, 2022 WL 22960724 (C.D. Cal. Feb. 15, 2022) ........... 7, 16

*Activision Publ'g, Inc. v. Warzone.com, LLC*, No. 2:21-cv-03073, 2024 WL 6467326 (C.D. Cal. Apr. 11, 2024) ............. 7, 16

*AMC Fabrication, Inc. v. KRD Trucking W., Inc.*, No. 2:12-cv-00146, 2012 WL 4846152 (D. Nev. Oct. 10, 2012) ..................... 21

*Apothio, LLC v. Kern Cnty.*, No. 1:20-cv-00522, 2023 WL 2655847 (E.D. Cal. Mar. 27, 2023) .................. 26

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................ 26

*Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470 (9th Cir. 1992) ........................................................ 11

*Belin v. Starz Ent., LLC*, No. 2:21-cv-09586, 2024 WL 4720795 (C.D. Cal. Sept. 20, 2024) ................ 15

*Davis v. Blue Tongue Films*, No. 23-3968, 2024 WL 5182630 (9th Cir. Dec. 20, 2024) .............................. 15

*Dillinger, L.L.C. v. Elec. Arts, Inc.*, No. 1:09-cv-01236, 2010 WL 1945739 (S.D. Ind. May 11, 2010) .................. 16

*Elliot v. Conagra Brands, Inc.*, No. 2:23-cv-01417, 2024 WL 1676632 (E.D. Cal. Apr. 17, 2024) .................. 24

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010) ........................................................ 17

*Gastineau v. ESPN, Inc.*, No. 25-cv-2041, 2025 WL 2733155 (S.D.N.Y. Sept. 24, 2025) ............... 16-17

*Godelman v. PennyMac Fin. Servs., Inc.*, No. 2:25-cv-04767, 2026 U.S. Dist. LEXIS 132259 (C.D. Cal. Feb. 2, 2026) ........................................................ 14

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39 (N.D. Cal. 1990) ........................................................ 11, 23

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-cv-02220, 2024 WL 4631665 (N.D. Cal. Oct. 29, 2024) ... 11, 21, 22, 27

*Hewlett Packard Enter. Co. v. Inspur Grp. Co.*,
No. 24-cv-02220, 2025 WL 754265 (N.D. Cal. Mar. 10, 2025) ......................21

*Howard v. Las Animas Cnty. Sheriff's Off.*,
No. 09-cv-00640, 2009 WL 3536655 (D. Colo. Oct. 22, 2009)......................27

*In re Nexus 6P Prods. Liab. Litig.*,
No. 17-cv-02185, 2017 WL 3581188 (N.D. Cal. Aug. 18, 2017) ....................25

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
No. 2:19-ml-02905, 2022 WL 19236923 (C.D. Cal. Sept. 6, 2022)...........21, 27

*Jack Daniel's Props., Inc. v. VIP Prods. LLC*,
599 U.S. 140 (2023)....................................................................................7, 15

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) ........................................................................20

*Little v. City of Seattle*,
863 F.2d 681 (9th Cir. 1988) ..........................................................................11

*Malone v. Walt Disney Parks & Resorts U.S., Inc.*,
No. 8:25-cv-00562, 2025 WL 3725649
(C.D. Cal. Oct. 8, 2025) ...............................................11, 12, 14, 19, 22, 23, 25

*Nat'l Corp. Tax Credit Funds III v. Potashnik*,
No. 07-cv-3528, 2008 WL 11339608 (C.D. Cal. June 16, 2008)....................13

*Penn v. Experian Info. Sols., Inc.*,
No. 5:24-cv-02372, 2025 WL 1427440 (C.D. Cal. May 6, 2025)....................27

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ..............................................................6, 11, 23

*Pino v. Trujillo*,
No. 18-cv-644, 2018 U.S. Dist. LEXIS 250143 (D.N.M. Dec. 7, 2018)..........26

*Power Integrations, Inc. v. Park*,
No. 16-cv-02366, 2016 WL 10859441 (N.D. Cal. Dec. 2, 2016).....................20

*Punchbowl, Inc. v. AJ Press, LLC*,
90 F.4th 1022 (9th Cir. 2024) .........................................................................15

*Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*,
No. 8:19-cv-00927, 2019 WL 8108745 (C.D. Cal. Nov. 14, 2019) .................11

*Rivera v. NIBCO, Inc.*,
364 F.3d 1057 (9th Cir. 2004) .........................................................................11

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989).............................................................................7

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ....................................................................20

*Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995) ....................................................6, 11, 18, 27

*T.L. v. Orange Unified Sch. Dist.*, No. 8:23-cv-01078, 2023 WL 9007307 (C.D. Cal. Nov. 3, 2023) ...................23

*Tesla, Inc. v. La. Auto. Dealers Ass'n*, No. 2:22-cv-02982, 2025 WL 744151 (E.D. La. Mar. 7, 2025) .......................13

*Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040 (9th Cir. 2025) ...................................................................17

*Trama v. RELX PLC*, No. 24-cv-3174, 2024 WL 5311155 (C.D. Cal. Oct. 3, 2024) ..................14, 19

*Wenger v. Monroe*, 282 F.3d 1068 (9th Cir. 2002) ..............................................................11, 14

*Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) ................................................................11, 14

**STATUTES**

15 U.S.C. § 1051 .........................................................................................15

**RULES**

Fed. R. Civ. P. 1 ..........................................................................................14

Fed. R. Civ. P. 13 ........................................................................................26

Fed. R. Civ. P. 15 ..........................................................................................8

Fed. R. Civ. P. 16 ........................................................................................28

Fed. R. Civ. P. 26 .......................................................6, 9, 11, 12, 13, 22, 24, 26, 28

Fed. R. Civ. P. 33 ........................................................................................23

Fed. R. Civ. P. 37 ........................................................................................13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment............................12

Standing Order .........................................................................6, 9, 12, 14, 24

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendants have already imposed the stay they ask the Court to approve. This Court's Standing Order provides that discovery "is not stayed before the Scheduling Conference or after dates have been set unless otherwise ordered by the Court." Standing Order § V.C. No such order has issued. But Federal Rule of Civil Procedure 26(d)(1) bars discovery until the parties hold the Rule 26(f) conference, and Defendants have declined to hold that conference since October 15, 2026. Dkt. 74-1 at 12. In their words, they "are not moving forward with a Rule 26(f) conference, and are filing a motion to stay discovery instead." *Id.* at 9. They then noticed this Motion for February 10, 2027. Dkt. 74 at 1-2. Had the Court not advanced the hearing, Dkt. 76, Defendants' refusal alone would have stayed discovery for nearly four months before the Court heard the request to stay it.

