VENABLE LLP
Max N. Wellman (SBN 291814)
mwellman@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901

J. Douglas Baldridge (*Pro Hac Vice*)
jbaldridge@venable.com
Katherine Wright Morrone (*Pro Hac Vice*)
kwmorrone@venable.com
600 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 344-4000
Facsimile: (202) 344-8300

Maria R. Sinatra (*Pro Hac Vice*)
mrsinatra@venable.com
151 W. 42nd Street
New York, NY 10036
Telephone: (212) 370-6247
Facsimile: (212) 307-5598

Attorneys for Defendants Taylor Swift, TAS Rights Management, LLC, UMG Recordings, Inc., Bravado International Group Merchandising Services Inc.



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MAREN FLAGG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TAYLOR SWIFT, an individual; TAS RIGHTS MANAGEMENT, LLC, a Tennessee limited liability company; UMG RECORDINGS, INC., a Delaware corporation; BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES INC., a California corporation; and DOES 1-25,<br><br>Defendants. | Case No. 2:26-cv-03354-SRM-BFM<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION AND FOR JURISDICTIONAL DISCOVERY [Dkt. 68]**<br><br>Date: December 9, 2026<br>Time: 1:30 PM<br>Place: Courtroom 5D (5th Fl.)<br>350 W. First Street<br>Los Angeles, CA 90012 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........ 1
I. RELEVANT FACTS REQUIRING DENIAL OF PLAINTIFF'S FIRST MOTION ........ 2
A. Plaintiff's Exhibits are Irrelevant ........ 2
B. Post-FAC Activities are Irrelevant to Plaintiff's FAC ........ 5
C. Plaintiff's Failure to Meaningfully Meet and Confer ........ 6
ARGUMENT ........ 7
I. THE COURT SHOULD DENY PLAINTIFF'S ATTEMPT TO ADD A SUPPLEMENTAL DECLARATION AND TWENTY-ONE EXHIBITS TO HER MTD OPPOSITION ........ 7
A. Plaintiff's Motion Must Be Denied Because Events Occurring After the FAC Cannot Give Rise to Personal Jurisdiction ........ 7
B. Plaintiff's FAC Claims Do Not Arise Out Of or Relate to the Materials Plaintiff Attempts to Introduce ........ 9
C. Third-Party Conduct Cannot Be Attributed to Ms. Swift or TASRM For Purposes of Evaluating Personal Jurisdiction ........ 11
D. Materials Plaintiff Seeks to Introduce Could Have Been Discovered As Part of A Reasonable Search Prior to the MTD Opposition ........ 12
E. Plaintiff Did Not Comply With Local Rule 7-3 Necessitating Denial of the Exhibits that Were Not Raised ........ 14
II. PLAINTIFF'S GREATLY EXPANDED REQUEST FOR JURISDICTIONAL DISCOVERY IS MERITLESS AND SHOULD BE REJECTED. ........ 14
CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bacardi USA, Inc. v. Young's Mkt. Co.*,
273 F. Supp. 3d 1120 (S.D. Fla. 2016) ..... 16

*Beatport v. Soundcloud*,
2019 WL 6330680 (C.D. Cal. Apr. 11, 2019) ..... 15, 17

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
582 U.S. 255 (2017) ..... 9, 11

*Chavez v. Morgan Olson, LLC*,
2026 WL 3182158 (9th Cir. Oct. 23, 2026) ..... 9, 10

*Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*,
907 F.2d 911 (9th Cir. 1990) ..... 7, 8, 9, 15

*Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*,
2016 WL 9223783 (C.D. Cal. Aug. 8, 2016) ..... 14

*Heiting v. Marriott Int'l, Inc.*,
743 F. Supp. 3d 1163 (C.D. Cal. 2024) ..... 12

*Jeong v. Nexo Financial LLC*,
2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ..... 17

*Johnson v. Woodcock*,
444 F.3d 953 (8th Cir. 2006), *cert. denied*, 549 U.S. 883 (2006) ..... 8

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) ..... 12

*Klinghoffer v. S.N.C. Achille Lauro*,
937 F.2d 44 (2d Cir. 1991) ..... 8

*Maghsoudnia v. Citibank, N.A.*,
2026 WL 172505 (N.D. Cal. Jan. 22, 2026) ..... 16

*McDonough v. Fallon McElligott, Inc.*,
1996 WL 753991 (S.D. Cal. Aug. 5, 1996) ..... 10, 11

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

*PayPal, Inc. v. Anderson Cargo Servs. LLC*,
840 F. Supp. 3d 1140 (N.D. Cal. 2026)....................16, 17

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023)....................16

*Productive People, LLC v. Ives*,
2009 WL 10671597 (C.D. Cal. Apr. 30, 2009)....................8, 9

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996)....................13

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022)....................8

*Rounds v. Case-Mate, Inc.*,
2025 WL 1873999 (C.D. Cal. July 2, 2025)....................11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)....................9

*SDS Korea Co., Ltd. v. SDS USA, Inc.*,
732 F. Supp. 2d 1062 (S.D. Cal. 2010)....................10

