JAYMIE PARKKINEN (S.B. #318394)
jp@prkknn.com
PARKKINEN PC
808 Wilshire Blvd., Suite 200-255
Santa Monica, California 90401
Telephone: (323) 919-3590

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MAREN FLAGG,

Plaintiff,

v.

TAYLOR SWIFT, et al.,

Defendants.

Case No. 2:26-cv-03354-SRM-BFM

Assigned to Hon. Serena R. Murillo

**PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION FOR LEAVE TO FILE SUPPLEMENTAL DECLARATION [DKT. 73]**

Date: December 9, 2026
Time: 1:30 p.m.
Place: Courtroom 5D (5th Fl.)
350 W. First Street
Los Angeles, CA 90012

## INTRODUCTION

Defendants' Motion to Dismiss told the Court that Swift "has never offered ... any live performance in connection with the Album." Dkt. 57 at 22 & n.7 ("no songs from the Album have been performed live").[1] On October 17, 2026, Swift walked onto a stage in Los Angeles and performed the album's first track live for the first time. Defendants admit it. Dkt. 80 at 5-6. Unable to contest the performance, Defendants contest its significance. It was, they contend, "clearly not promoting *The Life of a Showgirl*, let alone using that title as a trademark in any way, and Plaintiff has identified nothing to the contrary." *Id.* at 9. Swift identified it herself. Introducing the song, she stated: "That album is called *The Life of a Showgirl*. This song, which we are playing for the very first time for you beautiful people, this is called 'The Fate of Ophelia.'" Ex. 47 at 00:55–01:06.

That statement disposes of the argument Defendants pressed with the greatest assurance against the first Motion. There, Swift's silence was everything. At the VMAs, Defendants told the Court, she "never once referenced or named the Album or otherwise uttered the words '*The Life of a Showgirl*,'" Dkt. 78 at 11, and "did not speak the words '*The Life of a Showgirl*' a single time," *id.* at 15. They furnished certified transcripts to prove it. Dkts. 78-5, 78-7. And they said the same of this performance. Within days of it, Defendants' counsel described Swift as performing "with no mention of THE LIFE OF A SHOWGIRL," in correspondence Defendants placed before the Court. Dkt. 74-1 at 9.

Their opposition, filed the same day as the other, does not repeat that assertion outright, because Swift said what Defendants had treated as the magic words. It offers no transcript and no account of what she said. Instead, it accuses Plaintiff of being "disingenuous" for "referring to the Album as a whole, not the songs performed." Dkt. 80 at 16-17. But it was Swift who referred to the album. Ex. 47 at 00:55–01:06.

---

[1] "Ex." refers to the exhibits to Plaintiff's Supplemental Declarations. "Ex. 47" is attached to the Parkkinen Declaration filed with this Reply.

Defendants' fallback is the calendar. Because the performance followed the First Amended Complaint ("FAC"), they contend that the Court may not consider it. That is not the law. The Ninth Circuit measures contacts by the events underlying the dispute, not by the date of a pleading. By Defendants' own account, the court in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994), considered later conduct "precisely because it was directly tied to the claims." Dkt. 80 at 12. Swift's performance is no less so: it is a use, in this District, of the designation the FAC challenges. And Federal Rule of Civil Procedure 15(d) exists precisely for conduct that follows a complaint.

Defendants also protest that the Court should not have to hear from Plaintiff "every time Ms. Swift steps foot in the state of California." Dkt. 80 at 5. But these motions are of Defendants' making. Defendants seek dismissal on the premise that Swift lacks any meaningful connection to California while Swift continues to demonstrate otherwise. And they told the Court that she had "never offered" a live performance in connection with the album, Dkt. 57 at 22, a statement that ceased to be true on October 17. Defendants have declined to keep the Court apprised of these developments or to correct statements they have made which are no longer accurate. Plaintiff will continue to supplement the record where Defendants do not.

## ARGUMENT

### I. THE COURT MAY CONSIDER THE LIVE PERFORMANCE

#### A. The Ninth Circuit Measures Contacts by the Events Underlying the Dispute, Not the Date of the Pleading.

The Ninth Circuit considers "only contacts occurring prior to the event causing the litigation," *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990), measured "at the time of the events underlying the dispute," *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022). Defendants cite both decisions, Dkt. 80 at 9-10, but read "the event" to mean the filing of the FAC. *Id.* at 10. The Ninth Circuit has rejected that reading. *Farmers* drew its rule from *Steel v. United*

*States*, which reversed a district court for holding that the defendant "did not have sufficient minimum contacts at the time of the filing of the complaint." 813 F.2d 1545, 1546 (9th Cir. 1987). "[C]ourts must examine the defendant's contacts with the forum at the time of the events underlying the dispute[.]" *Id.* at 1549. Defendants' out-of-circuit decisions measure contacts at or before the date of suit, Dkt. 80 at 10, a measure *Steel* rejected.