Defendants now ask the Court to ratify that result and to extend it. They seek a stay of "all discovery, including any Rule 26(f) conference," until thirty days after a final decision on a Motion to Dismiss the First Amended Complaint ("FAC") that the Court will not hear until February 3, 2027. Dkt. 74 at 20; Dkt. 76. Defendants describe that relief as "brief." Dkt. 74 at 9. It is not. The order they propose would leave this case, filed in March 2026, with no initial disclosures, no discovery, no scheduling order, and no trial date until at least March 2027.

Defendants bear the burden of showing good cause, and they have not met it. A pending motion to dismiss does not stay discovery; the party seeking a stay must make a "strong showing," *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995), of "specific prejudice or harm," *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). Defendants identify no discovery that burdens them. The only discovery they describe is the jurisdictional discovery Plaintiff proposed in the alternative, which their own Motion says is "wholly separate and apart" from the stay they seek. Dkt. 74 at 16.

Nor can the Court be "convinced" that Plaintiff will be unable to state a claim. Defendants' lead ground, *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989), does not apply to a designation the defendant uses as a trademark, *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 145 (2023). The FAC alleges that Defendants use THE LIFE OF A SHOWGIRL "as a trademark and source identifier for a coordinated line of consumer goods," FAC ¶ 51, and TAS Rights Management, LLC ("TAS") has applied to register it as a trademark for goods and services that include live musical performances, *id.* ¶ 58; Dkt. 57-12 at 4-5. Defendants cite *Activision Publishing, Inc. v. Warzone.com, LLC*, No. 2:21-cv-03073-FLA-JCx, 2022 WL 22960724 (C.D. Cal. Feb. 15, 2022), for the proposition that courts stay discovery when *Rogers* is raised. Dkt. 74 at 13-14. The Motion does not mention that the same court lifted that stay in 2024, after *Jack Daniel's*, when it held that *Rogers* did not apply to a party whose trademark applications confirmed that it was using the accused designation as its own mark. *Activision*, 2024 WL 6467326, at *1 (C.D. Cal. Apr. 11, 2024).

Defendants' second ground, that confusion is implausible, cannot be reconciled with the USPTO's two refusals to register THE LIFE OF A SHOWGIRL for musical recordings and live performances because confusion with Plaintiff's registered mark is likely. Dkt. 57-13 at 3; Dkt. 72-3 at 3. The remaining grounds reach one claim or two Defendants, and the Lanham Act claims against UMG Recordings, Inc. ("UMG") and Bravado International Group Merchandising Services Inc. ("Bravado"), which do not contest jurisdiction, will proceed whatever the Court decides on those grounds.

Before a single request has been served, Defendants have shown that they will resist discovery by every available means. They have refused the mandatory Rule 26(f) conference; they have moved to stay discovery that does not yet exist; and they have characterized the only discovery Plaintiff has proposed—fifteen document requests and five interrogatories to each of Taylor Swift ("Swift") and TAS—as "voluminous," and one deposition of each limited to the forum contacts they put in dispute, as "borderline harassing." Dkt. 74 at 18 & n.2 (emphasis omitted). The Motion should be

denied, and Defendants should be directed to hold the Rule 26(f) conference and proceed with discovery in the ordinary course.

**BACKGROUND**

Plaintiff owns an incontestable federal registration for CONFESSIONS OF A SHOWGIRL covering, among other things, live stage performances in the field of music. Dkt. 57-10 at 2-3; FAC ¶¶ 4, 43-44, 74. She filed this action on March 30, 2026, Dkt. 1, and on April 7, 2026, moved for a preliminary injunction on the showing that Defendants' expanding use of THE LIFE OF A SHOWGIRL across music, live performance, merchandise, and brand collaborations was overwhelming the goodwill of her senior mark, and that the harm deepens with each day the use continues. Dkt. 16 at 11, 28. That motion remains pending. What it predicted has occurred. Since Plaintiff's Opposition to the Motion to Dismiss the FAC was filed, Swift has released an expanded edition of *The Life of a Showgirl*, premiered an additional music video under the brand from the stage of a televised awards show in Los Angeles, and performed music from *The Life of a Showgirl* live in Los Angeles. Dkt. 68 at 4-5; Dkt. 73 at 4-5.

Defendants moved to dismiss on May 26, 2026, Dkt. 44; Plaintiff amended as of right, Fed. R. Civ. P. 15(a)(1)(B), Dkt. 50; and on June 30, 2026, Defendants filed the pending Motion to Dismiss, Dkt. 57, noticed for October 7, 2026. All four Defendants move under Rule 12(b)(6); only Swift and TAS move under Rule 12(b)(2). Dkt. 74 at 9-10, 15. Briefing closed on September 23, 2026. Dkts. 61, 63. The day before, the USPTO refused for the second time to register THE LIFE OF A SHOWGIRL in Classes 9 and 41, covering musical recordings and live musical performances, "because of a likelihood of confusion" with Plaintiff's mark. Dkt. 72-3 at 3; *see* Dkt. 57-13 at 3 (first refusal, submitted by Defendants with the Motion to Dismiss). The Court requested supplemental briefing on that Office Action and continued the hearing to December 9, 2026. Dkts. 67, 71, 72. Plaintiff then moved, on October 9 and October 29, for leave to place Defendants' post-briefing California

conduct before the Court. Dkts. 68, 73. On November 4, 2026, the Court set the hearing on those motions and the hearing on this one for December 9, 2026, and continued the hearing on the Motion to Dismiss to February 3, 2027. Dkt. 76.

**DEFENDANTS' REFUSAL TO HOLD THE RULE 26(f) CONFERENCE**

The Standing Order provides that "the Court will issue an Order Setting Scheduling Conference." Standing Order § VI. Plaintiff awaited that order while the Motion to Dismiss was briefed. Then, in September, two things happened at once. On September 22, the USPTO refused for the second time to register THE LIFE OF A SHOWGIRL for musical recordings and live musical performances, again citing a likelihood of confusion with Plaintiff's registered mark. Dkt. 72-3 at 3. And on September 27, Defendants expanded their use of the designation in California, premiering a new music video under the brand from the stage of a televised awards show in Los Angeles. Dkt. 68 at 4-5. With the motion for a preliminary injunction still pending, no Scheduling Conference yet ordered, and Defendants' use growing rather than receding, Plaintiff endeavored to keep the case moving forward.