*Shalit v. Coppe*,
182 F.3d 1124 (9th Cir. 1999)....................13

*Steel v. U.S.*,
813 F.2d 1545 (9th Cir. 1987)....................8

*Susan Tincher v. Markwayne Mullin*,
2026 WL 2797318 (D. Minn. Sep. 18, 2026)....................16

*T.U. v. CooperSurgical, Inc.*,
2025 WL 3171594 (N.D. Cal. Nov. 13, 2025)....................10

*TIW Holdings LLC v. Hotbox Farms LLC*,
2024 WL 1829656 (C.D. Cal. Jan. 18, 2024)....................8, 9

*Walden v. Fiore*,
571 U.S. 277 (2014)....................11

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023)....................15, 16

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**Rules**

Fed. R. Civ. P. 26 .......... 15, 17
C.D. Cal. L.R. 7-3 .......... 2, 6, 14

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Defendants respectfully submit this opposition to Plaintiff's Motion for Leave to File Supplemental Declaration in Opposition to Defendants' Motion to Dismiss and, If Necessary, for Limited Jurisdictional Discovery [Dkt. 68] (the "First Motion").

**INTRODUCTION**

Plaintiff's First Motion is yet another anemic attempt to prop up her deficient First Amended Complaint ("FAC")—which is premised on the misguided notion that consumers will believe Plaintiff's cabaret-style goods and services offered under the CONFESSIONS OF A SHOWGIRL trademark are sponsored by or affiliated with Ms. Swift or her expressive work and her twelfth studio album, *The Life of a Showgirl* (the "Album").[1] Before the Court even gets to the substantive deficiencies in Plaintiff's FAC claims, it must first ensure it has personal jurisdiction over each Defendant. As to Ms. Swift and TASRM, the answer to that inquiry is "no."

Recognizing as much, Plaintiff seeks leave to file a supplemental declaration adding twenty-one (21) exhibits that simply do not move the jurisdictional needle. Most of the new exhibits concern a music video entitled "Patient Zero," that was released on September 27, 2026, and Ms. Swift's appearance at the MTV Video Music Awards ("VMAs") the same day. These events occurred months after Plaintiff filed her FAC, and Plaintiff has yet to demonstrate how they relate to her claims about alleged trademark confusion. They therefore cannot support personal jurisdiction here. Indeed, Plaintiff does not allege that any individual song on the Album or music video for the same infringes upon her CONFESSIONS OF A SHOWGIRL trademark. And the mere attendance at an award show in California does not support jurisdiction for the claims alleged. They therefore cannot justify jurisdiction over Ms. Swift or TASRM in California here.

If that were not enough, Plaintiff's supplemental materials should be disregarded for three additional reasons: (1) they concern the conduct of non-parties,

[1] Plaintiff has never sold or attempted to sell, and has no registered rights to sell, a musical album to consumers.

which cannot be imputed to Ms. Swift or TASRM; (2) several of the offered exhibits could have easily been discovered before Plaintiff filed the FAC and her Opposition to Defendants' motion to dismiss; Plaintiff therefore had no reasonable basis to delay putting them before the Court; and (3) Plaintiff failed to meaningfully comply with Local Rule 7-3 by attaching numerous exhibits to the First Motion on topics never discussed or identified in the parties' October 2, 2026 meet and confer.

Plaintiff's request in the alternative for jurisdictional discovery fares no better. She fails to identify *any* jurisdictional facts that are actually in dispute, or how her proposed discovery would establish personal jurisdiction over TASRM or Ms. Swift in relation to the causes of action and conduct actually pleaded in the FAC. Defendants do not dispute that the "Patient Zero" and "The Fate of Ophelia" music videos were filmed in California, and do not dispute that Ms. Swift has attended award shows hosted in California. But Plaintiff utterly fails to tie the filming of music videos or award show attendance to any claims in the FAC or alleged infringement of Plaintiff's Mark CONFESSIONS OF A SHOWGIRL. Instead of presenting any legitimate bases for jurisdiction, she seeks a fishing expedition into conduct that could not have given rise to the FAC claims—much less to any conceivable likelihood of confusion. Plaintiff's voluminous and far-reaching request should be rejected.

For these reasons, and as detailed below, Plaintiff's First Motion should be denied in its entirety.

## I. Relevant Facts Requiring Denial of Plaintiff's First Motion

### A. Plaintiff's Exhibits are Irrelevant

Plaintiff styles her First Motion as a request to place additional material before the Court purportedly relevant to Defendants' Motion to Dismiss ("MTD") [Dkt. 57] for lack of personal jurisdiction over Ms. Swift and/or TASRM. But she never explains how any of it bears on the FAC's allegations. The materials (and the conduct they depict) post-date Plaintiff's operative pleading by months, could not give rise to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

the complained of conduct regarding the Album title or Plaintiff's Mark, and many involve the conduct of non-parties whom Plaintiff has never alleged to be (and indeed are not) alter egos or agents of Ms. Swift or TASRM. The exhibits are summarized below.

***Social Media Screenshots.*** Plaintiff represents that Exhibits 20 and 21 are screenshots of September 2026 Instagram posts by Ms. Swift. Those posts were made months after Plaintiff filed her FAC, and neither mentions California.