The event in *Farmers* was a single car accident, complete before suit; the later contacts were the insurer's "post-accident investigation and settlement contacts[.]" 907 F.2d at 912-13. The FAC alleges no such single event. It alleges that Defendants' use of the designation "is ongoing and expanding," FAC ¶ 65, and that "Defendants will continue" that use unless enjoined, *id.* ¶ 113. Each new use is a new act of infringement, and each bears on the willfulness, damages, and injunctive relief the FAC pleads. *Id.* ¶¶ 102-03, 113-14. The events underlying this dispute are therefore still occurring, and one of them occurred on October 17 in Los Angeles. A court in this Circuit has rejected the precise argument Defendants advance: *Farmers* and *Steel* "do not support Defendants' assertion that personal jurisdiction depends on the contacts that existed at the time of the complaint. Instead, they hold that personal jurisdiction depends on the contacts that existed at the time of the event that gave rise to the claim." *Kruzel v. Molina Healthcare, Inc.*, 2025 WL 2388434, at *3 (D. Or. Aug. 18, 2025). "Each new violation is an event that gives rise to an additional claim." *Id.* at *4.

**B. Defendants' Authorities Do Not Involve Continued Infringement in the Forum.**

Defendants represent that courts in this District "have repeatedly applied *Farmers* in trademark infringement disputes—just like this one." Dkt. 80 at 11. The two decisions they cite bear no resemblance to this case, because in neither did the defendant enter the forum after suit and continue the conduct alleged in the complaint. In *TIW Holdings LLC v. Hotbox Farms LLC*, the defendant was not an accused infringer at all; it was a trademark owner sued for a declaration of non-infringement,

and the only post-filing contacts were an "undercover purchase" arranged by the plaintiff's own counsel and the announcement of a dispensary in Oregon. 2024 WL 1829656, at *1, *7-8 & n.6 (C.D. Cal. Jan. 18, 2024). In *Productive People, LLC v. Ives*, the court dismissed because the Colorado defendants' website was not aimed at California at all, a ground that "alone would result in a finding of no personal jurisdiction." 2009 WL 10671597, at *7 (C.D. Cal. Apr. 30, 2009). *Farmers* is applied in a single sentence of an alternative holding, and the later conduct was more posting on the same website the court had already held was not aimed at California. *Id*. Neither court confronted a defendant who, after being sued, personally and repeatedly came to the forum and continued the accused conduct.

Where a defendant does so, courts consider it. "In a case involving a continuous tort, it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction." *Beverly Hills Fan*, 21 F.3d at 1563 (*Farmers* "is inapposite"). "To permit the filing of a complaint to limit jurisdiction by immunizing a defendant's future actions in the forum state when those actions are a mere continuation of those underlying the complaint would make no sense." *Educ. Testing Serv. v. Katzman*, 631 F. Supp. 550, 556 (D.N.J. 1986); *accord Endless Pools, Inc. v. Wave Tec Pools, Inc.*, 362 F. Supp. 2d 578, 584 (E.D. Pa. 2005) (trademark; "the appropriate time frame for assessing defendant's minimum contacts with the forum state includes pre- and post-Complaint contacts"); *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 11 (1st Cir. 2018) (trademark; rule against later contacts arose from a "discrete-in-time tort" that "is unlike the alleged continuing 'tortious' conduct at issue here"). The line these authorities draw is between contacts that the litigation itself generates, such as the settlement contacts in *Farmers*, and a defendant's voluntary continuation of the conduct for which she has been sued. *Katzman*, 631 F. Supp. at 556 (post-complaint contacts "which are not the result of his defense of this case, are relevant"). Swift did not perform live in Los Angeles to defend this case.

Defendants' answer to *Beverly Hills Fan* is that it was a patent appeal on different facts. Dkt. 80 at 12. They do not dispute its reasoning that, "[i]n a case involving a continuous tort, it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction." 21 F.3d at 1563. They contend instead that the court accepted the later evidence "precisely because it was directly tied to the claims," and that Swift's performance is not. Dkt. 80 at 12. That is an argument about relatedness, not timing, and it does not distinguish *Beverly Hills Fan*. It adopts it. If post-complaint conduct that is tied to the claims may be considered, the date of the FAC is no bar, and the sole remaining question is whether the performance is tied to the claims. Part II shows it is.