On October 6, 2026, Plaintiff's counsel asked Defendants' counsel for their availability for the Rule 26(f) conference on October 8 or 9. Dkt. 74-1 at 14. Defendants' counsel replied that they were "considering" the request and would "get back to [Plaintiff's counsel] next week." *Id.* at 13. Plaintiff's counsel followed up on October 14. *Id.* On October 15, Defendants declined to confer, asserting that a conference was "premature" while the Motion to Dismiss was pending, and that Plaintiff's alternative request for jurisdictional discovery, in Defendants' view, showed "that proceeding with discovery on a more global basis is premature and unwarranted." *Id.* at 12. Plaintiff's counsel responded the same day: Rule 26(f) does not make the conference depend on the issuance of a scheduling order, Fed. R. Civ. P. 26(f)(1); the Standing Order provides that discovery is not stayed absent an order; a request for jurisdictional discovery made "if necessary" concedes nothing; and "[t]he case is

already behind schedule, and there is no room for further delay." Dkt. 74-1 at 11-12. Plaintiff's counsel asked for dates between October 19 and 23. *Id.* at 12.

On October 19, Defendants declined again, asserting there was "no requirement or urgency that we hold the Rule 26(f) conference now"; if Plaintiff "insist[ed] on moving forward with a Rule 26(f) report now," Defendants would "be forced to file a motion to stay discovery"; and they could confer on that motion later in the week. *Id.* at 11. Plaintiff's counsel agreed to confer on the motion and proposed a resolution. Plaintiff did "not concede that a stay would be appropriate, that Defendants could carry their burden of obtaining one, or that Defendants' jurisdictional arguments have any merit," but would voluntarily defer propounding discovery on Swift and TAS until the Court ruled on the Motion to Dismiss, apart from any jurisdictional discovery the Court ordered, if the parties held the Rule 26(f) conference, exchanged initial disclosures, and proceeded in the ordinary course as to UMG and Bravado, which do not contest jurisdiction. *Id.* at 10. Defendants answered on October 21 that they were "not moving forward with a Rule 26(f) conference," that they did "not think it is workable" to proceed as Plaintiff proposed, and that Plaintiff's request for the conference was "a manufactured meet and confer." *Id.* at 9; *see* Dkt. 74-1 ¶ 10 (Morrone Decl.) (characterizing Plaintiff's request to hold the Rule 26(f) conference as an effort to "strong-arm" Defendants). At the October 22 videoconference, Defendants rejected Plaintiff's proposal. Dkt. 74-1 at 7-8. Defendants filed this Motion on October 30, 2026, and noticed it for February 10, 2027. Dkt. 74 at 1-2.

Defendants' use of THE LIFE OF A SHOWGIRL did not pause while they declined to confer. On October 17, Swift performed music from *The Life of a Showgirl* live in Los Angeles, and three days later she posted photographs of the performance that carry a credit to "TAS Rights Management." Dkt. 73 at 4-5. As of this filing, no Rule 26(f) conference has been held, no initial disclosures have been exchanged, and no discovery has been served.

## LEGAL STANDARD

A district court has "wide discretion in controlling discovery," *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and it may "stay discovery when it is convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (per curiam)).

A stay of discovery is a protective order under Rule 26(c), which issues only "for good cause." Fed. R. Civ. P. 26(c)(1). "The burden is upon the party seeking the order to 'show good cause' by demonstrating harm or prejudice that will result from the discovery," *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063 (9th Cir. 2004), and the showing must be of "specific prejudice or harm"; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Phillips*, 307 F.3d at 1210-11 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). "A party seeking a stay of discovery carries a heavy burden of making a 'strong showing' why discovery should be denied." *Skellerup*, 163 F.R.D. at 600 (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)).

Courts in this District apply a two-part test. A stay "may be appropriate if: '(1) the pending motion [is] potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is aimed, and (2) the pending, potentially dispositive motion can be decided absent additional discovery.'" *Malone v. Walt Disney Parks & Resorts U.S., Inc.*, No. 8:25-cv-00562-SRM-DFM, 2025 WL 3725649, at *1 (C.D. Cal. Oct. 8, 2025) (quoting *Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*, No. 8:19-cv-00927-JLS-JEM, 2019 WL 8108745, at *2 (C.D. Cal. Nov. 14, 2019)). If either prong is not met, discovery proceeds. *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-cv-02220-JST, 2024 WL 4631665, at *1 (N.D. Cal. Oct. 29, 2024). In the alternative, a court may "'take a preliminary peek at the merits' of the

motion," and it may "consider any other factors particular to the case." *Malone*, 2025 WL 3725649, at *1 (citations omitted).

## ARGUMENT

### I. DISCOVERY IS NOT STAYED UNLESS THE COURT ORDERS IT, AND DEFENDANTS MAY NOT GRANT THEMSELVES THE STAY

#### A. No Order Has Stayed Discovery or Excused the Conference.

Under the Standing Order, "[d]iscovery is not stayed before the Scheduling Conference or after dates have been set unless otherwise ordered by the Court," Standing Order § V.C, and only an order can excuse the Rule 26(f) conference, Fed. R. Civ. P. 26(f)(1) ("when the court orders otherwise"). No order has stayed discovery. No order has excused the conference, and Defendants did not ask for one before they declined to confer. Nor is this a case in which discovery would ordinarily wait. The Advisory Committee recognized that discovery even before the conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction." Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment. This case involves both.

Defendants contend that the Court's "practice rules contemplate that a motion to stay discovery may obviate the early Rule 26(f) conference and report requirement." Dkt. 74 at 11. Section V.C of the Standing Order does not say that. The sentence Defendants quote provides that "[u]nless there is a likelihood that, upon motion by a party, the Court would order that discovery be stayed, the parties should begin to propound discovery before the Scheduling Conference." Standing Order § V.C. That sentence addresses when a party should begin serving its own requests. It does not mention the Rule 26(f) conference, and it does not authorize a party to decline one. Defendants omit the sentence that controls: discovery "is not stayed … unless otherwise ordered by the Court." *Id.* A party's self-serving prediction that the Court would grant a stay is not an order granting one.