***Patient Zero Music Video Screenshots.*** Plaintiff also seeks to introduce screenshots and video from the music video for "Patient Zero"—a song on the album *The Life of a Showgirl: The Encore* ("The Encore Album"), which was released on September 25, 2026.[2] Exhibits 22, 24, and 26 purport to be screenshots "of the music video for 'Patient Zero'" captured on September 27, 2026 via Spotify. Dkt. 68-2 ¶¶ 5, 7, 9. Exhibit 38 is a screen recording of a YouTube video posted on October 4, 2026, and captured on October 5, 2026, about the filming of the "Patient Zero" music video. *Id.* ¶ 22. Exhibits 39 and 40 purport to be screenshots of a "Patient Zero" music video on YouTube.com captured on October 8, 2026. *Id.* ¶¶ 23, 24. Importantly, "Patient Zero" was not released until months after Plaintiff's FAC and is not part of the Album pled in the FAC, and regardless, there are zero allegations in the FAC that songs on the Album or their respective music videos are part of any alleged infringement.

***Real Estate Screenshots.*** Plaintiff's Exhibits 23, 25, and 27 purport to be screenshots of a real estate listing for a Beverly Hills, California address captured on September 27, 2026. *Id.* ¶¶ 6, 8, 10. Plaintiff does not say when the listing was available, nor does she explain how a real estate listing has anything to do with the conduct challenged in her FAC.

[2] While the Patient Zero video was filmed in March 2026, Plaintiff admits it "became public six months later in September 2026." First Motion at 6.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

***News Articles About September 2026 Events.*** In Exhibits 28, 29, and 30, Plaintiff offers third-party articles about Ms. Swift's September 2026 appearance at the VMAs and the global premiere of the "Patient Zero" music video. These articles, too, were written months after Plaintiff's FAC, and Plaintiff has not demonstrated how they are relevant to jurisdiction for the complained-of claims.

***Permits Acquired by Non-Parties.*** In Exhibits 31 and 32, Plaintiff purports to offer film permits issued on March 10, 2026 and August 6, 2025, respectively, to unrelated entities that appear nowhere in the FAC. The March 2026 permit in Exhibit 31 identifies two entities, Film This! and Merman Branded, LLC. The August 2025 permit in Exhibit 32 lists Merman Branded LLC as a production company. Plaintiff offers no explanation for how film permits obtained by parties with no connection to this Action (and not owned or controlled in any way by TASRM or Ms. Swift, *see* Nov. 17, 2026 Declaration of John R. Dorris, Jr. ("Dorris Decl.") ¶¶ 5-8) have anything to do with trademark claims grounded in likelihood of confusion. Nor does Plaintiff explain why she could not have obtained the August 2025 public materials (Ex. 32)—which she contends relate to "The Fate of Ophelia" music video released on October 3, 2025 before this Action was filed—prior to filing her Opposition to the MTD on September 16, 2026.

***Articles and Website Pages Referencing Third-Parties Jil Hardin and Merman.*** Exhibit 33 is an IMDB article about Jil Hardin, an individual who is neither a Defendant nor named anywhere in the FAC. Exhibit 34 purports to be a printout of an "About" page from jilhardin.com that has no mention of *The Life of a Showgirl*, "Patient Zero," or "The Fate of Ophelia." Exhibit 35 appears to be a different printout from the same non-party website, mentioning "The Fate of Ophelia" and dated January 26, 2026—information that was publicly available months before Plaintiff filed her Opposition to the MTD. Plaintiff claims Exhibit 36, captured October 6, 2026 [Dkt. 68-2 ¶ 20], is associated with a "Merman" production company (First

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Motion at 6), but that is entirely unclear from the screenshot. Regardless, Merman is mentioned nowhere in the FAC and has no connection to this Action.

***September 24, 2026 TikTok.*** Exhibit 37 purports to be a screen recording of an interview of a VMA executive, captured from TikTok on October 2, 2026. Dkt. 68-2 ¶ 21. The third-party interview—which relates to an award given to Ms. Swift for her years of music video and short film directorial work—never mentions the Album, any song on the Album, or any related promotional merchandise. This exhibit is a prime example of the irrelevancy of the information Plaintiff seeks to put before the Court.[3]

**B. Post-FAC Activities are Irrelevant to Plaintiff's FAC**

Plaintiff's First Motion seeks to place before the Court materials concerning two exercises of First Amendment protected activity, both occurring months after Plaintiff filed her FAC: (1) Ms. Swift's appearances at the VMAs on September 27, 2026; and (2) the premiere of the "Patient Zero" music video at the VMAs that same day. Neither is relevant to claims in the FAC.