### C. Rule 15(d) Disposes of Whatever Is Left.

No amendment is required for the Court to consider the performance. The FAC already alleges that the infringement "is ongoing and expanding." FAC ¶ 65. But if a pleading is what Defendants want, the Rules provide one. Rule 15(d) "is designed to permit expansion of the scope of existing litigation to include events that occur after the filing of the original complaint." *Keith v. Volpe*, 858 F.2d 467, 471 (9th Cir. 1988). On a supplemental pleading, the performance would itself be an "event causing the litigation," *Farmers*, 907 F.2d at 913, and the timing objection would disappear. The only reason Defendants give for resisting supplementation is that it would be futile "as explained below," Dkt. 80 at 13 n.4, which is their relatedness argument under another name. The timing objection therefore accomplishes nothing. It could not keep the performance from the Court. It could only postpone the day the Court considers it.

## II. THE LIVE PERFORMANCE IS A USE OF THE LIFE OF A SHOWGIRL IN CALIFORNIA

### A. The Performance Is the Use TAS Sought to Register and the USPTO Refused.

The FAC challenges Defendants' use of a brand, and TAS has itself identified the services offered under it. TAS's application seeks to register THE LIFE OF A

SHOWGIRL for "live musical performances." Dkt. 57-12 at 3-4. The USPTO refused registration in that class as likely to be confused with Plaintiff's registered mark and, on September 22, 2026, maintained the refusal. FAC ¶ 59; Dkt. 72-3 at 3. The FAC alleges that Defendants' use of the designation is willful and "is ongoing and expanding." FAC ¶¶ 13, 65, 103. Less than one month after the USPTO maintained its refusal, Swift gave a live musical performance in Los Angeles and introduced it under the refused designation: "That album is called *The Life of a Showgirl*. This song, which we are playing for the very first time for you beautiful people, this is called 'The Fate of Ophelia.'" Ex. 47 at 00:55–01:06. Defendants had described this very performance as one "with no mention of THE LIFE OF A SHOWGIRL." Dkt. 74-1 at 9. But Swift did indeed mention it by name. That is the service TAS identified, offered under the designation the USPTO refused, in the forum with which Defendants disclaim any connection. Defendants' Motion to Dismiss argued that the parties' services do not overlap because Swift "has never offered ... any live performance in connection with the Album." Dkt. 57 at 22. Now she has, in this District.

Nothing more is required to relate the performance to the FAC. Claims need only "arise out of ***or relate to***" the forum contacts, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (emphasis in original), and in a trademark case the related contacts "include the very same promotions, sales, and distribution of which [the plaintiff] complains." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2021). A claim that Defendants' designation infringes a mark registered for live performances, FAC ¶¶ 43, 53, 58, relates, on any understanding of the term, to a live performance offered under that designation in the forum.

**B. Defendants' Responses Fail on Their Own Terms.**

***"Not a trademark use."*** Defendants maintain that a musical performance "is not a trademark use," Dkt. 80 at 6, 15, and fault Plaintiff because she "cites no authority holding that it is," *id.* at 15. Plaintiff's authority is TAS. A party with an active trademark application seeking to use a designation as a mark for live musical

performances cannot credibly maintain that a live musical performance introduced under that designation is not a use of it. Defendants' argument that Plaintiff claims no right in the song's title, Dkt. 80 at 6, is beside the point: Swift introduced the song by the album's title, which is the name of the brand. That analysis is not altered by Defendants' reinvocation of the First Amendment. Dkt. 80 at 8; *Calder v. Jones*, 465 U.S. 783, 790 (1984) ("reject[ing] the suggestion that First Amendment concerns enter into the jurisdictional analysis").

***"But-for" causation.*** Defendants contend that post-FAC conduct "cannot be the 'but-for' cause of Plaintiff's alleged claims." Dkt. 80 at 15. That is a demand for causation, and the Ninth Circuit has rejected it. *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1096-97 (9th Cir. 2023) (argument that a "causal nexus" is required "squarely contradicts *Ford*'s statement that 'some relationships will support jurisdiction without a causal showing'"). A trademark claim can "arise out of, or at the very least relate to, trademark building activities in a forum state." *Id.* at 1094. Defendants' only answer to *Impossible Foods* is that the conduct there preceded the complaint and that the opinion "does not even mention *Farmers*." Dkt. 80 at 11. That response goes to when contacts are measured, which Part I addresses, not to what relates to a trademark claim.

***"Private event."*** Defendants characterize the gala as a "private event," Dkt. 80 at 15, but that characterization assists Plaintiff. A "private" performance reaches only the people in the room, and the room was in Los Angeles. On Defendants' own account, the live performance was directed at this forum and nowhere else.