Defendants' refusal has stayed discovery without an order. Absent a stipulation or an order, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Defendants declined the conference three times, Dkt. 74-1 at 9, 11, 12, and so have kept every party from serving discovery, including on the two Defendants that do not contest jurisdiction.[1] "[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay—even before the court has ruled." *Nat'l Corp. Tax Credit Funds III v. Potashnik*, No. 07-cv-3528-PSG-FMOx, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) (citation omitted). A party that believes a stay is proper "may seek that relief from the court after the Rule 26(f) conference"; it "may not, however, unilaterally grant itself a stay of discovery by refusing to participate in the Rule 26(f) conference." *Tesla, Inc. v. La. Auto. Dealers Ass'n*, No. 2:22-cv-02982, 2025 WL 744151, at *3 (E.D. La. Mar. 7, 2025).

### B. The Continued Absence of a Schedule Is the Product of Defendants' Refusal to Confer, Not a Justification for It.

Defendants argue that because "no discovery deadlines have been ordered" and "no trial date has been set," a stay "will therefore delay nothing." Dkt. 74 at 12; *see id.* at 20. The argument proves too much. There are no deadlines because the Rule 26(f) conference that leads to them has not been held, and it has not been held because Defendants declined to hold it. Dkt. 74-1 at 8-13. Defendants cannot rely on the absence of a schedule that their own refusal has prevented. On their reasoning, any defendant could obtain a stay by refusing to confer and then citing the lack of deadlines as a justification for it. The absence of a schedule is not evidence that delay is harmless. It is the delay. What a stay postpones is the case itself: the Scheduling Conference, the

[1] Rule 37(f) authorizes an award of expenses against a party that "fails to participate in good faith in developing and submitting a proposed discovery plan as required by Rule 26(f)." Plaintiff does not seek that relief. She simply asks that the conference be held.

discovery cutoff, the trial date, and the "just, speedy, and inexpensive determination" that Rule 1—and this Court, Standing Order at 1—directs the parties to secure.

## II. THE TWO-PART TEST IS NOT MET

### A. A Preliminary Peek Shows the Motion to Dismiss Will Not Dispose of This Case.

The first prong is not satisfied by the label on the motion. Every motion to dismiss directed at all claims is potentially dispositive in form. The Court may therefore take a preliminary peek at the merits, *Malone*, 2025 WL 3725649, at *1, and the Ninth Circuit permits a stay when the district court is "convinced that the plaintiff will be unable to state a claim for relief." *Wenger*, 282 F.3d at 1077 (quoting *Wood*, 644 F.2d at 801); *see Malone*, 2025 WL 3725649, at *1. Courts in this District deny a stay where "the likelihood of th[e] motion to dismiss being granted is unclear, and the likelihood of the motion being granted without leave to amend appears remote." *Trama v. RELX PLC*, No. 24-cv-3174-DSF-Ex, 2024 WL 5311155, at *2 (C.D. Cal. Oct. 3, 2024); *see Godelman v. PennyMac Fin. Servs., Inc.*, No. 2:25-cv-04767-FLA-JPRx, 2026 U.S. Dist. LEXIS 132259, at *3 (C.D. Cal. Feb. 2, 2026) (denying stay where the court was "not 'convinced that [Plaintiff] will be unable to state a claim for relief'"). The Motion to Dismiss disposes of this case only if one of two grounds succeeds as to every claim and every Defendant: that *Rogers* bars the Lanham Act claims, or that the FAC does not plausibly allege a likelihood of confusion. On the allegations and the record, the Court cannot be convinced of either.

#### 1. <u>Rogers *does not apply to a designation Defendants use, and TAS has applied to register, as a trademark.*</u>

Defendants' first ground is that the album's title is "protected First Amendment expression requiring dismissal under *Rogers v. Grimaldi*." Dkt. 74 at 8. *Rogers* "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark," because "[t]hat kind of use falls within the heartland of trademark law, and does not receive special

First Amendment protection." *Jack Daniel's*, 599 U.S. at 145. Nor does that result change "because the use of a mark has other expressive content." *Id.* at 157. In *Punchbowl, Inc. v. AJ Press, LLC*, the Ninth Circuit held *Rogers* inapplicable to a defendant that used the accused mark to identify its own publications and that, like TAS, "ha[d] filed trademark applications to register the marks." 90 F.4th 1022, 1031 (9th Cir. 2024). In *Belin v. Starz Entertainment, LLC*, the court denied a *Rogers* motion to dismiss claims against the title of a television series because the defendants "use the BMF Mark as a trademark" and "have filed a trademark application to register their own 'BMF' mark." No. 2:21-cv-09586-FWS-PLA, 2024 WL 4720795, at *3-4, *6 (C.D. Cal. Sept. 20, 2024). And in *Davis v. Blue Tongue Films*, the Ninth Circuit reversed the dismissal of claims against a film's title, holding that "[t]he *Rogers* test does not apply at this stage in the proceedings because the SAC plausibly alleges that the Movie uses 'Gringo' as a source identifier." No. 23-3968, 2024 WL 5182630, at *2 (9th Cir. Dec. 20, 2024).

The FAC alleges exactly such a use. Defendants "use THE LIFE OF A SHOWGIRL as a trademark and source identifier for a coordinated line of consumer goods … not merely as the title of a creative work." FAC ¶ 51. The goods are sold in a retail section labeled "THE LIFE OF A SHOWGIRL SHOP," and on garments the designation is printed "where a clothing brand's name customarily identifies the source of the item." *Id.* ¶¶ 47, 49. Defendants themselves have described their extensive, global marketing and "branding campaign" for the album. Dkt. 40 at 29; *see also* Dkt. 57 at 23; Dkt. 40-96 ¶ 7. And TAS has applied to register the designation. An application based on intent to use must include a verified statement of "the applicant's bona fide intention to use the mark in commerce," 15 U.S.C. § 1051(b)(3)(B), and TAS's application asks the USPTO to register THE LIFE OF A SHOWGIRL as a trademark for goods and services that include "[e]ntertainment services in the nature of live musical performances." Dkt. 57-12 at 4. Defendants cannot tell the USPTO that THE LIFE OF A SHOWGIRL is a trademark and tell this Court that the same

designation is only the title of an expressive work. *See* Dkt. 61 at 11-13.