Defendants do not dispute that Ms. Swift attended the September 2026 VMAs. As Defendants have stated in prior filings, Ms. Swift's attendance at award shows to be honored in connection with her career simply does not support jurisdiction for completely unrelated allegations of trademark infringement. Defendants further do not dispute that Ms. Swift accepted an Artist Director award at the VMAs. That award was presented to honor Ms. Swift's work over her 20-year career, without any attribution or connection to a specific song, album, or video. In her acceptance speech, she thanked MTV for giving music videos a platform, spoke about her love of music videos, and thanked her fans. At the end of her speech, she announced the

[3] In addition to being completely irrelevant, this exhibit is apparently cited to support a bizarre assumption made by Plaintiff about the genesis of the award. Plaintiff conveniently ignores the fact that this online theory was debunked by the VMA team less than 48 hours after it was originally circulated. *See, e.g.*, https://ew.com/mtv-vmas-producer-clarifies-taylor-swift-award-external-influence-12149662.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

premiere of her newest music video, stating: "This is the world premiere of the 'Patient Zero' music video." She never once referenced or named the Album or otherwise uttered the words "*The Life of a Showgirl*." *See* **Exhibit 1** (MTV's Official Post of Ms. Swift's Artist Director award acceptance speech); **Exhibit 2** (certified transcript of Ms. Swift's Artist Director award acceptance speech).

Finally, Defendants do not dispute that Ms. Swift accepted the Video of the Year award at the September 2026 VMAs. That award was specific to "The Fate of Ophelia" music video, a separate expressive work. Again, when Ms. Swift accepted the Video of the Year award, not once did she mention the Album or speak the words "*The Life of a Showgirl*." *See* **Exhibit 3** (MTV's Official Post of Ms. Swift's Video of the Year award acceptance speech); **Exhibit 4** (certified transcript of Ms. Swift's acceptance speech). Instead, she spoke about how much she learned on the video shoot for "The Fate of Ophelia," thanked those who worked on it with her, and paid tribute to the recently deceased musical icon, Dolly Parton. *Id.* Attendance at an award show simply does not demonstrate any new grounds for jurisdiction here.

Defendants previously raised the fact that Ms. Swift never mentioned *The Life of a Showgirl* at the VMAs. *See* Nov. 18, 2026 Declaration of Katherine Wright Morrone ("Morrone Decl.") ¶ 9. Plaintiff's First Motion conveniently ignores it.

### C. Plaintiff's Failure to Meaningfully Meet and Confer

Plaintiff did not satisfy Local Rule 7-3 for a significant number of the exhibits she seeks to put before the Court. On September 28, 2026, Plaintiff's counsel emailed Defendants' counsel stating that Plaintiff intended to file an *ex parte* notice for leave to file a supplemental declaration in support of her Opposition to the MTD related to events occurring between September 23, 2026 and September 27, 2026, and asked to meet and confer about, relevant here, two specific materials: (1) Ms. Swift's September 27, 2026 appearances at the VMAs; and (2) an alleged March 2026 video shoot for "Patient Zero." *See* Morrone Decl. ¶ 7 & Exhibit 5. Plaintiff then abandoned the *ex parte* motion and met with Defendants' counsel regarding a regularly noticed

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

motion on October 2, 2026. Morrone Decl. ¶¶ 10-12. Following that conference, Plaintiff's counsel confirmed its limited scope in writing: "As discussed, Plaintiff intends to file a noticed motion for leave to file supplemental evidence on Defendants' Motion to Dismiss concerning the March 2026 filming of the 'Patient Zero' video in California and [Ms.] Swift's September 27 appearance at the MTV Video Music Awards in Los Angeles." *See* Morrone Decl. ¶ 12 & Exhibit 5.

Absent from that discussion was any mention of the content of the "Patient Zero" music video itself (Exhibits 22, 24, 26, 38, 39, and 40), a real estate listing (Exhibits 23, 25, 27), film permits (Exhibits 31 and 32), or third-party websites (Exhibits 33, 34, 35, 36). There was also no discussion, or even a hint, of Plaintiff's intent to introduce materials purportedly concerning the filming of "The Fate of Ophelia" music video (Exhibits 32, 33, 34, 35, and 36).

The lack of notice on these topics is made even clearer by the fact that several exhibits were not even captured by Plaintiff until *after* the parties' October 2nd meet and confer (Exhibits 33-36 captured October 6, 2026; Exhibit 38 captured October 5, 2026; Exhibits 39 and 40 captured October 8, 2026 [Dkt. 68-2 ¶¶ 17-20, 22-24]). In short, Plaintiff did not disclose the true scope of her First Motion, and failed to comply with this Court's local rules when she added a significant number of exhibits and topics without any notice to Defendants or opportunity to discuss. The First Motion should be denied on this ground alone.

## ARGUMENT

### I. The Court Should Deny Plaintiff's Attempt to Add a Supplemental Declaration and Twenty-One Exhibits to her MTD Opposition

#### A. Plaintiff's Motion Must Be Denied Because Events Occurring After the FAC Cannot Give Rise to Personal Jurisdiction

At the most basic level, the information Plaintiff seeks to introduce occurring months after she filed the FAC cannot be considered by this Court for purposes of evaluating personal jurisdiction over Ms. Swift or TASRM. In analyzing personal jurisdiction, "only contacts occurring <u>prior to the event causing the litigation may be</u>

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

considered." *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) (citation omitted) (emphasis added); *accord Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) ("In the Ninth Circuit, we measure the extent of a defendant's contacts with a forum 'at the time of the events underlying the dispute.'"). Courts across other circuits agree. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (noting minimum contacts must exist at the time the cause of action arose, the time suit was filed, or within a reasonable period of time immediately before suit was filed), *cert. denied*, 549 U.S. 883 (2006); *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) ("[P]ersonal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed.").