***"No control."*** Defendants object that Plaintiff offers no facts that Swift "had any control over where the Academy Museum Gala was held," and they call it an "isolated appearance." Dkt. 80 at 15. Neither objection assists them. Swift controlled whether to perform there and what to perform, and the appearance was not isolated. It was her second on a Los Angeles stage in three weeks. Defendants' event cases, which Plaintiff has already addressed, Dkt. 61 at 28; Pl.'s Reply ISO Mot. for Leave, Part III, are no

more apposite here. The Ninth Circuit has held that a defendant who "voluntarily traveled to Nevada to attend the ... conference, and voluntarily agreed to speak" there was subject to jurisdiction for the tort he committed while present. *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603-04, 607 (9th Cir. 2018). Swift voluntarily traveled to Los Angeles and made the use the FAC challenges. That is enough.

**C. Swift's Own Credit Line Identifies TAS.**

The FAC alleges that TAS Rights Management, LLC ("TAS") manages Swift's commercial affairs, "including by commissioning photography and controlling coverage of her California appearances." FAC ¶ 18. Three days after the gala, Swift published photographs of her performance and credited them to two Los Angeles photographers, Getty Images, and "TAS Rights Management." Ex. 43 at 2. Mr. Dorris swears that TAS "has no ownership or use rights regarding the photographs." Dkt. 80-2 ¶ 4. Swift's own credit line says otherwise, and Mr. Dorris offers no explanation for it. He does not say why Swift credited TAS, who commissioned the photographs, or how Swift obtained the right to publish them. The credit line is Swift's own statement. Fed. R. Evid. 801(d)(2)(A). If the Court requires more to resolve the conflict between her statement and Mr. Dorris's, that is a subject of the discovery Plaintiff requests.

**III. DEFENDANTS' REMAINING OBJECTIONS LACK MERIT**

Defendants object that the Motion "improperly attempts to supplement" the briefing on Rule 12(b)(6) and the preliminary injunction. Dkt. 80 at 6 n.2. The Motion asks the Court to consider the performance on the Rule 12(b)(2) question. That the same facts also contradict positions Defendants have taken elsewhere, including their statement that Swift "has never offered ... any live performance in connection with the Album," Dkt. 57 at 22, is no reason to exclude them. It is a reason Defendants should have brought them to the Court's attention themselves. Defendants call "misguided" Plaintiff's reliance on counsel's "continuing duty" to inform the Court of developments that may "affect the outcome of the litigation," on the theory that the performance "has

no bearing" on the FAC. Dkt. 80 at 6 n.2. The duty the Supreme Court has imposed is not so confined. *Bd. of License Comm'rs v. Pastore*, 469 U.S. 238, 240 (1985) (per curiam) (counsel "have a 'continuing duty to inform the Court of any development which may conceivably affect the outcome' of the litigation" (quoting *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring))). A live performance in this District bears directly on a motion that told the Court there had been none.

Finally, the performance bears on reasonableness, as to which Defendants must present "a compelling case." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Their contention is that "[r]equiring Tennessee domiciliaries to defend in California would be burdensome." Dkt. 57 at 35. The Motion showed, under *Farmers* and *Impossible Foods*, that a defendant's own presence in the forum undercuts that claim. Dkt. 73 at 11-12. Defendants respond that *Farmers* turned on Montana's regulatory interest and that the conduct considered in *Impossible Foods* "occurred pre-complaint." Dkt. 80 at 17 n.6. But *Farmers* also weighed burden, and it did so on the insurer's post-accident conduct: "[b]ecause Portage has already investigated the claim and paid on the medical coverage in Montana, the additional burden of litigating the liability coverage there would be minimal." 907 F.2d at 915. And *Impossible Foods* measured inconvenience by the defendant's own travel to the forum: "Undermining any assertion of inconvenience, [the defendant's principal] has made many trips to California since relocating." 80 F.4th at 1099. Burden is by its nature a present inquiry. Swift appeared on a Los Angeles stage twice in three weeks while telling this Court it is too burdensome to come here. A defendant who comes to Los Angeles to film her videos, premiere them, accept awards for them, and perform cannot be heard to complain when she is asked to come here to answer for them.

## CONCLUSION

The Court should grant leave to file the Second Supplemental Declaration and its Exhibits, and consider them, together with Exhibit 47, in ruling on the Rule 12(b)(2) portion of Defendants' Motion to Dismiss.

DATED: November 25, 2026

Respectfully submitted,

PARKKINEN PC

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing memorandum of points and authorities is 9 pages, in compliance with the 10-page limit set forth in Section VII.D of this Court's Standing Order.

DATED: November 25, 2026

*/s/ Jaymie Parkkinen*
Jaymie Parkkinen

*Counsel for Plaintiff*