Defendants' own authority confirms this. For their proposition that courts "routinely stay discovery" when a *Rogers* defense is raised, Defendants cite *Activision*, 2022 WL 22960724. Dkt. 74 at 13-14. That order stayed discovery, and the court then dismissed the counterclaims under *Rogers*. The Ninth Circuit vacated the judgment and remanded in light of *Jack Daniel's*. *Activision*, 2024 WL 6467326, at *1. On remand, the same court held that *Rogers* did not apply because Activision was using WARZONE "to designate itself as the source of its game." *Id.* at *3. It read *Punchbowl* to hold that *Rogers* does not apply "when the accused infringer filed trademark applications for the mark it was accused of infringing," and it took judicial notice of Activision's representations to the USPTO, which "further confirm [Activision] intends to use WARZONE as a trademark (if that were not already obvious from [Activision's] trademark application alone)." *Id.* The court denied the motion to dismiss, vacated its earlier order of dismissal, and lifted the stay on discovery. *Id.* at *1, *4. Defendants' Motion cites the 2022 stay order but mentions neither the 2024 order that lifted the stay nor *Jack Daniel's*. Defendants ask this Court to enter the same stay, on the same premise, after *Jack Daniel's*, in a case where TAS's application to register the accused designation has already been filed, twice refused, and, with the first refusal, placed before the Court by Defendants themselves. Dkt. 57-12 at 2, 5; Dkt. 57-13 at 3; *see* Dkt. 72-3 at 3 (second refusal).

Defendants' two remaining authorities are unpublished orders from Indiana and New York. *Dillinger, L.L.C. v. Electronic Arts, Inc.* predates *Jack Daniel's* by thirteen years, and the magistrate judge there stayed discovery without addressing "the merits of the parties' arguments." No. 1:09-cv-01236-SEB-JMS, 2010 WL 1945739, at *1-2 (S.D. Ind. May 11, 2010). *Gastineau v. ESPN, Inc.* concerned video footage of the plaintiff, not a designation the defendants used as a trademark, and the court neither decided whether *Rogers* applied nor cited *Jack Daniel's*; it found a "strong initial showing" for dismissal on various grounds, and as to *Rogers* said only that the plaintiff

"appear[ed] to misapply" the test. No. 25-cv-2041-PAE, 2025 WL 2733155, at *1-2 (S.D.N.Y. Sept. 24, 2025). Neither case addressed *Jack Daniel's* or involved a defendant that used and applied to register the accused designation as its own mark.

2. *The USPTO has twice found a likelihood of confusion.*

Defendants' second ground is that the FAC pleads "no plausible facts" supporting a likelihood of confusion. Dkt. 74 at 8. The Motion does not mention the USPTO, whose examining attorney has twice refused Defendants registration in the classes that cover musical recordings and live musical performances "because of a likelihood of confusion" with Plaintiff's mark. Dkt. 72-3 at 3; *see* Dkt. 57-13 at 3. Defendants submitted the first refusal themselves with the Motion to Dismiss, and the Court requested supplemental briefing on the second. Dkt. 67. Thus, to be "convinced" that the allegation of likely confusion is implausible, the Court would have to conclude, on the pleadings, that the USPTO was wrong both times about the same two marks. Trademark disputes are "intensely factual," so much so that the Ninth Circuit disfavors resolving them even on summary judgment, on a full record. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010) (internal quotation marks and citation omitted). The same is true on the pleadings, where "dismissal of trademark disputes at the pleading stage is generally disfavored." *Trader Joe's Co. v. Trader Joe's United*, 150 F.4th 1040, 1049 (9th Cir. 2025). The FAC pleads the *Sleekcraft* factors in detail, FAC ¶¶ 52-56, 79-84; it pleads actual confusion, *id.* ¶ 82; and the preliminary injunction record documents numerous examples, Dkt. 16 at 21-23. The Court cannot be "convinced" on this record that Plaintiff is unable to plead a likelihood of confusion.

3. *The remaining grounds reach one claim or two Defendants, and dismissing either would not narrow discovery.*

The remaining grounds do not reach the entire case on any view. Defendants' two UCL arguments reach one claim. Defendants' secondary-liability argument is derivative of the direct claims. The Rule 12(b)(2) ground reaches Swift and TAS; UMG

and Bravado do not contest jurisdiction. Dkt. 74 at 9-10, 15. Defendants' answer is that the Motion to Dismiss will at least "narrow the claims, the parties, and the scope of discovery." *Id.* at 8. It will not. Every claim in this case arises from one set of facts: Defendants' use of THE LIFE OF A SHOWGIRL and the effect of that use on Plaintiff's brand. FAC ¶¶ 45-56, 64-68.

The witnesses and documents are the same regardless of which Defendants remain parties, and the discovery is the same: the goods and services sold under THE LIFE OF A SHOWGIRL, the channels of trade, the marketing, and the evidence of confusion. Dismissing the UCL claim would not remove a document or a witness from the case. If Swift and TAS were dismissed for want of jurisdiction, their knowledge of THE LIFE OF A SHOWGIRL's marketing and licensing would not disappear; Plaintiff would obtain it by subpoena and nonparty depositions instead of by party discovery, at greater cost to everyone. *See Skellerup*, 163 F.R.D. at 601 (denying stay; "even if defendant City is no longer a party to the case, plaintiff and perhaps defendant Bridgestone are likely to continue to conduct discovery with defendant City as a nonparty").

4. <u>*Swift and TAS continue to avail themselves of California.*</u>

As to Swift and TAS, Defendants contend that the FAC's jurisdictional allegations are insufficient. Dkt. 57 at 29-35. They are not, and the record is not limited to the allegations. The FAC alleges, and Plaintiff's opposition to the Motion to Dismiss showed with evidence, that Swift and TAS staged brand photography for THE LIFE OF A SHOWGIRL at the Los Angeles Theatre; filmed a music video there; erected billboards for *The Life of a Showgirl* across Los Angeles; sell THE LIFE OF A SHOWGIRL merchandise over the internet targeted to California consumers, as the privacy policy on their own website acknowledges; and contract with their California co-defendants, UMG and Bravado, to distribute goods sold under the brand. FAC ¶¶ 16-18, 21-22; Dkt. 61 at 26-34. Defendants' declaration is worded to sound like a denial, but it denies narrower facts than the FAC alleges, recites facts that do not

respond to the allegations, and denies characterizations and legal conclusions. *Compare* FAC ¶¶ 17-18, *with* Dkt. 57-1 ¶¶ 6-8. None of that controverts the relevant jurisdictional allegations. *See* Dkt. 68 at 8; Dkt. 73 at 8.