This rule disposes of Plaintiff's First Motion. Ms. Swift's September 2026 appearance at the VMAs and the premiere of the "Patient Zero" music video occurred months after Plaintiff filed her claims and thus could not have contributed to consumer confusion allegedly arising in June 2026. Thus, they are irrelevant to Plaintiff's FAC and to Defendants' MTD for lack of personal jurisdiction. *See, e.g., TIW Holdings LLC v. Hotbox Farms LLC*, 2024 WL 1829656, at *8 (C.D. Cal. Jan. 18, 2024) (granting motion to dismiss in trademark infringement action finding announcement of opening involving conduct occurring "after the start of litigation in this matter" was not relevant to the court's jurisdictional analysis in trademark infringement action) (citing *Farmers, Ratha,* and *Steel v. U.S.*, 813 F.2d 1545, 1549 (9th Cir. 1987)); *Productive People, LLC v. Ives*, 2009 WL 10671597, at *7 (C.D. Cal. Apr. 30, 2009) (granting motion to dismiss and stating "under *Farmers Insurance*, conduct subsequent to the start of litigation cannot be considered for the purpose of establishing personal jurisdiction").

Based on arguments Plaintiff asserted in a similar Second Motion for Leave to File Supplemental Declaration, Defendants anticipate that Plaintiff will attempt to evade *Farmers* by trying to confine it to insurance cases and claim that it does not

apply where a complaint alleges "continuing use." Dkt. 73 at 9-11. *Farmers* and the myriad cases noted above are not so limited. Indeed, courts in this very District have repeatedly applied *Farmers* in trademark infringement disputes—just like this one—to disregard events occurring "after litigation in [the] matter commenced." *See, e.g.*, *TIW Holdings*, 2024 WL 1829656, at *7-8, n.6 (citing *Farmers* and granting motion to dismiss for lack of personal jurisdiction where plaintiff attempted to introduce sale of allegedly infringing product made after the litigation commenced); *Productive People*, 2009 WL 10671597, at *7 (applying *Farmers* in trademark dispute to disregard post-filing conduct where defendants allegedly continued infringing conduct by posting infringing materials following the complaint filing). Because each of the "jurisdictional facts" Plaintiff attempts to inject into her Opposition to the MTD took place months after she filed the FAC (or, with respect to the filming of the "Patient Zero" music video which was not publicly known, could not have given rise to any FAC claims based upon any consumer confusion), they are irrelevant to the Court's evaluation of personal jurisdiction over Ms. Swift and TASRM and provide no help to Plaintiff's deficient allegations.

Because the Court may not consider conduct occurring after the FAC was filed in evaluating personal jurisdiction, the Court should deny Plaintiff's First Motion.

### B. Plaintiff's FAC Claims Do Not Arise Out Of or Relate to the Materials Plaintiff Attempts to Introduce

"To satisfy the . . . specific jurisdiction test, a plaintiff's claims must 'arise[ ] out of or relate[ ] to the defendant's forum-related activities.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "[A] defendant's general connections with the forum are not enough;" there must be "a connection between the forum and the **specific claims at issue**." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 264–65 (2017) (emphasis added). To determine whether conduct is forum-related, the Ninth Circuit asks whether the forum contacts are a "but-for" cause of the plaintiff's alleged injury, or are "sufficiently related" to the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

injury that they would "tend to cause the injury at issue." *Chavez v. Morgan Olson, LLC*, 2026 WL 3182158, at *1 (9th Cir. Oct. 23, 2026) (citing cases). Plaintiff cannot meet that standard.

First, as detailed above, Ms. Swift's VMA appearance and the release of the "Patient Zero" music video occurred months after the filing of Plaintiff's FAC and cannot supply a basis for personal jurisdiction; conduct occurring after the FAC cannot be the "but-for" cause of Plaintiff's alleged claims. Second, as explained above, at the VMA appearance, Ms. Swift did not speak the words "*The Life of a Showgirl*" a single time. *See* Morrone Decl. **Exhibits 1-4.** She attended the show to accept awards celebrating her 20-year career and First-Amendment-protected expressions of speech, and to debut a new expressive work (the "Patient Zero" music video, a song from the Encore Album).[4] The mere fact that Ms. Swift set foot at an event in California is unconnected to Plaintiff's FAC claims and insufficient for personal jurisdiction. *See, e.g.*, *T.U. v. CooperSurgical, Inc.*, 2025 WL 3171594, at *6 (N.D. Cal. Nov. 13, 2025) (finding defendant "did not engage in significant activities in California merely by attending an industry conference"); *SDS Korea Co., Ltd. v. SDS USA, Inc.*, 732 F. Supp. 2d 1062, 1079–80 (S.D. Cal. 2010) (finding presence at a California trade show insufficient to demonstrate purposeful activity in trademark infringement action or to satisfy the arising out of prong); *McDonough v. Fallon McElligott, Inc.*, 1996 WL 753991, at *4-5 (S.D. Cal. Aug. 5, 1996) (finding taking part in a Los Angeles based awards ceremony was insufficient to confer personal jurisdiction in copyright infringement and unfair competition action). In *McDonough*, the court rejected an argument similar to Plaintiff's finding that a "Los Angeles awards ceremony itself cannot support a finding of specific jurisdiction." 1996 WL 753991, at *5. There, the defendant, a non-domiciliary of California, was accused of copyright infringement and unfair competition regarding an advertisement