Since briefing closed, the record of those contacts has grown. In September, Swift premiered from a Los Angeles stage an additional music video that had been shot in Beverly Hills on March 13, 2026, before this action was filed. Dkt. 68 at 4-6. On October 17, Swift performed music from *The Life of a Showgirl* live in Los Angeles, and the photographs she posted of the performance carry a credit to "TAS Rights Management." Dkt. 73 at 4-5, 8-9. In the Motion to Dismiss, Defendants told the Court that "no songs from the Album have been performed live," and relied on that absence in arguing that the parties' services are distinct. Dkt. 57 at 22 & n.7. That is no longer so. Even on Defendants' own narrow view of what would relate THE LIFE OF A SHOWGIRL to Plaintiff's services—live performance—the connection has now been made in Los Angeles. The Court cannot be "convinced" that a motion will succeed when Defendants' own conduct has removed one of its key premises. *Cf. Trama*, 2024 WL 5311155, at *2 (denying stay where the Rule 12(b)(2) motion was "not potentially dispositive of the entire case, and it is decidedly unclear whether the motion can be determined absent additional discovery").

### B. Either Way, Discovery Must Proceed: Plaintiff's Jurisdictional Showing Is Sufficient, and If It Were Not, Jurisdictional Discovery Would Be Warranted.

The second prong asks whether the motion "can be decided absent additional discovery." *Malone*, 2025 WL 3725649, at *1. The Rule 12(b)(6) grounds are tested on the pleadings. The Rule 12(b)(2) ground is not. As to it there are two possibilities, and discovery proceeds under either.

The first is that Plaintiff's showing is sufficient. On a Rule 12(b)(2) motion decided on the papers, a plaintiff "need only make a prima facie showing of jurisdictional facts," uncontroverted allegations in the complaint are taken as true, and

conflicts between the parties' evidence are resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (internal quotation marks and citation omitted). The FAC's allegations and the evidence in Plaintiff's Opposition to the Motion to Dismiss, Dkt. 61 at 26-34, meet that standard. On that view the Rule 12(b)(2) motion fails, Swift and TAS remain parties, and discovery proceeds in the ordinary course.

The second is that the Court considers the present showing not yet adequate. Even then, the showing identifies specific California contacts—the production of two music videos in this District with the same Los Angeles production company, the plan made on the Beverly Hills set to premiere the second video from a Los Angeles stage, the arrangement behind TAS's credit on the photographs of the October 17 performance—whose particulars are in Defendants' possession. Dkt. 68 at 8, 10; Dkt. 73 at 8-9. Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (internal quotation marks and citation omitted). In *Laub* itself, the Ninth Circuit held that the district court abused its discretion by refusing that discovery. *Id.* That is why Plaintiff requested it, Dkt. 68 at 9-12, and it is why Defendants' assertion that the request "effectively conceded" a failure to plead jurisdiction, Dkt. 74 at 3, 8, is wrong, as Plaintiff's counsel told them in writing on October 15. Dkt. 74-1 at 12. Plaintiff's request for jurisdictional discovery is a reason to deny a stay, not to grant one. *See Power Integrations, Inc. v. Park*, No. 16-cv-02366-BLF, 2016 WL 10859441, at *2 (N.D. Cal. Dec. 2, 2016) (denying stay pending a jurisdictional motion to dismiss in part because the plaintiff "may still be entitled to jurisdictional discovery, some of which is already encompassed in the discovery it seeks"). On this view the Rule 12(b)(2) motion should not be decided without jurisdictional discovery, and the second prong fails as to it.

Either way, discovery must proceed, on the merits or on jurisdiction, and a stay is improper on each. The Motion describes jurisdictional discovery as "wholly separate and apart from the general stay of discovery requested in this Motion," Dkt. 74 at 16, and then invokes that same discovery as a reason the stay is needed, *id.* at 18. It cannot be both. Nor does Defendants' proposed order carve out jurisdictional discovery: it would stay discovery "including any Rule 26(f) conference," with no exception, and would have the Court find that "[n]o discovery is needed to decide Defendants' MTD." Dkt. 74-2 at 2.

Defendants argue that Plaintiff's request for jurisdictional discovery is a "tacit concession" that merits discovery should wait, and that jurisdictional motions "strongly favor[] a stay, or at minimum, limitations on discovery." Dkt. 74 at 14-17 (citing *Hewlett Packard* and *In re ZF-TRW Airbag Control Units Products Liability Litigation*, No. 2:19-ml-02905-JAK-PLA, 2022 WL 19236923 (C.D. Cal. Sept. 6, 2022)). Neither decision stayed discovery as to a defendant that did not contest jurisdiction. *Hewlett Packard* stayed discovery only "as to these Defendants"—the two that had moved to dismiss for lack of personal jurisdiction. 2024 WL 4631665, at *1-2. It did not decide the plaintiff's request for jurisdictional discovery, and when the court later ruled on those defendants' motions, it denied one and held as to the other that "jurisdictional discovery is necessary." *Hewlett Packard Enter. Co. v. Inspur Grp. Co.*, No. 24-cv-02220-JST, 2025 WL 754265, at *6, *9 (N.D. Cal. Mar. 10, 2025). *ZF-TRW* likewise limited its stay to "discovery propounded on or propounded by" the defendant that contested personal jurisdiction. 2022 WL 19236923, at *6. The decisions on which those courts relied do not support a blanket stay either. For example, *AMC Fabrication, Inc. v. KRD Trucking West, Inc.*, cited in *ZF-TRW*, held that a challenge to personal jurisdiction "is not a question that mandates a stay of discovery." No. 2:12-cv-00146-LDG-CWH, 2012 WL 4846152, at *2 (D. Nev. Oct. 10, 2012). And notably, a stay limited to merits discovery from Swift and TAS, with discovery proceeding as to UMG and Bravado, is what Plaintiff proposed on October

19. Dkt. 74-1 at 10. Defendants rejected that proposal as not "workable," *id.* at 9, but their own authorities show that it is.