[4] Notably, the content depicted within the screenshot that Plaintiff offers as part of Exhibit 40 was not displayed at the VMAs. Dorris Decl. ¶ 14.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

that was submitted for an award and the award ceremony took place in Los Angeles. The *McDonough* court found that an isolated awards ceremony was too attenuated to give rise to personal jurisdiction. *Id*. Plaintiff cites no authority—and Defendants are aware of none—suggesting that accepting an award for the "The Fate of Ophelia" music video and another for Ms. Swift's overall body of directorial work, without so much as mentioning the Album's title, could conceivably give rise to a likelihood of confusion with CONFESSIONS OF A SHOWGIRL.

The other items Plaintiff seeks to put before the Court—namely, social media posts not mentioning (much less targeting) California (Exhibits 20 and 21), third party permits and third party website posts regarding the music video for "The Fate of Ophelia" (Exhibits 32-35), and an interview with a VMA executive that is completely unrelated to the Album (Exhibit 37)—cannot support personal jurisdiction over Ms. Swift or TASRM in California as Plaintiff's FAC claims do not arise out of or relate to those materials (in addition to the other independent reasons explained throughout for why they should not be considered).

Plaintiff's request to insert these materials should be rejected.

### C. Third-Party Conduct Cannot Be Attributed to Ms. Swift or TASRM For Purposes of Evaluating Personal Jurisdiction

Plaintiff's First Motion also rests on a legally impermissible premise: that the social media pages, websites, and permit filings of non-parties can be attributed to Ms. Swift and TASRM for purposes of personal jurisdiction. Plaintiff offers no basis for doing so, and the Supreme Court has explicitly foreclosed it. "[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction." *Bristol-Myers Squibb*, 582 U.S. at 265 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). Even if a party has relationships with a third-party in California, courts have repeatedly found that insufficient for purposes of sustaining personal jurisdiction over a non-resident defendant. *Rounds v. Case-Mate, Inc.*, 2025 WL 1873999, at *7 (C.D. Cal. July 2, 2025) (dismissing for lack of personal

jurisdiction where plaintiff alleged that defendant had relationship with California social media entity allegedly connected to the complained of conduct) (citing *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, 2019 WL 8064196, at *5 (C.D. Cal. Dec. 5, 2019) (emphasizing that "jurisdiction must arise out of the contacts that 'defendant himself creates with the forum state,' and not defendant's contacts with entities that do business or reside there"); *see also Heiting v. Marriott Int'l, Inc.*, 743 F. Supp. 3d 1163, 1170 (C.D. Cal. 2024) ("And, given that Salesforce is not a defendant in this lawsuit, [the plaintiff's] arguments regarding third-party [Salesforce] connections to the forum are similarly insufficient.").

Plaintiff's FAC never once mentions Film This!, Merman Branded, LLC, or Jil Hardin (together, "Non-Parties")—much less alleges facts showing that any of them is an alter ego or agent of Ms. Swift or TASRM such that their conduct could be attributable for personal jurisdiction purposes. Nor could she, as they are all independent entities and individuals, that neither TASRM nor Ms. Swift own, control, or employ. Dorris Decl. ¶¶ 5-10. Neither the FAC nor the Motion offers a single fact suggesting that the Non-Parties' conduct can be attributed to Ms. Swift or TASRM under an alter ego theory, or agency theory, or that they have anything to do with Plaintiff's claims. Without this, the Non-Parties' conduct is legally irrelevant to whether this Court may exercise jurisdiction over Defendants. Plaintiff's attempt to introduce permit materials, social media posts, and websites related to the Non-Parties, and to attribute their conduct to Ms. Swift or TASRM, should be rejected.

### D. Materials Plaintiff Seeks to Introduce Could Have Been Discovered As Part of A Reasonable Search Prior to the MTD Opposition

Plaintiff has also failed to explain why or how certain information that existed at the time she filed her Opposition to the MTD can be belatedly considered now. Specifically, Exhibits 32, 33, 34, and 35 (relating to an August 2025 film permit and screen captures regarding Jil Hardin) have been publicly available to Plaintiff for many months. They should therefore be disregarded.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

The Ninth Circuit has made clear that "the failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'" *Shalit v. Coppe*, 182 F.3d 1124, 1132 (9th Cir. 1999) (affirming denial of request for reconsideration where movant failed to provide any justification for why evidence could not have been previously presented). Plaintiff's own authority—*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) (First Motion at 7)—confirms the point. There, the Ninth Circuit affirmed denial of a request for reconsideration where a party attempted to submit an employee declaration as "newly discovered evidence." *Provenz,* 102 F.3d at 1483. Because the party knew of the employee before filing its opposition, the evidence was properly disregarded. Plaintiff attempts precisely the same maneuver here, and it should meet the same result.