## III. THE REMAINING CONSIDERATIONS FORECLOSE A STAY

Because the two-part test is not met, discovery should proceed. *Hewlett Packard*, 2024 WL 4631665, at *1. Even where the test is met, a stay only "***may*** be appropriate." *Malone*, 2025 WL 3725649, at *1 (emphasis added). In *Malone*, this Court stayed discovery because a pending motion to remand, if granted, "would strip this Court of jurisdiction"; the plaintiffs "implicitly concede[d] that these jurisdictional issues should be addressed first" and did "not assert that the discovery they seek is directed at jurisdictional issues"; the motions to dismiss presented "straightforward legal issues"; and the plaintiffs had served requests that were "particularly broad at this pleading stage." *Id.* at *2. The pending motions there could have ended the litigation in this Court, and the stay lasted only "pending the Court's decision." *Malone*, 2025 WL 3725649, at *2. None of that is true here. For the reasons in Part II, the Motion to Dismiss will not end this case: its principal grounds turn on disputed facts about how Defendants use THE LIFE OF A SHOWGIRL and whether consumers are likely to be confused, and its jurisdictional ground reaches only two of the four Defendants. Plaintiff has conceded nothing, and the only discovery she has asked the Court to order is directed at jurisdiction. No discovery has been served, so there is nothing overbroad to stay. And Defendants seek more than *Malone* granted: a stay lasting thirty days beyond the Court's ruling.

### A. Defendants' Burden Arguments Are Hypothetical and Unmoored From the Record.

Defendants' Motion rests on burden, but it describes none. No party has served a discovery request, and under Rule 26(d)(1) none can be served until the Rule 26(f) conference Defendants have declined to hold. The burden the Motion describes is an unmoored prediction: "it is likely that Plaintiff intends to serve discovery requests directed to broad swaths of subject matter," which "would be disproportional and

burdensome." Dkt. 74 at 17. A self-serving guess about requests that have not been served is not "specific prejudice or harm." *Phillips*, 307 F.3d at 1210-11. "Had the Federal Rules contemplated that a motion to dismiss under [Rule] 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Gray*, 133 F.R.D. at 40; *see T.L. v. Orange Unified Sch. Dist.*, No. 8:23-cv-01078-FWS-KES, 2023 WL 9007307, at *3-4 (C.D. Cal. Nov. 3, 2023) (denying stay, after twenty-one interrogatories and fifty-two requests for production had been served, because the defendants relied on "superficial statements or vague articulations demonstrating nothing more than the traditional burdens of litigation" (internal quotation marks and citation omitted)).

The decisions Defendants cite for the proposition that "particularly broad" discovery justifies a stay involved discovery that had been served or specifically described. Dkt. 74 at 17. In *Malone*, the plaintiffs had served 121 requests—fifty-five requests for production, forty-seven requests for admission, and nineteen interrogatories—*Malone*, No. 8:25-cv-00562, Dkt. 49 at 3-4 (defendants' motion), and the Court quoted requests that asked the defendants to "[i]dentify every instance" of a category of conduct over the relevant period and to identify "all persons present" at every interview. *Malone*, 2025 WL 3725649, at *2. Here, no request exists to evaluate. The only discovery Defendants identify anywhere in the Motion is the jurisdictional discovery Plaintiff proposed in the alternative, and their description of it does not survive a look at Plaintiff's proposal: up to fifteen requests for production and five interrogatories as to each of Swift and TAS, a Rule 30(b)(6) deposition of TAS of no more than four hours, and a deposition of Swift of no more than three hours, "confined to the jurisdictional facts Defendants have placed in dispute." Dkt. 68 at 11-12; *see* Dkt. 57-1 ¶ 7. Rule 33(a)(1) permits twenty-five interrogatories without leave of court. Plaintiff proposed ***five***. Nothing in the Motion explains how that discovery would burden Defendants. *See Elliot v. Conagra Brands, Inc.*, No. 2:23-cv-01417-MCE-AC,

2024 WL 1676632, at *2 (E.D. Cal. Apr. 17, 2024) (denying stay; "defendant's only articulated harm is the costs of responding to discovery").

Nor are the two proposed depositions "borderline harassing." Dkt. 74 at 18 n.2. Answering questions about one's business connections to the forum is the ordinary subject of jurisdictional discovery. Defendants' argument assumes that Swift's California contacts "are all public appearances or otherwise publicly available information," *id.*, so that discovery would add nothing. The record disproves that assumption. On March 13, 2026, before this action was filed, Swift shot a music video for *The Life of a Showgirl* in Beverly Hills. Dkt. 68 at 4-6. Defendants then moved to dismiss for lack of personal jurisdiction and submitted a declaration addressing Swift's California contacts. Neither mentioned the Beverly Hills production. *See* Dkt. 57 at 29-35; Dkt. 57-1 ¶¶ 8-10. Plaintiff learned of it six months later, in September, and only because Swift chose to announce it. Dkt. 68 at 6. That production was a California contact that existed throughout the briefing of the Motion to Dismiss and that Plaintiff had no means of discovering. The same is true of TAS's role in the October 17 performance, which became known only because Swift posted photographs bearing TAS's credit; the arrangement behind that credit remains undisclosed. Dkt. 73 at 5, 8-9. Plaintiff's proposed discovery is directed at contacts of this kind: ones that are not public, that only Defendants know of, and that bear directly on the jurisdictional question Defendants have raised. Whatever merits discovery follows will be governed by Rule 26(b)(1), by the Magistrate Judge to whom all discovery is referred, Standing Order § V.A, and by the protective order already in place, Dkt. 37. Those tools can address any burden if it arises. A speculative burden is not a reason to stop the case before a single request has been served.

**B. A Stay Would Prejudice Plaintiff.**

Defendants assert that Plaintiff "has identified no prejudice." Dkt. 74 at 9 (emphasis omitted); *see id.* at 19. The record shows otherwise. This is not a case in which the events giving rise to the claims are complete and the only cost of delay is

time. The FAC alleges infringement that "is ongoing and expanding," FAC ¶ 65, and the expansion has continued through the briefing of the Motion to Dismiss, with the expanded edition of *The Life of a Showgirl*, the additional music video and its Los Angeles premiere, and the live performance in Los Angeles. Dkt. 68 at 4-5; Dkt. 73 at 4-5. Plaintiff's motion for a preliminary injunction, pending since April, explained that such continuing exploitation matters because, in a reverse-confusion case, each day of the junior user's expanding use further submerges the senior mark, and the longer the use continues, the harder the injury is to repair. Dkt. 16 at 11, 28. A stay would permit that harm to continue and worsen while the case waits, and it would defer the discovery Plaintiff needs to prove it.