Plaintiff's own exhibits prove they were publicly available before she filed her Opposition to the MTD. Exhibit 32 is dated August 2025. Exhibit 33, though undated, contains information that has been public since 2025 about videos for "The Fate of Ophelia" and, separately, *The Official Release Party of a Showgirl* (as the exhibit itself indicates). Exhibit 34 (the Jil Hardin "About Me" webpage) does not reference the Album or any of its songs, and Plaintiff makes no attempt to explain why it was unavailable before her Opposition. And Exhibit 35 is expressly dated "January 26, 2026," confirming that it was available to Plaintiff months ago.

Moreover, Plaintiff's Opposition to the MTD itself addresses "The Fate of Ophelia" music video, proving that she was aware of that expressive work at the time. *See* Dkt. 61 (referencing "The Fate of Ophelia" in Exhibits 1-2). Nothing prevented her from investigating any public permits, or the non-party companies and individuals allegedly associated with "The Fate of Ophelia" music video before filing the Opposition. She chose not to. Having made that choice, Plaintiff cannot now repackage Exhibits 32, 33, 34, and 35 as newly discovered. *See* First Motion at 6, 7.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

### E. Plaintiff Did Not Comply With Local Rule 7-3 Necessitating Denial of the Exhibits that Were Not Raised

Local Rule 7-3 is not a mere formality. Except in limited circumstances, it requires the parties to confer on "the substance of the contemplated motion and any potential resolution" before a motion is filed. *See* L.R. 7-3. Courts in this District routinely deny motions that fail to comply. *See, e.g.*, *Hand & Nail Harmony, Inc. v. ABC Nail & Spa Prods.*, 2016 WL 9223783, at *2 (C.D. Cal. Aug. 8, 2016) (denying motion and citing cases). Plaintiff's own correspondence confirms that she sought to confer on only two topics: (1) Ms. Swift's September 27th appearance at the VMAs, during which the music video for "Patient Zero" premiered; and (2) an alleged March 2026 "Patient Zero" music video shoot. Morrone Decl. ¶¶ 7, 12 & Exhibit 5. She never conferred about screenshots of the "Patient Zero" music video itself, content allegedly related to the filming of "The Fate of Ophelia," real estate listings, or Non-parties. *Id.* ¶¶ 13-14 & Exhibit 5. Yet those materials make up the bulk of her submission. Defendants were deprived of any opportunity to address them—or to narrow the dispute—before Plaintiff burdened the Court with them. The First Motion should therefore be denied as to Exhibits 22-27, 32-36, 38, 39, and 40 for failure to meet and confer on the substance of those exhibits as L.R. 7-3 requires.

In sum, the Court should not permit supplementation of the MTD record.

## II. Plaintiff's Greatly Expanded Request for Jurisdictional Discovery is Meritless and Should be Rejected

Plaintiff claims she is "renew[ing] the request for jurisdictional discovery made" in her Opposition to the MTD. First Motion at 9. That is a gross understatement of what Plaintiff now seeks. In that Opposition, Plaintiff made a more limited (although still unwarranted) request for jurisdictional discovery of three general categories of documents: "(1) the agreements among [the Defendants], including provisions governing control over sales, marketing, and enforcement of the mark; (2) records concerning the Los Angeles filming and photography sessions [regarding 'The Fate of Ophelia' music video] and the billboards and fan activation;

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

and (3) records of California sales." Dkt. 61 at 34. Now, Plaintiff seeks a second, much broader bite at the apple, seeking six categories of information, including 15 document requests each to Ms. Swift and TASRM, five interrogatories each, and depositions of both of them. Plaintiff cites nothing to support her new sweeping requests for jurisdictional discovery—including nothing to support the taking of multiple depositions[5]—and provides no explanation for why this second request should be permitted. Allowing this request would be precisely the kind of impermissible "fishing expedition" the Ninth Circuit has rejected. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 508 (9th Cir. 2023) (denying jurisdictional discovery).

Even if the Court considers Plaintiff's second request for jurisdictional discovery, it should be denied outright for three independent reasons: (1) under *Farmers* and its progeny, discovery into alleged conduct occurring months after the FAC was filed cannot support personal jurisdiction, for the reasons detailed above; (2) Plaintiff's request for voluminous discovery rests on nothing more than speculation about conduct irrelevant to her FAC claims; and (3) Plaintiff has not identified which jurisdictional facts are disputed or how discovery would establish jurisdiction. Any one of these defects is fatal, and all three are present here.

First, by Plaintiff's own admission, her discovery request rests "on evidence that did not exist when the Opposition was filed." First Motion at 9. The request is therefore presumably limited to the materials she seeks to place before the Court concerning the "Patient Zero" music video and Ms. Swift's appearance at the VMAs. *See, e.g.*, First Motion § C.1.a-c (describing discovery concerning only post-FAC conduct). As explained above, those materials cannot give rise to personal

[5] Any discovery–including requests for jurisdictional discovery–must comport with the proportionality requirements of Fed. R. Civ. P. 26. *Beatport v. Soundcloud*, 2019 WL 6330680, at *2-3 (C.D. Cal. Apr. 11, 2019) (denying request to conduct "extensive" jurisdictional discovery finding it was not targeted to the issues). The notion that any deposition is warranted at this stage—in particular given what Plaintiff claims she wants to parse (public appearances or otherwise publicly available information and third-party conduct, First Motion at 10)—is not proportional to the needs of this case and should not be permitted.

jurisdiction in California on the claims alleged in the FAC, in part because they occurred months after the FAC was filed. *See supra* § I.B. Discovery premised on events that post-date the operative pleading cannot possibly uncover relevant jurisdictional facts. *See, e.g.*, *Susan Tincher v. Markwayne Mullin*, 2026 WL 2797318, at *11-12 (D. Minn. Sep. 18, 2026) (denying motion for jurisdictional discovery where the discovery sought was directed to "information that post-dates the filing of the Amended Complaint," which made it irrelevant); *Bacardi USA, Inc. v. Young's Mkt. Co.*, 273 F. Supp. 3d 1120, 1129, 1132 (S.D. Fla. 2016) (denying motion for jurisdictional discovery where the discovery sought would have been directed to post-complaint conduct and therefore "would not have affected the district court's jurisdiction").

Second, Plaintiff's other jurisdictional discovery requests fare no better because they have nothing to do with her FAC claims. *See, e.g.*, First Motion § C.1.d-f. Even where a defendant has forum contacts, courts deny discovery when the movant cannot connect those contacts to the plaintiff's claims. *Yamashita*, 62 F.4th at 507–08 (affirming denial where most of the requested discovery was irrelevant to whether the claims arose out of or related to the defendants' Hawaii contacts); *PayPal, Inc. v. Anderson Cargo Servs. LLC*, 840 F. Supp. 3d 1140, 1147 (N.D. Cal. 2026) (applying *Yamashita* to deny discovery into the defendant's former California service center because it would at most show purposeful availment, not that the claims arose out of or related to that contact). Plaintiff's requests suffer from the same flaw: as outlined throughout this Opposition and in Defendants' MTD Reply [Dkt. 63 at 10], they are untethered to the claims actually pled. *See supra*.

Third, to justify jurisdictional discovery, a Plaintiff must identify which jurisdictional facts are disputed or how discovery would establish jurisdiction. *Maghsoudnia v. Citibank, N.A.*, 2026 WL 172505, at *2-3 (N.D. Cal. Jan. 22, 2026) (denying jurisdictional discovery); *Pratt v. Higgins*, 2023 WL 4564551, at *5 (N.D. Cal. July 17, 2023) (same). Plaintiff comes nowhere close to doing so. *See* First

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

Motion at 10-12. Again, Defendants do not dispute that the "Patient Zero" and "The Fate of Ophelia" music videos were filmed in California. It is therefore unclear what Plaintiff could possibly seek to gain by reviewing permits, call sheets, production schedules and agreements, or communications with third parties about the production of those videos.[6] First Motion § III.C.1.a-b. Nor do Defendants dispute that Ms. Swift attended the iHeart Music Awards and the MTV VMAs in California. Those appearances were televised nationally and posted on social media. There is no mystery here. Plaintiff's broad requests for documents and communications concerning those appearances (*id.* § III.C.1.c) are unnecessary and wasteful, and thus disproportionate under Rule 26. Plaintiff also fails to explain how any documents in her remaining requests (including documents concerning a "permission legend" on Ms. Swift's webstore) has any connection to her Lanham Act claims, or is likely to support jurisdiction over these two Defendants for the same. Having failed to meet her burden, Plaintiff's request for jurisdictional discovery should be denied. *PayPal*, F. Supp. 3d at 1147 (discussing plaintiff's burden to come forward with some evidence supporting personal jurisdiction over a defendant before jurisdictional discovery is granted); *Jeong v. Nexo Financial LLC*, 2022 WL 174236, at *15-16 (N.D. Cal. Jan. 19, 2022) (denying request for jurisdictional discovery where plaintiff failed to meet that burden).[7]

**CONCLUSION**

As Plaintiff has no basis to put the proffered materials before the Court in support of her Opposition to Defendants' MTD, and Plaintiff's request for

---

[6] Plaintiff also seeks, without any explanation, "agreements, invoices, and communications" with third parties about *The Official Release Party of a Showgirl*. First Motion at 11.

[7] At a minimum, to the extent the Court orders any jurisdictional discovery, it should be scaled way back from what Plaintiff seeks and limited to at most a small number of document requests. *Beatport*, 2019 WL 6330680, at *2-3 (applying Rule 26 proportionality standard to jurisdictional discovery).

jurisdictional discovery is nothing more than an untethered fishing expedition, Plaintiff's First Motion should be denied in full.

Dated: November 18, 2026

VENABLE LLP

By: */s/ Max N. Wellman*
Max N. Wellman
J. Douglas Baldridge
Katherine Wright Morrone
Maria R. Sinatra

Attorneys for Defendants Taylor Swift, TAS Rights Management, LLC, UMG Recordings, Inc., Bravado International Group Merchandising Services Inc.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing memorandum in opposition is 18 pages, in compliance with the 25-page limit set forth in the Court's Standing Order.

Dated: November 18, 2026

*/s/ Max N. Wellman*

Max N. Wellman