The stay Defendants propose is also not the "brief" one the Motion describes. Dkt. 74 at 9. It would run "until thirty days after the Court reaches a final decision" on a motion that will not be heard until February 3, 2027. *Id.* at 20; Dkt. 76. Defendants also argue that discovery should wait until "the pleadings are settled." Dkt. 74 at 19. On that reasoning, if any part of the Motion to Dismiss is granted with leave to amend, the stay continues through the amended complaint and the next motion to dismiss; and when Defendants file the counterclaims they say they intend to assert, *id.*, Plaintiff may move to dismiss them, and the pleadings will not be "settled" until that motion is decided either. This Court has said that "the routine issuance of a stay is disfavored as 'directly at odds with the need for expeditious resolution of litigation.'" *Malone*, 2025 WL 3725649, at *1 (citation omitted). Even *In re Nexus 6P Products Liability Litigation*, which Defendants cite, Dkt. 74 at 15, stayed discovery only "until the hearing on" the motions to dismiss, and the court did "not anticipate granting successive stays of discovery." No. 17-cv-02185-BLF, 2017 WL 3581188, at *1-2 (N.D. Cal. Aug. 18, 2017). The stay Defendants request is open-ended, would begin before the parties have conferred under Rule 26(f), and would allow Defendants' use of THE LIFE OF A SHOWGIRL to keep expanding while it lasts.

### C. Defendants' Anticipated Counterclaims Confirm That Discovery Will Proceed.

Defendants state that if any claim survives, "certain Defendants will be asserting counterclaims against Plaintiff which would further change the scope of discovery." Dkt. 74 at 9, 19. Any counterclaim arising out of the parties' use of their marks would be compulsory, Fed. R. Civ. P. 13(a)(1), and would turn on the facts already at issue: the marks, the goods and services, the channels of trade, and the likelihood of confusion. Discovery into those facts will be required whether or not Defendants counterclaim, and nothing requires that discovery wait for them to do so. *See* Fed. R. Civ. P. 26(d)(3).

### D. Discovery From UMG and Bravado, Which Do Not Contest Jurisdiction, Is Not "Piecemeal."

Plaintiff proposed on October 19 that discovery proceed as to UMG and Bravado while merits discovery from Swift and TAS is deferred. Defendants object that courts disfavor "piecemeal discovery" on "separate tracks." Dkt. 74 at 15. The label does not explain why discovery should not occur. Courts routinely sequence discovery—fact discovery before expert discovery, phased discovery under Rule 26(f)(3)(B)—and Defendants identify no reason UMG and Bravado cannot respond to discovery now. The three decisions Defendants cite are out-of-district cases in which the defendants claimed immunity from suit, a protection from the burdens of discovery itself. *Ashcroft v. Iqbal*, 556 U.S. 662, 685-86 (2009). *Apothio, LLC v. Kern County* stayed discovery only after a preliminary peek found it "more likely than not" that the moving defendants were entitled to qualified immunity. No. 1:20-cv-00522-JLT-CDB, 2023 WL 2655847, at *7 (E.D. Cal. Mar. 27, 2023). *Pino v. Trujillo* rested on the Tenth Circuit rule that defendants who move to dismiss on qualified immunity "are entitled to a stay of discovery," and on *Iqbal*. No. 18-cv-644-RB-SCY, 2018 U.S. Dist. LEXIS 250143, at *3 (D.N.M. Dec. 7, 2018) (order granting stay; Defendants' citation, 2018 WL 11514381, is to a companion scheduling order entered the same day). *Howard v.*

*Las Animas County Sheriff's Office* stayed a pro se plaintiff's case in which the moving defendants sought dismissal "on immunity and jurisdictional grounds." No. 09-cv-00640-PAB-KLM, 2009 WL 3536655, at *2-3 (D. Colo. Oct. 22, 2009). No Defendant here claims immunity from suit, and UMG and Bravado do not contest this Court's jurisdiction over them.

Defendants' position is that discovery should not proceed against any Defendant while two of them contest jurisdiction. Dkt. 74 at 15. This Court took a different course in *Penn v. Experian Information Solutions, Inc.*, where one of several defendants moved to compel arbitration and asked that the action be stayed; the Court ordered a stay as to that defendant alone. No. 5:24-cv-02372-SRM-DTBx, 2025 WL 1427440, at *3 (C.D. Cal. May 6, 2025). *Skellerup* denied a stay where a co-defendant had answered and was participating in discovery, so that granting the moving defendant's motion to dismiss "would not result in the termination of this action." 163 F.R.D. at 601. And Defendants' own authorities stayed discovery only as to the defendants that contested jurisdiction. *Hewlett Packard*, 2024 WL 4631665, at *1-2; *ZF-TRW*, 2022 WL 19236923, at *6. UMG and Bravado will be parties to this case whatever the Court decides on the Rule 12(b)(2) motion. Discovery from them about the distribution of *The Life of a Showgirl*, the merchandise, and the channels in which both parties' goods and services are sold is discovery on the merits of the claims against them. It is not "piecemeal" because Swift and TAS dispute jurisdiction, and Defendants' preference that all four proceed on the slowest track is not good cause.

## IV. IN THE ALTERNATIVE, ANY STAY SHOULD BE LIMITED

If the Court is inclined to grant any relief, the order should be no broader than the one concern Defendants have identified: merits discovery from Swift and TAS stayed while their jurisdictional objection is pending. The order should provide that (1) the Rule 26(f) conference, the Rule 26(a)(1) initial disclosures, and the Joint Rule 26(f) Report proceed; (2) jurisdictional discovery as to Swift and TAS proceeds in whatever scope the Court orders on Dkt. 68; (3) discovery as to UMG and Bravado proceeds in

the ordinary course; and (4) any stay of merits discovery as to Swift and TAS expires on the Court's ruling on the Motion to Dismiss, not thirty days after it, and does not extend to any later pleading motion absent a further order. That order follows the party-specific stays in *Hewlett Packard* and *ZF-TRW*, and it tracks the proposal Plaintiff made on October 19. Dkt. 74-1 at 10.

## CONCLUSION

The Motion should be denied. When a motion for a protective order "is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery." Fed. R. Civ. P. 26(c)(2). Plaintiff respectfully requests that the Court order the parties to hold the Rule 26(f) conference within fourteen days of its order and to file the Joint Rule 26(f) Report within fourteen days thereafter, or on such other schedule as the Court sets. *See* Fed. R. Civ. P. 16(b)(1), 26(f)(1)-(2). In the alternative, Plaintiff requests that any stay be limited as set out in Part IV.

DATED: November 18, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 23 pages, in compliance with the 25-page limit set forth in the Court's Standing Order.

DATED: November 18, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen